# 13-1223-cv

## United States Court of Appeals

for the

## Second Circuit

JON SASMOR,

*Plaintiff - Appellant*,

v.

STEVEN POWELL, Individually and as City Marshal



*Defendant - Cross Claimant - Cross Defendant - Appellee*,

and,

CHAIM GOLDBERGER, aka Henry Goldberg, ISAAC TEITELBAUM, aka Isaac Titalbaum, ABRAHAM SCHNEEBALG, FERN FISHER, Individually and as Deputy Chief Administrative Judge for the New York City Courts, CAROL ALT, Individually and as Chief Clerk of the Civil Court of the City of New York, and HENRY MANAGEMENT, LLC,

*Defendants - Cross Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT JON SASMOR

JON SASMOR
287 Franklin Avenue
Brooklyn, NY 11205
(917) 318-2619
jonathan.sasmor@gmail.com

*Plaintiff-Appellant, Pro Se*

# 13-1223-cv

## United States Court of Appeals

### for the

## Second Circuit

JON SASMOR,

*Plaintiff - Appellant,*

v.

STEVEN POWELL, Individually and as City Marshal,

*Defendant - Cross Claimant - Cross Defendant - Appellee,*

and,

CHAIM GOLDBERGER, aka Henry Goldberg, ISAAC TEITELBAUM, aka Isaac Titalbaum, ABRAHAM SCHNEEBALG, FERN FISHER, Individually and as Deputy Chief Administrative Judge for the New York City Courts, CAROL ALT, Individually and as Chief Clerk of the Civil Court of the City of New York, and HENRY MANAGEMENT, LLC,

*Defendants - Cross Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT JON SASMOR

JON SASMOR
287 Franklin Avenue
Brooklyn, NY 11205
(917) 318-2619
jonathan.sasmor@gmail.com

*Plaintiff-Appellant, Pro Se*

## **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT....................................................................1

ISSUES PRESENTED FOR REVIEW..............................................................2

STATEMENT OF THE CASE........................................................................3

STATEMENT OF FACTS..............................................................................4

I.      STATUTORY BACKGROUND............................................................4

II.     MY OCCUPANCY OF ROOMING UNITS AT 287 FRANKLIN
        AVENUE..........................................................................................5

III.    JULY 13 AND JULY 20, 2011 EVICTIONS...........................................7

IV.     SEPTEMBER 20, 2011 BREAK-IN AND WARRANTLESS
        SEARCH FOR SERVICE OF PROCESS.............................................9

V.      ADDITIONAL IMMINENT EVICTIONS............................................9

VI.     REQUESTED RELIEF........................................................................10

SUMMARY OF ARGUMENT..........................................................................11

ARGUMENT.................................................................................................14

*Standard Of Review*...................................................................................14

I.      MY CONSTITUTIONALLY PROTECTED INTERESTS..................15

        A.      Statutory Property Rights for Thirty-Day Occupants and for
                Tenants at Will or at Sufferance...................................................15

                1.      N.Y. Real Prop. Acts Law § 711.......................................15

                2.      N.Y.C. Admin. Code § 26-521.........................................17

                3.      N.Y. Real Prop. Law § 228..............................................19

B.  Fourteenth Amendment Due Process Protects These Thirty-Day Rights and At-Will or At-Sufferance Sufferance Rights.....21

C.  Fourth Amendment Also Protects These Thirty-Day Rights and At-Will or At-Sufferance Sufferance Rights........................25

D.  Personal Property.........................................................................26

E.  Liberty Interests Claims...............................................................27

F.  Equal Protection Claims...............................................................28

G.  Substantive Due Process Claims...................................................29

II.  THE DISTRICT COURT IMPROPERLY RELIED ON COLLATERAL ESTOPPEL AND RES JUDICATA AFFIRMATIVE DEFENSES TO QUASH MY PROPERTY RIGHTS......................................................................................30

A.  Standard of Review for Affirmative Defense...........................30

B.  Fletcher, Diaz, and Rosenbaum Eviction Cases........................31

1.  Elements of Collateral Estoppel Not Met........................31

2.  Party Preclusion Inappropriate Under *Smith v. Bayer Corp.* Because I Never Became a Party...........................34

3.  Nonparty Preclusion Inappropriate Under *Gramatan Home Investors Corp. v. Lopez* and *Taylor v. Sturgell*......35

C.  Osterweil, Campos, and Skubutyte Eviction Cases....................36

D.  The "Ronald Henry Land Trust" Eviction Proceedings All Are Nullities.............................................................................38

E.  Restatement Exceptions...............................................................41

III.  NEW YORK'S EVICTION WARRANT PROCEDURE VIOLATES PROCEDURAL DUE PROCESS......................................41

A.   The Court Should Follow *Rembert*, *Arrieta*, and Other
     Persuasive Case Law That Has Decided the Same Question.....41

B.   Postdeprivation remedies do not *ipso facto* satisfy procedural
     due process because the "all persons" warrants follow an
     "established state procedure".......................................................44

C.   All three *Mathews* factors weigh against New York's eviction
     warrants process..........................................................................45

D.   The Process that is Due................................................................48

IV.   NEW YORK'S EVICTION WARRANT PROCEDURE AND
      OTHER CONDUCT BY THE DEFENDANTS VIOLATES THE
      FOURTH AMENDMENT......................................................................50

      A.   The Warrant Clause Forbids "All Persons" Warrants Based
           on *In Personam* Eviction Judgments...........................................50

      B.   The Alleged Evictions Constitute Unreasonable Searches and
           Seizures.......................................................................................52

      C.   The September 20, 2011 Search Was Unreasonable...................56

V.    DEFENDANTS ARE STATE ACTORS AND/OR CONSPIRED
      WITH STATE ACTORS.........................................................................56

VI.   DEFENDANTS' OTHER DEFENSES LACK MERIT.......................58

      A.   *Rooker-Feldman* Doctrine...........................................................58

      B.   Qualified Immunity.....................................................................58

VII.  PRELIMINARY INJUNCTION SHOULD HAVE BEEN
      GRANTED.............................................................................................59

      A.   Ongoing and Imminent Irreparable Harm...................................59

      B.   Likelihood of Success on the Merits...........................................60

      C.   Balance of Equities and Public Interest.......................................60

VIII.  THE DISTRICT COURT DECISION FAILED TO SATISFY
       28 U.S.C. § 636(B)(1), ARTICLE III, AND DUE PROCESS.............61

IX.    STATE LAW CLAIMS............................................................................63

X.     LEAVE TO AMEND.............................................................................63

CONCLUSION.................................................................................................64

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)..............................65

SPECIAL APPENDIX

# TABLE OF AUTHORITIES

## CASES

*Amica Mut. Ins. Co. v. Jones*, 85 A.D.2d 727 (N.Y. App. Div. 1981).............40

*Arrieta v. Mahon*, 31 Cal. 3d (1982)...........41, 43, 44, 46-47, 48-49, 50, 51-52

*Bd. of Regents v. Roth*, 408 U.S. 564 (1972)......................................................21

*Bowman v. City of New York*, No. 08-cv-10123 (S.D.N.Y. Sep. 30, 2010).....17

*Boyar v. Goodman*, 202 A.D.2d 541 (N.Y. App. Div. 1994)...........................20

*Boyd v. United States*, 116 U.S. 616 (1886).......................................................50

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)....................................28

*Canigiani v. Bd. of Assessors,* 98 A.D.2d 233 (N.Y. App. Div. 1983).......39-40

*Cardenas v. Noren*, 235 Cal. App. 3d 1344 (Cal. Ct. App. 1991)...................47

*Charmaine C. v. Elizabeth C.*, 26 Misc. 3d 307 (N.Y. Fam. Ct. 2009)...........18

*Chase National Bank v. Norwalk*, 291 U.S. 431 (1934)...................................28

*Chu v. Lee*, 2013 NY Slip Op 50859(U) (N.Y. App. Term 2013)....................19

*Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002).......................57

*City of N.Y. v. Utsey*, 185 Misc. 2d 715 (N.Y. App. Term 2000).....................20

*Cobert Constr. Corp. v. Bassett*, 109 Misc. 2d 119 (N.Y. App. Term 1981)...34

*Commodity Futures Trading Comm'n v. Walsh*, 712 F.3d 735 (2d Cir.
         2013)......................................................................................................15

*Couden v. Duffy*, 446 F.3d 483 (3d Cir. 2006)..................................................54

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998).....................................29

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).....................................63

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377 (6th Cir. 2001).......................................60

*Drost v. Hookey*, 25 Misc. 3d 210 (N.Y. Dist. Ct. 2009).................................21

*Empire State Bldg. Co., LLC v. Progressive Catering Svcs., Inc.*, 2 Misc. 3d 545  (N.Y. City Civ. Ct. 2003)..............................................53

*Englbom v. Carey*, 677 F.2d 957 (2d Cir. 1982)........................................22, 26

*Entick v. Carrington*, 19 How. St. Tr. 1029, 95 Eng. Rep. 807 (1765)............27

*Escalera v. N.Y.C. Housing Authority*, 425 F.2d 853 (2d Cir. 1970)...............21

*Esquire Trade & Finance, Inc. v. CBQ, Inc.*, 562 F.3d 516 (2d Cir. 2009)...................................................................................31, 36

*Ex parte Young*, 109 U.S. 123 (1908)..................................................57

*Fairbanks Capital v. Coleman*, 816 N.E.2d 695 (Ill. App. Ct. 2004).............47

*Feldman v. Planning Bd. of Town of Rochester*, 99 A.D.3d 1161 (N.Y. App. Div. 2012)................................................................31

*Gallea v. Hess Realty Corp.*, 128 A.D.2d 274 (N.Y. App. Div. 1987).............24

*Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987).........................................62

*George v. County of San Luis Obispo*, 93 Cal. Rptr. 2d 595 (Cal. Ct. App. 2000)........................................................................46-47

*Glass v. Estate of Gold*, 48 A.D.3d 746 (N.Y. App. Div. 2008).....................33

*Gov't Empls. Ins. Co. v. Estate of Sosnov*, 244 A.D.2d 485 (N.Y. App. Div. 1997).............................................................39

*Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481 (1979)...........35, 36

*Greater N.Y. Health Care Facilities Ass'n v. DeBuono*, 91 N.Y.2d 716
(1998)......................................................................................35

*Greene v. Lindsey*, 456 U.S. 444 (1982)............................................21

*Groh v. Ramirez*, 540 U.S. 551 (2004)....................................49, 51, 53, 54, 55

*Hansberry v. Lee*, 311 U.S. 32 (1940)........................................36, 48

*Held v. N.Y. State Workers' Compensation Bd.*, 58 A.D.3d 971 (N.Y.
App. Div. 2009......................................................................40

*Hellenic Amer. Neighborhood Act. Comm. v. City of N.Y.*, 101 F.3d 877
(2d Cir. 1996)........................................................................44

*Hite v. Field,* 462 A.2d 393 (Conn. Super. Ct. 1982)........................43

*Hollander v. Copacabana Nightclub*, 624 F.3d 30 (2d Cir. 2010)..................57

*Huckle v. Money*, 2 Wils. K.B. 205, 95 Eng. Rep. 768, (1763)......................27

*Hunt v. Pliler*, 384 F.3d 1118 (9th Cir. 2004)....................................62

*In re Tyson*, No. 12-936-cv (2d Cir. Feb. 15, 2013) (summary order)
(Available at http://www.ca2.uscourts.gov/decisions/isysquery/
bfa63e49-4f2c-4551-a43d-7c112ed3b953/1/doc/12-936_so
.pdf).......................................................................33-34, 38

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945).........................28

*Jeffrey S. v. Ga. Bd. of Education*, 896 F.2d 507 (11th Cir. 1990)..................62

*Jimenez v. Quarterman*, 555 U.S. 113 (2009)....................................17

*Johnson v. De Grandy*, 512 U.S. 997 (1994)......................................58

*Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996)....................................38

*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996)....................................59

*Kassim v. City of Schenectady*, 255 F.Supp.2d 32 (N.D.N.Y. 2003),
   *later proceedings at* 415 F.3d 246 (2d Cir. 2005)..............................43, 44

*Kaufman v. Lilly & Co.*, 65 N.Y.2d 449, 456-7 (1985)..............................34, 38

*Kelly-Brown v. Winfrey*, No. 12-1207-cv, ___ F.3d ___ (2d Cir.
   May 31, 2013)........................................................................................63

*Koch v. Consolidated Edison Co. of N.Y.*, 62 N.Y.2d 548 (1984)...................41

*Kraebel v. N.Y.C. Dep't of Hous. Pres. and Dev.*, 959 F.2d 395
   (2d Cir. 1992)........................................................................................44

*Lance v. Dennis*, 546 U.S. 459 (2006)................................................................58

*Leach v. Three of the King's Messengers*, 19 How. St. Tr. 1001 (1765)..........50

*Limouze v. M. M. & P. Maritime Advancement, Training, Education,
   and Safety Pgm.*, 397 F.Supp. 784 (D. Md. 1975)..................................38

*Linares v. Jackson*, 531 F.Supp.2d 460 (E.D.N.Y. 2008), *recons.
   granted in part*, 548 F.Supp.2d 21 (E.D.N.Y. 2008)........................21-22

*Lincoln v. Austic*, 60 A.D.2d 487 (N.Y. App. Div. 1978), *lv. Denied*,
   44 N.Y.2d 644 (1978)..............................................................................31

*Lindsey v. Normet*, 405 U.S. 56 (1972)...........................................................29

*Lippe v. Prof. Surg. Supply Co., Inc.*, 132 Misc. 2d 293 (N.Y. City
   Civ. Ct. 1986)........................................................................................21

*Little Shoppe Around the Corner v. Carl*, 80 Misc. 2d 717 (N.Y. County
   Ct. 1975).............................................................................................38, 39

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)..............................47-48

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)..........................................57

*M&M Crown Realty, LLC v. Griffith*, 2011 WL 3370860 (N.Y. City
   Civ. Ct. June 17, 2011)..........................................................................32

*MacAffer v. Boston & Maine R.R.*, 268 N.Y. 400 (1935)................................38

*Mann v. 125 E. 50th St. Corp.*, 124 Misc. 2d 115 (N.Y. City Civ. Ct. 1984), *aff'd*, 126 Misc. 2d 1016 (N.Y. App. Term 1985)...............15, 17

*Marcus v. Search Warrant*, 367 U.S. 717 (1961)..............................................50

*Marron v. United States,* 275 U.S. 192 (1927).....................................50, 51, 53

*Martin v. Wilks*, 490 U.S. 755 (1989)..........................................................28, 48

*Maryland v. King*, 569 U.S. ___, No. 12-207 (June 3, 2013).........................50

*Mastas v. Extra Closet, Inc.*, 146 Misc. 2d 698 (N.Y. City Civ. Ct. 1990)......20

*Mathews v. Eldridge*, 424 U.S. 319 (1976).........................................12, 45-48

*Matter of Mannara*, 5 Misc. 3d 556 (N.Y. Sur. Ct. 2004)..............................39

*McCormick v. Resurrection Homes*, 38 Misc. 3d 847 (N.Y. City Civ. Ct. 2012)................................................................15, 17, 18, 19, 24

*McKenna v. Wright,* 386 F.3d 432 (2d Cir. 2004)............................................30

*McNeill v. N.Y.C. Housing Authority,* 719 F.Supp. 233 (S.D.N.Y. 1989)........60

*Meyer v. Nebraska*, 262 U.S. 390 (1923).......................................................27

*MH Residential 1, LLC v. Barrett*, 2013 NY Slip Op 23062 (N.Y. App. Term 2013)..................................................................23

*Minnesota v. Olson*, 495 U.S. 91 (1990).......................................................25

*Mitchell v. City of N.Y.*, 154 Misc. 2d 222 (N.Y. City Civ. Ct. 1992)........15-17

*Noble v. Union River Logging R.R. Co.*, 147 U.S. 165 (1893).......................41

*Nutter v. W&J Hotel Co.*, 171 Misc. 2d 302 (N.Y. City Civ. Ct. 1997)....16, 17

*Ohio v. Robinette*, 519 U.S. 33 (1996).......................................................52, 55

*Oliver v. N.Y.C. Housing Authority*, No. 10-cv-3204 (E.D.N.Y.
    Oct. 21, 2010)...........................................................................23

*Ostensen v. County of Suffolk*, 378 F.Supp.2d 140 (E.D.N.Y. 2005),
    *aff'd* 236 F.App'x 651 (2d Cir. 2007)...............................................25-26

*Payton v. New York*, 445 U.S. 573 (1980)........................................................54

*Pearson v. Callahan*, 555 U.S. 223 (2009)........................................................59

*Pennoyer v. Neff*, 95 U.S. 714 (1878)................................................................28

*People v. 850 W. End Av. Corp.*, 138 Misc. 2d 998 (N.Y. City Crim. Ct.
    1988).........................................................................................18

*People v. Sprague*, 47 A.D.2d 510 (N.Y. App. Div. 1975)...............................53

*Pope v. County of Albany*, 687 F.3d 565 (2d Cir. 2012)...................................60

*PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10 (1st Cir. 2010)...........................62

*Rakas v. Illinois*, 439 U.S. 128 (1978)........................................................25, 26

*Rembert v. Sheahan*, No. 92-cv-67, 1994 U.S. Dist. LEXIS 9164
    (N.D. Ill. July 6, 1994), *vacated*, 62 F.3d 937 (7th Cir. 1995),
    *permanent injunction issued on remand*, No. 92-cv-67,
    Judgment Order (N.D. Ill. Nov. 3, 1995), *modified*, Modification
    of Judgment Order (N.D. Ill. Oct. 8, 1999), *dismissed as moot*,
    Minute Order (N.D. Ill. Oct. 9, 2002)......................41, 42-43, 47, 48, 49

*Revis v. Meldrum*, 489 F.3d 273 (6th Cir. 2007)..............................................52

*Richards v. Jefferson County*, 517 U.S. 793 (1996)........................................36

*Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458 (2d Cir. 2006)..........44

*Riverside and Dan River Cotton Mills v. Menefee*, 237 U.S. 189 (1915).......28

*Rodriguez v. Greco*, 2011 NY Slip Op 50696(U) (N.Y. App Term
    2011)........................................................................................19-20

*Ronald Henry Land Trust v. Campos*, 2011 NY Slip Op 82284(U)
    (N.Y. App. Term Aug. 24, 2011)........................................................37-38

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013)............................................14

*Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857 (7th Cir. 1999)..............56

*Ryan v. N.Y. Tele. Co.*, 62 N.Y.2d 494 (1984)....................................................37

*Semayne's Case*, 5 Co. Rep. 91a, 77 Eng. Rep. 194 (1603)........................54-55

*Sima Realty L.L.C. v. Philips*, 282 A.D.2d 394 (N.Y. App. Div. 2001)...........18

*Smith v. Bayer Corp.*, 564 U.S. ___, 131 S.Ct. 2368 (2011)................12, 34-35

*Smith v. Donovan*, 61 A.D.3d 505 (N.Y. App. Div. 2009)...............................18

*Soldal v. Cook County*, 506 U.S. 56 (1992)........................................................52

*Southerland v. City of N.Y.*, 680 F.3d 127 (2d Cir. 2012).................................59

*Stanford v. Texas*, 379 U.S. 476 (1965)......................................................27, 50

*Stiles v. Donovan*, 100 Misc. 2d 1048 (N.Y. City Civ. Ct. 1979)..............16, 17

*Tappin v. Homecomings Financial Network, Inc.,* 830 A.2d 711 (Conn.
    2003).....................................................................................................43

*Taylor v. Sturgell*, 553 U.S. 880 (2008))........................................12, 30, 35-36

*Thomas v. Venditto*, No. 11-cv-6084 (E.D.N.Y. Feb. 21, 2013)................37, 38

*Truglio v. VNO 11 E. 68th St. LLC*, 2012 NY Slip Op. 50908(U)
    (N.Y. Civ. Ct. May 21, 2012)............................................................15-17

*Twyne's Case*, 3 Co. Rep. 80B, 76 Eng. Rep. 809 (1601)...............................40

*United States v. Grubbs*, 547 U.S. 90 (2006)....................................................55

*United States v. Hector*, 361 F.Supp.2d 1145 (C.D. Cal. 2005).......................55

*United States v. Martin*, No. 2:09-cr-747 (D. Utah Jan. 14, 2010)..................25

*United States v. Neth*, No. 6:09-cr-210 (M.D. Fla. Mar. 30, 2010)................55

*United States v. Raddatz*, 447 U.S. 667 (1980)...............................................61

*United States v. Shami*, 754 F.2d 670 (6th Cir. 1985)................................62-63

*United States v. Thompson*, 667 F.Supp.2d 758 (S.D. Ohio 2009)................55

*United States v. U.S. District Court*, 407 U.S. 297 (1972)............49-50, 52, 56

*Universal Motor Lodges, Inc. v. Seignious*, 146 Misc. 2d 395 (N.Y.
    Vill. Just. Ct. 1990)..........................................................................15, 17

*Varela v. County of Rensselaer*, No. 10-cv-1390 (N.D.N.Y. Mar. 8,2012),
    *R&R adopted* (N.D.N.Y. Apr. 18, 2012)..............................................44

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).....................................29

*Walls v. Giuliani*, 916 F.Supp. 214 (E.D.N.Y. 1996)................19, 20, 22-23, 26

*Washington v. Glucksberg*, 521 U.S. 702 (1997)..............................................29

*Weeks v. United States*, 232 U.S. 383 (1914)....................................................50

*Wilkes v. Wood*, 19 How. St. Tr. 1153, 98 Eng. Rep. 489 (1763).....................27

*Wolf-Lillie v. Kenosha County Sheriff*, 504 F.Supp. 1 (E.D. Wis. 1980),
    *vacated in part sub nom. Wolf-Lillie v. Sonquist*, 699 F.2d 864
    (7th Cir. 1983)..........................................................................................55

*Wright v. Lewis*, 2008 NY Slip Op 52106(U) (N.Y. Sup. Ct. 2008)................45

*Ybarra v. Illinois*, 444 U.S. 85, 90-2 (1979)…..................................................51

*Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163 (2d Cir. 2001)................................14

# CONSTITUTIONAL PROVISIONS

Magna Carta, 25 Edw., c. 29 (1297)...................................................27

N.Y. Const., Art. I, § 6...................................................58

N.Y. Const., Art. I, § 11...................................................58

N.Y. Const., Art. I, § 12...................................................58

U.S. Const., Amend. III...................................................26

U.S. Const., Amend. IV...................................................*passim*

U.S. Const., Amend. XIV, § 1...................................................*passim*

U.S. Const., Art. III...................................................61-63

# STATUTES

28 U.S.C. § 636(b)(1)...................................................2, 61-63

28 U.S.C. § 1291...................................................1

28 U.S.C. § 1292(a)(1)...................................................1

28 U.S.C. § 1331...................................................1

28 U.S.C. § 1343(a)...................................................1

28 U.S.C. § 2201...................................................1

42 U.S.C. § 1983...................................................1, 57

42 U.S.C. § 1985(3)...................................................1

42 U.S.C. § 1988...................................................1

Cal. Civ. Proc. Code § 415.46...................................................4, 46, 47

Cal. Civ. Proc. Code § 715.010...................................................4, 46, 47

Cal. Civ. Proc. Code § 715.020............................................................4, 46, 47

Cal. Civ. Proc. Code § 1174.25............................................................4, 46, 47

Cal. Civ. Proc. Code § 1174.3............................................................4, 46, 47

Conn. Gen. Stat. § 47a-26h............................................................4, 46, 47

735 Ill. Comp. Stat. 5/9-104............................................................4, 46, 47

735 Ill. Comp. Stat. 5/9-107............................................................4, 46, 47

735 Ill. Comp. Stat. 5/9-107.5............................................................4, 46

N.Y. Bus. Corp Law § 402............................................................40

N.Y. Bus. Corp Law § 403............................................................40

N.Y. Bus. Corp Law § 408............................................................40

N.Y. Bus. Corp Law § 409............................................................40

N.Y.C. Admin. Code § 26-521............................2, 11, 17-19, 20, 23-24, 26

N.Y.C. Admin. Code § 26-523............................................................23

N.Y. City Civ. Ct. Act § 1602............................................................54

N.Y. City Civ. Ct. Act § 1609............................................................56

N.Y. C.P.L.R. 1012(a)(2)............................................................31-32

N.Y. Est. Powers & Trusts Law. § 7-2.1............................................38-40, 53

N.Y. Gen. Bus. Law § 130(9)............................................................23

N.Y. Ltd. Liab. Co. Law § 203............................................................40

N.Y. Ltd. Liab. Co. Law § 206............................................................40

xiv

N.Y. Ltd. Liab. Co. Law § 209........................................................40

N.Y. Real Prop. Law § 228...........................2, 11, 19-21, 22-23, 25, 26

N.Y. Real Prop. Law § 232-a...................................................23, 49

N.Y. Real Prop. Acts Law Art. 7......................................................4

N.Y. Real Prop. Acts. Law § 711...................2, 11, 15-17, 22-25, 26

N.Y. Real Prop. Acts. Law § 713.....................................................22

N.Y. Real Prop. Acts. Law § 715.......................................................4

N.Y. Real Prop. Acts. Law § 731..............................................23, 49

N.Y. Real Prop. Acts. Law § 733..............................................23, 49

N.Y. Real Prop. Acts. Law § 735.........................................4, 23, 49

N.Y. Real Prop. Acts. Law § 743.....................................................23

N.Y. Real Prop. Acts. Law § 747..............................................4, 34

N.Y. Real Prop. Acts. Law § 749..............................................*passim*

N.Y. Real Prop. Acts. Law § 1303....................................................46

Utah Code § 78B-6-812(3)...............................................................46

## RULES

Fed. R. Civ. P. 12(b)..............................................................14, 30

Fed. R. Civ. P. 72.........................................................................62

Fed. R. Crim. P. 41(f)(1)(C)..........................................................54

# REGULATIONS

N.Y.C. Marshals HandBook of Regulations, Ch. IV, § 1-2.............................49

N.Y.C. Marshals HandBook of Regulations, Ch. IV, § 5-2.............................56

N.Y.C. Marshals HandBook of Regulations, Ch. IV, § 6-2.............................54

# OTHER AUTHORITIES

Bogert, Trusts and Trustees § 1 (2d ed. 1984)..................................39

16 Cal. Law Revision Com. Rep. (1982) pp. 1158-1159................................47

Carmody Wait 2d N.Y. Practice § 90:38...........................................24

H.R. Rep. No. 94-1609, p. 3 (1976).................................................61

Hess, Bogert & Bogert, Trusts and Trustees § 712 (3d ed 2009)....................39

Letter from Richard W. Davis to Conn. Judiciary Comm. (Apr. 1, 1987),
    published in Conn. Joint Standing Committee Hearings, Judiciary,
    Part 6, at 2028 (1987 Sess.)...................................................47

MFY Legal Service, Inc., "Three-Quarter House Residents: Know Your
    Rights," http://www.mfy.org/wp-content/uploads/pdf/IBH-Know-
    your-Rights.pdf (last accessed July 12, 2013)................................18-19

Restatement 2d of Judgments, § 27 cmt.e (1982)...........................................34

Restatement 2d of Judgments, § 28...............................................41

Restatement 2d of Judgments, § 29...............................................41

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. §§ 1331, 1343(a), and 2201; and 42 U.S.C. §§ 1983, 1985(3),[1] and 1988.

This Court has jurisdiction under 28 U.S.C. § 1291 because this appeal is is from a final judgment that disposes of all parties' claims. This Court also has jurisdiction under 28 U.S.C. § 1292(a)(1) to review the denial of preliminary injunction.

The final judgment was entered on April 2, 2013, SPA033-4, and this appeal was noticed later that same day, JA438-9.

---

[1] I do not pursue 42 U.S.C. § 1985(3) claims on this appeal.

1

## ISSUES PRESENTED FOR REVIEW

1. Does (a) the Due Process Clause and/or (b) the Fourth Amendment protect statutory rights as a tenant under (i) N.Y. Real Prop. Acts. Law § 711, (ii) N.Y.C. Admin. Code § 26-521, and/or (iii) N.Y. Real Prop. Law § 228?

2. Should the District Court have considered (i) liberty interest claims, (ii) equal protection claims, and (iii) substantive due process claims?

3. Did the District Court err in relying on preclusion-based affirmative defenses to determine property rights at the pleadings stage?

4. Does New York's eviction warrant procedure to "remove all persons" upon a judgment against any single named individual, *see* N.Y. Real Prop. Acts. Law § 749(1), violate Fourth and Fourteenth Amendment rights?

5. Did the defendants' conduct at the July 13 and July 20, 2011 evictions and at the September 20, 2011 warrantless search for service of process violate Fourth and Fourteenth Amendment rights?

6. Was the District Court's review of the Magistrate Judge's Report and Recommendation sufficient to satisfy 28 U.S.C. § 636(b)(1), Article III, and Due Process?

7. Did the District Court err in (1) dismissing all the federal and state claims, (2) denying preliminary injunction, and (3) denying leave to amend the complaint?

## STATEMENT OF THE CASE

287 Franklin Avenue is a rooming house in Brooklyn, New York. JA016.  Plaintiff has resided there since April 1, 2010.  *Id.*

Following Housing Court proceedings against named former tenants, not including the plaintiff, eviction warrants issued to remove those former tenants "AND ALL OTHER PERSONS."  JA050-58; *see* N.Y. Real Prop. Acts. Law § 749(1) (SPA069) ("all persons" removed following judgment against any named individual).

On July 13 and July 20, 2011, plaintiff was evicted from three rooming units based on judgments against former tenants.  JA021-4, 029-31.  On September 20, 2011, a process server working for defendant Powell forcibly entered 287 Franklin Avenue and conducted a warrantless search of the building to attempt to serve eviction notices on two former occupants. JA027-8, 032.  Plaintiff faces imminent additional evictions due to three remaining outstanding judgments against additional former tenants.  JA025-8.

On September 26, 2011, Plaintiff commenced this civil rights action. That same day, and again on December 20, 2011, the District Court denied Plaintiff's requests for a temporary restraining order.  All the defendants moved to dismiss or for judgment on the pleadings, and plaintiff moved for preliminary injunction.  On February 21, 2013, Magistrate Judge James Orenstein issued a Report and Recommendation recommending dismissal of

3

the case with prejudice as to the federal claims. SPA001-22. On Easter Sunday, March 31, 2013, District Judge Kiyo A. Matsumoto issued an Order Adopting Report & Recommendation, dismissing this case with prejudice as to the federal claims. SPA023-32. Judgment entered on April 2, 2013. SPA033-4.

## STATEMENT OF FACTS

### I.    STATUTORY BACKGROUND

New York law provides a statutory summary eviction proceeding. N.Y. Real Prop. Acts Law Art. 7. Service of process is made on the named respondent(s) only, *id.* § 735 (SPA066-7), and judgment enters "determining the rights of the parties," *id.* § 747(1) (SPA068). Nonetheless, if judgment is for the petitioner, a warrant issues "commanding the officer to remove all persons, and, except where the case is within section 715 [relating to prostitution and vice], to put the petitioner into full possession." *Id.* § 749(1) (SPA069) (emphasis added).[2]

---

[2] By contrast, at least three other states have enacted statutory procedures to provide due process to all occupants prior to any eviction. *Infra,* part III.C (citing Cal. Civ. Proc. Code §§ 415.46, 715.010, 715.020, 1174.25, and 1174.3 (SPA037-51); Conn. Gen. Stat. § 47a-26h (SPA052-4); 735 Ill. Comp. Stat. 5/9-104, 9-107, and 9-107.5) (SPA054-8)). In all three states, the statutes were enacted following judicial determinations that nonparty occupants claiming possession must be accorded due process in eviction proceedings. *Infra,* at 46 n.14 (collecting authorities).

This case, brought by a tenant who was evicted despite not having been a party to underlying eviction proceedings, challenges under the Fourth and Fourteenth Amendments section 749(1)'s authorization of general warrants to "remove all persons." JA012-13.

## II.  MY OCCUPANCY OF ROOMING UNITS AT 287 FRANKLIN AVENUE

287 Franklin Avenue, Brooklyn, NY is a rooming house with nine rooming units, a shared kitchen and living room, and two shared bathrooms. JA016. I moved into a rooming unit on the top floor on April 1, 2010. JA016-17, 019, 248-9. I had discovered this room available for rent through craigslist and had made arrangements to move in through People's Choice Realty. *Id.* People's Choice did a credit check and accepted rent and security deposit payments. *Id.*; JA171-4. Shortly after moving in, I signed a lease. JA016-17, 249, 114-20. I later received copies of two other versions of the lease. JA017, 249, 122-7, 270-3.

Subsequently, I discovered that 287 Franklin Avenue was in foreclosure. JA017, 250, 253-5, 299-303. An ownership dispute developed: the mortgagor Ronald Henry asserted a claim to ownership, JA018-20, 251-5, 290-2, 297-8, while defendants Teitelbaum, Schneebalg, Goldberger, and Henry Management, LLC (collectively, "Trust Defendants"), asserted a

conflicting claim to ownership through "Ronald Henry Land Trust." JA017-20, 032, 249-55, 267, 274-82, 304-14. Co-tenants and I began escrowing rent. JA018, 253.

In summer 2010, the Trust Defendants unsuccessfully attempted to evict all the tenants by self-help. JA250-2, 284, 289, 293-6. In November 2010, "Ronald Henry Land Trust" brought an unsuccessful nonpayment eviction proceeding, claiming that four others and I were tenants of "Apt: ENTIRE HOUSE in the building known as 287 FRANKLIN AVE." "pursuant to a Written rental agreement." JA255-6, 314. Because there was no Multiple Dwelling Registration, the Housing Judge instructed the other tenants and me, "Don't pay any rent." JA256.

In January 2011, the N.Y.C. Department of Housing Preservation and Development issued a vacate order for the top floor of 287 Franklin Avenue, after which no one could sleep on the top floor. JA019-20, 183. In 2010 and 2011, some co-tenants moved out and gave me their keys and permission to use their rooms, including rooms downstairs. JA019, 255, 259-60, 261-2. I occupied each of the rooms for more than thirty consecutive days. JA016, 021, 259-60, 261-2.

## III.   JULY 13 AND JULY 20, 2011 EVICTIONS

In March 2011, "Ronald Henry Land Trust" brought seven holdover eviction proceedings against named tenants and former tenants of 287 Franklin Avenue seeking the eviction of each from a specific room. JA256, 335-40. The case against me for my original rooming unit was eventually discontinued, and another proceeding was instituted later in 2011. JA256.[3]

The cases against three former tenants proceeded to default judgments. JA021-3, 051, 054, 057, 256-7. I went to Housing Court and tried to defend each of these three cases as the actual occupant. JA021-3, 129-68, 222-47, 256-7, 315-20. In two cases, I was excluded from being heard on the basis that I was not a named party. JA022-3, 229-30, 239-40, 256-7, 318-20. In the third case, which was about my bedroom, the Housing Court construed my attempted answer as an improper "attempt to represent respondent Rosenbaum," and proceeded to grant default judgment against former tenant Rosenbaum without reviewing the content of my attempted answer. JA022-3, 245, 257. In all three cases, the Appellate Term dismissed my and other actual tenants' appeals on the Court's own motion stating that "nonparty-appellants are not aggrieved by the final judgment." JA023, 231, 241, 247,

---

[3] I eventually lost the subsequent case against me in October 2012, in substantial part based upon safety issues specific to the top floor. JA371-82. An appeal to the Appellate Term is pending. JA386-90.

257. The judgments themselves reflect that I never was made a party to those proceedings. JA021, 023, 051, 054, 057, 327-9, 258.

Nonetheless, on July 13, 2011, defendant Powell, a city marshal, accompanied by defendant Goldberger and a locksmith, came to 287 Franklin Avenue and evicted me from my bedroom. JA012, 021, 029-32, 260. On July 20, 2011, the three men returned and evicted me from two other rooms. *Id.* I objected to their entry on both dates. JA030-1, 265-6. Despite my repeated requests to see his badge and a warrant, defendant Powell refused to show them. JA021, 031, 259, 266. On July 13, 2011, defendant Powell also threatened to call, and then did call the Fire Department in an attempt to vacate the entire building, which the Fire Department, after inspecting the building, refused. JA030-1, 040-1, 265-6.

Defendant Powell returned to the Housing Court three warrants marked as executed, each calling for the removal of one named former tenant "AND ALL OTHER PERSONS." JA021, 050, 053, 056, 259. *See* N.Y. Real Prop. Acts Law § 749(1) (SPA069) (requiring eviction warrants to "remove all persons"). Since the time of the July 13 and 20, 2011 evictions, the rooming units from which I was evicted, including my bedroom, have remained padlocked shut with my belongings still inside. JA023-4, 260-1.

8

## IV.    SEPTEMBER 20, 2011 BREAK-IN AND WARRANTLESS SEARCH FOR SERVICE OF PROCESS

On September 20, 2011, defendants Goldberger and Schneebalg, accompanied by a man with a drill and a crowbar and another man who apparently was a process server working for defendant Powell, drilled out the locks on the front door of 287 Franklin Avenue and pried the door open with a crowbar, breaking the barrel bolts and shattering chunks of the doorframe. JA027, 032.  Another tenant and I pushed back on the door, and I called the police twice.  JA027.  When the process server told the police that he worked for the marshal, a police officer instructed me to allow the process server entry to serve process, even though I did not consent.  JA027, 032.  Defendant Goldberger directed the process server to two rooming units inside, at each of which the process server left notices of eviction.  JA027.

## V.    ADDITIONAL IMMINENT EVICTIONS

Three additional *in personam* eviction judgments had been obtained by "Ronald Henry Land Trust" against three tenants who had participated in their eviction cases, but moved out thereafter.  JA257-8, 327-9.  In 2011, three warrants were issued to remove each of these three former tenants "AND ALL OTHER PERSONS."  JA025, 261, 332-4.

Those three additional warrants were returned unexecuted by defendant Powell following the institution of this lawsuit.  JA261, 330-4.  Nonetheless,

9

the judgments remain, and defendant court administrators Fisher and Alt

(together, "Judicial Defendants"), are expected to issue replacement "all

persons" warrants upon request. JA262-3.[4]

Vague premises descriptions make it unclear which rooms are targeted

by the Campos, Osterweil, and Skubutyte cases. JA026, 261-3. Nonetheless,

based upon where eviction notices were delivered on September 20, 2011, my

current bedroom and another room that I currently use appear targeted by this

second batch of warrants. JA261-3.

## VI.  REQUESTED RELIEF

In this civil rights lawsuit, I seek injunctive and declaratory relief,

including, *inter alia*, prohibiting further enforcement of the unconstitutional

July 13 and 20, 2011 evictions, as well as prohibiting additional

unconstitutional evictions through further enforcement of subdivision

749(1)'s "all persons" warrant provision. JA041-5. I also seek damages from

defendant Powell and from the Trust Defendants. JA045-6.

---

[4] Defendant Alt's signature appears on every Housing Court eviction warrant
in New York City. JA029. Defendant Fisher supervises the administration of
the eviction warrants process. *Id.*

# SUMMARY OF ARGUMENT

## I.

Two New York statutes accord me tenancy rights as a rooming house occupant for more than thirty days. N.Y. Real Prop. Acts. Law § 711 (SPA062-4); N.Y.C. Admin Code § 26-521 (SPA058-9). A third statute accords me rights, at the least, as a tenant at will or at sufferance. N.Y. Real Prop. Law § 228 (SPA061). The District Court misconstrued the first two statutes and did not consider my arguments about the third statute. Each of the three statutes creates a tenancy interest protected not only as a property right by the Due Process Clause, but also under the Fourth Amendment's broader umbrella of "legitimate expectation of privacy." The District Court also did not consider my pleaded and briefed claims related to liberty interests, equal protection, and substantive due process.

## II.

The District Court erred by upholding the affirmative defenses of collateral estoppel and *res judicata* at the pleadings stage. Several elements of issue and claim preclusion are absent here, and there are factual issues too. Moreover, the District Court improperly relied upon a declaration outside the pleadings and improperly validated judgments which were nullities because a trust can neither sue nor own property in the name of the trust. Though I was not a party to prior proceedings, the District Court failed to recognize and

11

apply the Supreme Court's "constrained approach to nonparty preclusion."
*Smith v. Bayer Corp.*, 564 U.S. ___, 131 S.Ct. 2368, 2379 (2011) (quoting
*Taylor v. Sturgell*, 553 U.S. 880, 898 (2008)).

### III.

Federal or state courts in California, Connecticut, and Illinois have
determined that eviction procedures similar to that mandated by N.Y. Real
Prop. Acts Law § 749(1) (SPA069) violate Due Process by failing to provide
notice and opportunity to be heard to all occupants. Eviction proceedings are
an established state procedure for which a post-deprivation hearing is
insufficient. All three factors set forth in *Mathews v. Eldridge*, 424 U.S. 319,
335 (1976) tip here towards a violation of due process where "all persons" are
removed upon an *in personam* eviction judgment against any named
individual. Due Process requires an appropriate procedure for the Housing
Court to gain personal jurisdiction over all Constitutionally protected
occupants before evicting them. Both property interests and liberty interests
must be protected.

### IV.

New York's "all persons" eviction warrants violate the Fourth
Amendment's Warrant Clause prohibition against general warrants. An *in
personam* judgment against a single named individual does not justify
removal of "all persons."

The evictions here, both past and imminent, constitute unreasonable searches and seizures. The "totality of the circumstances" adds up to unreasonableness where: (a) "all persons" warrants are issued following *in personam* judgments against named individual tenants only, (b) the warrants lack particular premises descriptions, (c) the warrants purport to transfer property to a type of trust not capable of owning property, (d) the executing marshal failed to show his badge and the warrants as required by law, notwithstanding repeated requests, and (e) the executing marshal improperly involved the Fire Department in an attempt to exceed the scope of the warrants and his authority.

Additionally, the September 20, 2011 break-in by the marshal's process server was an unreasonable warrantless search and was not *de minimis*.

V.

Defendant Powell, as a city marshal, is a state actor. The Judicial Defendants enforce N.Y. Real Prop. Acts. Law § 749(1), an unconstitutional statute, by issuing "all persons" eviction warrants. Trust Defendants themselves became state actors by invoking the eviction process and by participating personally in the evictions. Trust Defendants also conspired with state actors.

The *Rooker-Feldman* doctrine is inapplicable to nonparties to the prior proceeding. Qualified immunity for the defendant marshal is inappropriate,

13

especially at the pleadings stage. The District Court failed to conduct sufficient *de novo* review of the Magistrate Judge's Report and Recommendation.

A preliminary injunction should be granted. My state law claims should be reinstated along with my federal claims. If dismissal is affirmed, I should be granted leave to amend.

## ARGUMENT

### *Standard Of Review*

"We review *de novo* a district court's dismissal of a complaint for lack of standing, see Fed.R.Civ.P. 12(b)(1), and for failure to state a claim, see Fed.R.Civ.P. 12(b)(6).... In conducting this review, we... construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiffs' favor." *Rothstein v. UBS AG*, 708 F.3d 82, 90 (2d Cir. 2013) (citations omitted). "When we review a district court's decision *de novo*, we take note of it, and study the reasoning on which it is based. However, our review is independent and plenary; as the Latin term suggests, we look at the matter anew, as though it had come to the courts for the first time." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168 (2d Cir. 2001) (citation omitted).

The District Court's decision to deny preliminary injunction is reviewed for abuse of discretion. *Id.* at 171. "In considering whether there

14

has been an abuse of discretion, we review *de novo* the district court's rulings

of law, and we review factual findings for clear error." *Commodity Futures*

*Trading Comm'n v. Walsh*, 712 F.3d 735, 750 (2d Cir. 2013) (internal

punctuation and citations omitted).

# I.    MY CONSTITUTIONALLY PROTECTED INTERESTS

### A.    Statutory Property Rights for Thirty-Day Occupants and for Tenants at Will or at Sufferance

There are three separate New York statutes which accord me property

rights:[5]

**1.    N.Y. Real Prop. Acts Law § 711** (SPA062) ("A tenant shall include an

occupant of one or more rooms in a rooming house . . . who has been in

possession for thirty consecutive days or longer; he shall not be removed from

possession except in a special proceeding."). *See Mitchell v. City of N.Y.*, 154

Misc. 2d 222, 223 (N.Y. City Civ. Ct. 1992) (tenancy rights afforded to tenant

exclusively under § 711); *Universal Motor Lodges, Inc. v. Seignious*, 146

Misc. 2d 395, 397 (N.Y. Vill. Just. Ct. 1990) (same); *Mann v. 125 E. 50th St.*

*Corp.*, 124 Misc. 2d 115, 116-7 (N.Y. City Civ. Ct. 1984) (same), *aff'd*, 126

Misc. 2d 1016 (N.Y. App. Term 1985); *see also McCormick v. Resurrection*

*Homes*, 38 Misc. 3d 847, 850-1 (N.Y. City Civ. Ct. 2012) (citing § 711 to

support conclusion that occupant had tenancy rights); *Truglio v. VNO 11 E.*

---

[5] In sections I.B and I.C below, I will explain why these three statutory rights are protected by the Due Process Clause and the Fourth Amendment.

*68th St. LLC*, 2012 NY Slip Op. 50908(U), at *7 (N.Y. Civ. Ct. May 21, 2012) (same); *Nutter v. W&J Hotel Co.*, 171 Misc. 2d 302, 308 (N.Y. City Civ. Ct. 1997) (implying tenancy rights may be accorded exclusively under § 711, but not reaching issue because hotel occupant otherwise qualifies as tenant under rent stabilization law); *Stiles v. Donovan*, 100 Misc. 2d 1048, 1049-50 (N.Y. City Civ. Ct. 1979) (superintendent residing in rooming unit six months after discharge, otherwise a tenant at will, qualifies under § 711 as a tenant and may not be removed except by court order).

"[T]he law is unmistakeably clear. RPAPL 711 declares that a tenant includes any occupant or resident who has been in possession of the premises for 30 consecutive days or longer. It asserts further that such a person shall not be removed from possession except in a special proceeding." *Mitchell*, 154 Misc. 2d at 223. "RPAPL 711 expands the class of people protected against self-help eviction by including certain occupants or residents of a rooming house [or] in a hotel within the definition of tenant." *Nutter*, 171 Misc. 2d at 308. "[T]he design of section 711 of the RPAPL is to provide that an occupant who has been in possession for 30 consecutive days or longer as a tenant has a substantive right to that room or apartment by prohibiting his or her eviction except upon Court order following a judicial proceeding." *Truglio*, 2012 NY Slip Op. 50908(U), at *7 (quoting *Mitchell*, 154 Misc. 2d at 223).

16

Since the District Court correctly described 287 Franklin Avenue as a "rooming house," SPA001-2, I should be accorded the rights of a tenant because I am "an occupant of one or more rooms in a rooming house . . . who has been in possession for thirty consecutive days or longer," N.Y. Real Prop. Acts. Law § 711. JA016, 021, 259-60, 261-2; *McCormick; Truglio; Nutter; Mitchell; Seignious; Mann; Stiles. See also Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute. It is well established that, when the statutory language is plain, we must enforce it according to its terms.") (citations omitted).

2.    **N.Y.C. Admin. Code § 26-521** (SPA058-9) (eviction by means enumerated in the Code is unlawful with respect to "an occupant of a dwelling unit who has lawfully occupied the dwelling unit for thirty consecutive days or longer or who has entered into a lease with respect to such dwelling unit . . . .").

Because section 711 is "unmistakeably clear" about the property right it conveys, *Mitchell*, 154 Misc. 2d at 223, there is no need to reach section 26-521. Nonetheless, section 26-521 also has been held to protect occupants in possession for 30 days. *Bowman v. City of New York*, No. 08-cv-10123, slip op. at 5-7 (S.D.N.Y. Sep. 30, 2010) (occupant could authorize warrantless entry if officers reasonably determined that occupant had resided 30 days);

17

*McCormick*, 38 Misc. 3d at 850-1 (citing § 26-521 to support conclusion that occupant had tenancy rights); *Charmaine C. v. Elizabeth C.*, 26 Misc. 3d 307, 310-11 (N.Y. Fam. Ct. 2009) ("In housing court, one is entitled to a hearing if he/she has resided in the property for at least 30 days," citing N.Y.C. Admin. Code § 26-521; no property right exists to entitle respondent to an exclusion hearing absent proof of 30 days residence); *People v. 850 W. End Av. Corp.*, 138 Misc. 2d 998, 1001 (N.Y. City Crim. Ct. 1988) ("Once the tenant had resided in defendant corporation's building for longer than 30 days he was a lawful occupant of those premises whose forcible removal was violative of Administrative Code § 26-521."). *See also Smith v. Donovan*, 61 A.D.3d 505, 510 (N.Y. App. Div. 2009) (rooming house occupants are tenants even if owner has not obtained a certificate of occupancy for the rooming house) (citing, *inter alia*, *Sima Realty L.L.C. v. Philips*, 282 A.D.2d 394, 395 (N.Y. App. Div. 2001) ("[the multiple dwelling] law was enacted to protect tenants of multiple dwellings against unsafe living conditions, not to provide a vehicle for landlords to evict tenants on the ground that premises are unsafe."); MFY Legal Service, Inc., "Three-Quarter House Residents: Know Your Rights," http://www.mfy.org/wp-content/uploads/pdf/IBH-Know-your-Rights.pdf (last accessed July 12, 2013) ("**The only person who can evict you from a three-quarter house is a <u>judge</u>.** Once you have lived in the

house for 30 or more days, even if you don't have a lease, the landlord must take you to court to evict you.") (citing N.Y.C. Admin. Code § 26-521).

3.    **N.Y. Real Prop. Law § 228** (SPA061) (requiring thirty day notice before removal of tenant at will or tenant at sufferance).

Even independent of the two "Thirty Day Rule" statutes above, I am at least a tenant at will or at sufferance because I paid rent which was accepted by both groups claiming ownership of 287 Franklin Avenue, because both groups have acquiesced to my occupancy, and because both groups provided me (and co-tenants) with exclusive access.  JA016-20, 122-6, 171-4, 248-56, 292, 297-8, 314; *see Walls v. Giuliani*, 916 F.Supp. 214, 218-19 (E.D.N.Y. 1996) (acquiescence of owner would create a possessory interest under New York law, at least as tenant at sufferance); *Chu v. Lee*, 2013 NY Slip Op 50859(U) (N.Y. App. Term 2013) (occupants who entered into exclusive possession with permission from former owners "were, at the very least, tenants at will or tenants at sufferance, and were entitled to a 30-day notice;" reversing determination that occupants were mere licensees and dismissing eviction petition); *McCormick*, 38 Misc. 3d at 851 (N.Y. City Civ. Ct. 2012) ("By filing the [nonpayment] proceeding against Ms. McCormick respondent recognized her rights as a tenant at the premises."); *Rodriguez v. Greco*, 2011 NY Slip Op 50696(U), at *2 (N.Y. App Term 2011) ("A tenancy at will, and not a mere license, was created when occupant was given the right to

19

exclusively occupy the premises;" dismissing eviction petition for lack of

thirty day notice); *City of N.Y. v. Utsey*, 185 Misc. 2d 715, 717-19 (N.Y. App.

Term 2000) (questioning *Walls* definition of tenant at sufferance; but holding

instead that acquiescence of owner, implied or express agreement, or

acceptance of rent creates a tenancy at will, which requires thirty day notice

before eviction; dismissing eviction petition for lack of thirty day notice).

My 2010 lease, JA114-20, 122-7, 270-3, also supports a tenancy at

sufferance. An expired lease leaves a residual tenancy at sufferance. *Walls*,

916 F.Supp. at 219 ("If the prior relationship was a tenancy of some kind,

then it may be inferred that a tenancy by sufferance continues thereafter.");

*Boyar v. Goodman*, 202 A.D.2d 541, 542 (N.Y. App. Div. 1994) (upon

expiration of lease, plaintiff became tenant at sufferance, which tenancy was

terminated by 30-day notice under N.Y. Real Prop. Law § 228); *Mastas v.*

*Extra Closet, Inc.*, 146 Misc. 2d 698, 699-700 (N.Y. City Civ. Ct. 1990)

(sublessees holding over after expiration of lease are nevertheless tenants at

sufferance "entitled to the 30-day notice provided by Real Property Law §

228 before [their] possessory interest can be terminated").[6]

At the least, there is a factual dispute about whether the lease covered

only one rooming unit or the entire building. JA425-6. Even if the original

_____

[6] Additionally, while the lease now has expired, the plain language of N.Y.C.
Admin. Code section 26-521 (SPA058) ("or who *has entered* into a lease")
(emphasis added) still appears to convey rights based on a previous lease.

rental agreement were construed as limited to individual rooms, the individual former tenants assigned their possessory rights both to enter and to exclude others, JA259-60, 261-2, which created for me at least a subtenancy at will and thereafter a residual tenancy at sufferance. *See Lippe v. Prof. Surg. Supply Co., Inc.,* 132 Misc. 2d 293, 298 (N.Y. City Civ. Ct. 1986) ("Where the prime tenancy is terminated, the subtenant who continues in possession becomes a tenancy at sufferance."); *cf. Drost v. Hookey*, 25 Misc. 3d 210, 212 (N.Y. Dist. Ct. 2009) (exclusive possession distinguishes "tenant at will" from "licensee;" cohabiting paramour lacks exclusive possession and therefore is not a tenant at will).

### B.    Fourteenth Amendment Due Process Protects These Thirty-Day Rights and At-Will or At-Sufferance Sufferance Rights

Tenancy under state law constitutes a property interest protected by the Due Process Clause. *See Greene v. Lindsey*, 456 U.S. 444, 456 (1982) (insufficient service of process requirements before evictions deprive Kentucky tenants of due process); *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) (procedural due process protects property rights created by state law); *Escalera v. N.Y.C. Housing Authority*, 425 F.2d 853, 861 (2d Cir. 1970) ("The government cannot deprive a private citizen of his continued tenancy, without affording him adequate procedural safeguards, even if public housing could be deemed to be a privilege."); *Linares v. Jackson*, 531 F.Supp.2d 460, 470

21

(E.D.N.Y. 2008) (declaring unconstitutional a federal regulation that permitted eviction without due process), *reconsideration granted in part on other grounds*, 548 F.Supp.2d 21, 23-4 (E.D.N.Y. 2008).

The plain language of section 711 expands the definition of a tenant. N.Y. Real Prop. Acts Law § 711 (SPA062) ("A tenant shall include an occupant of one or more rooms in a rooming house . . . who has been in possession for thirty consecutive days or longer . . . ."). If a hypothetical statute were to state, " A landlord shall include the fee owner of the adjacent property to the north," such a statute would abrogate the common-law definition of a landlord. Section 711 similarly abrogates the common-law definition of a tenant.

In *Engblom v. Carey*, 677 F.2d 957, 963 (2d Cir. 1982), this Court included section 711 and section 228 as examples of procedural protections which protect "a more substantial tenancy interest." *Id.* ("If, as we conclude, appellants had a more substantial tenancy interest, the procedural protections afforded them under state law would be even greater. See e.g., [N.Y. Real. Prop. Acts. Law] §§ 711, 713; N.Y. Real Prop. Law § 228."). In *Walls v. Giuliani*, 916 F.Supp. 214, 219-20 (E.D.N.Y. 1996), the District Court held that section 228 creates a substantive right protected by the Due Process Clause. *Id.* Under section 228, "the mandatory thirty-day notice to quit in this case constitutes a significant restriction on the right of the landlord to

occupy his property and confers a significant substantive benefit on the

occupant by affording her the right to occupy the premises for thirty

days . . . ." *Id.* at 220.

Sections 711 and 26-521 similarly place "substantive restriction[s] on

the ultimate action being challenged," *id.* Both statutes require a judicial

process to remove the tenant.[7] This judicial process includes substantive

notice provisions. N.Y. Real Prop. Law § 232-a (SPA062) (notice to

terminate); N.Y. Real Prop. Acts. Law §§ 731, 733, 735 (SPA065-7) (notice of

petition); *id.* § 749(2) (SPA069) (notice of eviction); *see Oliver v. N.Y.C.*

*Housing Authority*, No. 10-cv-3204, slip op. at 7 (E.D.N.Y. Oct. 21, 2010)

(suggesting eviction would violate due process if not preceded by the required

notice of eviction). Additionally, a judicial proceeding permits substantive

legal and equitable defenses, N.Y. Real Prop. Acts. Law § 743 (SPA068), *see*

*MH Residential 1, LLC v. Barrett*, 2013 NY Slip Op 23062, at *2-3 (N.Y.

App. Term 2013) (tenants at sufferance retain right to raise retaliatory eviction

as affirmative defense to eviction); *infra,* part II.D. (discussing trust's

incapacity to sue and to own property in the name of the trust); N.Y. Gen.

Bus. Law § 130(9) (failure to file business name registration bars bringing

court proceedings related to business name); JA376-7 ("Ronald Henry Land

---

[7] Unlawful eviction in violation of section 26-521 carries criminal and civil penalties. N.Y.C. Admin. Code § 26-523 (SPA059-60).

23

Trust" has unclean hands, but safety concerns related to the top floor of 287

Franklin Avenue outweigh the unclean hands defense for one particular

rooming unit). Thus, sections 711 and 26-521 convey a substantive right to

continued occupation of the premises pending the notice requirements and

substantive determinations of a summary proceeding. *See McCormick*, 38

Misc. 3d at 851 ("RPAPL 711 and Administrative Code of City of NY § 26-

521 are clear that any individual who resided at a premises from more than 30

days is entitled to due process of law prior to eviction.").

The Magistrate Judge relegated sections 711 and 26-521 to a footnote,

SPA014 n.5, in which he erroneously concluded that sections 711 and 26-521

"provide procedural protections against self-help eviction to tenants who have

occupied premises for more than 30 days, but . . . do not give rise to

independent rights of possession." SPA014 n.5.[8]  Contrary to the plain

language of section 711, the Magistrate Judge appears erroneously to have

defined tenancy rights only by payment of rent, reasoning that because only

tenants with an existing rental agreement may be removed in a nonpayment

proceeding, section 711 could not provide any independent rights. SPA014

n.5 (citing Carmody Wait 2d N.Y. Practice § 90:38 (citing N.Y. Real Prop.

---

[8]  I do not claim rights by adverse possession. *See* SPA014 n.5 (contrary
suggestion by Magistrate Judge); *see generally Gallea v. Hess Realty Corp.*,
128 A.D.2d 274, 275-7 (N.Y. App. Div. 1987) (discussing adverse
possession).

Acts. Law § 711(2))).  However, a nonpayment proceeding under subdivision 711(2) is only one of six forms of special proceedings to evict tenants that are offered under section 711.  *See, e.g.,* N.Y. Real Prop. Acts. Law § 711(1) (special proceeding to evict tenant holding over after expiration of term).  The District Court also erred by failing to consider my arguments that I have rights under section 228 as a tenant at will or at sufferance.  *See supra*, part I.A.3.

### C.   Fourth Amendment Also Protects These Thirty-Day Rights and At-Will or At-Sufferance Sufferance Rights

The District Court erred by limiting Fourth Amendment protection to property rights, SPA007, 016, 018, thereby failing to apply the correct standard — "legitimate expectation of privacy," *Rakas v. Illinois*, 439 U.S. 128, 143 and n.12 (1978) — which is a broader interest than a property interest because it also includes "understandings that are recognized and permitted by society," *id.* at 143 n.12.  *See Minnesota v. Olson*, 495 U.S. 91, 98-100 (1990) (private places to sleep convey legitimate expectation of privacy); *United States v. Martin*, No. 2:09-cr-747, slip op. at 8-9 (D. Utah Jan. 14, 2010) (invitation to live in a bedroom by a person with apparent authority to make the invitation, even where ownership of building in dispute during foreclosure, conveys legitimate expectation of privacy); *Ostensen v. County of Suffolk*, 378 F.Supp.2d 140, 145-6 (E.D.N.Y. 2005) (plaintiff who

25

occupied house as guest of owner for a year and five months and considered it

her home had legitimate expectation of privacy, even in the absence of

property rights under New York law), *aff'd* 236 F.App'x 651 (2d Cir. 2007).

In *Engblom v. Carey*, 677 F.2d 957 (2d Cir. 1982), this Court held that

the "more substantial tenancy interest" protected by statutes such as sections

711 and 228, in addition to conveying Due Process protection, also

"reasonably entitled [appellants] to a legitimate expectation of privacy . . . ."

677 F.2d at 963 (applying Fourth Amendment "legitimate expectation of

privacy" standard to unusual Third Amendment claim).  In *Walls v. Giuliani*,

916 F.Supp. 214 (E.D.N.Y. 1996), the District Court explicitly concluded that

tenants at sufferance had a Fourth Amendment reasonable expectation of

privacy, as delimited by the reasonable protection of the thirty-day notice

required by section 228.  916 F.Supp. at 220-2.

Sections 711, 26-521, and 228 each demonstrate, at the least,

"understandings that are recognized and permitted by society," *Rakas*, 439

U.S. at 143 n.12.  Thus, even aside from the protected property interest they

create, these statutes provide me, at the least, a legitimate expectation of

privacy which is protected by the Fourth Amendment.  *Id.*

### D.    Personal Property

To the extent that my property rights claims involve personal property

already taken, my property is still being held by the Trust Defendants in the

rooms from which I was evicted, so my personal property claim is not moot.

While the Judicial Defendants have conceded that I am entitled to my

personal property, they are court administrators and not the people who took

the property, so their view does nothing to moot my rights. *See* SPA015

(R&R); JA427-8 (objections to R&R).

### E.    Liberty Interests Claims

I claimed the "all persons" warrants issued upon judgments against

named individual former tenants have violated two of my Constitutionally

protected liberty interests:

1. freedom from general warrants, *see, e.g., Stanford v. Texas*, 379 U.S.

    476, 481-5 (1965) (discussing history of general warrants and their

    condemnation at common law and through the Fourth Amendment);

    *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (liberty interests include

    "those privileges long recognized at common law as essential to the

    orderly pursuit of happiness by free men"); *Entick v. Carrington*, 19

    How. St. Tr. 1029, 95 Eng. Rep. 807 (1765) (general warrant held

    unlawful by Lord Camden); *Wilkes v. Wood*, 19 How. St. Tr. 1153, 98

    Eng. Rep. 489 (1763) (same); *Huckle v. Money*, 2 Wils. K.B. 205, 207,

    95 Eng. Rep. 768, 769 (1763) (same) (nameless warrant held to violate

    Magna Carta, 25 Edw., c. 29 (1297)), and,

27

2. freedom from judgments by which one is not bound, *see Martin v. Wilks*, 490 U.S. 755, 763 (1989) ("The law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger. . . . Unless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights.") (quoting *Chase National Bank v. Norwalk*, 291 U.S. 431, 441 (1934)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-2 (1985) (discussing liberty from judgments in context of minimum contacts) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)) (footnote omitted); *Riverside and Dan River Cotton Mills v. Menefee*, 237 U.S. 189, 196 (1915) ("in *Pennoyer v. Neff, supra*, among other things it was said that 'proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction do not constitute due process of law.'") (quoting *Pennoyer v. Neff*, 95 U.S. 714, 733 (1878)).

The District Court never considered these liberty interests, though I pleaded and argued for them.  JA020, 400.

### F.    Equal Protection Claims

I pleaded and claimed violations of equal protection because, without rational basis, I, as one of "all other persons" on the warrant, was not named

as a party in the eviction cases related to my home and did not receive equal rights to those individual former tenants who were named as parties. JA021-2, 34-6, 400; *see Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); *see also Lindsey v. Normet*, 405 U.S. 56, 74-9 (1972) (equal protection applies to summary process). The District Court dismissed my case, but never considered my equal protection claims.

### G.     Substantive Due Process Claims

I claimed that both the liberty interests at issue, *supra*, part I.E, were so fundamental as to invoke substantive due process if the other constitutional provisions were not applicable. JA020, 34-6, 400; *see County of Sacramento v. Lewis*, 523 U.S. 833, 843-5 (1998) (Fourth Amendment held inapplicable, permitting analysis under substantive due process); *Washington v. Glucksberg*, 521 U.S. 702, 720-1 (1997) (substantive due process "specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition'") (citation omitted). The District Court dismissed my case, but never considered my substantive due process claims.

29

## II.  THE DISTRICT COURT IMPROPERLY RELIED ON COLLATERAL ESTOPPEL AND RES JUDICATA AFFIRMATIVE DEFENSES TO QUASH MY PROPERTY RIGHTS

### A.  Standard of Review for Affirmative Defense

"Claim preclusion, like issue preclusion, is an affirmative defense. Ordinarily, it is incumbent on the defendant to plead and prove such a defense, and we have never recognized claim preclusion as an exception to that general rule." *Taylor v. Sturgell,* 553 U.S. 880, 907 (2008) (citations omitted).  Rule 12(b) dismissal based on an affirmative defense may be granted only where "the facts supporting the defense appear on the face of the complaint." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004).  "[T]he plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the [affirmative] defense." *Id.*  The District Court neither recognized nor applied the strict standard for affirmative defense dismissals.

30

## B.    Fletcher, Diaz, and Rosenbaum Eviction Cases

### 1.    Elements of Collateral Estoppel Not Met

My unsuccessful attempts to participate in the Fletcher, Diaz, and Rosenbaum Housing Court cases do not meet the elements of collateral estoppel for at least six reasons:[9]

- The Appellate Term's *sua sponte* decisions that I was "not aggrieved by the final judgment" in each case, JA231, 241, 247, necessarily determine that I am not bound by the judgments. *See Feldman v. Planning Bd. of Town of Rochester*, 99 A.D.3d 1161, 1165 (N.Y. App. Div. 2012) (one is aggrieved when "a specific finding at [the] trial [level] might prejudice a party in a future proceeding by way of collateral estoppel") (quoting *Lincoln v. Austic*, 60 A.D.2d 487, 490 (N.Y. App. Div. 1978), *lv. denied*, 44 N.Y.2d 644 (1978)).

- N.Y. C.P.L.R. 1012(a)(2) permits intervention as of right "when the representation of the person's interest by the parties is or may be inadequate and the person is or may be bound by the judgment." In the Fletcher, Diaz, and Rosenbaum cases, the representation of the defense clearly was inadequate because all three former tenants defaulted.

---

[9] *Res judicata* is inapplicable to the Fletcher, Diaz, and Rosenbaum cases for essentially the same reasons as collateral estoppel is inapplicable. *See* JA421-2 (objections to R&R, discussing *res judicata*); *Esquire Trade & Finance, Inc. v. CBQ, Inc.*, 562 F.3d 516, 520 (2d Cir. 2009) (elements of *res judicata*).

JA021-3, 245-6, 256-7, 315-25. Thus, when the Housing Court did not

permit me to intervene, *id.*; JA229-30, 239-40, 245-6, 315-25, it

necessarily determined that I am not bound by its determination in the

Fletcher, Diaz, and Rosenbaum cases.

- My property rights were not determined. The Fletcher and Diaz cases
  determined only that I was not a party listed in the record of that case.
  JA318-20 (transcript); JA229-30, 239-40 (orders). The Rosenbaum
  case determined only that I could not represent Rosenbaum as an
  attorney. JA245 (order). The Appellate Term determined only that I
  was not aggrieved — and thus that I was not bound by the judgments.
  *Supra*, first bullet point.

- My property rights were not "necessarily decided" by the state courts.
  Unlike in *M&M Crown Realty, LLC v. Griffith*, 2011 WL 3370860, at
  *3 (N.Y. City Civ. Ct. June 17, 2011) (cited in R&R at SPA011), the
  Housing Court did not construe my attempts to appear as a motion to
  dismiss the cases as against the named respondents for failure to
  include a necessary party. JA229-30, 239-40, 245-6, 318-20. Thus,
  unlike in *Griffith*, no "necessary parties" inquiry was conducted. Here,
  the Fletcher and Diaz Court appeared to assume that I still would be
  able to assert my rights elsewhere, JA318-9 (transcript), while the
  Rosenbaum Court appeared not even to recognize that I was attempting

to assert rights on behalf of myself rather than on behalf of Rosenbaum, JA245 (order). If "necessary parties" were deemed "necessarily decided" for collateral estoppel purposes in every case, then every judgment would be binding on the whole world. *Cf. Glass v. Estate of Gold*, 48 A.D.3d 746, 747 (N.Y. App. Div. 2008) ("The absence of a necessary party in a mortgage foreclosure action simply leaves that party's rights unaffected by the judgment of foreclosure and sale.").

- There was no "full and fair opportunity to litigate." In the Fletcher and Diaz cases, I was denied opportunity to speak and asked to "step out," JA318-20, simply because I was not a named party to the case, *id*. My property interest was not discussed, nor was I given any opportunity to present evidence about it. *Id.* Likewise, the question of my property rights was not litigated at all in the Rosenbaum case — as the only question the Court heard with respect to me was whether I had "standing to represent respondent Rosenbaum," JA245, which it determined I did not, *id*. The Appellate Term dismissed my nonparty appeals *ab initio* without briefing, without a record, and without argument. JA231, 241, 247.

- Moreover, the Fletcher, Diaz, and Rosenbaum judgments, JA051, 054, 057, were taken on default and therefore have no preclusion value against anyone. *In re Tyson*, No. 12-936-cv, slip op. at 4 (2d Cir. Feb.

33

15, 2013) (summary order)[10] ("In the case of a judgment entered by

confession, consent, or default, none of the issues is actually litigated.")

(quoting Restatement (Second) of Judgments § 27 cmt.e (1982));

*Kaufman v. Lilly & Co.*, 65 N.Y.2d 449, 456-7 (1985) (same).

> 2.   Party Preclusion Inappropriate Under *Smith v. Bayer Corp.*
> Because I Never Became a Party

Party preclusion is inappropriate because the state courts never

obtained personal jurisdiction over me in any of the cases against former

tenants. *See* N.Y. Real Prop. Acts. Law § 747(1) (SPA068) (final judgments

in eviction cases "determin[e] the rights of the parties"). *Compare with*

*Cobert Constr. Corp. v. Bassett*, 109 Misc. 2d 119, 119-22 (N.Y. App. Term

1981) (cited in R&R at SPA011) (intervention successful; trial held on rights

of intervenor).  Since I never became a party by intervention, I am not bound.

*Cf. Smith v. Bayer Corp.*, 564 U.S. ___, 131 S.Ct. 2368, 2379-81 (2011) (no

preclusive effect where inclusion as a party in prior case through class

certification attempted but denied).

The Magistrate Judge erred in disregarding my "formal status in the

Housing Court and appellate proceedings," SPA012. *See Smith*, 131 S.Ct. at

2379 (claim that member of proposed but uncertified class qualifies as a party

to prior litigation "ill-comports with any proper understanding of what a

---

[10] Available at http://www.ca2.uscourts.gov/decisions/isysquery/bfa63e49-
4f2c-4551-a43d-7c112ed3b953/1/doc/12-936_so.pdf

'party' is. In general, '[a] "party" to litigation is "[o]ne by or against whom a lawsuit is brought,"' or one who 'become[s] a party by intervention, substitution, or third-party practice."'); *see also Greater N.Y. Health Care Facilities Ass'n v. DeBuono*, 91 N.Y.2d 716, 720 (1998) (only "a *successful* intervenor becomes a party for all purposes").

### 3.    Nonparty Preclusion Inappropriate Under *Gramatan Home Investors Corp. v. Lopez* and *Taylor v. Sturgell*

Nonparty preclusion is inappropriate not only because the elements of preclusion are not met, *supra*, Part II.B.1, but also because my interest in the Fletcher, Diaz, and Rosenbaum rooms predated the filing of the holdover eviction cases against those former tenants. *See Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 487 (1979) ("an assignee is not privy to a judgment where the succession to the rights affected thereby has taken place prior to the institution of the suit against the assignor.") (citations omitted); JA016-7, 019, 114-20, 122-7, 249, 255-6, 259-60, 261-2, 270-3, 314, 406, 413 (facts showing that my rights predated eviction cases); SPA012, 014-15 (suggesting I am bound as successor in interest without analyzing date of transfer as required by *Gramatan*); *see also* SPA014 n.5 (implying that my independent property rights, if any, would defeat successor preclusion). Moreover, none of the other exceptions permitting nonparty preclusion applies here. *See Taylor v. Sturgell,* 553 U.S. 880, 893-5 (2008) (setting forth

six categories of exceptions); JA412-15 (objections to R&R, discussing the *Taylor* categories).[11]

### C.    Osterweil, Campos, and Skubutyte Eviction Cases

I agree with the Magistrate Judge's implication that if I have independent property rights, they would defeat collateral estoppel with respect to the imminent evictions from the Osterweil, Campos, and Skubutyte rooms, SPA014 n.5. *See supra*, parts I.A. and I.B (discussing my independent property rights). Nonetheless, even if my rights are limited to successor rights, collateral estoppel still should not apply.

First, *Gramatan*, 46 N.Y.2d at 487, again applies as discussed *supra* in the previous section. Additionally, the District Court erroneously relied on and extrapolated a declaration extrinsic to the pleadings in determining that Osterweil, Campos, and Skubutyte had a "full and fair opportunity to litigate." SPA014 (citing JA257-8 (Sasmor Decl., ¶ 39)). The face of the

---

[11] Before applying nonparty preclusion, a court must determine that doing so would not violate due process. *Taylor*, 553 U.S. at 891; *Richards v. Jefferson County*, 517 U.S. 793, 797 (1996); *Hansberry v. Lee*, 311 U.S. 32, 37, 40-1 (1940); *Esquire Trade & Finance, Inc. v. CBQ, Inc.*, 562 F.3d 516, 521-2 (2d Cir. 2009). By applying collateral estoppel on the Housing Court cases against other people, the District Court determined *sub silentio* that I had been accorded due process. Thus, the property interest and due process elements are related here, because application of nonparty collateral estoppel to my property interests runs against the constitutional limits of due process. In doing so, the Eastern District of New York's decision is in conflict with persuasive case law from other jurisdictions that is discussed in section III.A below.

complaint and the record provide no support for the "full and fair opportunity to litigate" element, and therefore, collateral estoppel should fail at the pleadings stage. *See supra*, part II.A (affirmative defense standard of review).

As examples of facts I should be allowed to develop in opposition to this affirmative defense: For Campos and Skubutyte, English is not their first language. Campos required a Spanish interpreter at Housing Court. Osterweil, Campos, and Skubutyte all represented themselves. None intended to pursue the eviction litigation to the end of all appeals as I might have in their position; instead all three have moved away, and thus did not have incentive to litigate their appeals. See *Thomas v. Venditto*, No. 11-cv-6084, slip op. at 18 (E.D.N.Y. Feb. 21, 2013) ("a court must consider 'the realities of the [prior] litigation, including the context and other circumstances which . . . may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him.'") (quoting *Ryan v. N.Y. Tele. Co.*, 62 N.Y.2d 494, 501 (1984)).

Moreover, Campos did not submit any opposition to his opponent's summary judgment motion; therefore the judgment against him was deemed by the Appellate Term to be rendered on default and unappealable. *Ronald Henry Land Trust v. Campos*, 2011 NY Slip Op 82284(U) (N.Y. App. Term Aug. 24, 2011) ("Since appellant submitted no papers in opposition to the motion of respondent giving rise to the order and final judgment being

37

appealed, the order and final judgment are deemed entered on default and are not appealable.") (citations omitted). Because the Campos judgment was "rendered on default," *id.*, it certainly has no collateral estoppel value. *In re Tyson, supra*, No. 12-936-cv, slip op. at 4; *Kaufman*, 65 N.Y.2d at 456-7. *See also Thomas*, slip op. at 19 ("If a party has not had an opportunity to appeal an adverse finding, then it has not a full and fair opportunity to litigate that issue.") (quoting *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996)).

### D.   The "Ronald Henry Land Trust" Eviction Proceedings All Are Nullities

"From its very nature, the rule that a judgment on the merits is binding on the parties to the litigation assumes the existence of such parties." *Little Shoppe Around the Corner v. Carl*, 80 Misc. 2d 717, 718 (N.Y. County Ct. 1975) (quoting *MacAffer v. Boston & Maine R.R.*, 268 N.Y. 400, 403 (1935)).

In each of the eviction cases underlying the "all persons" warrants, the named petitioner was "Ronald Henry Land Trust." JA050-8, 327-34. However, it is fundamental law of trusts in New York that a trust, in the name of the trust, is not a proper party to legal proceedings. *Limouze v. M. M. & P. Maritime Advancement, Training, Education, and Safety Pgm.*, 397 F.Supp. 784, 787-90 (D. Md. 1975) (dismissing trust as improper party under New York law). Nor may a trust hold property in the name of the trust. N.Y. Est. Powers & Trusts Law § 7-2.1(a), (c) (SPA061) (with exceptions inapplicable

38

here, JA025, 304, 307, a trust must hold property in the name of the trustee).

*See also* Hess, Bogert & Bogert, Trusts and Trustees § 712 at 273 (3d ed

2009) ("A trust is not a legal person . . . ."); *Matter of Mannara*, 5 Misc. 3d

556, 557-8 (N.Y. Sur. Ct. 2004) ("A trust is a 'fiduciary relationship in which

one person holds a property interest, subject to an equitable obligation to keep

or use that interest for the benefit of another'") (quoting Bogert, Trusts and

Trustees § 1 at 1 (2d ed. 1984)).[12]  Absent a proper petitioner in the Housing

Court, all the proceedings were void as nullities *ab initio*.  *See Gov't Empls.*

*Ins. Co. v. Estate of Sosnov*, 244 A.D.2d 485, 486 (N.Y. App. Div. 1997) (no

proper party on one side; order appealed from declared a nullity); *Little*

*Shoppe Around the Corner*, 80 Misc. 2d at 719 (proceeding brought under a

trade name is a nullity).

    This Court should not usurp the prerogative of the New York

Legislature by creating a new form of entity for property ownership in New

York.  N.Y. Est. Powers & Trusts Law § 7-2.1(a), (c) (SPA061) (no property

ownership in the name of an express trust); *Canigiani v. Bd. of Assessors,* 98

A.D.2d 233, 247 (N.Y. App. Div. 1983) ("[Collateral estoppel] is only

---

[12] The District Judge, Magistrate Judge, and Housing Judge all seemed to make the same fundamental error: misapprehending a trust as an entity rather than as a relationship.  SPA028 (District Judge describes as "ill-founded" the argument that a trust cannot own property in its name); SPA017 (Magistrate Judge quotes Housing Court); JA382 (Housing Court calls trust "a legal entity capable of owning property or bringing a lawsuit.").

applicable where the [prior determination] is not otherwise barred by a valid and applicable statute. The doctrine cannot be used to negate an act of the Legislature . . . ."); *see also Held v. N.Y. State Workers' Compensation Bd.*, 58 A.D.3d 971, 972-3 (N.Y. App. Div. 2009) ("The interpretation of a statute presents a pure question of law and, as a result, collateral estoppel would not apply . . . .").

In the pending state appeal, JA386-90, it is unlikely that the Housing Court's decision, JA382, would be affirmed, thus, in effect, permitting trusts to operate as entities without any of the statutory protections governing other types of entities, *see, e.g.*, N.Y. Bus. Corp Law §§ 402, 403, 408, 409 (requiring certificate of incorporation and biennial statements); N.Y. Ltd. Liab. Co. Law §§ 203, 206, 209 (requiring articles of organization and certificate of publication). *See* JA409 (objections to R&R, discussing dictum and editorial mistake improperly relied upon by Housing Court and District Court); *Amica Mut. Ins. Co. v. Jones*, 85 A.D.2d 727, 728-9 (N.Y. App. Div. 1981) (unwise to apply estoppel where appeal pending and "substantial doubt" that original decision will survive); *see also Twyne's Case*, 3 Co. Rep. 80b, 81a, 76 Eng. Rep. 809, 813 (1601) ("fraud is always apparelled and clad with a trust, and a trust is the cover of fraud.").

Additionally, the "Ronald Henry Land Trust" proceedings, which purport to award property to something not capable of ownership, also are

40

subject to collateral attack under federal law because they are "not voidable merely, but void." *See Noble v. Union River Logging R.R. Co.*, 147 U.S. 165, 173 (1893) (a proceeding with a sufficiently fundamental defect "is a nullity, and its invalidity may be shown in a collateral proceeding").

### E.     Restatement Exceptions

The District Court also should have considered the exceptions to preclusion set forth in Restatement 2d of Judgments, §§ 28 and 29. *See* JA417-21 (objections to R&R, discussing these Restatement exceptions); *Koch v. Consolidated Edison Co. of N.Y.*, 62 N.Y.2d 548, 554 n.2, 555 n.4 (1984) (citing § 28 and quoting § 29 in full as "relevant factors to be considered" before applying nonparty preclusion).

## III.   NEW YORK'S EVICTION WARRANT PROCEDURE VIOLATES PROCEDURAL DUE PROCESS[13]

### A.     The Court Should Follow *Rembert*, *Arrieta*, and Other Persuasive Case Law That Has Decided the Same Question

This due process challenge to "all persons" evictions is not a matter of first impression. At least two other courts already have determined that, before nonparties to an underlying proceeding may be evicted, due process requires specific notice to all occupants and opportunity to be heard for all occupants.

_____

[13] Due Process protects both property interests, *supra*, parts I.A, I.B., I.D., II., and liberty interests, *supra*, part I.E.

41

*Rembert v. Sheahan*, No. 92-cv-67, 1994 U.S. Dist. LEXIS 9164, *12-13, *1-3, *5-13 (N.D. Ill. July 6, 1994) ("[E]nforcement of orders that refer only to named individuals other than the individuals being evicted is a violation of due process. . . . The court therefore enjoins the defendant and the employees of the defendant from enforcing orders of possession pursuant to the Illinois Mortgage Foreclosure Law against individuals who are not listed on the face of the order either personally or generically by terms such as 'unknown tenants' or 'unrecorded claimants.'"), *vacated*, 62 F.3d 937, 941-3 (7th Cir. 1995) (instructing District Court to make precise factual findings about whether sheriff was following injunction requiring that orders of possession name all tenants who will be evicted; describing use of generic names as "troubling;" remanding for determination about possible mootness based upon whether sheriff continues to evict persons not named), *permanent injunction issued on remand*, No. 92-cv-67, Judgment Order, slip op. at 3-10 (N.D. Ill. Nov. 3, 1995) (sheriff shall enforce orders of possession "only against an occupant of the premises who is personally and by name designated in said order . . . [;]" establishing procedures to provide notice and opportunity to be heard to all occupants before enforcing orders of possession), *modified*, Modification of Judgment Order (N.D. Ill. Oct. 8, 1999) (expanding *Rembert* injunction to include forcible entry and detainer actions seeking possession of foreclosed premises), *dismissed as moot*,

Minute Order (N.D. Ill. Oct. 9, 2002) (following enactment of statutory procedures for notice and opportunity to be heard for all occupants).

*Arrieta v. Mahon*, 31 Cal. 3d 381, 383-6, 389-93 (1982) (eviction of occupants not named in writ violates due process; affirming declaratory relief requiring marshal to give notice to vacate to all occupants and to delay eviction until further court order whenever an occupant not named in the writ of execution claims a right to possession that accrued prior to institution of eviction proceeding).

*See also Kassim v. City of Schenectady*, 255 F.Supp.2d 32, 40-1 (N.D.N.Y. 2003) (city procedure to evict nonparty following city tax foreclosure without separate notice violates due process), *later proceedings at* 415 F.3d 246 (2d Cir. 2005); *Tappin v. Homecomings Financial Network, Inc.*, 830 A.2d 711, 724 (Conn. 2003) (tenants must be named in the foreclosure action or a separate summary eviction proceeding must be brought to remove them); *Hite v. Field,* 462 A.2d 393, 394-5, 398-9 (Conn. Super. Ct. 1982) (enjoining ejectment of tenants not named in the foreclosure action).

43

**B.**   **Postdeprivation remedies do not *ipso facto* satisfy procedural due process because the "all persons" warrants follow an "established state procedure"**

New York's "all persons" eviction warrants, *see* N.Y. Real Prop. Acts. Law § 749(1) (SPA069), follow an "established state procedure," for which "the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process," *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citation omitted). *See Kraebel v. N.Y.C. Dep't of Hous. Pres. and Dev.*, 959 F.2d 395, 404 (2d Cir. 1992) ("established state procedure" where city administrative procedure includes delay in statutory housing subsidy payments); *Varela v. County of Rensselaer*, No. 10-cv-1390, slip op. at 8 (N.D.N.Y. Mar. 8, 2012) ("established state procedure" where actions done according to New York statutes); *R&R adopted* (N.D.N.Y. Apr. 18, 2012); *Kassim,* 255 F.Supp.2d at 32, 36, 38-9 ("established state procedure" where eviction occurred according to city tax foreclosure procedure); *Arrieta v. Mahon*, 31 Cal. 3d 381, 391 (1982) (post-eviction hearing insufficient to provide due process to tenant not named in underlying unlawful detainer proceeding); *cf. Hellenic Amer. Neighborhood Act. Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996) ("random and arbitrary act" where "state officials acted in flagrant violation of the City Charter and PPB Rules").

**C.    All three *Mathews* factors weigh against New York's eviction warrants process**

The three factors to be balanced set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), all tip here towards a violation of due process:

First, the official action here affects fundamental private interests, including statutory property rights, legitimate expectation of privacy, liberty from enforcement of judgments by which one is not bound, liberty from general warrants, and equal protection. *Supra,* Part I.

Second, the risk of erroneous deprivation is presented with *every* warrant in its "all persons" language on the warrant. N.Y. Real Prop. Acts. Law § 749(1); JA050, 053, 056, 332-4; *see also Wright v. Lewis*, 2008 NY Slip Op 52106(U), at *5-6 (N.Y. Sup. Ct. 2008) (owner of rooming house alleged to have named the managing agent as respondent and entered into stipulated eviction judgment in attempt to evict all tenants; tenants themselves not named as parties and not served with process). Here, no measures exist to provide notice to "all persons" with a protected property, liberty, or privacy interest and to include all occupants in each eviction proceeding.

The eviction of persons with protected interests who are not named in the Housing Court cases could be *avoided entirely* simply by giving to all occupants notice and opportunity to be heard in Housing Court. The probable value of additional or substitute procedural safeguards is evidenced by their

45

existence already in the New York foreclosure process and in the eviction

processes of California, Connecticut, Illinois, and Utah. N.Y. Real Prop. Acts.

Law § 1303 (SPA070-1) (New York requires notice to all tenants upon

commencement of foreclosure proceeding); Cal. Civ. Proc. Code §§ 415.46,

715.010, 715.020, 1174.25, and 1174.3 (SPA037-51) (California requires

either that an optional prejudgment claim of right to possession be provided to

all occupants at commencement of unlawful detainer proceeding or otherwise

that the executing officer delay the eviction until after a hearing if nonparty

occupant asserts a claim to possession at the time of intended execution);

Conn. Gen. Stat. § 47a-26h (SPA052-4) (Connecticut requires notice of

judgment and opportunity to claim exemption be given to all occupants before

any eviction execution); 735 Ill. Comp. Stat. 5/9-104, 9-107, and 9-107.5

(SPA054-8) (Illinois requires either that "unknown occupants" be named as

parties to forcible detainer proceedings or otherwise that sheriff must serve

notice to "unknown occupants" and provide opportunity for them to file a

petition claiming right to possession before execution may proceed); Utah

Code § 78B-6-812(3) (SPA072) (only the defendant removed upon

enforcement of writ of restitution).[14]

---

[14] The California, Connecticut, and Illinois statutes cited in the body of the
text above all appear to have been enacted after a court determined that the
omission of notice and opportunity to be heard to all occupants violated due
process:

- California: *Arrieta v. Mahon*, 31 Cal. 3d 381, 383-6, 389-93 (1982).
  *See George v. County of San Luis Obispo*, 93 Cal. Rptr. 2d 595, 600

Third, the Government has no interest in the issuance of general

warrants, nor in the eviction of tenants not named in Housing Court

judgments, nor in the determination of who should be excluded being made

by the executing officer on the doorstep at the moment of eviction. *See Logan*

*v. Zimmerman Brush Co.*, 455 U.S. 422, 434-5 (1982) (state has no

_____

(Cal. Ct. App. 2000) ("*Arrieta* holds that a person not named in a writ of possession is entitled to a pre-eviction hearing if he or she claims a right to possession. After *Arrieta*, the Legislature enacted statutory procedures for the presentation of claims of right to possession. (Code Civ. Proc., §§ 415.46, 1174.25, 1174.3, subd. (b.).)"); *Cardenas v. Noren*, 235 Cal. App. 3d 1344, 1349 (Cal. Ct. App. 1991) ("The procedures contemplated by the *Arrieta* court were codified beginning in 1982. (See §§ 715.010 et seq., 1174.3, 16 Cal. Law Revision Com. Rep. (1982) pp. 1158-1159.)").

- Connecticut: *See* JA367 (Letter from Richard W. Davis to Conn. Judiciary Comm. (Apr. 1, 1987), published in Conn. Joint Standing Committee Hearings, Judiciary, Part 6, at 2028 (1987 Sess.)) (legislative history of Conn. Gen. Stat. § 47a-26h shows that Connecticut's measures to provide notice and opportunity to be heard to all occupants before any eviction were adopted after "a recent federal court overturned a local eviction proceeding for possible lack of 'due process.'"). I have not been able to locate the referenced federal court decision.

- Illinois: *Rembert v. Sheahan*, 62 F.3d 937 (7th Cir. 1995), *permanent injunction issued on remand*, No. 92-cv-67, Judgment Order (N.D. Ill. Nov. 3, 1995), *modified*, Modification of Judgment Order (N.D. Ill. Oct. 8, 1999), *dismissed as moot*, Minute Order (N.D.Ill. Oct. 9, 2002). *See Fairbanks Capital v. Coleman*, 816 N.E.2d 695, 697-8 (Ill. App. Ct. 2004) (discussing procedural history of *Rembert*); *id.* at 697 ("Following this [October 8, 1999] modification [to the *Rembert* injunction], the Illinois legislature enacted Public Act 92-823 (Pub. Act 92-823, eff. August 21, 2002), which amended the Detainer Act to provide for service upon and eviction of unknown occupants who were neither served nor named in the complaint. See 735 ILCS 5/9-104, 9-107 (West 2002)").

substantive interest in procedural requirement that randomly excludes some employment claimants from a hearing on their claims).  Even if the State's goal is to create a summary process to recover exclusive possession of real property, the exclusion of some tenants from notice and opportunity to be heard does *nothing* to further that goal.  *See id.*  The practicality of additional or substitute procedural safeguards is evidenced by their use *already* in the New York foreclosure process and in the eviction processes of California, Connecticut, Illinois, and Utah, as discussed above.

### D.   The Process that is Due

To satisfy Due Process, New York must include an appropriate procedure for the Housing Court to gain personal jurisdiction over all Constitutionally protected occupants before evicting them.  *See Martin v. Wilks*, 490 U.S. 755, 763, 765 (1989) (possibility of voluntary intervention insufficient to affect rights); *Hansberry v. Lee,* 311 U.S. 32, 40-1 (1940) (inclusion as a party fundamental to Anglo-American jurisprudence); *Rembert v. Sheahan*, 62 F.3d 937, 941 (7th Cir. 1995) (instructing District Court to make precise factual findings about whether sheriff was following injunction requiring that orders of possession name all tenants who will be evicted); JA022-3, 229-31, 239-41, 245-7, 256-8, 318-20 (my attempts to defend or stay evictions rejected because I was not a party); *Arrieta v. Mahon*, 31 Cal. 3d 381, 385, 390-1 (1982) (Arrieta's similar attempts to stay execution and

recall or quash writ similarly were denied because Arrieta was not a party; California Supreme Court held "This nonstatutory remedy is not an acceptable substitute for a regular process assuring notice and a hearing.").

Unlike the procedures adopted by Illinois and California following *Rembert* and *Arrieta* to provide Due Process to all occupants, *supra* at 46 and n.14, New York provides notice and summons only to the named parties, N.Y. Real Prop. Law § 232-a (SPA062) (notice to terminate); N.Y. Real Prop. Acts. Law §§ 731, 733, 735 (SPA065-7) (notice of petition); *id.* § 749(2) (SPA069) (notice of eviction), and inappropriately relies on the marshal executing the eviction to determine whether other occupants should have been included in the judicial proceedings, *see* JA030-1, 265 (*de facto* hearing (or lack thereof) took place on the doorstep at the moment of July 13, 2011 eviction about whether plaintiff should be excluded from the judgment); N.Y.C. Marshals HandBook of Regulations, Ch. IV, § 1-2 (SPA073) (executing officer must use discretion as to who should be excluded from the eviction). The marshal's determination of occupants' rights fails to satisfy Due Process. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (external information not included in warrant "does not save the warrant from its facial invalidity."); *United States v. U.S. District Court*, 407 U.S. 297, 316 (1972) ("It is not fit [ ] that the receiving or judging of the information should be left to the discretion of the officer. The magistrate ought to judge; and should give certain directions

to the officer.") (quoting *Leach v. Three of the King's Messengers*, 19 How. St.
Tr. 1001, 1027 (1765)); *Marron v. United States,* 275 U.S. 192, 196 (1927)
("As to what is to be taken, nothing is left to the discretion of the officer
executing the warrant."); *Arrieta*, 31 Cal. 3d at 392-3 (marshal not
empowered to determine merits of occupants' claims to possession; such
determinations must be made by courts).

IV.    **NEW YORK'S EVICTION WARRANT PROCEDURE AND
       OTHER CONDUCT BY THE DEFENDANTS VIOLATES THE
       FOURTH AMENDMENT**

   A.    **The Warrant Clause Forbids "All Persons" Warrants Based
         on *In Personam* Eviction Judgments**

The Supreme Court often has emphasized that the Fourth Amendment's
protections were motivated by the long history of general warrants in England
and colonial America. *Maryland v. King*, 569 U.S. ___, No. 12-207, slip op.
at 1-3 (June 3, 2013) (Scalia, J., dissenting); *United States v. U.S. District
Court*, 407 U.S. 297, 327-9 and n.6 (1972) (Douglas, J., concurring); *Stanford
v. Texas*, 379 U.S. 476, 481-6 (1965); *Marcus v. Search Warrant*, 367 U.S.
717, 724-9 (1961); *Marron v. United States*, 275 U.S. 192, 195-6 (1927);
*Weeks v. United States*, 232 U.S. 383, 389-92 (1914); *Boyd v. United States*,
116 U.S. 616, 624-30 (1886).  In the present case, a state statute, N.Y. Real
Prop. Acts. Law § 749(1) (SPA069), authorizes the regular issuance of general
warrants in the eviction context.  Section 749(1) violates both the plain

language of the Fourth Amendment and the heritage on which the Fourth
Amendment is built.

The District Court failed to consider my claims and arguments, JA034-
5, 399, under the Fourth Amendment's Warrant Clause — which specifically
forbids imprecise warrant language. Absent any measures to summon all
occupants to the Housing Court, an *in personam* eviction judgment issued
against one individual fails to provide any cause, let alone probable cause, to
issue a warrant for the removal of "all persons." *Cf. Ybarra v. Illinois*, 444
U.S. 85, 90-2 (1979) (warrant to search one person cannot be used to search
all persons at the location due to lack of probable cause).

Warrants must mean what they say. The "all persons" general warrant
language cannot be saved by the executing officer's attempt to determine at
the time of the eviction from external information who should have been
excluded from the judgment. *See Groh*, 540 U.S. at 557 (external information
not included in warrant "does not save the warrant from its facial invalidity.");
*Marron*, 275 U.S. at 196 ("[N]othing is left to the discretion of the officer
executing the warrant."); *see also* previous section (discussing how marshal's
discretion also violates Fourteenth Amendment); *Arrieta v. Mahon*, 31 Cal. 3d
381, 384 n.1 (1982) (eviction of occupants not named in writ violates due
process; therefore affirming declaratory relief without reaching trial court's

51

determination that marshal's policy, similar to that used here, also violates the Fourth Amendment).

**B.     The Alleged Evictions Constitute Unreasonable Searches and Seizures**

The July 13 and 20, 2011 evictions, as well as the additional imminent imminent evictions, constitute both searches and seizures. *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (seizure within the meaning of the Fourth Amendment occurred when mobile home tenants were dispossessed of their home); *Revis v. Meldrum*, 489 F.3d 273, 287 (6th Cir. 2007) (seizure within the meaning of the Fourth Amendment occurred when officer physically took possession of a home by changing the locks and evicting the occupant); *United States v. U.S. District Court,* 407 U.S. 297, 313 (1972) ("physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed").

Reasonableness "is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (citation omitted).  The evictions are unreasonable for several reasons:

- The warrants require removal of "all persons," though I was not a party to the underlying *in personam* eviction process.  N.Y. Real Prop. Acts. Law § 749(1) (SPA069); JA050, 053, 056, 332-4 (warrants to remove "all persons"); JA051, 054, 057, 327-9 (*in personam* judgments against

52

individual former tenants only); *see supra*, previous section (discussing Fourth Amendment violations due to "all persons" warrants).

- The warrants lack sufficient premises descriptions to identify particular rooms.  JA025-8, 031, 034-5, 261-2, 266; *see Marron*, 275 U.S. at 196 ("As to what is to be taken, nothing is to be left to the discretion of the officer executing the warrant."); *Groh*, 540 U.S. at 558 ("the warrant was so obviously deficient that we must regard the search as 'warrantless'"); *People v. Sprague*, 47 A.D.2d 510, 511 (N.Y. App. Div. 1975) (warrant invalid where it lacks sufficient address information to identify the correct residence and could be used for a blanket search of other premises); *Empire State Bldg. Co., LLC v. Progressive Catering Svcs., Inc.*, 2 Misc. 3d 545, 546-7 (N.Y. City Civ. Ct. 2003) ("The description of the premises must be accurate enough to allow the marshal, when executing the warrant of eviction, to locate the premises without additional information") (premises described as "Stores 22-23, C-9, PT C-33" insufficient to permit eviction).

- The evictions purport to transfer possession of property to "Ronald Henry Land Trust," which is not capable of owning property in its own name.  N.Y. Est. Powers & Trusts Law § 7-2.1 (SPA061); JA025, 035, 253-4, 267, 304, 307; *supra*, part II.D.

- At the July 13 and 20, 2011 evictions, Defendant Powell refused to
  show his badge and the warrants and did not leave a copy of the
  warrant at the premises.  JA021, 031, 036, 259, 266; *see* N.Y.C.
  Marshals HandBook of Regulations, ch. IV, § 6-2 (SPA075) (marshal
  required to possess "photocopy of the warrant to provide to the tenant
  upon request"); N.Y. City Civ. Ct. Act § 1602 (SPA060) ("Every city
  marshal shall display his badge upon demand."); *id.* (violation
  punishable by fine or imprisonment); *Groh,* 540 U.S. at 561 (the
  presentation of a particular warrant "assures the individual whose
  property is searched or seized of the lawful authority of the executing
  officer, his need to search, and the limits of his power to search.")
  (citations omitted); *Couden v. Duffy*, 446 F.3d 483, 494-5 and n.7 (3d
  Cir. 2006) (seizure unreasonable where, *inter alia*, officer did not
  present badge); *see also* Fed. R. Crim. P. 41(f)(1)(C) (officer must
  provide warrant copy and receipt).  There is no reason why an eviction
  warrant deserves greater secrecy than a criminal search warrant.  *See*
  *Payton v. New York*, 445 U.S. 573, 592 (1980) (relating warrant
  requirement for felony arrest to warrant requirement for civil process)
  (citing *Semayne's Case*, 5 Co. Rep. 91a, 91b, 77 Eng. Rep. 194, 195

(1603)) (Sheriff executing King's process "ought to signify the cause of his coming upon arrival . . . .").[15]

- At the July 13, 2011 eviction, Defendant Powell improperly involved the Fire Department in an attempt to intimidate me and to remove the tenants from the entire building rather than just the rooms named in the warrants. JA030-1, 40-1, 265-6.

While I contend that each point of unreasonableness itself violates the Fourth Amendment, even if not, then the "the totality of the circumstances," *Robinette,* 519 U.S. at 39, adds up to unreasonable under the Fourth Amendment. *See id.*; *Wolf-Lillie v. Kenosha County Sheriff*, 504 F.Supp. 1, 11-12 (E.D. Wis. 1980) (Fourth Amendment rights violated where trailer seized pursuant to expired writ), *vacated in part on other grounds sub nom. Wolf-Lillie v. Sonquist*, 699 F.2d 864, 872 (7th Cir. 1983).

---

[15] The Supreme Court has not yet determined whether it is unreasonable for an officer to refuse a nonthreatening occupant's request to see a warrant at the outset of a search. *Groh*, 540 U.S. at 562 n.5; *U.S. v. Grubbs*, 547 U.S. 90, 98-9, 101 (2006). At least two District Courts have held it unreasonable not to present a warrant at the occupant's request. *U.S. v. Thompson*, 667 F.Supp.2d 758, 764 (S.D. Ohio 2009); *U.S. v. Hector*, 361 F.Supp.2d 1145, 1152 (C.D. Cal. 2005). Moreover, Supreme Court precedent indicates that the warrant must be presented, at least at the end of a search. *Grubbs*, 547 U.S. at 99; *cf. U.S. v. Neth*, No. 6:09-cr-210, slip op. at 20-22 (M.D. Fla. Mar. 30, 2010) (suppression denied where warrant shown briefly and a copy left at the premises at the conclusion of the search).

## C.    The September 20, 2011 Search Was Unreasonable

An unreasonable search occurred on September 20, 2011, when a process server, as Defendant Powell's agent, searched my home looking for others. JA027, 032, 037, 431; *Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 859 (7th Cir. 1999) (Posner, J.) (reversing dismissal of claims where officers conducted warrantless search to attempt to serve eviction notices); *see also U.S. District Court,* 407 U.S. at 313 ("physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed"). The injury from this search was not *de minimis*, and is readily distinguishable from the cases cited by the Magistrate to support the "*de minimis*" theory. JA431-2 (objections to R&R, distinguishing Magistrate's cases). *See also* N.Y.C. Dep't of Investigation, N.Y.C. Marshals HandBook of Regulations, ch. IV, § 5-2 (SPA074) ("The Corporation Counsel has advised this Department that marshals may retain the services of a licensed process server to serve the notices of eviction as required by the RPAPL. However, responsibility for the actions of the process server rests with the marshal.")

## V.    DEFENDANTS ARE STATE ACTORS AND/OR CONSPIRED WITH STATE ACTORS

Defendant Powell, a city marshal, plainly was a state actor. *See* JA029-31; N.Y. City Civ. Ct. Act § 1609 (state statute authorizing powers of city marshals). Likewise, Defendants Fisher and Alt, as state court administrators,

plainly are state actors. *See* JA029; *Lugar v. Edmondson Oil Co.*, 457 U.S.

922, 946 (1982) (Powell, J., dissenting) ("it is not disputed that the Virginia

Sheriff and Clerk of Court, the state officials who sequestered petitioner's

property in the manner provided by Virginia law, engaged in state action.");

*see also Ex parte Young*, 109 U.S. 123, 157 (1908) (suit to enjoin enforcement

of unconstitutional statute properly brought against state officers responsible

for enforcement of that statute).

 Contrary to the Magistrate Judge's determination, SPA021, valid claims

may be stated independently against the Trust Defendants due to their actions

themselves as state actors who invoked and personally participated in

unlawful state activity, JA014, 027, 030-2, 434; *see Lugar,* 457 U.S. at 942

(majority opinion) (valid § 1983 claim stated against private actors who

invoked allegedly unconstitutional attachment statute); *Hollander v.*

*Copacabana Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010) ("compulsion,"

"public function," or "joint action," each applicable here, make private parties

into state actors).  Additional valid claims against the Trust Defendants are

stated for conspiring with state actors. *See Ciambriello v. County of Nassau*,

292 F.3d 307, 324-5 (2d Cir. 2002) (§ 1983 conspiracy elements); *see also*

Dist. Ct. ECF 52-1 at 6-9 (plaintiff's memorandum discussing state action and

§ 1983 conspiracy).

## VI.  DEFENDANTS' OTHER DEFENSES LACK MERIT

### A.  *Rooker-Feldman* Doctrine

The Magistrate Judge did not reach the *Rooker-Feldman* doctrine, SPA009-10, but the District Judge seemed to construe the Report and Recommendation as including *Rooker-Feldman* as a basis for dismissal, *see* SPA030, though she contradictorily entirely adopted the Magistrate Judge's reasoning, SPA028, 31.

*Rooker-Feldman* plainly does not apply here.  *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (*Rooker-Feldman* does not bar actions by nonparties to prior state-court proceedings); *Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994) (same); *see also* Dist. Ct. ECF 55-1 at 7-10 and 51-1 at 12-15 (plaintiff's memoranda citing additional reasons and authorities related to *Rooker-Feldman*).

### B.  Qualified Immunity

The Magistrate Judge, in a footnote, cited qualified immunity as an alternate basis for dismissing defendant Powell.  SPA016 at n.6.  I object to every clause of that footnote — the warrants were not facially valid, were not in accord with state law (including the New York Constitution, *see* JA038), and were contrary to clearly established law.  *Supra*, parts III., IV.; *see also* Dist. Ct. ECF 53-1 at 35-8 (plaintiff's memorandum discussing qualified immunity).  Furthermore, defendant Powell acted outside his duties, beyond

the warrants, and contrary to established procedures. *Id.* The existence of a

facially invalid warrant — or even a facially valid one — should not be held

to permit any actions whatsoever that an officer may take. The officer,

defendant Powell, has not met his burden on this affirmative defense. *See*

*Southerland v. City of N.Y.*, 680 F.3d 127,141 (2d Cir. 2012) ("Qualified

immunity is an 'affirmative defense,' and 'it is incumbent upon the defendant

to plead[ ] and adequately develop' that defense.") (citations omitted).

Moreover, qualified immunity is unavailable with respect to Plaintiff's

claims for prospective relief. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009)

(qualified immunity unavailable "where injunctive relief is sought instead of

or in addition to damages") (citation omitted).

## VII.  PRELIMINARY INJUNCTION SHOULD HAVE BEEN GRANTED

### A.    Ongoing and Imminent Irreparable Harm

Plaintiff is experiencing three forms of irreparable harm, including:

1. "alleged violation of a constitutional right," *Jolly v. Coughlin*, 76

   F.3d 468, 482 (2d Cir. 1996);

2. ongoing lack of access to the bedroom from which I was evicted

   on July 13, 2011 and the additional two rooming units from

   which I was evicted on July 20, 2011, as well as ongoing lack of

   access to my belongings inside, JA0023-4, 260-1; *see, e.g.,*

*McNeill v. N.Y.C. Housing Authority,* 719 F.Supp. 233, 254

(S.D.N.Y. 1989) (facing eventual eviction constitutes irreparable

harm); and

3. imminent additional evictions from rooming units that I currently

occupy, JA025-28, 261-3; *see McNeill.*

**B.    Likelihood of Success on the Merits**

For the reasons set forth elsewhere in this brief and in my submissions

to the District Court, not only have I stated a claim, but I am likely to succeed

on the merits.

**C.    Balance of Equities and Public Interest**[16]

"[I]f the plaintiff shows a substantial likelihood that the challenged law

is unconstitutional, no substantial harm to others can be said to inhere in its

enjoinment." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville &*

*Davidson County,* 274 F.3d 377, 400 (6th Cir. 2001). Moreover, "it is always

in the public interest to prevent violation of a party's constitutional rights."

*Id.*

---

[16] *See Pope v. County of Albany*, 687 F.3d 565, 570 and n.3 (2d Cir. 2012)
(preliminary injunction elements).

60

## VIII.  THE DISTRICT COURT DECISION FAILED TO SATISFY 28 U.S.C. § 636(B)(1), ARTICLE III, AND DUE PROCESS

In *United States v. Raddatz*, 447 U.S. 667, 677-83 (1980), the Supreme Court held that 28 U.S.C. § 636(b)(1) satisfies due process and Article III because the district judge remains the "ultimate decisionmaker." *Id.* "[T]he district judge in making the ultimate determination of the matter, would have to give fresh consideration to those issues to which specific objection has been made by a party." *Id.* at 675 (quoting H.R. Rep. No. 94-1609, p. 3 (1976)).

In this case, the District Judge's decision failed to identify "those portions of the [Magistrate Judge's] report or specified proposed findings or recommendations to which objection is made," 28 U.S.C. § 636(b)(1) (SPA036-7), and also failed to make the required *de novo* ultimate decision about those portions, *id. Cf. Raddatz*, 447 U.S. at 672 (district judge specifically identified portion of recommendation in dispute and made ultimate decision as to that issue).[17]

Moreover, the District Court failed to consider and to make an ultimate decision about properly pleaded and briefed Constitutionally protected

---

[17] Though the District Judge gave "examples" of how four of my objections related back to previous briefs that I had filed, SPA027-8, there is no indication that the District Judge considered, or even read, my sixteen additional objections to the magistrate's recommendations, nor that she identified the portions of the Report and Recommendation to which I objected.

interests which the Magistrate Judge also failed to consider and with respect

to which I made an express objection. *See supra,* sections I.E. (liberty

interests), I.F. (equal protection), I.G. (substantive due process).[18]

 See also supra at 14 (*de novo* standard); *Hunt v. Pliler*, 384 F.3d 1118,

1124 (9th Cir. 2004) ("[T]he district court must actually exercise its

discretion, rather than summarily accepting or denying the magistrate judge's

findings.") (internal quotation marks and citation omitted); *Jeffrey S. v. Ga.

Bd. of Education*, 896 F.2d 507, 513 (11th Cir. 1990) (even where district

court stated it had conducted *de novo* review, record shows that "[t]he district

court did not conduct a true *de novo* review of the objected-to portions of the

report"), *Gee v. Estes*, 829 F.2d 1005, 1009 (10th Cir. 1987) (vacating and

remanding where "the objections to the magistrate's factual conclusions did

not receive the judicial consideration that Article III and 28 U.S.C. § 636(b)

(1) mandate"); *United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985)

(reversing and remanding where district judge failed to consider all of

appellant's objections to magistrate's recommendation) ("a district court must

---

[18] Even if for some reason the clear error or contrary to law standard were
held Constitutionally sufficient and applicable, *see* SPA028 (suggesting
review for clear error would have been appropriate), the District Judge still
should have reviewed independently the legal questions questions related to
my claims. *See* JA396 (my objections to R&R include entire legal analysis
section); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) ("for
questions of law, there is no practical difference between review under Rule
72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo
standard.").

weigh the evidence for itself and make an independent determination of the dispositive issues").

## IX.    STATE LAW CLAIMS

If this Court reverses dismissal of any of my federal claims, it also should reinstate my state law claims. *See Kelly-Brown v. Winfrey*, No. 12-1207-cv, ___ F.3d ___., slip op. at 27 (2d Cir. May 31, 2013) ("Because we vacate the District Court's judgment with respect to three of Kelly-Brown's federal claims, we also reinstate her state law claims.").

## X.    LEAVE TO AMEND

If affirming dismissal, this Court should still grant me leave to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (citations omitted).

## CONCLUSION

This Court should reverse the judgment of the District Court, remand,

and direct entry of a preliminary injunction.


Dated:  July 16 , 2013
Brooklyn, New York


                                        Respectfully submitted,

                                        Jon Sasmor
                                        *Plaintiff-Appellant, Pro Se*
                                        287 Franklin Avenue
                                        Brooklyn, NY 11205
                                        jonathan.sasmor@gmail.com
                                        (917) 318-2619

64

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

**Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,978 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using LibreOffice 3.6.5.2 in 14-point Times New Roman font.

Dated:  July 16 , 2013
Brooklyn, New York

Respectfully submitted,

Jon Sasmor
*Plaintiff-Appellant, Pro Se*
287 Franklin Avenue
Brooklyn, NY 11205
jonathan.sasmor@gmail.com
(917) 318-2619

65

# SPECIAL APPENDIX

# SPECIAL APPENDIX TABLE OF CONTENTS

Report and Recommendation of Magistrate Judge James Orenstein dated
February 21, 2013 (ECF No. 61)...........................................................SPA001

Order Adopting Report & Recommendation by District Judge Kiyo A.
Matsumoto, dated March 31, 2013 (ECF No. 66)................................SPA023

Judgment dated April 2, 2013 (ECF No. 67)......................................................SPA033

Text of Significant Constitutional Provisions

U.S. Const., Amend. IV...........................................................................SPA035

U.S. Const., Amend. XIV, § 1................................................................SPA035

Text of Significant Statutory Provisions

28 U.S.C. § 636(b)(1).............................................................................SPA036

Cal. Civ. Proc. Code § 415.46...............................................................SPA037

Cal. Civ. Proc. Code § 715.010.............................................................SPA042

Cal. Civ. Proc. Code § 715.020.............................................................SPA043

Cal. Civ. Proc. Code § 1174.25.............................................................SPA044

Cal. Civ. Proc. Code § 1174.3...............................................................SPA045

Conn. Gen. Stat. § 47a-26h...................................................................SPA052

735 Ill. Comp. Stat. 5/9-104.................................................................SPA054

735 Ill. Comp. Stat. 5/9-107.................................................................SPA055

735 Ill. Comp. Stat. 5/9-107.5..............................................................SPA057

N.Y.C. Admin. Code § 26-521.................................................................SPA058

N.Y.C. Admin. Code § 26-523.................................................................SPA059

N.Y. City Civ. Ct. Act § 1602................................................................SPA060

N.Y. Est. Powers & Trusts Law. § 7-2.1...............................................SPA061

N.Y. Real Prop. Law § 228...................................................................SPA061

N.Y. Real Prop. Law § 232-a................................................................SPA062

N.Y. Real Prop. Acts. Law § 711..........................................................SPA062

N.Y. Real Prop. Acts. Law § 731..........................................................SPA065

N.Y. Real Prop. Acts. Law § 733..........................................................SPA065

N.Y. Real Prop. Acts. Law § 735..........................................................SPA066

N.Y. Real Prop. Acts. Law § 743..........................................................SPA068

N.Y. Real Prop. Acts. Law § 747..........................................................SPA068

N.Y. Real Prop. Acts. Law § 749..........................................................SPA069

N.Y. Real Prop. Acts. Law § 1303........................................................SPA070

Utah Code § 78B-6-812(3)..................................................................SPA072

Text of Significant Regulations

N.Y.C. Marshals HandBook of Regulations, ch. IV, § 1-2...................SPA073

N.Y.C. Marshals HandBook of Regulations, ch. IV, § 5-2...................SPA074

N.Y.C. Marshals HandBook of Regulations, ch. IV, § 6-2...................SPA075

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JON SASMOR,                                                     REPORT AND
                               Plaintiff,                       RECOMMENDATION
               - against -
STEVEN POWELL, et al.,                                          11-CV-4645 (KAM) (JO)
                               Defendants.
----------------------------------------------------------X

James Orenstein, Magistrate Judge:

      Plaintiff Jon Sasmor ("Sasmor") has asserted claims for declaratory and injunctive relief as

well as monetary damages arising from the execution of allegedly unconstitutional eviction

warrants at his residence. Docket Entry ("DE") 6 (Amended Complaint). The defendants include

the private management company and three individuals who own and manage the residence as

well a state court judge, a court clerk, and a city marshal who were at least nominally involved in

the eviction proceedings. All of the defendants have moved to dismiss the claims against them. *See*

DE 38; DE 45; DE 48. Sasmor has moved for a preliminary injunction barring any further

evictions – not only those that affect him, but also any evictions in New York State pursuant to a

statute he claims to be unconstitutional. *See* DE 54. Upon a referral from the Honorable Kiyo A.

Matsumoto, United States District Judge, I now make this report and respectfully recommend, for

the reasons set forth below, that the court deny Sasmor's motion for a preliminary injunction and

dismiss the Amended Complaint in its entirety, with prejudice as to all of the federal claims.

I.     <u>Background</u>

     A.    <u>Facts</u>

      Sasmor's claims arise out of a rent dispute involving the occupants of a rooming house at

287 Franklin Avenue, Brooklyn, New York ("287 Franklin"). That dispute has also given rise to

several eviction proceedings in New York City Housing Court (the "Housing Court") as well as a

**SPA001**

separate lawsuit in which Sasmor and other residents of 287 Franklin have accused the private

defendants here and others of violating the Racketeer Influenced and Corrupt Organizations Act,

18 U.S.C. § 1961, *et seq. See Franklin Ave. Residents' Ass'n v. Meisels*, 11-CV-976 (KAM) (JO).

Rather than recount the full factual and procedural history of the parties' disputes, I provide below

a brief summary of the facts pertinent to the instant motions. I draw those facts from the allegations

in the Amended Complaint, which I assume to be true for purposes of the motions to dismiss, as

well as from the documents that pleading incorporates by reference and relevant public Housing

Court records.[1]

     Sasmor moved into 287 Franklin – a rooming house he shared with nine other tenants – in

April 2010. The lease was signed by defendant Chaim Goldberger ("Goldberger) for defendant

Henry Management, LLC ("HM"). The building is purportedly owned by the Ronald Henry Land

Trust (the "Trust"), the trustees of which are defendants Isaac Teitelbaum and Abraham

Schneebalg (respectively, "Teitelbaum" and "Schneebalg" or, collectively, together with

Goldberger and HM, the "Private Defendants"). Amended Complaint ¶¶ 36-39. Initially, Sasmor

---

[1] The court may take judicial notice of documents integral to or referred to in the Amended
Complaint, as well as documents filed in other courts and other public records. *See, e.g., Global
Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *Subaru Distribs.
Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). The court may also take judicial
notice of relevant pleadings, orders and judgments from a related action without converting the
motion to one for summary judgment. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d
Cir. 1991) ("courts routinely take judicial notice of documents filed in other courts, ... not for the
truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation
and related filings"); *Washington v. U.S. Tennis Ass'n, Inc.*, 290 F. Supp. 2d 323, 327 (E.D.N.Y.
2003) (relying on pleadings and judgments in a prior action in granting a motion to dismiss);
*Marchon Eyewear, Inc. v. Tura L.P.*, 1999 WL 184107, at *2 (E.D.N.Y. Mar. 28, 1999) (same);
*see also Nealy v. Berger*, 2009 WL 704804, at *1 (E.D.N.Y. Mar. 16, 2009) (taking judicial notice
of court filings); *In re Enron Corp.*, 379 B.R. 425, 431 n. 18 (S.D.N.Y. 2007) ("Judicial notice of
public records such as court filings, is clearly appropriate.").

SPA002

occupied only a single room on the top floor of the building, but he began using additional rooms when other tenants moved out and gave him their keys. *Id.* ¶ 48.

Shortly after moving in, Sasmor began to suspect that the Trust did not actually own the building. In August 2010, he and the other tenants changed the building's locks and began depositing their monthly rent payments into an "escrow account" rather than making payment to any of the Private Defendants. *Id.* ¶¶ 40-44.

In January 2011, the New York City Department of Housing Preservation & Development ("HPD") determined after an inspection that the building had been illegally converted into a multiple dwelling and ordered a number of corrective measures, including vacating the rooms on the top floor. Amended Complaint ¶ 49; DE 48-2 (Declaration of Andrew Meier) ("Meier Decl.") Ex. 6 at 8 (HPD vacate order).[2] Based on HPD's determination, in March 2011, the Trust initiated summary proceedings for possession against Sasmor and the other tenants in Housing Court. The notice of petition in each proceeding identified the tenant to be removed and the particular room within 287 Franklin Avenue from which that tenant was to be removed. *See* Meier Decl. Exs. 7-9 (Housing Court petitions).

Sasmor appeared in Housing Court to oppose the petition in which he was named as a respondent. *See* Meier Decl. Ex. 12. He also sought to intervene in the proceedings against Kurt Fletcher ("Fletcher"), Amanda Diaz ("Diaz"), and Alexa Rosenbaum ("Rosenbaum") – each of whom by that time had moved out of 287 Franklin and whose former rooms Sasmor then began to occupy – on the ground that he had a right of possession to the rooms in which those respondents had once resided. *See* Amended Complaint ¶¶ 48, 54, 57-58; Meier Decl. Exs. 12-14. In each case,

---

[2] The exhibits to the Meier Declaration consist of documents filed in or maintained by the Housing Court, as well orders and judgments issued by the Housing Court and the Appellate Term of the Supreme Court of the State of New York for the 2nd, 11th, and 13th Judicial Districts.

SPA003

the Housing Court ruled that Sasmor lacked standing to challenge the petition and awarded judgment of possession to the Trust. *See id.* Ex. 12 at 1; *id.* Ex. 13 at 1; *id.* Ex. 14 at 3-4; DE 56-16 at 4 (transcript of Housing Court proceedings on April 28, 2011).

As a result of those rulings, the Housing Court issued eviction warrants in all three cases. *See id.* Exs. A-C.[3] Sasmor moved to stay execution of the warrants of eviction related to the rooms of Fletcher and Diaz, but the Housing Court again denied his motions because he lacked standing. *Id.* Ex. 12 at 8; *id.* Ex. 13 at 8. Sasmor then filed appeals of all three judgments of possession; in each case the appellate court dismissed the appeal on the ground that Sasmor was "not aggrieved by the final judgment" below. Amended Complaint ¶ 67; Meier Decl. Exs. 12 at 9; *id.* Ex. 13 at 9; *id.* Ex. 14 at 5.

The three warrants of eviction were then given to defendant Steven Powell ("Powell") in his capacity as a New York City Marshal. Powell executed the warrants on July 13 and 20, 2011. *Id.* ¶ 54 & Exs. A-C. Each warrant designated a specific room by its location (the rooms lacked identifying letters or numbers) and directed the Marshal to remove the named tenant as well as "all other persons from the premises." *Id.* ¶ 81 & Exs. A-C. Goldberger accompanied Powell as he executed the warrants, and pointed out to Powell the particular rooms referred to in the warrants. *Id.* ¶¶ 83, 114, 117. Powell did not look to the face of the warrants to identify the rooms, but instead relied on Goldberger's representations. *Id.* ¶¶ 83, 114.

---

[3] The name of defendant Carol Alt, the Chief Clerk of the Civil Court of the City of New York ("Alt"), was stamped on each warrant, and Alt "continues to direct that her signature be stamped on hundreds more unconstitutional eviction warrants daily, 'in the name of the People of the State of New York.'" *Id.* ¶ 98. Defendant Fern Fisher, the Deputy Chief Administrative Judge for the New York City Courts ("Fisher" or, collectively with Alt, the "Judicial Defendants") "is responsible for the administration and operation of the New York City Courts, including the procedures by which unconstitutional eviction warrants are issued." *Id.* ¶ 99. Sasmor does not allege that either of the Judicial Defendants were involved in any other way in the events at issue in this litigation.

4

On September 20, 2011, Goldberger returned to the building, accompanied by Schneebalg, a process server who was apparently working for Powell, and another man equipped with a drill and a crowbar. *Id.* ¶¶ 86, 121. The man with the tools drilled out the locks on the front door of the building and pried open the door, causing some damage to the doorframe. *Id.* ¶ 86. The process server then slipped Notices of Eviction addressed to individuals other than Sasmor over the doors of two rooms within the building. *Id.* ¶ 90. Despite these notices, no further evictions were executed at 287 Franklin prior to the filing of the Amended Complaint. *Id.* ¶¶ 93, 96.

The trial of the Housing Court proceeding relating to Sasmor's original room on the top floor of 287 Franklin began on November 29, 2011. Sasmor testified during the five-day trial, as did Goldberger, Schneebalg, and Teitelbaum. On October 10, 2012, the Housing Court issued a written Decision and Order awarding a judgment of possession to the Trust. *See* DE 58 Ex. A (Post-Trial Decision and Order in *Ronald Henry Land Trust v. Jon Sasmor and Lisa Lin*, N.Y. Civ. Ct. Kings Co., Index #64303/11) at 1-5.

### B. Proceedings

Sasmor filed his original Complaint on September 26, 2011 – after the service of eviction warrants but before the Housing Court trial described above. DE 1. On the same day, he filed a proposed order to show cause in which he sought a temporary restraining order and preliminary injunction barring further eviction proceedings. DE 2. The court immediately denied the latter request but permitted Sasmor to amend his complaint. DE 5. Sasmor then filed the pending Amended Complaint on October 11, 2013.

In the introduction to his Amended Complaint, Sasmor asserts that he seeks to challenge the constitutionality of "a New York statute that mandates the issuance of unconstitutional

**SPA005**

'wildcard' general eviction warrants." Amended Complaint ¶ 1. Specifically he contends that

Section 749(1) of the New York Real Property Actions and Proceedings Law ("RPAPL") is

unconstitutional, both on its face and as applied, because it permitted him to be evicted from the

rooms of his co-tenants without having been served process in those proceedings or individually

named in a judgment. *Id.* ¶¶ 2-3. On the basis of that view and the factual allegations summarized

above, the Amended Complaint asserts 13 causes of action, including both federal civil rights

claims, *see id.* ¶¶ 132-148 (Counts 1-6, pleading claims under 42 U.S.C. §§ 1983, 1985(3)), and a

variety of claims purportedly arising under state law, *see id.* ¶¶ 149-168 (Counts 7-13). Sasmor

seeks declaratory and injunctive relief against all of the defendants, as well as an award of

compensatory and punitive damages against Marshal Powell and the Private Defendants. *See id.* at

30-35 (prayer for relief). In addition to seeking permanent injunctive relief by means of his

Amended Complaint, on July 27, 2012, Sasmor filed a motion for a preliminary injunction seeking

to prohibit further evictions at 287 Franklin as well as the issuance of any further eviction warrants

pursuant to RPAPL Section 749(1). DE 54.

All of the defendants have sought one form of dismissal or another. On March 21 and 22,

2012, respectively, Powell and the Private Defendants moved to dismiss the Amended Complaint

for failure to state a claim. *See* DE 45 (Powell); DE 38 (Private Defendants); Fed. R. Civ. P.

12(b)(6). Because those defendants had already answered the Amended Complaint by that time,

*see* DE 9 (Powell); DE 20 (Private Defendants), I construe their motions as seeking judgment on

the pleadings. *See* Fed. R. Civ. P. 12(c); *see also, e.g., NYMET Indus. Solutions, Inc. v. Maersk,

Inc.*, 818 F. Supp. 2d 511, 512-13 (E.D.N.Y. 2011). On July 24, 2012, the Judicial Defendants

moved to dismiss the Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal

6

**SPA006**

Rules of Civil Procedure. DE 48. After the parties had completed their briefing of all of the motions, the court referred them to me for a report and recommendation by order dated August 31, 2012.

II.    Discussion

The pending motions for dismissal and preliminary injunctive relief raise a host of legal issues; in addition to arguing the merits of Sasmor's substantive claims, the parties call upon the court to address a number of procedural questions relating to standing, immunity, and various concepts arising from the federal judiciary's interest in showing appropriate deference to its state counterparts. That apparent complexity, however, is only superficial: in essence, this case is the result of Sasmor's misguided attempt to transform a routine landlord-tenant dispute that can be (and apparently has been) properly handled in state court into a federal civil rights case against not only his landlord, but the state officials who for the most part are alleged to have done no more than discharge their lawful duties.

At the heart of all the claims now before the court lies Sasmor's contention that he seeks in this litigation to vindicate a "core" Fourth Amendment protection: "the right of a man to retreat into his own home." DE 51-1 (Sasmor's memorandum opposing the Judicial Defendants' motion) at 25 (quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)). That contention also reveals the essential flaw with all of Sasmor's federal claims: the home into which he wishes to retreat is not his own.

The pleadings and pertinent public records make it clear that Sasmor and other occupants of 287 Franklin were living in a building that was not permitted to be used as a multiple dwelling, and that those occupants took it upon themselves to change the locks on a property they did not

7

**SPA007**

own and to withhold rent from their landlord. The unremarkable result of those choices was that the landlord set out to evict those occupants and that the relevant government officials performed their normal functions in response. Whatever the merits of the underlying dispute between the occupants of 287 Franklin and the Private Defendants – and in particular, even if Sasmor and his colleagues should ultimately prevail in that dispute – New York's courts provide an adequate forum for resolving it.

Those courts provided Sasmor with a full and fair opportunity to vindicate his contention that he has some property rights with respect to rooms in 287 Franklin from which he has been excluded. Should the owners of 287 Franklin seek to exclude him from other rooms in that building in the future, New York law will again give Sasmor a further opportunity to vindicate his perceived rights in the state's court system. As a result, he has suffered no cognizable injury that gives rise to any federal claim, and such claims should therefore be dismissed with prejudice. For that reason, the discussion below does not analyze all of the arguments now before the court, even though I conclude that there are several alternate reasons to dismiss the Amended Complaint. Instead, I focus exclusively on the reasons why the absence of any cognizable harm to Sasmor suffices to dispose of all the pending claims in this court.

     A.    Standard of Review

The standard of review for a Rule 12(c) motion for judgment on the pleadings is the same as that for a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Irish Lesbian & Gay Org. v. Guiliani*, 143 F.3d 638, 644 (2d Cir. 1998). The court should consider the "legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citations

8

**SPA008**

omitted). A complaint's assertions must state a claim "that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning that the facts alleged allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (alterations in original) (quoting Fed. R. Civ. P. 8(a)(2)).

### B. The Judicial Defendants

The Judicial Defendants are named in only the first of the Amended Complaint's 13 counts. In that claim under Section 1983 of title 42, United States Code, Sasmor seeks injunctive and declaratory relief based upon the Judicial Defendants' involvement in the "requisition, issuance, and execution" of eviction warrants issued in the Housing Court pursuant to Section 749(1) of the RPAPL, a statute that Sasmor alleges is unconstitutional both on its face and as applied to him because it "commands the removal of all persons upon an eviction judgment against any one person, including the removal of other persons who have not been given notice and an opportunity to be heard," in violation of Sasmor's rights under the 4th and 14th Amendments. Amended Complaint ¶¶ 1, 20, 132-134.

The Judicial Defendants contend that this claim should be dismissed for a variety of reasons. They argue that this court lacks Article III jurisdiction for want of a "case or controversy," that Sasmor has failed to establish standing, that dismissal is warranted under various doctrines of abstention, that the claim is barred by the *Rooker-Feldman* doctrine, and that some of the relief

9

**SPA009**

Sasmor seeks is unavailable against the Judicial Defendants by virtue of their Eleventh

Amendment immunity and pursuant to the Federal Court Improvement Act of 1996. *See* DE 48-1

(Judicial Defendants' memorandum of law); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923);

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); Pub. L. No. 104–317, 110

Stat. 3847, 3853 (1996) (amending 42 U.S.C. § 1983). While several of those arguments appear to

have merit, the court can and should dismiss the claim against the Judicial Defendants on the

ground that Sasmor lacks standing: he is estopped from asserting a property interest that was

impaired by any prior eviction warrant, and there is no more than a mere possibility that he will

suffer harm in the future as a result of any eviction warrants issued under the statute he challenges.

"In order to state a claim for deprivation of a property right under § 1983, three elements

must be proven: (1) that there was a property interest; (2) which was deprived under color of state

law; and (3) the deprivation must be without due process." *Morris v. Katz*, 2011 WL 3918965, at

*3 (E.D.N.Y. 2011) (citing *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990)). As explained

below, Sasmor is estopped from establishing the first of those three elements.

A party may not relitigate an issue that is identical to one that was necessarily decided in a

prior action and decisive of the pending action if, in that prior action, the party had a full and fair

opportunity to litigate the issue. *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007). The question of

whether Sasmor has a property interest in the rooms at 287 Franklin for which eviction warrants

were served is plainly decisive here: if he has no such interest, then he has no standing to seek

redress for the issuance of those eviction warrants under Section 1983. It is equally plain that

Sasmor had a full and fair opportunity to litigate that issue in each of the Housing Court cases

described above (the proceedings against Fletcher, Diaz, and Rosenbaum), and that in each

10

instance the court necessarily resolved the issue against him. Indeed, in each of those cases, Sasmor litigated and lost the issue on the merits in both the Housing Court and then again on appeal.

To be sure, neither the Housing Court nor the appellate court explicitly held that Sasmor lacked a property interest. But the rulings of those courts necessarily relied on such a determination. New York law is clear that "all persons with rights of possession [to a] premises are considered necessary parties" in a summary proceeding for possession. *M & M Crown Realty. LLC v. Griffith*, 2011 WL 3370860, at *3 (N.Y. City Civ. Ct. June 17, 2011); *see also Cobert Const. Corp. v. Bassett*, 442 N.Y.S.2d 678, 680 (App. Term. 1981). Similarly, New York law allows a non-party to a proceeding to appeal a judgment if he can demonstrate that he "had some legal interest in the subject of the determination which was adversely affected thereby." *Matter of DeLong*, 455 N.Y.S.2d 896 (App. Div. 1982). Thus, in rejecting Sasmor's attempts to challenge the Housing Court petitions and to appeal the judgments of possession, the Housing Court and the appellate court each necessarily determined that Sasmor lacked a possessory interest in the room at issue in each case. As a result, Sasmor is estopped from relitigating in this action any claim that requires him to demonstrate a property interest in the rooms for which eviction warrants were issued. *See, e.g.*, *Sullivan v. Stein*, 487 F. Supp. 2d 52, at 64-65 (D. Conn. 2007) (determination of state court that plaintiffs had no possessory interest in residence had collateral estoppel effect in subsequent federal court § 1983 action); *Moran v. City of New Rochelle*, 346 F. Supp. 2d 507, 515 (S.D.N.Y. 2004) (state court's ruling that a party's property use was "merely incidental was tantamount to holding that it had no vested right ... and necessary to holding that it had no right to

11

continuing use," therefore party was barred "from arguing that it did have a property right" in subsequent § 1983 action).

      Sasmor contends that he cannot be deemed to have had a full and fair opportunity in the state court proceedings to litigate the issue of his property interest in the rooms of Fletcher, Diaz, and Rosenbaum because he was not a named party to those proceedings, did not receive formal notice directed specifically to him, and therefore did not receive a hearing on the issue of his property interest. *See* DE 51-1 at 44, n.76. I disagree: the fact that the party against whom collateral estoppel is invoked was not a party to the prior proceeding is not an automatic bar to the doctrine's application. *See, e.g., D'Arata v. New York Cent. Mut. Fire Ins. Co.*, N.Y.2d 659, at 665 (1990) ("[A] nonparty to a prior litigation may be collaterally estopped by a determination in that litigation by having a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of the rights of the party to the prior litigation); *Moran*, 346 F. Supp. 2d at 515 ("nonparties who controlled the original suit are also bound by the resulting judgment"); *see also Matter of Halyalkar v. Board of Regents of State of New York*, 72 N.Y. 2d 261, 268-69 (1988) ("Collateral estoppel is a doctrine based on general notions of fairness involving a practical inquiry into the realities of the litigation" and should not be "rigidly or mechanically applied.").

      Regardless of his formal status in the Housing Court and appellate proceedings, the record makes manifest the fact that Sasmor had actual notice of those proceedings and therefore cannot have suffered any cognizable harm as a result of the fact that, as a non-party to the leases at issue, was not given formal, direct notice. More fundamentally, the public court records demonstrate that Sasmor was given a full opportunity in the state proceedings to litigate his claimed property

12

interest in the rooms of Fletcher, Diaz, and Rosenbaum as a basis for opposing the issuance of

eviction notices that resulted in his exclusion from those rooms.

      In seeking to vindicate his claimed property interest in the rooms at issue in the Housing

Court proceedings, Sasmor argued, among other things, that he was a necessary party to those

proceedings because he had obtained permission to use the rooms from the former tenants, that he

was a party to a joint lease that covered the entire building, that he was in actual possession of the

rooms at the time the petitions for eviction were filed, and that he remained in possession as of the

date he sought to intervene in each proceeding. *See* Meier Decl. Exs. 12-14. The Housing Court

necessarily rejected all of those arguments, and those rulings on the merits estop Sasmor from

pressing his arguments here. To the extent Sasmor now wishes to raise additional arguments as to

why he had a property interest in the rooms at issue in the Housing Court proceedings, he could

and should have made them there, and the doctrine of *res judicata* precludes him from doing so

now for the first time in this litigation. As a result, he cannot claim any cognizable injury arising

from the Judicial Defendants' involvement in the issuance of eviction warrants for the rooms of

Fletcher, Diaz, and Rosenbaum.

      To the extent that Sasmor's claim regarding the constitutionality of "all persons" warrants

is predicated on an alleged property interest in three additional rooms in 287 Franklin for which

warrants of eviction have not yet been executed, he lacks standing because Sasmor has to date

suffered no injury in fact and can demonstrate no more than a "mere possibility" of future harm.

*See Iqbal,* 556 U.S. at 679; *see also Libby v. Merrill*, 2003 WL 21756830, at *5 (D. Me. July 29,

2003) ("[T]he mere possibility of future harm, without some compelling evidence of susceptibility

or inevitability, does not satisfy article III standing requirements for injunctive relief to issue.")

(quoting *Comfort v. Lynn School Comm.*, 150 F. Supp. 2d 285, 288 (D. Mass. 2001)). That is not

simply because no new eviction warrants for those rooms have been issued since Marshal Powell

returned the original warrants unexecuted. *See* Amended Complaint ¶ 90.[4] If that were the only

defect in the claim concerning other rooms, I would not recommend dismissal with prejudice

based on a lack of standing. More fundamentally, Sasmor cannot have a property interest in those

rooms because his claim to such an interest derives from his allegation that he obtained permission

to use the rooms from their former occupants after they moved out of 287 Franklin. *See* Amended

Complaint ¶ 48.[5] But those former occupants themselves appeared in the Housing Court to defend

against the eviction proceedings. *See* Sasmor Decl. ¶ 39. Sasmor's predecessors in interest having

had a full and fair opportunity to litigate the merits of the eviction proceedings in state court,

---

[4] *See also* DE 56 (Declaration of Jon Sasmor) ("Sasmor Decl.") ¶ 60 & Ex. X. Sasmor's declaration is extraneous to the pleadings and therefore not part of the record for purposes of analyzing the motions to dismiss. I cite it only to observe that there appears to be no reason to expect that Sasmor is in a position to amend his pleading further by alleging in good faith that he has standing to assert claims arising from eviction proceedings with respect to the rooms previously occupied by Luis Campos, Willie Osterweil, and Vilija Skubutyte.

[5] To be sure, Sasmor also appears to assert a property interest in the rooms that derives from his own lease and from the doctrine of adverse possession. *See* DE 53-1 at 26-28. The former theory fails because his lease explicitly refers only to his own room, not those of other residents. *See* Meier Decl. Ex. 2 at 8 (lease rider); DE 58, Ex. A (Housing Court Decision and Order) at 5 ("[T]he attached lease rider specifies that Jon Sasmor and Lisa Lin were renting apartment 4F.... The lease includes an addendum clause which allows the terms of the rider to 'override(s) any and all provision of the Standard Form Lease.'"). The latter is a plain misreading of Section 711 of the RPAPL and Section 26-521 of the New York City Administrative Code, which provide procedural protections against self-help eviction to tenants who have occupied premises for more than 30 days, but which do not give rise to independent rights of possession. *See, e.g.,* Carmody Wait 2d New York Practice § 90:38 ("[A] nonpayment proceeding [pursuant to RPAPL 711(2)] can be used to remove a tenant from possession only where the tenant is holding the premises under an existing rental agreement that bestows upon a tenant the right to occupy the premises as the quid pro quo for the tenant's payment of rent to the landlord.") (citing *Saba Realty Partners LLC v. Int'l Gold Star Inc.,* 906 N.Y.S.2d 732, 734 (Civ. Ct. Kings Co. Aug. 12, 2010); N.Y. City Admin. Code § 26-521 (making it unlawful to evict without a court order "an occupant of a dwelling unit who has *lawfully* occupied the dwelling unit for thirty consecutive days or longer.") (emphasis added).

Sasmor is bound by the judgments awarding possession of those rooms to the Trust. *See Bello v. Santiago*, 889 N.Y.S.2d 504 (N.Y. Sup. Ct. 2009) (successors in interest to a property right are considered to be in privity with the original holder of the right, and are therefore bound by judgments against the original holder).

Finally, to the extent Sasmor complains of being "excluded" not only from rooms to which he has no cognizable property interest but also "from his possessions therein[,]" *see* DE 51-1 at 8, his claim fares no better. That asserted deprivation of personal property is not a cognizable harm because he has not alleged that he had any personal property in any of the rooms from which occupants have been evicted, that he sought to recover such property, or that any defendant stood in the way of any such effort. Moreover, the parties appear to agree that Sasmor is in any event entitled to any such personal property, *see* DE 48-1 (Judicial Defendants' memorandum of law) at 29 (citing cases), and so any claim relating to Sasmor's personal property appears to be moot.

In short, Sasmor cannot show that he has suffered or will suffer any cognizable injury as the result of the Judicial Defendants' participation in the issuance of "all persons" warrants pursuant to New York law. As a result, even if Sasmor is correct that that law is unconstitutional, he lacks standing to litigate the issue against the Judicial Defendants. I therefore respectfully recommend that the court dismiss with prejudice Sasmor's claims against defendants Fisher and Alt.

### C.    Defendant Powell

Like the Judicial Defendants, Powell makes several different arguments in support of his motion for judgment on the pleadings. He contends that Sasmor lacks standing, that Powell is not a real party in interest to this action, and that Powell is immune from suit by operation of the doctrine

15

**SPA015**

of qualified immunity. Here again, regardless of any other available basis for relief,[6] I conclude that the court can and should dismiss all of the Section 1983 claims against Powell with prejudice because Sasmor cannot demonstrate a cognizable injury arising from any of Powell's alleged constitutional violations. Moreover, that conclusion in turn suffices to warrant dismissal of all other claims against Powell as well.

### 1.   Count One: "All Persons" Warrants

As explained above with respect to the Judicial Defendants, Sasmor can demonstrate no cognizable injury arising from the issuance of "all persons" warrants pursuant to New York law. Accordingly, for the same reason that I recommend dismissal of the first cause of action with respect to the Judicial Defendants, I respectfully make the same recommendation with respect to Powell.

### 2.   Count Two: "Wildcard" Warrants

In his second cause of action, Sasmor claims a violation of the Fourth and Fourteenth Amendments on the basis that the warrants of eviction were unconstitutionally "imprecise," in that they did not "describe the subject premises with sufficient particularity to enable its objective identification." Amended Complaint ¶¶ 136, 137. Here again, because Sasmor is estopped from claiming a property interest in any of the subject premises, he cannot establish that he has suffered a constitutional deprivation as a result of the allegedly imprecise language of the warrants.[7]

---

[6]   While the court need not address the issue of qualified immunity, I conclude that Powell is also entitled to dismissal on that basis. He is alleged to have executed a facially valid warrant in accord with a state law that has never been held unconstitutional, and all of the alleged harms that Sasmor claims flow exclusively from that conduct, regardless of the propriety or impropriety of other aspects of Powell's conduct that Sasmor criticizes as unlawful.

[7]   Even if he were not so estopped, this second claim would fail on its own terms: however imprecise the wording of the warrants may have been, Sasmor acknowledges that Powell did not rely on that wording in executing the warrants – he relied instead on Goldberger's guidance – and

### 3.   Count Three: Granting Possession To The Trust

In his third cause of action, Sasmor alleges a constitutional violation based on the fact that the eviction warrants granted possession of the subject premises to the Trust. Just as he is estopped from claiming any property interest in the premises that would support a cognizable claim of harm, Sasmor is also estopped from prosecuting the legal theory on which he bases this claim – namely, that the Trust is "not a person or entity itself and is not capable of owning property in its name[.]" Amended Complaint ¶ 139. Sasmor made that same argument in the Housing Court proceeding in which he was a named party, and the court explicitly and necessarily rejected it when, after a trial, the court awarded possession of the room Sasmor occupied to the Trust. *See* DE 58, Ex. A (Housing Court Decision and Order) at 10 ("Although [Sasmor] w[as] able to present evidence of inconsistencies in some of the testimony and documents in relation to the trust agreement ... the evidence was insufficient to prove, by a preponderance of the evidence, that [the Trust] is not entitled to possession of [Apartment 4F]."); *id.* at 12 ("Although [Sasmor] argue[s] that the petitioner-trust cannot hold property or bring a lawsuit in its own name, a trust is a legal entity capable of owning property or bringing a lawsuit.") (citing *In re Ihmsen's Estate*, 3 N.Y.S.2d 125 (App. Div. 1938); *Bedford Apts. Co. v. Coutts*, NYLJ, Nov. 30, 2000, at 29, Col. 6 (App. Term). Having had a full and fair opportunity to litigate the issue in the Housing Court, Sasmor is estopped from raising it again here. *See, e.g.*, *Sullivan*, 487 F. Supp. 2d at 64-65; *Moran*, 346 F. Supp. 2d at 515.

---

in any event Powell executed the warrants in the correct locations. If the description of the subject premises had led Powell to execute the warrants at any location other than the rooms formerly occupied by Fletcher, Diaz, and Rosenbaum, Sasmor could not claim, as he does in Count One, that the execution of those warrants deprived him of his alleged interest those premises.

17

4.    Count Four: Powell's Refusal To Display His Badge And The Warrants

In his fourth cause of action, Sasmor asserts that Powell violated his constitutional rights when he executed the eviction warrants for the rooms formerly occupied by Fletcher, Diaz, and Rosenbaum on July 13 and 20, 2011, by refusing to show Sasmor his badge or copies of the warrants. Once again, Sasmor's established lack of any property interest in those rooms is fatal to his ability to assert a cognizable injury arising from that claimed violation. Moreover, even if Sasmor could demonstrate a property interest in the rooms, he has identified no legal authority to support the proposition that in executing the warrants, Marshal Powell violated any right that Sasmor enjoyed under federal law to demand to see Powell's badge or the warrants. He also cannot demonstrate any cognizable harm that might have flowed specifically from Powell's refusal to display those items (as opposed to any harm flowing from the actual execution of the warrants). I therefore respectfully recommend that the court dismiss Count Four with prejudice.

5.    Count Five: Warrantless Entry

In his fifth cause of action, Sasmor alleges that Powell violated his constitutional rights by entering his home "without permission and without a valid warrant" on July 13, July 20, and September 20, 2011. Amended Complaint ¶ 145. To the extent this count relates to Powell's conduct in July 2011, there is no dispute that he acted on the basis of warrants that were issued in accordance with New York law. That portion of the claim thus rests on the proposition that the warrants Powell executed were not valid because they were issued in violation of the federal constitution. In that sense the claim is duplicative of the first three, and must fail for the same reasons.

18

To the extent the claim relates to the allegations that a process server, acting as Powell's agent, took certain actions at 287 Franklin on September 20, 2011, I conclude that the claims fail for slightly different reasons. The Amended Complaint does not allege that the process server entered any of the residential rooms at 287 Franklin Avenue. I therefore interpret the claim to be based on an alleged trespass into the building's common areas.

I have no reason to conclude that Sasmor is estopped from having a sufficient property interest in those common areas to support a claim for an unconstitutional entry into those areas under Section 1983. Instead, I conclude that Sasmor's claim is not actionable because, even if the process server's entry into the common areas of the building violated Sasmor's Fourth Amendment rights, the violation was "a *de minimis* level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

Sasmor alleges only that the process server entered the building and slipped eviction notices over the doors of certain occupants' rooms. He does not allege that the process server searched the premises or that his actions resulted in any lasting deprivation of Sasmor's property interests. *See Artes-Roy v. City of Aspen*, 31 F.3d 958, 962-63 (10th Cir.1994) (building inspector's warrantless entry into plaintiff's foyer, even if Fourth Amendment violation, was *de minimis*). At most, the Amended Complaint alleges that the alleged unlawful entry by Powell's agent on September 20, 2011, resulted in some minor damage to the front door of a building that Sasmor does not and cannot claim to own. *See Amended Complaint.* ¶ 86. Such an insubstantial injury does not give rise to an actionable constitutional violation. *See, e.g.*, *Porter v. Jewell*, 453 F. App'x 934, 937 (11th Cir. 2012) (finding *de minimis* injury, not actionable under the Fourth Amendment, where officer banged on and kicked tenant's apartment door several times cracking the doorframe

19

**SPA019**

and damaging the deadbolt); *see also United States v. Jacobson*, 466 U.S. 109, 125 (1984) (destruction of small amount of powder during field test for cocaine a *de minimis* seizure). I therefore respectfully recommend that the court dismiss Count Five with prejudice.

### 6. Count Six: Civil Rights Conspiracy

Sasmor concedes that his conspiracy claim, *see* Amended Complaint ¶¶ 146-148 (citing 42 U.S.C. § 1985) is "insufficiently pleaded" because he has not alleged that the conduct of which he complaints was the result of any unlawful discriminatory animus. *See* DE 53-1 (Sasmor's memorandum of law) at 26. His claim should therefore be dismissed. *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993). The pleading defect is potentially curable, and by itself warrants only dismissal without prejudice.[8] I nevertheless recommend dismissal with prejudice because, for the reasons set forth above, even if the defendants acted with an improper motive, they did not cause Sasmor to suffer any cognizable harm that would support a cause of action for the alleged conspiracy to violate of his civil rights.

### 7. Counts 7-13: State Law Claims

In light of my conclusion that all of Sasmor's claims under federal law should be dismissed with prejudice, I also conclude that the court should decline to exercise supplemental jurisdiction over the remaining claims under state law. *See* 28 U.S.C. § 1367(c)(3) (providing that a court "may" decline to exercise such supplemental jurisdiction after dismissal of all claims over which it has original jurisdiction); *Castellano v. Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)) (suggesting that a court "should" do so).

---

[8] Sasmor contends that he would, if allowed, allege "that the Defendants discriminated against him because he is not a Chasidic Jew." DE 53-1 at 26. At a minimum, the record discloses no basis upon which Sasmor might plausibly make such an allegation with respect to Fisher, Alt, and Powell consistent with the requirements of Federal Rule of Civil Procedure 11(b).

20

D.    The Private Defendants

Sasmor asserts all of the same claims against the Private Defendants that he asserts against

Powell, and I therefore recommend the dismissal of those claims with prejudice with respect to the

Private Defendants for the same reasons as set forth above with respect to Powell. In addition

because the Private Defendants are not state actors, they may only be held liable on the federal

causes of action if they conspired with or engaged in joint activity with defendants who are state

actors – namely, Powell, Fisher, and Alt. *Ginsberg v. Healy Car & Truck Leasing, Inc.*, 189 F.3d

268, 271 (2d Cir.1999); *Puletti v. Patel*, 2006 WL 2010809, at *6 (E.D.N.Y. 2006); *Storck v.

Suffolk Cty. Dep't. of Soc. Servs.*, 62 F.Supp.2d 927, 940 (E.D.N.Y. 1999). Dismissal of all of the

federal causes of action against those state actors would require the dismissal of those claims

against the Private Defendants as well. *See Caporicci v. Nassau County Police Dept.*, 2007 WL

764535, at *5 (E.D.N.Y. 2007) (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir.

1995)).

E.    Preliminary Injunction

If the court accepts my recommendation to dismiss the Amended Complaint in its entirety,

Sasmor's motion for a preliminary injunction will be moot. Even if some of Sasmor's claims

survive, however, I would in any event conclude that Sasmor cannot meet the requirements for a

preliminary injunction. For the reasons summarized above, among others, he is not likely to

succeed on the merits of his claims; and he unable to demonstrate anything more than a mere

possibility that he will suffer irreparable harm in the absence of injunctive relief.

21

III.  Recommendation

For the reasons set forth above, I respectfully recommend that the court grant the defendants' motions to dismiss the Amended Complaint in its entirety, with prejudice as to the causes of action asserted under federal law, and that it deny plaintiff Sasmor's motion for a preliminary injunction as moot.

IV.  Objections

Any objections to this Report and Recommendation must be filed no later than March 11, 2013.[9] Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
February 21, 2013

                                       /s/
                                JAMES ORENSTEIN
                                U.S. Magistrate Judge

---

[9] Although he is proceeding *pro se*, Sasmor has arranged to receive electronic notification of all filings in this case via the court's ECF docketing system. He will therefore receive this document at the time of its filing on the docket.

SPA022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————X

JON SASMOR,

                  Plaintiff,

      -against-

STEVEN POWELL, Individually and as City
Marshal; CHAIM GOLDBERGER a/k/a/ HENRY
GOLDBERG; HENRY MANAGEMENT, LLC;
ISAAC TEITELBAUM a/k/a ISAAC TITALBAUM;
ABRAHAM SCHNEEBALG; FERN FISHER,
Individually and as Deputy Chief Administrative
Judge for the New York City Courts; and CAROL
ALT, Individually and as Chief Clerk of the Civil
Court of the City of New York,

                  Defendants.

————————————————————X

**ORDER ADOPTING REPORT
& RECOMMENDATION**

11-CV-4645 (KAM) (JO)

**MATSUMOTO, United States District Judge:**

       On September 26, 2011, *pro se* plaintiff Jon Sasmor commenced this action

pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, seeking injunctive and declaratory relief and

damages arising from the execution of certain eviction warrants pursuant to section 749(1) of the

New York Real Property Actions and Proceedings Law[1] ("RPAPL") at a building located at 287

Franklin Avenue (the "residence"), in Brooklyn, New York, in which plaintiff had a lease for one

room. (ECF No. 1, Complaint.)  Plaintiff paid the filing fee to commence this action.  On

October 11, 2011, plaintiff amended his complaint (ECF No. 6, Amended Complaint, filed

10/11/2011 ("Am. Compl.")) after the court denied his previous request for a temporary

---

[1]Subsection 749(1) of the New York Real Property Actions and Proceedings Law states:

    Upon rendering a final judgment for petitioner, the court shall issue a warrant directed to the
    sheriff of the county or to any constable or marshal of the city in which the property, or a portion
    thereof, is situated, or, if not situated in a city, to any constable of any town in the county,
    describing the property, and commanding the officer to remove all persons, and, except where the
    case is within section 715, to put the petitioner into full possession.

restraining order that accompanied plaintiff's initial complaint (ECF No. 5, Order Denying

Request for Temporary Restraining Order, dated 9/26/2011).

Plaintiff's amended complaint names as defendants the private management

company and three individuals who own and manage the residence, Henry Management, LLC,

Chaim Goldberger, Isacc Teitelbaum, and Abraham Schneelbag (the "Private Defendants"); the

New York City Marshal who executed the eviction warrants at issue, Steven Powell; and a state

court judge, Fern Fisher, and a state court clerk, Carol Alt (together, the "Judicial Defendants"),

who were nominally involved in the eviction proceedings that precipitated the instant action.

(*See generally* Am. Compl.) These three groups of defendants moved separately to dismiss

plaintiff's complaint.[2] (ECF Nos. 38, 45, 48.) Plaintiff opposed each of defendants' motions to

dismiss (ECF Nos. 51-1, 52-1, 53-1), and the moving defendants all submitted reply briefs in

support of their respective motions (ECF Nos. 44, 47, 49).

Additionally, plaintiff moved for a preliminary injunction barring any further

evictions (not just those that affect him) in New York state pursuant to RPAPL § 749, which

plaintiff claims is unconstitutional. (ECF No. 54.) The Judicial Defendants opposed plaintiff's

motion for a preliminary injunction (ECF No. 50), and plaintiff submitted a reply thereto (ECF

No. 55-1). On August 31, 2012, the court referred all of the aforementioned motions to

Magistrate Judge James Orenstein for a report and recommendation. (Order Referring Motion,

dated 8/31/2012.)

---

[2] Because Powell and the Private Defendants filed answers to plaintiff's amended complaint before filing their
respective motions to dismiss the amended complaint (*see* ECF Nos. 9, 20), Judge Orenstein appropriately construed
these motions to dismiss as motions for judgment on the pleadings, which are decided under the same standard as a
motion to dismiss for failure to state a claim. Judge Orenstein also properly considered exhibits to the extent they
were incorporate by reference into the amended complaint or were relevant public records of the Housing Court and
Appellate Division referenced in the amended complaint. (R&R at 6, 8 (citing *Irish Lesbian & Gay Org. v.
Guiliani*, 143 F.3d 638, 644 (2d Cir. 1998).)

**SPA024**

## DISCUSSION

Presently before the court is the Report and Recommendation issued by
Magistrate Judge Orenstein on February 21, 2013. (ECF No. 61, Report and Recommendation,
dated 2/21/2013 ("R&R").) Judge Orenstein recommended that the court deny plaintiff's motion
for a preliminary injunction, grant all of the defendants' motions to dismiss in their entirety, and
dismiss plaintiff's amended complaint in its entirety, with prejudice to all of plaintiff's federal
claims therein. (R&R at 1, 22.) As explicitly stated in the R&R, any objections to the R&R's
recommendations were to be filed by March 11, 2013 (*id.* at 22), but the court extended the
deadline to March 15, 2013 in response to plaintiff's request for more time to file his objections
(Order, dated 3/6/2013). Because the *pro se* plaintiff has been afforded the unusual privilege of
being permitted to file his submissions electronically, plaintiff was served with the R&R via the
ECF filing system on the same day the R&R was issued. (R&R at 22, n.9.)

On March 15, 2013, plaintiff timely filed his objections to Judge Orenstein's
recommendations in the R&R. (ECF No. 63, Plaintiff's Objections, filed 3/15/2013 ("Pl.
Obj.").) As discussed below, plaintiff has presented twenty objections to Judge Orenstein's
recommendations in the R&R. (*See generally* Pl. Obj.)

On March 21, 2013, the Judicial Defendants and the Private Defendants timely
filed their respective responses to plaintiff's objections to the R&R. (ECF No. 64, Judicial
Defendants' Response to Plaintiff's Objections, filed 3/21/2013; ECF No. 65, Private
Defendants' Response to Plaintiff's Objections, filed 3/21/2013.) Defendant Powell did not file
any response to plaintiff's objections to the R&R.

**SPA025**

## I.   Legal Standard

In reviewing a Report and Recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party makes specific and timely objections to a magistrate judge's findings or recommendations as to dispositive motions, the district court must apply a *de novo* standard of review to the portions of the Report and Recommendation to which the objection is made. Fed. R. Civ. P. 72(b); *Mazzei v. Abbott Labs. & Co.*, Nos. 10-cv-1011, 10-cv-2233, 2012 WL 1101776, at *1 (E.D.N.Y. Apr. 2, 2012) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010)); *see also* 28 U.S.C. § 636(b)(1). However, "'general or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error.'" *Caldarola v. Town of Smithtown*, No. 09-cv-272, 2011 WL 1336574, at *1 (E.D.N.Y. Apr. 4, 2011); *see also Vega v. Artuz*, No. 97-cv-3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (noting that "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke *de novo* review"). Additionally, the court is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are interposed. *Caldarola*, 2011 WL 1336574, at *1 (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)). Furthermore, even on a *de novo* review of a party's specific objections, the court ordinarily will not consider "'arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the magistrate judge in the first instance.'" *J.P.T. Auto., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 659 F. Supp. 2d 350, 352-53 (E.D.N.Y. 2009) (quoting *Kennedy v. Adamo*, No. 02-cv-1776, 2006 WL 3704784, at *1 (E.D.N.Y. 2006)).

**SPA026**

## II.    Analysis[3]

As an initial matter, the court notes that all of plaintiff's arguments in support of his twenty objections to Judge Orenstein's recommendations in the R&R have been raised in plaintiffs' various oppositions to the defendants' motions to dismiss, and also significantly overlap with the arguments plaintiff advanced in support of his motion for a preliminary injunction. For example, plaintiff's rehashes at length in his objection to Judge Orenstein's finding that plaintiff lacks standing to bring claims under to 42 U.S.C. § 1983 the same arguments he previously raised in all three of his oppositions to the motions to dismiss (ECF No. 51-1, at 22-42; ECF No. 52-1, at 5-31; ECF No. 53-1, at 3-25) and in support of plaintiff's motion for a preliminary injunction (ECF No. 54-2, at 10-32), to wit, plaintiff's claim that defendants violated his Fourth Amendment rights, his "property" interests, his "liberty interests" guaranteed by "procedural due process," his "privacy" interests, his equal protection rights, and his substantive due process guarantees by issuing and executing eviction warrants pursuant to the purportedly unconstitutional "all persons" warrant statute, RPAPL § 749. (Pl. Obj. at 2-5, 20-21.) Similarly, plaintiff's instant objections reciting his view that he has standing and is not collaterally estopped, precluded, or otherwise "bound" by the state courts' judgments regarding the eviction proceedings for plaintiff's own apartment and the apartments of his neighbors (Pl. Obj. at 5-20, 22-26), merely repeat plaintiff's arguments in opposition to defendants' motions to dismiss (ECF No. 51-1, at 9, 14-15, 43-44; ECF No. 52-1, at 19, n.40, 27-28, n.54, 41-42; ECF No. 53-1, at 20-21, nn.34 & 30), and in support of his preliminary injunction request (ECF No. 54-2, at 24-25, 27-28). The same is true of plaintiff's objections that the R&R misapplied or misunderstood RPAPL § 711, N.Y. City Admin. Code § 26-51, and New York's landlord-tenant

---

[3] Given the extraordinary amount of paper and ink already devoted by plaintiff and defendants to the facts at bar, the court will not repeat the underlying facts of this case in the instant Memorandum and Order, and incorporates by reference the R&R's impressively concise statement of facts. (*See* R&R at 1-7.)

5

**SPA027**

common law (Pl. Obj. at 27-32), which are based on the same contentions plaintiff proffered in his oppositions to the motions to dismiss (ECF No. 51-1, at 26-29, nn.42-43 & 45, 35-36; ECF No. 52-1, at 10-13, 25-26; ECF No. 53-1, at 4-7, nn.7 & 9, 18-19) and his motion for a preliminary injunction (ECF No. 54-1, at 14-18, 25-26). Likewise, plaintiff has raised his ill-founded argument that the entity which the state courts have adjudicated as the owner of the subject premises, the Ronald Henry Land Trust, is not permitted to own property under New York law in his preliminary injunction motion, his oppositions to all defendants' motions to dismiss, and in his instant objections. (*See* Pl. Obj. at 13-15, 35; ECF No. 51-1, at 17, 33 n.56; ECF No. 52-1, at 18-19, nn. 37-40; ECF No. 53-1, at 12, 12 n.22; ECF No. 54-1, at 44-45.)

Because "objections that are merely . . . an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke *de novo* review*," this court would be justified in reviewing the R&R's recommendations on these issues only for clear error. *Vega*, 2002 WL 31174466, at *1; *accord Caldarola*, 2011 WL 1336574, at *1 ("'[G]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error.'"). Nonetheless, the court has conducted an independent, *de novo* review of the pleadings, defendants' respective motions to dismiss and/or for judgment on the pleadings, plaintiff's exhaustive oppositions to those motions, defendants' reply briefs in support of the motions, all the submissions in support of and in opposition to plaintiff's motion for a preliminary injunction, and the relevant, controlling case law. Not only has the court determined that there is no clear error in Judge Orenstein's thorough and well-reasoned recommendations in the R&R, the court agrees completely with Judge Orenstein's incisive analysis on a *de novo* review as well.

**SPA028**

As correctly and succinctly stated in the R&R, the underlying flaw in all of

plaintiff's federal claims is that plaintiff cannot plausibly plead he has standing to bring them, as

that concept has been articulated many times by the Supreme Court and other federal courts.

(*See* R&R at 7-8, 13-14 (citing *Iqbal v. Ashcroft*, 556 U.S. 662, 679; *Libby v. Merrill*, 2003 WL

21756830, at *5 (D. Me. July 29, 2003)); *see also Pungitore v. Barbera*, No. 12-cv-1795, 2012

WL 6621437, at *2-3 (2d Cir. Dec. 20, 2012) ("While this plausibility standard is not 'akin to a

probability requirement,' it 'asks for more than a sheer possibility that a defendant has acted

unlawfully.'" (quoting *Iqbal*, 556 U.S. at 678, and affirming district court's dismissal of

complaint for failure to plausibly plead cognizable injury)). Despite plaintiff's objections to the

contrary, plaintiff's amended complaint and attachments thereto reveal that (i) plaintiff was

provided a forum in New York City's Housing Court, including a five-day trial and appeal, to

pursue his right to oppose the eviction proceeding for his own apartment; (ii) plaintiff actually

appeared and made motions to intervene in the eviction proceedings for the apartments formerly

occupied by Fletcher, Diaz, and Rosenbaum, but failed to appeal the denial of his motions to

either the New York Supreme Court or the Appellate Division, on either their merits or to raise

any constitutional challenges[4]; and (iii) to the extent plaintiff claims his right to occupy the

apartments of Campos, Osterweil, and Skubtyte is derived from his alleged predecessors-in-

---

[4] The Supreme Court of New York has concurrent jurisdiction over all summary proceedings, including eviction warrants and other proceedings involving real property. Additionally, litigants may appeal orders denying motions to intervene in New York Civil Court to the appropriate Appellate Term. *See, e.g., Wager v. Haberman*, 85 Misc. 2d 314, 317-19 (Sup. Ct. 1975) (reversing Appellate Term's denial of petitioner's appeal from New York Civil Court's denial of motion to intervene in underlying eviction proceedings, and granting stay of execution of eviction warrant to permit time for non-party movant to challenge to eviction proceedings from which he had been previously excluded). Finally, litigants are fully permitted to challenge the constitutionality of New York state statutes in Article 78 proceedings before New York Supreme Court, and, where they fail to do so, New York courts find those challenges barred by *res judicata. See, e.g., Junk'n Doughnuts Inc. v. Dep't of Consumer Affairs of City of New York*, 49 A.D.3d 464, 465 (1st Dep't 2008) (observing that "[b]ecause the constitutional challenges plaintiff raises in the instant action arose out of the same transaction from which his article 78 claims arose, and plaintiff could have raised them in the article 78 proceeding, the constitutional challenges are barred by the doctrine of *res judicata*;" and reversing trial court's denial of motion to dismiss complaint) (citing *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)), *appeal dismissed by*, 10 N.Y.2d 950 (2008).

SPA029

interest after they vacated their apartments, those three tenants appeared themselves in Housing

Court and unsuccessfully opposed the eviction proceedings regarding their apartments. (*See*

R&R at 10-15 (citing, *inter alia*, Housing Court pleadings and eviction proceedings documents

attached by plaintiff to amended complaint).)  The court thus finds no reason to disagree with

Judge Orenstein's conclusion that plaintiff is bound by the state court judgments foreclosing his

claimed right to those rooms, and by the doctrines of *res judicata* and *Rooker-Feldman* from

relitigating those issues before this court. (*See id.* (citing cases).)  Further, the court concurs

with the R&R's observation that plaintiff lacks standing to litigate the purported questions

regarding the constitutionality of RPAPL § 749.[5] (*Id.* at 15); *see also Sundwall v. Ment*, 229

F.3d 1136, 1136 (2d Cir. 2000) (holding that plaintiff's complaint alleging violation of the Due

Process and Equal Protection clauses by operation of Connecticut's lien and foreclosure laws did

not allege "a cognizable 'actual or threatened' injury," and thus district court properly dismissed

---

[5] Indeed, although the court does not pass on the constitutionality of RPAPL § 749 because plaintiff lacks standing to confer jurisdiction over his claims in that respect, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) ("Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning."), the court notes that RPAPL § 749, as well as New York's broader scheme for summary evictions, has been enforced and interpreted by many courts, including the Second Circuit, without reference to any constitutional infirmities. *See, e.g., Super Nova 330 LLC v. Gazes*, 693 F.3d 138, 141-44 (2d Cir. 2012) (addressing whether the issuance or execution of eviction warrant under RPAPL § 749 renders a lease "unexpired" for purposes of the Bankruptcy Code); *Stern v. Regency Towers, LLC*, 886 F. Supp. 2d 317, 323-326 (S.D.N.Y. 2012) (describing New York's tenant-landlord law, including RPAPL § 749, as providing "a means to challenge the adequacy of the notice of the eviction and, by extension, the timing and propriety of the eviction itself" which satisfies federal constitutional due process, and rejecting plaintiff's claims under § 1983 and for state-law fraud and conversion); *Velazquez v. Thompson*, 321 F. Supp. 34, 37-41 (S.D.N.Y. 1970) (reviewing New York's process for summary eviction proceedings, including RPAPL § 749, and rejecting plaintiff's federal constitutional challenges under the Fourth, Ninth, and Fourteenth Amendments, and Due Process and Equal Protection clauses, and denying plaintiff's request for injunctive relief), *aff'd*, 451 F.2d 202 (2d Cir. 1971); *see also Mennella v. Lopez-Torres*, 91 N.Y.2d 474, 478 (1998) ("[A]rticle 7 [of the RPAPL] represents the Legislature's attempt to balance the rights of landlords and tenants to provide for expeditious and fair procedures for the determination of disputes involving the possession of real property.  To those ends, article 7 provides an elaborate set of notice requirements to ensure that tenants are not unjustly evicted from premises without an opportunity to defend.  Correspondingly, the Legislature has given a clear legal right to prompt recovery of the premises to a landlord who has satisfied the statutory procedural requirements of notice and filing, upon a default in answering or appearing by the tenant (*see*, RPAPL 732, *749*)." (citations omitted) (internal quotation marks omitted) (emphasis added)).

her complaint, where plaintiff had litigated her merit-based and constitutional challenges to the state laws in state court).

Moreover, the court agrees with Judge Orenstein's keen observation that plaintiff's amended complaint is, at bottom, a rehashing of his state court landlord-tenant dispute which should not be entertained in federal court. (R&R at 7); *see also Trang v. Concris Realty Co.*, No. 05-cv-5441, 2005 WL 1398004, at *2-3 (E.D.N.Y. June 14, 2005) (declining to exercise federal jurisdiction over plaintiff's purported claims under § 1983 or for violation of federal due process that arose from landlord-tenant dispute resulting in Housing Court's grant of eviction order to landlord, and dismissing complaint for lack of jurisdiction, or in the alternative, for failure to state a claim); *Chiania v. Broadmoor Assocs.*, No. 94-cv-0613, 1994 WL 30412, at *1 (S.D.N.Y. Feb. 2, 1994) (dismissing complaint for lack of federal jurisdiction where plaintiff's purportedly "constitutional" claims were merely state court claims arising from acrimonious landlord-tenant dispute over eviction proceedings "recloaked in constitutional garb"). In the absence of any viable claims based in federal law, therefore, the R&R properly recommended that the court decline to exercise supplemental jurisdiction over plaintiff's remaining state-law claims. (R&R at 20 (citing *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)).)

In sum, when applying the above controlling principles of federal law, and after independently reviewing all of the parties' submissions in support of and opposition to the pending motions to dismiss and for a preliminary injunction, the record facts, and applicable precedent, the court adopts as the opinion of the court and affirms in its entirety the R&R's recommendations to grant defendants' motions to dismiss, to dismiss plaintiff's amended complaint with prejudice to his federal claims, and to deny plaintiff's request for a preliminary injunction.

9

**SPA031**

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss plaintiff's complaint and/or motions for judgment on the pleadings are granted, plaintiff's complaint is dismissed in its entirety, with prejudice to the federal claims therein, and the court will not exercise jurisdiction over plaintiff's remaining state-law claims. Also for the reasons set forth above, plaintiff's request for a preliminary injunction is denied. The court further certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purposes of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully requested to serve a copy of this Memorandum and Order on the *pro se* plaintiff and note service on this docket within three days of entering this Memorandum and Order. The Clerk of Court is further respectfully requested to enter judgment in favor of defendants, to serve the *pro se* plaintiff with a copy of the judgment and the appeals packet, and to close this case.

**SO ORDERED.**

**Dated:**     March 31, 2013
            Brooklyn, New York

                                        /s/
                            _____
                            Kiyo A. Matsumoto
                            United States District Judge
                            Eastern District of New York

**SPA032**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

JON SASMOR,                                    JUDGMENT
                                               11-CV- 4645 (KAM)

                     Plaintiff,

          -against-

STEVEN POWELL, Individually and as City
Marshal; CHAIM GOLDBERGER a/k/a HENRY
GOLDBERG; HENRY MANAGEMENT, LLC;
ISAAC TEITELBAUM a/k/a ISAAC TITALBAUM;
ABRAHAM SCHNEEBALG; FERN FISHER,
Individually and as Deputy Chief Administrative
Judge for the New York City Courts; and CAROL
ALT, Individually and as Chief Clerk of the Civil
Court of the City of New York,

                     Defendants.

---------------------------------------------------------X

    An Order of Honorable Kiyo A. Matsumoto, United States District Judge, having

been filed on March 31, 2013, adopting in its entirety the Report and Recommendation of

Magistrate Judge James Orenstein, dated February 21, 2013; granting Defendants' motions to

dismiss Plaintiff's complaint and/or motions for judgment on the pleadings; dismissing

Plaintiff's complaint in its entirety, with prejudice to the federal claims therein; ordering that the

Court will not exercise jurisdiction over Plaintiff's remaining state law claims and dismissing

those claims without prejudice; denying Plaintiff's request for a preliminary injunction; certifying

pursuant to 28 U.S.C. § 1915(a)(3) any appeal from the Court's Order would not be taken in

good faith; and denying *in forma pauperis* status for purposes of an appeal; and directing the

Clerk of Court to enter judgment in favor of Defendants; it is

JUDGMENT 11-CV-4645 (KAM)

        ORDERED and ADJUDGED that Defendants' motions to dismiss Plaintiff's

complaint and/or motions for judgment on the pleadings are granted; and that judgment is hereby

entered in favor of Defendants Steven Powell, Individually and as City Marshal, Chaim

Goldberger a/k/a Henry Goldberg, Henry Management, LLC, Isaac Teitelbaum a/k/a Isaac

Titalbaum, Abraham Schneebalg, Fern Fisher, Individually and as Deputy Chief Administrative

Judge for the New York City Courts; and Carol Alt, Individually and as Chief Clerk of the Civil

Court of the City of New York and against Plaintiff Jon Sasmor dismissing the complaint in its

entirety, with the federal claims dismissed with prejudice and the state law claims dismissed

without prejudice; that pursuant to 28 U.S.C. § 1915(a)(3) any appeal from the Court's Order

would not be taken in good faith; and that *in forma pauperis* status is denied for purposes of an

appeal

Dated: Brooklyn, New York                     Douglas C. Palmer
       April 02, 2013                        Clerk of Court

                                          by:     */s/ Janet Hamilton*
                                                Deputy Clerk

SPA034

# TEXT OF SIGNIFICANT CONSTITUTIONAL PROVISIONS

U.S. Const., Amend. IV:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[available at http://www.senate.gov/civics/constitution_item/constitution.htm#amendments] [downloaded on July 8, 2013]

U.S.Const., Amend. XIV, § 1:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[available at http://www.senate.gov/civics/constitution_item/constitution.htm#amendments] [downloaded on July 8, 2013]

**SPA035**

## TEXT OF SIGNIFICANT STATUTORY PROVISIONS

28 U.S.C. § 636(b)(1) provides:

Notwithstanding any provision of law to the contrary -
  (A) a judge may designate a magistrate judge to hear and
determine any pretrial matter pending before the court, except a
motion for injunctive relief, for judgment on the pleadings, for
summary judgment, to dismiss or quash an indictment or
information made by the defendant, to suppress evidence in a
criminal case, to dismiss or to permit maintenance of a class
action, to dismiss for failure to state a claim upon which relief
can be granted, and to involuntarily dismiss an action. A judge
of the court may reconsider any pretrial matter under this
subparagraph (A) where it has been shown that the magistrate
judge's order is clearly erroneous or contrary to law.
  (B) a judge may also designate a magistrate judge to conduct
hearings, including evidentiary hearings, and to submit to a
judge of the court proposed findings of fact and recommendations
for the disposition, by a judge of the court, of any motion
excepted in subparagraph (A), of applications for posttrial
relief made by individuals convicted of criminal offenses and of
prisoner petitions challenging conditions of confinement.
  (C) the magistrate judge shall file his proposed findings and
recommendations under subparagraph (B) with the court and a copy
shall forthwith be mailed to all parties.

Within fourteen days after being served with a copy, any party may
serve and file written objections to such proposed findings and
recommendations as provided by rules of court. A judge of the court
shall make a de novo determination of those portions of the report
or specified proposed findings or recommendations to which
objection is made. A judge of the court may accept, reject, or
modify, in whole or in part, the findings or recommendations made
by the magistrate judge. The judge may also receive further

**SPA036**

evidence or recommit the matter to the magistrate judge with instructions.

[available at http://uscode.house.gov/download/pls/28C43.txt] [downloaded on July 8, 2013]

Cal. Civ. Proc. Code § 415.46 provides:

(a) In addition to the service of a summons and complaint in an action for unlawful detainer upon a tenant and subtenant, if any, as prescribed by this article, a prejudgment claim of right to possession may also be served on any person who appears to be or who may claim to have occupied the premises at the time of the filing of the action. Service upon occupants shall be made pursuant to subdivision (c) by serving a copy of a prejudgment claim of right to possession, as specified in subdivision (f), attached to a copy of the summons and complaint at the same time service is made upon the tenant and subtenant, if any.

(b) Service of the prejudgment claim of right to possession in this manner shall be effected by a marshal, sheriff, or registered process server.

(c) (1) When serving the summons and complaint upon a tenant and subtenant, if any, the marshal, sheriff, or registered process server shall make a reasonably diligent effort to ascertain whether there are other adult occupants of the premises who are not named in the summons and complaint by inquiring of the person or persons who are being personally served, or any person of suitable age and discretion who appears to reside upon the premises, whether there are other occupants of the premises.

(2) If the identity of such an occupant is disclosed to the officer or process server and the occupant is present at the premises, the officer or process server shall serve that occupant with a copy of the prejudgment claim of right to possession attached to a copy of the summons and complaint. If personal service cannot be made upon that occupant at that time, service may be effected by leaving a copy of a

**SPA037**

prejudgment claim of right to possession attached to a copy of the summons and complaint addressed to that occupant with a person of suitable age and discretion at the premises, affixing the same so that it is not readily removable in a conspicuous place on the premises in a manner most likely to give actual notice to that occupant, and sending the same addressed to that occupant by first-class mail.

(3) In addition to the service on an identified occupant, or if no occupant is disclosed to the officer or process server, or if substituted service is made upon the tenant and subtenant, if any, the officer or process server shall serve a prejudgment claim of right to possession for all other persons who may claim to occupy the premises at the time of the filing of the action by leaving a copy of a prejudgment claim of right to possession attached to a copy of the summons and complaint at the premises at the same time service is made upon the tenant and subtenant, if any, affixing the same so that it is not readily removable in a conspicuous place on the premises so that it is likely to give actual notice to an occupant, and sending the same addressed to "all occupants in care of the named tenant" to the premises by first-class mail.

(4) The person serving process shall state the date of service on the prejudgment claim of right to possession form. However, the absence of the date of service on the prejudgment claim of right to possession does not invalidate the claim.

(d) Proof of service under this section shall be filed with the court and shall include a statement that service was made pursuant to this section. Service on occupants in accordance with this section shall not alter or affect service upon the tenant or subtenant, if any.

(e) (1) If an owner or his or her agent has directed and obtained service of a prejudgment claim of right to possession in accordance with this section, no occupant of the premises, whether or not that occupant is named in the judgment for possession, may object to the enforcement of that judgment as prescribed in Section 1174.3.

(2) In any action for unlawful detainer resulting from a foreclosure sale of a rental housing unit pursuant to Section 1161a, paragraph (1) shall not limit the right of any tenant or subtenant of the property to file a prejudgment claim of right of possession pursuant to subdivision

**SPA038**

(a) of Section 1174.25 at any time before judgment, or to object to enforcement of a judgment for possession as prescribed in Section 1174.3, whether or not the tenant or subtenant was served with a prejudgment claim of right to possession.

(f) The prejudgment claim of right to possession shall be made on the following form:

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

NOTICE OF INCOMPLETE TEXT: The Prejudgment Claim of Right to Possession form appears in the hard-copy publication of the chaptered bill. See Sec. 2 of Chapter 562, Statutes of 2012.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

\*PRINTER PLEASE NOTE: TIP-IN MATERIAL TO BE INSERTED

[available at http://www.leginfo.ca.gov/cgi-bin/displaycode?section=ccp&group=00001-01000&file=415.10-415.95] [downloaded on July 8, 2013]

[continued with form on next page] [form available at http://www.courts.ca.gov/documents/cp105.pdf] [downloaded on July 8, 2013]

SPA039

**NOTICE:** EVERYONE WHO LIVES IN THIS RENTAL UNIT MAY BE EVICTED BY COURT ORDER. READ THIS FORM IF YOU LIVE HERE AND IF YOUR NAME IS NOT ON THE ATTACHED SUMMONS AND COMPLAINT.
1. If you live here and you do not complete and submit this form within 10 days of the date of service shown on this form, you will be evicted without further hearing by the court along with the persons named in the Summons and Complaint.
2. If you file this form, your claim will be determined in the eviction action against the persons named in the Complaint.
3. If you do not file this form, you will be evicted without further hearing.

| | |
|---|---|
| CLAIMANT OR CLAIMANT'S ATTORNEY *(Name and Address)*:                    TELEPHONE NO.: | *FOR COURT USE ONLY* |
| ATTORNEY FOR *(Name)*: | |

**NAME OF COURT:**
    STREET ADDRESS:
    MAILING ADDRESS:
    CITY AND ZIP CODE:
    BRANCH NAME:
      PLAINTIFF:

      DEFENDANT:

| | |
|---|---|
| **PREJUDGMENT CLAIM OF RIGHT TO POSSESSION** | CASE NUMBER: |

| | |
|---|---|
| **Complete this form only if ALL of these statements are true:**<br>**1. You are NOT named in the accompanying Summons and Complaint.**<br>**2. You occupied the premises on or before the date the unlawful detainer (eviction) Complaint was filed.**<br>**3. You still occupy the premises.** | *(To be completed by the process server)*<br>DATE OF SERVICE:<br>*(Date that this form is served or delivered, and posted, and mailed by the officer or process server)* |

I DECLARE THE FOLLOWING UNDER PENALTY OF PERJURY:

1. My name is *(specify)*:

2. I reside at *(street address, unit No., city and ZIP code)*:

3. The address of "the premises" subject to this claim is *(address)*:

4. On *(insert date)*: _____ , the landlord or the landlord's authorized agent filed a complaint to recover possession of the premises. *(This date is the court filing date on the accompanying Summons and Complaint.*

5. I occupied the premises on the date the complaint was filed *(the date in item 4)*. I have continued to occupy the premises ever since.

6. I was at least 18 years of age on the date the complaint was filed *(the date in item 4)*.

7. I claim a right to possession of the premises because I occupied the premises on the date the complaint was filed *(the date in item 4)*.

8. I was not named in the Summons and Complaint.

9. I understand that if I make this claim of right to possession, I will be added as a defendant to the unlawful detainer (eviction) action.

10. *(Filing fee)* I understand that I must go to the court and pay a filing fee of $ _____ or file with the court the form "Application for Waiver of Court Fees and Costs." I understand that if I don't pay the filing fee or file with the court the form for waiver of court fees within 10 days from the date of service on this form (excluding court holidays), I will not be entitled to make a claim of right to possession.

(Continued on reverse)

| | | |
|---|---|---|
| CP10.5 [New January 1, 1991] | **PREJUDGMENT CLAIM OF RIGHT**<br>**TO POSSESSION** | Code of Civil Procedure §§ 415.46,<br>715.010, 715.020, 1174.25 |
| | | **SPA040** |

| PLAINTIFF *(Name):* | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name):* | |

---

> **NOTICE: If you fail to file this claim, you will be evicted without further hearing.**

11. *(Response required within five days after you file this form)* I understand that I will have *five days* (excluding court holidays) to file a response to the Summons and Complaint after I file this Prejudgment Claim of Right to Possession form.

12. **Rental agreement.** I have *(check all that apply to you):*
   a. ☐ an oral rental agreement with the landlord.
   b. ☐ a written rental agreement with the landlord.
   c. ☐ an oral rental agreement with a person other than the landlord.
   d. ☐ a written rental agreement with a person other than the landlord.
   e. ☐ other *(explain):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

> WARNING: Perjury is a felony punishable by imprisonment in the state prison.

Date:

▶

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(TYPE OR PRINT NAME)                                                    (SIGNATURE OF CLAIMANT)

---

> **NOTICE:** If you file this claim of right to possession, the unlawful detainer (eviction) action against you will be determined at trial. At trial, you may be found liable for rent, costs, and, in some cases, treble damages.

---

## — NOTICE TO OCCUPANTS —

**YOU MUST ACT AT ONCE if all the following are true:**
   1. **You are NOT named in the accompanying Summons and Complaint.**
   2. **You occupied the premises on or before the date the unlawful detainer (eviction) complaint was filed.** *(The date is the court filing date on the accompanying Summons and Complaint.)*
   3. **You still occupy the premises.**

*(Where to file this form)* You can complete and SUBMIT THIS CLAIM FORM WITHIN 10 DAYS from the date of service (on the reverse of this form) at the court where the unlawful detainer (eviction) complaint was filed.

*(What will happen if you do not file this form)* If you do not complete and submit this form and pay a filing fee or file the form for proceeding in forma pauperis if you cannot pay the fee), YOU WILL BE EVICTED.

After this form is properly filed, you will be added as a defendant in the unlawful detainer (eviction) action and your right to occupy the premises will be decided by the court. *If you do not file this claim, you will be evicted without a hearing.*

---

CP10.5 [New January 1, 1991]        **PREJUDGMENT CLAIM OF RIGHT TO POSSESSION**        Page two

**SPA041**

Cal. Civ. Proc. Code § 715.010 provides:

> (a) A judgment for possession of real property may be enforced by a writ of possession of real property issued pursuant to Section 712.010. The application for the writ shall provide a place to indicate that the writ applies to all tenants, subtenants, if any, name of claimants, if any, and any other occupants of the premises.

> (b) In addition to the information required by Section 712.020, the writ of possession of real property shall contain the following:

> (1) A description of the real property, possession of which is to be delivered to the judgment creditor in satisfaction of the judgment.

> (2) A statement that if the real property is not vacated within five days from the date of service of a copy of the writ on the occupant or, if the copy of the writ is posted, within five days from the date a copy of the writ is served on the judgment debtor, the levying officer will remove the occupants from the real property and place the judgment creditor in possession.

> (3) A statement that any personal property, except a mobilehome, remaining on the real property after the judgment creditor has been placed in possession will be sold or otherwise disposed of in accordance with Section 1174 unless the judgment debtor or other owner pays the judgment creditor the reasonable cost of storage and takes possession of the personal property not later than 15 days after the time the judgment creditor takes possession of the real property.

> (4) The date the complaint was filed in the action that resulted in the judgment of possession.

> (5) The date or dates on which the court will hear objections to enforcement of a judgment of possession that are filed pursuant to Section 1174.3, unless a summons, complaint, and prejudgment claim of right to possession were served upon the occupants in accordance with Section 415.46.

> (6) The daily rental value of the property as of the date the complaint for unlawful detainer was filed unless a summons, complaint, and prejudgment claim of right of possession were served upon the occupants in accordance with Section 415.46.

> (7) If a summons, complaint, and prejudgment claim of right to

**SPA042**

possession were served upon the occupants in accordance with
Section 415.46, a statement that the writ applies to all tenants,
subtenants, if any, named claimants, if any, and any other occupants
of the premises.

   (c) At the time the writ of possession is served or posted, the
levying officer shall also serve or post a copy of the form for a
claim of right to possession, unless a summons, complaint, and
prejudgment claim of right to possession were served upon the
occupants in accordance with Section 415.46.

[available at http://www.leginfo.ca.gov/cgi-bin/displaycode?
section=ccp&group=00001-01000&file=715.010-715.050] [downloaded on July 8,
2013]

Cal. Civ. Proc. Code § 715.020 provides:

   To execute the writ of possession of real property:
   (a) The levying officer shall serve a copy of the writ of possession
on one occupant of the property. Service on the occupant shall be
made by leaving the copy of the writ with the occupant personally or,
in the occupant's absence, with a person of suitable age and discretion
found upon the property when service is attempted who is either an
employee or agent of the occupant or a member of the occupant's
household.

   (b) If unable to serve an occupant described in subdivision (a) at the
time service is attempted, the levying officer shall execute the writ of
possession by posting a copy of the writ in a conspicuous
place on the property and serving a copy of the writ of possession on
the judgment debtor. Service shall be made personally or by mail. If
the judgment debtor's address is not known, the copy of the writ may
be served by mailing it to the address of the property.

   (c) If the judgment debtor, members of the judgment debtor's
household, and any other occupants holding under the judgment
debtor do not vacate the property within five days from the date of
service on an occupant pursuant to subdivision (a) or on the judgment

**SPA043**

debtor pursuant to subdivision (b), the levying officer shall remove the occupants from the property and place the judgment creditor in possession. The provisions of Section 684.120 extending time do not apply to the five-day period specified in this subdivision.

(d) Notwithstanding subdivision (c), unless the person is named in the writ, the levying officer may not remove any person from the property who claims a right to possession of the property accruing prior to the commencement of the unlawful detainer action or who claims to have been in possession of the property on the date of the filing of the unlawful detainer action. However, if the summons, complaint, and prejudgment claim of right to possession were served upon the occupants in accordance with Section 415.46, no occupant of the premises, whether or not the occupant is named in the judgment for possession, may object to the enforcement of the judgment as prescribed in Section 1174.3.

[available at http://www.leginfo.ca.gov/cgi-bin/displaycode?
section=ccp&group=00001-01000&file=715.010-715.050] [downloaded on July 8, 2013]

Cal. Civ. Proc. Code § 1174.25 provides:

(a) Any occupant who is served with a prejudgment claim of right to possession in accordance with Section 415.46 may file a claim as prescribed in Section 415.46, with the court within 10 days of the date of service of the prejudgment claim to right of possession as shown on the return of service, which period shall include Saturday and Sunday but excluding all other judicial holidays. If the last day for filing the claim falls on a Saturday or Sunday, the filing period shall be extended to and including the next court day. Filing the prejudgment claim of right to possession shall constitute a general appearance for which a fee shall be collected as provided in Section 70614 of the Government Code. Section 68511.3 of the Government Code applies to the prejudgment claim of right to possession.

(b) At the time of filing, the claimant shall be added as a defendant

**SPA044**

in the action for unlawful detainer and the clerk shall notify the plaintiff that the claimant has been added as a defendant in the action by mailing a copy of the claim filed with the court to the plaintiff with a notation so indicating. The claimant shall answer or otherwise respond to the summons and complaint within five days, including Saturdays and Sundays but excluding all other judicial holidays, after filing the prejudgment claim of possession. Thereafter, the name of the claimant shall be added to any pleading, filing or form filed in the action for unlawful detainer.

[available at http://www.leginfo.ca.gov/cgi-bin/displaycode? section=ccp&group=01001-02000&file=1159-1179a] [downloaded on July 8, 2013]

Cal. Civ. Proc. Code § 1174.3 provides:

(a) Unless a prejudgment claim of right to possession has been served upon occupants in accordance with Section 415.46, any occupant not named in the judgment for possession who occupied the premises on the date of the filing of the action may object to enforcement of the judgment against that occupant by filing a claim of right to possession as prescribed in this section. A claim of right to possession may be filed at any time after service or posting of the writ of possession pursuant to subdivision (a) or (b) of Section 715.020, up to and including the time at which the levying officer returns to effect the eviction of those named in the judgment of possession. Filing the claim of right to possession shall constitute a general appearance for which a fee shall be collected as provided in Section 70614 of the Government Code. Section 68511.3 of the Government Code applies to the claim of right to possession. An occupant or tenant who is named in the action shall not be required to file a claim of right to possession to protect that occupant's right to possession of the premises.

(b) The court issuing the writ of possession of real property shall set a date or dates when the court will hold a hearing to

determine the validity of objections to enforcement of the judgment specified in subdivision (a). An occupant of the real property for which the writ is issued may make an objection to eviction to the levying officer at the office of the levying officer or at the premises at the time of the eviction.

If a claim of right to possession is completed and presented to the sheriff, marshal, or other levying officer, the officer shall forthwith (1) stop the eviction of occupants at the premises, and (2) provide a receipt or copy of the completed claim of right of possession to the claimant indicating the date and time the completed form was received, and (3) deliver the original completed claim of right to possession to the court issuing the writ of possession of real property.

(c) A claim of right to possession is effected by any of the following:

(1) Presenting a completed claim form in person with identification to the sheriff, marshal, or other levying officer as prescribed in this section, and delivering to the court within two court days after its presentation, an amount equal to 15 days' rent together with the appropriate fee or form for proceeding in forma pauperis. Upon receipt of a claim of right to possession, the sheriff, marshal, or other levying officer shall indicate thereon the date and time of its receipt and forthwith deliver the original to the issuing court and a receipt or copy of the claim to the claimant and notify the plaintiff of that fact. Immediately upon receipt of an amount equal to 15 days' rent and the appropriate fee or form for proceeding in forma pauperis, the court shall file the claim of right to possession and serve an endorsed copy with the notice of the hearing date on the plaintiff and the claimant by first-class mail. The court issuing the writ of possession shall set and hold a hearing on the claim not less than five nor more than 15 days after the claim is filed with the court.

(2) Presenting a completed claim form in person with identification to the sheriff, marshal, or other levying officer as prescribed in this section, and delivering to the court within two court days after its presentation, the appropriate fee or form for proceeding in forma pauperis without delivering the amount equivalent to 15 days' rent. In this case, the court shall immediately set

**SPA046**

a hearing on the claim to be held on the fifth day after the filing is completed. The court shall notify the claimant of the hearing date at the time the claimant completes the filing by delivering to the court the appropriate fee or form for proceeding in forma pauperis, and shall notify the plaintiff of the hearing date by first-class mail. Upon receipt of a claim of right to possession, the sheriff, marshal, or other levying officer shall indicate thereon the date and time of its receipt and forthwith deliver the original to the issuing court and a receipt or copy of the claim to the claimant and notify the plaintiff of that fact.

(d) At the hearing, the court shall determine whether there is a valid claim of possession by the claimant who filed the claim, and the court shall consider all evidence produced at the hearing, including, but not limited to, the information set forth in the claim. The court may determine the claim to be valid or invalid based upon the evidence presented at the hearing. The court shall determine the claim to be invalid if the court determines that the claimant is an invitee, licensee, guest, or trespasser. If the court determines the claim is invalid, the court shall order the return to the claimant of the amount of the 15 days' rent paid by the claimant, if that amount was paid pursuant to paragraph (1) or (3) of subdivision (c), less a pro rata amount for each day that enforcement of the judgment was delayed by reason of making the claim of right to possession, which pro rata amount shall be paid to the landlord. If the court determines the claim is valid, the amount equal to 15 days' rent paid by the claimant shall be returned immediately to the claimant.

(e) If, upon hearing, the court determines that the claim is valid, then the court shall order further proceedings as follows:

(1) If the unlawful detainer is based upon a curable breach, and the claimant was not previously served with a proper notice, if any notice is required, then the required notice may at the plaintiff's discretion be served on the claimant at the hearing or thereafter. If the claimant does not cure the breach within the required time, then a supplemental complaint may be filed and served on the claimant as defendant if the plaintiff proceeds against the claimant in the same action. For the purposes of this section only, service of the required notice, if any notice is required, and of the supplemental complaint

**SPA047**

may be made by first-class mail addressed to the claimant at the subject premises or upon his or her attorney of record and, in either case, Section 1013 shall otherwise apply. Further proceedings on the merits of the claimant's continued right to possession after service of the Summons and Supplemental Complaint as prescribed by this subdivision shall be conducted pursuant to this chapter.

(2) In all other cases, the court shall deem the unlawful detainer Summons and Complaint to be amended on their faces to include the claimant as defendant, service of the Summons and Complaint, as thus amended, may at the plaintiff's discretion be made at the hearing or thereafter, and the claimant thus named and served as a defendant in the action shall answer or otherwise respond within five days thereafter.

(f) If a claim is made without delivery to the court of the appropriate filing fee or a form for proceeding in forma pauperis, as prescribed in this section, the claim shall be immediately deemed denied and the court shall so order. Upon the denial of the claim, the court shall immediately deliver an endorsed copy of the order to the levying officer and shall serve an endorsed copy of the order on the plaintiff and claimant by first-class mail.

(g) If the claim of right to possession is denied pursuant to subdivision (f), or if the claimant fails to appear at the hearing or, upon hearing, if the court determines that there are no valid claims, or if the claimant does not prevail at a trial on the merits of the unlawful detainer action, the court shall order the levying officer to proceed with enforcement of the original writ of possession of real property as deemed amended to include the claimant, which shall be effected within a reasonable time not to exceed five days. Upon receipt of the court's order, the levying officer shall enforce the writ of possession of real property against any occupant or occupants.

(h) The claim of right to possession shall be made on the following form:

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

NOTICE OF INCOMPLETE TEXT: The Claim of Right to
Possession form appears in the hard-copy publication of the chaptered
bill. See Sec. 43 of Chapter 75, Statutes of 2005.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

[available at http://www.leginfo.ca.gov/cgi-bin/displaycode?
section=ccp&group=01001-02000&file=1159-1179a] [downloaded on July 8,
2013]

[continued with form on next page] [form available at
http://www.courts.ca.gov/documents/cp10.pdf] [downloaded on July 8, 2013]

**SPA049**

| CLAIMANT OR CLAIMANT'S ATTORNEY *(Name and Address)*: | TELEPHONE NO.: | **FOR COURT USE ONLY** |
|---|---|---|

ATTORNEY FOR *(Name)*:

**NAME OF COURT:**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF:

DEFENDANT:

| **CLAIM OF RIGHT TO POSSESSION AND NOTICE OF HEARING** | CASE NUMBER: |
|---|---|

**NOTICE TO LEVYING OFFICER:**

☐ Claim granted      ☐ Claim denied

Clerk, by _____

*(For levying officer use only)*

Completed form was received on

Date: _____ Time: _____

By: _____

---

**Complete this form only if ALL of these statements are true:**

1. **You are NOT named in the accompanying form called Writ of Possession.**
2. **You occupied the premises on or before the date the unlawful detainer (eviction) action was filed.** *(The date is in the accompanying Writ of Possession.)*
3. **You still occupy the premises.**
4. **A Prejudgment Claim of Right to Possession form was NOT served with the Summons and Complaint.**

I DECLARE THE FOLLOWING UNDER PENALTY OF PERJURY:

1. My name is *(specify)*:

2. I reside at *(street address, unit No., city and ZIP code)*:

3. The address of "the premises" subject to this claim is *(address)*:

4. On *(insert date)*: [_____], the landlord or the landlord's authorized agent filed a complaint to recover possession of the premises. *(This date is in the accompanying Writ of Possession.)*

5. I occupied the premises on the date the complaint was filed *(the date in item 4)*. I have continued to occupy the premises ever since.

6. I was at least 18 years of age on the date the complaint was filed *(the date in item 4)*.

7. I claim a right to possession of the premises because I occupied the premises on the date the complaint was filed *(the date in item 4)*.

8. I was not named in the Writ of Possession.

9. I understand that if I make this claim of possession, a COURT HEARING will be held to decide whether my claim will be granted.

10. *(Filing fee)* To obtain a court hearing on my claim, I understand that after I present this form to the levying officer I must go to the court and pay a filing fee of $ _____ or file with the court the form "Application for Waiver of Court Fees and Costs." I understand that if I don't pay the filing fee or file the form for waiver of court fees *within two court days,* the court will immediately deny my claim.

11. *(Immediate court hearing unless you deposit 15 days' rent)* To obtain a court hearing on my claim, I understand I must also deliver to the court a copy of this completed claim form or a receipt from the levying officer. I also understand the date of my hearing will be set immediately if I don't deliver to the court an amount equal to 15 days' rent.

(Continued on reverse)

---

CP10 [Rev. January 1, 1991]

**CLAIM OF RIGHT TO POSSESSION AND NOTICE OF HEARING**

Code of Civil Procedure, §§ 715.010, 715.020, 1174.3

**SPA050**

| PLAINTIFF *(Name)*: | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name)*: | |

12. I am filing my claim in the following manner *(check the box that shows how you are filing your claim. Note that you must deliver to the court a copy of the claim form or a levying officer's receipt)*:

   a. ☐   *(With 15 days' rent payment)* I presented this claim form to the sheriff, marshal, or other levying officer, AND within two court days I shall deliver to the court the following: (1) a copy of this completed claim form or a receipt, (2) the court filing fee or form for proceeding in forma pauperis, and (3) an amount equal to 15 days' rent.   — OR —

   a. ☐   *(Without 15 days' rent payment)* I presented this claim form to the sheriff, marshal, or other levying officer, AND within two court days I shall deliver to the court the following: (1) a copy of this completed claim form or a receipt, and (2) the court filing fee or form for proceeding in forma pauperis.

**IMPORTANT:** **Do not take a copy of this claim form to the court unless you have first given the form to the sheriff, marshal, or other levying officer.**

| *(To be completed by the court)* | | | |
|---|---|---|---|
| Date of hearing: | Time: | Dept. or Div.: | Room: |
| Address of court: | | | |

> **NOTICE:** If you fail to appear at this hearing you will be evicted without further hearing.

13. **Rental agreement.** I have *(check all that apply to you)*:

   a. ☐  an oral rental agreement with the landlord.

   b. ☐  a written rental agreement with the landlord.

   c. ☐  an oral rental agreement with a person other than the landlord.

   d. ☐  a written rental agreement with a person other than the landlord.

   e. ☐  other *(explain)*:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

> **WARNING:** Perjury is a felony punishable by imprisonment in the state prison.

Date:

▶

. . . . . . . . . . . . . . . . *(TYPE OR PRINT NAME)* . . . . . . . . . . . . . . . .          *(SIGNATURE OF CLAIMANT)*

> **NOTICE:** If your claim to possession is found to be valid, the unlawful detainer (eviction) action against you will be determined at trial. At trial, you may be found liable for rent, costs, and, in some cases, treble damages.

## — NOTICE TO OCCUPANTS —

**YOU MUST ACT AT ONCE if all the following are true:**

   **1. You are NOT named in the accompanying form called Writ of Possession.**

   **2. You occupied the premises on or before the date the unlawful detainer (eviction) action was filed.** *(The date is in the accompanying Writ of Possession.)*

   **3. You still occupy the premises.**

   **4. A Prejudgment Claim of Right to Possession form was NOT served with the Summons and Complaint.**

**You can complete and SUBMIT THIS CLAIM FORM** *(in person with identification)*

   (1) before the date of eviction at the sheriff's or marshal's office located at *(address)*:

   (2) OR at the premises at the time of the eviction. *(Give this form to the officer who comes to evict you.)*

If you do not complete and submit this form (and pay a filing fee or file the form for proceeding in forma pauperis if you cannot pay the fee), YOU WILL BE EVICTED along with the parties named in the writ.

   After this form is properly filed, A HEARING WILL BE HELD to decide your claim. If you do not appear at the hearing, you will be evicted without a further hearing.

CP10 [Rev. January 1, 1991]         **CLAIM OF RIGHT TO POSSESSION**
                       **AND NOTICE OF HEARING**       **SPA051** Page two

Conn. Gen. Stat. § 47a-26h provides:

**Persons bound by judgment. Notice. Exemption.**

   (a) A summary process judgment shall bind (1) the named
defendants and any minors holding under them; (2) any occupant who
first commenced occupancy of the premises after service of the notice
to quit upon which the summary process action was based, unless
such occupancy was commenced or continued with the consent of the
plaintiff or under a right to occupy equal or superior to the rights of
the plaintiff; (3) if the plaintiff has properly named and served each
occupant whose presence is known with a notice to quit and a writ,
summons and complaint in accordance with the provisions of sections
47a-23 and 47a-23a, any occupant who first commenced occupancy of
the premises prior to service of the notice to quit and (A) who the
plaintiff and his agents did not know was in occupancy of the
premises, or (B) of whose presence the plaintiff or his agent knew but
whose name they did not know.

   (b) Upon entry of judgment, the clerk shall mail a notice of
judgment to all defendants against whom judgment was rendered.
Such notice shall be addressed to the named defendants and any other
current occupants and shall contain the names of all defendants
against whom judgment was entered, the date of judgment and notice
of the right to apply for a stay of execution. The notice shall be on a
form prescribed by the Office of the Chief Court Administrator, shall
be in clear and simple language and in readable format, and shall
include a conspicuous notice to all occupants not named in the
judgment, in large boldface type, that any such occupant who claims
to have a right to continue to occupy the premises should promptly
complete and file with the clerk of the court a claim of exemption
from the judgment. If no such notice would otherwise be sent to the
premises, an additional notice shall be sent to the premises, addressed
to the named defendants "or any other current occupants".

(c) Any occupant not named in the action who claims not to be subject to the summary process action because his occupancy commenced prior to service of the notice to quit or his occupancy commenced or continued with the consent of the plaintiff or under a right to occupy equal or superior to the rights of the plaintiff may, at any time before or after judgment but prior to issuance of an execution, file under oath a claim of exemption from such action. The Office of the Chief Court Administrator shall prescribe a form upon which such claim can be made, which form shall be in clear and simple language and in readable format. Upon the filing of such a claim, the clerk shall schedule a hearing, which shall be held not more than seven days after the date of filing. Execution shall not issue until the court renders its decision on the claim. The claimant shall have the burden of proof to show that his occupancy commenced prior to service of the notice to quit or that his occupancy was commenced or continued with the consent of the plaintiff or under a right to occupy equal or superior to the rights of the plaintiff. The burden of proof shall be upon the plaintiff to show that he did not know of the presence of the occupant or the name of the occupant, as the case may be. For purposes of this chapter, if rent or use and occupancy payments have been made to the plaintiff or his agent by the occupant, the plaintiff shall be deemed to have known of the presence and the name of the occupant. The court shall determine whether the claimant is bound by the action and, if the court finds that the claimant is not bound, it shall declare the claimant to be exempt from the action. In order to obtain a judgment for possession of the premises as part of such action the plaintiff shall serve the previously exempt occupant with a notice to quit possession pursuant to section 47a-23. If the occupant is still in possession after the date to quit possession has passed, the plaintiff shall serve the occupant with an amended writ, summons and complaint adding the occupant as a party defendant to such action of summary process. Any occupant not exempt from the action shall have the same rights and obligations as a named defendant and shall be bound by any judgment. Notwithstanding the provisions of section 47a-42, no summary process execution shall be issued or enforced unless valid execution has been issued against all

occupants of the premises, except that such execution may be issued and enforced, without issuing or enforcing execution against other occupants, upon a person against whom a judgment has been entered based upon that person's having conducted himself in a manner which constitutes a serious nuisance by using the premises or any area within fifteen hundred feet of any housing authority property in which such person resides for the illegal sale of drugs, as defined in subparagraph (D) of section 47a-15.

(d) Nothing in this section shall in any way limit other remedies available in law or equity to any person, including remedies available after issuance of an execution.

[available at http://www.cga.ct.gov/2011/pub/Chap832.htm#Sec47a-26h.htm]
[downloaded on July 8, 2013]

735 Ill. Comp. Stat. 5/9-104 provides:

Sec. 9-104. Demand - Notice - Return. The demand required by Section 9-102 of this Act may be made by delivering a copy thereof to the tenant, or by leaving such a copy with some person of the age of 13 years or upwards, residing on, or being in charge of, the premises; or in case no one is in the actual possession of the premises, then by posting the same on the premises; or if those in possession are unknown occupants who are not parties to any written lease, rental agreement, or right to possession agreement for the premises, then by delivering a copy of the notice, directed to "unknown occupants", to the occupant or by leaving a copy of the notice with some person of the age of 13 years or upwards occupying the premises, or by posting a copy of the notice on the premises directed to "unknown occupants". When such demand is made by an officer authorized to serve process, his or her return is prima facie evidence of the facts therein stated, and if such demand is made by any person not an officer, the return may be sworn to by the person serving the same, and is then prima facie

SPA054

evidence of the facts therein stated. The demand for possession may
be in the following form:

     To ....

          I hereby demand immediate possession of the following
          described premises: (describing the same.)

    The demand shall be signed by the person claiming such
possession, his or her agent, or attorney.

(Source: P.A. 92-823, eff. 8-21-02.)

[available at http://www.ilga.gov/legislation/ilcs/ilcs4.asp?
DocName=073500050HArt%2E+IX+Pt
%2E+1&ActID=2017&ChapterID=56&SeqStart=66400000&SeqEnd=69600000]
[downloaded on July 8, 2013]

735 Ill. Comp. Stat. 5/9-107 provides:

    Sec. 9-107. Constructive service. If the plaintiff, his or her agent, or
attorney files a forcible detainer action, with or without joinder of a
claim for rent in the complaint, and is unable to obtain personal
service on the defendant or unknown occupant and a summons duly
issued in such action is returned without service stating that service
can not be obtained, then the plaintiff, his or her agent or attorney may
file an affidavit stating that the defendant or unknown occupant is not
a resident of this State, or has departed from this State, or on due
inquiry cannot be found, or is concealed within this State so that
process cannot be served upon him or her, and also stating the place of
residence of the defendant or unknown occupant, if known, or if not
known, that upon diligent inquiry the affiant has not been able to
ascertain the defendant's or unknown occupant's place of residence,
then in all such forcible detainer cases whether or not a claim for rent
is joined with the complaint for possession, the defendant or unknown
occupant may be notified by posting and mailing of notices; or by
publication and mailing, as provided for in Section 2-206 of this Act.
However, in cases where the defendant or unknown occupant is
notified by posting and mailing of notices or by publication and

**SPA055**

mailing, and the defendant or unknown occupant does not appear generally, the court may rule only on the portion of the complaint which seeks judgment for possession, and the court shall not enter judgment as to any rent claim joined in the complaint or enter personal judgment for any amount owed by a unit owner for his or her proportionate share of the common expenses, however, an in rem judgment may be entered against the unit for the amount of common expenses due, any other expenses lawfully agreed upon or the amount of any unpaid fine, together with reasonable attorney fees, if any, and costs. The claim for rent may remain pending until such time as the defendant or unknown occupant appears generally or is served with summons, but the order for possession shall be final, enforceable and appealable if the court makes an express written finding that there is no just reason for delaying enforcement or appeal, as provided by Supreme Court rule of this State.

Such notice shall be in the name of the clerk of the court, be directed to the defendant or unknown occupant, shall state the nature of the cause against the defendant or unknown occupant and at whose instance issued and the time and place for trial, and shall also state that unless the defendant or unknown occupant appears at the time and place fixed for trial, judgment will be entered by default, and shall specify the character of the judgment that will be entered in such cause. The sheriff shall post 3 copies of the notice in 3 public places in the neighborhood of the court where the cause is to be tried, at least 10 days prior to the day set for the appearance, and, if the place of residence of the defendant or unknown occupant is stated in any affidavit on file, shall at the same time mail one copy of the notice addressed to such defendant or unknown occupant at such place of residence shown in such affidavit. On or before the day set for the appearance, the sheriff shall file the notice with an endorsement thereon stating the time when and places where the sheriff posted and to whom and at what address he or she mailed copies as required by this Section. For want of sufficient notice any cause may be continued from time to time until the court has jurisdiction of the defendant or unknown occupant.

(Source: P.A. 92-823, eff. 8-21-02.)

[available at http://www.ilga.gov/legislation/ilcs/ilcs4.asp?
DocName=073500050HArt%2E+IX+Pt
%2E+1&ActID=2017&ChapterID=56&SeqStart=66400000&SeqEnd=69600000]
[downloaded on July 8, 2013]


735 Ill. Comp. Stat. 5/9-107.5 provides:

Sec. 9-107.5. Notice to unknown occupants.
    (a) Service of process upon an unknown occupant may be had by
delivering a copy of the summons and complaint naming "unknown
occupants" to the tenant or any unknown occupant or person of the
age of 13 or upwards occupying the premises.
    (b) If unknown occupants are not named in the initial summons and
complaint and a judgment for possession in favor of the plaintiff is
entered, but the order does not include unknown occupants and the
sheriff determines when executing the judgment for possession that
persons not included in the order are in possession of the premises,
then the sheriff shall leave with a person of the age of 13 years or
upwards occupying the premises, a copy of the order, or if no one is
present in the premises to accept the order or refuses to accept the
order, then by posting a copy of the order on the premises. In addition
to leaving a copy of the order or posting of the order, the sheriff shall
also leave or post a notice addressed to "unknown occupants" that
states unless any unknown occupants file a written petition with the
clerk that sets forth the unknown occupant's legal claim for possession
within 7 days of the date the notice is posted or left with any unknown
occupant, the unknown occupants shall be evicted from the premises.
If any unknown occupants file such a petition, a hearing on the merits
of the unknown occupant's petition shall be held by the court within 7
days of the filing of the petition with the clerk. The unknown
occupants shall have the burden of proof in establishing a legal right
to continued possession.
    (c) The plaintiff may obtain a judgment for possession only and not
for rent as to any unknown occupants.

**SPA057**

(d) Nothing in this Section may be construed so as to vest any rights to persons who are criminal trespassers, nor may this Section be construed in any way that interferes with the ability of law enforcement officials removing persons or property from the premises when there is a criminal trespass.
(Source: P.A. 92-823, eff. 8-21-02.)

[available at http://www.ilga.gov/legislation/ilcs/ilcs4.asp? DocName=073500050HArt%2E+IX+Pt %2E+1&ActID=2017&ChapterID=56&SeqStart=66400000&SeqEnd=69600000] [downloaded on July 8, 2013]


N.Y. City Admin. Code § 26-521 provides:

§ 26-521 Unlawful eviction. a.  It shall be unlawful for any person to evict or attempt to evict an occupant of a dwelling unit who has lawfully occupied the dwelling unit for thirty consecutive days or longer or who has entered into a lease with respect to such dwelling unit or has made a request for a lease for such dwelling unit pursuant to the hotel stabilization provisions of the rent stabilization law except to the extent permitted by law pursuant to a warrant of eviction or other order of a court of competent jurisdiction or a governmental vacate order by:
    (1) using or threatening the use of force to induce the occupant to vacate the dwelling unit; or
    (2) engaging in a course of conduct which interferes with or is intended to interfere with or disturb the comfort, repose, peace or quiet of such occupant in the use or occupancy of the dwelling unit, to induce the occupant to vacate the dwelling unit including, but not limited to, the interruption or discontinuance of essential services; or
    (3) engaging or threatening to engage in any other conduct which prevents or is intended to prevent such occupant from the lawful occupancy of such dwelling unit or to induce the occupant to vacate the dwelling unit including, but not limited to, removing the occupant's possessions from the dwelling unit, removing the door at

the entrance to the dwelling unit; removing, plugging or otherwise rendering the lock on such entrance door inoperable; or changing the lock on such entrance door without supplying the occupant with a key.

    b.  It shall be unlawful for an owner of a dwelling unit to fail to take all reasonable and necessary action to restore to occupancy an occupant of a dwelling unit who either vacates, has been removed from or is otherwise prevented from occupying a dwelling unit as the result of any of the acts or omissions prescribed in subdivision a of this section and to provide to such occupant a dwelling unit within such dwelling suitable for occupancy, after being requested to do so by such occupant or the representative of such occupant, if such owner either committed such unlawful acts or omissions or knew or had reason to know of such unlawful acts or omissions, or if such acts or omissions occurred within seven days prior to such request.

[available at http://public.leginfo.state.ny.us/LAWSSEAF.cgi?
QUERYTYPE=LAWS+&QUERYDATA=$$ADC26-521$$@TXADC026-
521+&LIST=LAW+&BROWSER=BROWSER+&TOKEN=24909260+&TARGE
T=VIEW] [downloaded on July 8, 2013]

N.Y.C. Admin. Code § 26-523 provides:

    § 26-523 Criminal and civil penalties. a. Any person who intentionally violates or assists in the violation of any of the provisions of this chapter shall be guilty of a class A misdemeanor. Each such violation shall be a separate and distinct offense.

    b.  Such person shall also be subject to a civil penalty of not less than one thousand nor more than ten thousand dollars for each violation. Each such violation shall be a separate and distinct offense. In the case of a failure to take all reasonable and necessary action to restore an occupant pursuant to subdivision b of section 26-521 of this chapter, such person shall be subject to an additional civil penalty of not more than one hundred dollars per day from the date on which restoration to occupancy is requested until the date on which

restoration occurs, provided, however, that such period shall not exceed six months.

[available at http://public.leginfo.state.ny.us/LAWSSEAF.cgi? QUERYTYPE=LAWS+&QUERYDATA=$$ADC26-523$$@TXADC026- 523+&LIST=LAW+&BROWSER=BROWSER+&TOKEN=24909260+&T ARGET=VIEW] [downloaded on July 8, 2013]

N.Y. City Civ. Ct. Act § 1602 provides:

> § 1602. City marshals; badges. The mayor is hereby authorized to prescribe the style, form and size of a badge to be known and designated as the official badge of the city marshals, a description of which he shall file in the office of the city clerk. Each city marshal shall provide himself at his own expense, with one such badge, and shall wear the same at all times while engaged in the discharge of his official duties. Every city marshal shall display his badge upon demand. Every city marshal shall forthwith surrender his official badge to the city clerk upon the expiration of his term or upon the vacation of his office for any reason and the city clerk is hereby authorized to refund the sum originally charged therefor. Any person violating the provisions of this section shall be punished by imprisonment for a term not exceeding thirty days or a fine not exceeding two hundred dollars for each offense.

[available at http://public.leginfo.state.ny.us/LAWSSEAF.cgi? QUERYTYPE=LAWS+&QUERYDATA=$$CCA1602$ $@TXCCA01602+&LIST=LAW+&BROWSER=BROWSER+&TOKEN=249092 60+&TARGET=VIEW] [downloaded on July 8, 2013]

N.Y. Est. Powers & Trusts Law. § 7-2.1 provides in relevant part:

§ 7-2.1 Extent of trustee's estate
   (a)  Except as otherwise provided in this article, an express trust
vests in the trustee the legal estate, subject only to the execution of
the trust, and the beneficiary does not take any legal estate in the
property but may enforce the trust.
* * * *
   (c)  A trust as described in sections 9-1.5, 9-1.6 and 9-1.7 of the
estates, powers and trusts law, including a business trust as defined in
subdivision two of section two of the general associations law, may
acquire property in the name of the trust as such name is designated in
the instrument creating said trust. . . .

[available at http://public.leginfo.state.ny.us/LAWSSEAF.cgi?
QUERYTYPE=LAWS+&QUERYDATA=$$EPT7-2.1$$@TXEPT07-
2.1+&LIST=LAW+&BROWSER=BROWSER+&TOKEN=24909260+&TARGE
T=VIEW] [downloaded on July 8, 2013]


N.Y. Real Prop. Law § 228 provides:

   § 228. Termination of tenancies at will or by sufferance, by notice.
A tenancy at will or by sufferance, however created, may be
terminated by a written notice of not less than thirty days given in
behalf of the landlord, to the tenant, requiring him to remove from the
premises; which notice must be served, either by delivering to the
tenant or to a person of suitable age and discretion, residing upon the
premises, or if neither the tenant nor such a person can be found, by
affixing it upon a conspicuous part of the premises, where it may be
conveniently read. At the expiration of thirty days after the service of
such notice, the landlord may re-enter, maintain an action to recover
possession, or proceed, in the manner prescribed by law, to remove
the tenant, without further or other notice to quit.


**SPA061**

[available at http://public.leginfo.state.ny.us/LAWSSEAF.cgi?
QUERYTYPE=LAWS+&QUERYDATA=$$RPP228$
$@TXRPP0228+&LIST=LAW+&BROWSER=BROWSER+&TOKEN=2490926
0+&TARGET=VIEW] [downloaded on July 8, 2013]


N.Y. Real Prop. Law § 232-a provides:

   § 232-a. Notice to terminate monthly tenancy or tenancy from
   month to month in the city of New York. No monthly tenant, or tenant
   from month to month, shall hereafter be removed from any lands or
   buildings in the city of New York on the grounds of holding over his
   term unless at least thirty days before the expiration of the term the
   landlord or his agent serve upon the tenant, in the same manner in
   which a notice of petition in summary proceedings is now allowed to
   be served by law, a notice in writing to the effect that the landlord
   elects to terminate the tenancy and that unless the tenant removes
   from such premises on the day on which his term expires the landlord
   will commence summary proceedings under the statute to remove
   such tenant therefrom.

[available at http://public.leginfo.state.ny.us/LAWSSEAF.cgi?
QUERYTYPE=LAWS+&QUERYDATA=$$RPP232-A$$@TXRPP0232-
A+&LIST=LAW+&BROWSER=BROWSER+&TOKEN=24909260+&TARGET
=VIEW] [downloaded on July 8, 2013]


N.Y. Real Prop. Acts Law § 711 provides:

   § 711.  Grounds where landlord-tenant relationship exists. A tenant
   shall include an occupant of one or more rooms in a rooming house or
   a resident, not including a transient occupant, of one or more rooms in
   a hotel who has been in possession for thirty consecutive days or
   longer; he shall not be removed from possession except in a special
   proceeding. A special proceeding may be maintained under this article
   upon the following grounds:

**SPA062**

1.  The tenant continues in possession of any portion of the premises after the expiration of his term, without the permission of the landlord or, in a case where a new lessee is entitled to possession, without the permission of the new lessee. Acceptance of rent after commencement of the special proceeding upon this ground shall not terminate such proceeding nor effect any award of possession to the landlord or to the new lessee, as the case may be. A proceeding seeking to recover possession of real property by reason of the termination of the term fixed in the lease pursuant to a provision contained therein giving the landlord the right to terminate the time fixed for occupancy under such agreement if he deem the tenant objectionable, shall not be maintainable unless the landlord shall by competent evidence establish to the satisfaction of the court that the tenant is objectionable.

2.  The tenant has defaulted in the payment of rent, pursuant to the agreement under which the premises are held, and a demand of the rent has been made, or at least three days' notice in writing requiring, in the alternative, the payment of the rent, or the possession of the premises, has been served upon him as prescribed in section 735. The landlord may waive his right to proceed upon this ground only by an express consent in writing to permit the tenant to continue in possession, which consent shall be revocable at will, in which event the landlord shall be deemed to have waived his right to summary dispossess for nonpayment of rent accruing during the time said consent remains unrevoked. Any person succeeding to the landlord's interest in the premises may proceed under this subdivision for rent due his predecessor in interest if he has a right thereto. Where a tenant dies during the term of the lease and rent due has not been paid and no representative or person has taken possession of the premises and no administrator or executor has been appointed, the proceeding may be commenced after three months from the date of death of the tenant by joining the surviving spouse or if there is none, then one of the surviving issue or if there is none, then any one of the distributees.

3.  The tenant, in a city defaults in the payment, for sixty days after the same shall be payable, of any taxes or assessments levied on the premises which he has agreed in writing to pay pursuant to the

**SPA063**

agreement under which the premises are held, and a demand for payment has been made, or at least three days' notice in writing, requiring in the alternative the payment thereof and of any interest and penalty thereon, or the possession of the premises, has been served upon him, as prescribed in section 735. An acceptance of any rent shall not be construed as a waiver of the agreement to pay taxes or assessments.

4.  The tenant, under a lease for a term of three years or less, has during the term taken the benefit of an insolvency statute or has been adjudicated a bankrupt.

5.  The premises, or any part thereof, are used or occupied as a bawdy-house, or house or place of assignation for lewd persons, or for purposes of prostitution, or for any illegal trade or manufacture, or other illegal business.

6.  The tenant, in a city having a population of one million or more, removes the batteries or otherwise disconnects or makes inoperable an installed smoke or fire detector which the tenant has not requested be moved from its location so as not to interfere with the reasonable use of kitchen facilities provided that the court, upon complaint thereof, has previously issued an order of violation of the provisions heretofore stated and, subsequent to the thirtieth day after service of such order upon the tenant, an official inspection report by the appropriate department of housing preservation and development is presented, in writing, indicating non-compliance herewith; provided further, that the tenant shall have the additional ten day period to cure such violation in accordance with the provisions of subdivision four of section seven hundred fifty-three of this chapter.

[available at http://public.leginfo.state.ny.us/LAWSSEAF.cgi? QUERYTYPE=LAWS+&QUERYDATA=$$RPA711$ $@TXRPA0711+&LIST=LAW+&BROWSER=BROWSER+&TOKEN=2490926 0+&TARGET=VIEW] [downloaded on July 8, 2013]

**SPA064**

N.Y. Real Prop. Acts. Law § 731 provides in relevant part:

> § 731. Commencement; notice of petition. 1. The special proceeding prescribed by this article shall be commenced by petition and a notice of petition. A notice of petition may be issued only by an attorney, judge or the clerk of the court; it may not be issued by a party prosecuting the proceeding in person.
>
> 2. Except as provided in section 732, relating to a proceeding for non-payment of rent, the notice of petition shall specify the time and place of the hearing on the petition and state that if respondent shall fail at such time to interpose and establish any defense that he may have, he may be precluded from asserting such defense or the claim on which it is based in any other proceeding or action.
> * * * *

[available at http://public.leginfo.state.ny.us/LAWSSEAF.cgi? QUERYTYPE=LAWS+&QUERYDATA=$$RPA731$ $@TXRPA0731+&LIST=LAW+&BROWSER=BROWSER+&TOKEN=2490926 0+&TARGET=VIEW] [downloaded on July 8, 2013]

N.Y. Real Prop. Acts. Law § 733 provides:

> § 733. Time of service; order to show cause. 1. Except as provided in section 732, relating to a proceeding for non-payment of rent, the notice of petition and petition shall be served at least five and not more than twelve days before the time at which the petition is noticed to be heard.
>
> 2. The court may grant an order to show cause to be served in lieu of a notice of petition. If the special proceeding is based upon the ground specified in subdivision 1 of section 711, and the order to show cause is sought on the day of the expiration of the lease or the next day thereafter, it may be served at a time specified therein which shall be at least two hours before the hour at which the petition is to be heard.

**SPA065**

[available at http://public.leginfo.state.ny.us/LAWSSEAF.cgi?
QUERYTYPE=LAWS+&QUERYDATA=$$RPA733$
$@TXRPA0733+&LIST=LAW+&BROWSER=BROWSER+&TOKEN=2490926
0+&TARGET=VIEW] [downloaded on July 8, 2013]


N.Y. Real Prop. Acts. Law § 735 provides:

§ 735. Manner of service; filing; when service complete. 1.
Service of the notice of petition and petition shall be made by
personally delivering them to the respondent; or by delivering to and
leaving personally with a person of suitable age and discretion who
resides or is employed at the property sought to be recovered, a copy
of the notice of petition and petition, if upon reasonable application
admittance can be obtained and such person found who will receive it;
or if admittance cannot be obtained and such person found, by
affixing a copy of the notice and petition upon a conspicuous part of
the property sought to be recovered or placing a copy under the
entrance door of such premises; and in addition, within one day after
such delivering to such suitable person or such affixing or placement,
by mailing to the respondent both by registered or certified mail and
by regular first class mail,

(a) if a natural person, as follows: at the property sought to be
recovered, and if such property is not the place of residence of such
person and if the petitioner shall have written information of the
residence address of such person, at the last residence address as to
which the petitioner has such information, or if the petitioner shall
have no such information, but shall have written information of the
place of business or employment of such person, to the last business
or employment address as to which the petitioner has such
information; and

(b) if a corporation, joint-stock or other unincorporated association,
as follows: at the property sought to be recovered, and if the principal
office or principal place of business of such corporation, joint stock or

**SPA066**

other unincorporated association is not located on the property sought to be recovered, and if the petitioner shall have written information of the principal office or principal place of business within the state, at the last place as to which petitioner has such information, or if the petitioner shall have no such information but shall have written information of any office or place of business within the state, to any such place as to which the petitioner has such information. Allegations as to such information as may affect the mailing address shall be set forth either in the petition, or in a separate affidavit and filed as part of the proof of service.

2. The notice of petition, or order to show cause, and petition together with proof of service thereof shall be filed with the court or clerk thereof within three days after;

(a)  personal delivery to respondent, when service has been made by that means, and such service shall be complete immediately upon such personal delivery; or

(b)  mailing to respondent, when service is made by the alternatives above provided, and such service shall be complete upon the filing of proof of service.

[available at http://public.leginfo.state.ny.us/LAWSSEAF.cgi?
QUERYTYPE=LAWS+&QUERYDATA=$$RPA735$
$@TXRPA0735+&LIST=LAW+&BROWSER=BROWSER+&TOKEN=2490926
0+&TARGET=VIEW] [downloaded on July 8, 2013]

N.Y. Real Prop. Acts. Law § 743 provides:

> § 743. Answer.  Except as provided in section 732, relating to a proceeding for non-payment of rent, at the time when the petition is to be heard the respondent, or any person in possession or claiming possession of the premises, may answer, orally or in writing. If the answer is oral the substance thereof shall be recorded by the clerk or, if a particular court has no clerk, by the presiding judge or justice of such court, and maintained in the case record. If the notice of petition was served at least eight days before the time at which it was noticed to be heard and it so demands, the answer shall be made at least three days before the time the petition is noticed to be heard and, if in writing, it shall be served within such time; whereupon any reply shall be served at least one day before such time. The answer may contain any legal or equitable defense, or counterclaim. The court may render affirmative judgment for the amount found due on the counterclaim.

[available at http://public.leginfo.state.ny.us/LAWSSEAF.cgi?QUERYTYPE=LAWS+&QUERYDATA=$$RPA743$$@TXRPA0743+&LIST=LAW+&BROWSER=BROWSER+&TOKEN=13872505+&TARGET=VIEW] [downloaded on July 12, 2013]


N.Y. Real Prop. Acts. Law § 747 provides in relevant part:

> § 747. Judgment.  1. The court shall direct that a final judgment be entered determining the rights of the parties. The judgment shall award to the successful party the costs of the special proceeding.
>
> * * * *

[available at http://public.leginfo.state.ny.us/LAWSSEAF.cgi?QUERYTYPE=LAWS+&QUERYDATA=$$RPA747$$@TXRPA0747+&LIST=LAW+&BROWSER=BROWSER+&TOKEN=24909260+&TARGET=VIEW] [downloaded on July 8, 2013]

**SPA068**

N.Y. Real Prop. Acts. Law § 749 provides:

§ 749. Warrant. 1. Upon rendering a final judgment for petitioner, the court shall issue a warrant directed to the sheriff of the county or to any constable or marshal of the city in which the property, or a portion thereof, is situated, or, if it is not situated in a city, to any constable of any town in the county, describing the property, and commanding the officer to remove all persons, and, except where the case is within section 715, to put the petitioner into full possession.

2. The officer to whom the warrant is directed and delivered shall give at least seventy-two hours notice, excluding any period which occurs on a Saturday, Sunday or a public holiday, in writing and in the manner prescribed in this article for the service of a notice of petition, to the person or persons to be evicted or dispossessed and shall execute the warrant between the hours of sunrise and sunset.

3. The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant, but nothing contained herein shall deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof. Petitioner may recover by action any sum of money which was payable at the time when the special proceeding was commenced and the reasonable value of the use and occupation to the time when the warrant was issued, for any period of time with respect to which the agreement does not make any provision for payment of rent.

[available at http://public.leginfo.state.ny.us/LAWSSEAF.cgi?QUERYTYPE=LAWS+&QUERYDATA=$$RPA749$$@TXRPA0749+&LIST=LAW+&BROWSER=BROWSER+&TOKEN=24909260+&TARGET=VIEW] [downloaded on July 8, 2013]

N.Y. Real Prop. Acts. Law § 1303 provides in relevant part:

§ 1303. Foreclosures; required notices. 1. The foreclosing party in a mortgage foreclosure action, involving residential real property shall provide notice to:

(a) any mortgagor if the action relates to an owner-occupied one-to-four family dwelling; and

(b) any tenant of a dwelling unit in accordance with the provisions of this section.

* * * *

4. The notice to any tenant required by paragraph (b) of subdivision one of this section shall be delivered within ten days of the service of the summons and complaint. Such notice shall be in bold, fourteen-point type, and the paragraph of the notice beginning with the words "ALL RENT-STABILIZED" and ending with the words "FULL HEARING IN COURT" shall be printed entirely in capital letters and underlined. The foreclosing party shall provide its name, address and telephone number on the notice. The notice shall be printed on colored paper that is other than the color of the summons and complaint, and the title of the notice shall be in bold, twenty-point type. The notice shall be on its own page. For buildings with fewer than five dwelling units, the notice shall be delivered to the tenant, by certified mail, return receipt requested, and by first-class mail to the tenant's address at the property if the identity of the tenant is known to the plaintiff, and by first-class mail delivered to "occupant" if the identity of the tenant is not known to the plaintiff. For buildings with five or more dwelling units, a legible copy of the notice shall be posted on the outside of each entrance and exit of the building.

5. The notice required by paragraph (b) of subdivision one of this section shall appear as follows:

Notice to Tenants of Buildings in Foreclosure

New York State Law requires that we provide you this notice about the foreclosure process. Please read it carefully.

**SPA070**

We, (name of foreclosing party), are the foreclosing party and are located at (foreclosing party's address). We can be reached at (foreclosing party's telephone number).

The dwelling where your apartment is located is the subject of a foreclosure proceeding. If you have a lease, are not the owner of the residence, and the lease requires payment of rent that at the time it was entered into was not substantially less than the fair market rent for the property, you may be entitled to remain in occupancy for the remainder of your lease term. If you do not have a lease, you will be entitled to remain in your home until ninety days after any person or entity who acquires title to the property provides you with a notice as required by section 1305 of the Real Property Actions and Proceedings Law. The notice shall provide information regarding the name and address of the new owner and your rights to remain in your home. These rights are in addition to any others you may have if you are a subsidized tenant under federal, state or local law or if you are a tenant subject to rent control, rent stabilization or a federal statutory scheme.

ALL RENT-STABILIZED TENANTS AND RENT-CONTROLLED TENANTS ARE PROTECTED UNDER THE RENT REGULATIONS WITH RESPECT TO EVICTION AND LEASE RENEWALS. THESE RIGHTS ARE UNAFFECTED BY A BUILDING ENTERING FORECLOSURE STATUS. THE TENANTS IN RENT-STABILIZED AND RENT-CONTROLLED BUILDINGS CONTINUE TO BE AFFORDED THE SAME LEVEL OF PROTECTION EVEN THOUGH THE BUILDING IS THE SUBJECT OF FORECLOSURE. EVICTIONS CAN ONLY OCCUR IN NEW YORK STATE PURSUANT TO A COURT ORDER AND AFTER A FULL HEARING IN COURT.

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at (enter number) or visit the Department's website at (enter web address).

6. The department of financial services shall prescribe the telephone number and web address to be included in either notice.

\* \* \* \*

[available at http://public.leginfo.state.ny.us/LAWSSEAF.cgi?
QUERYTYPE=LAWS+&QUERYDATA=$$RPA1303$
$@TXRPA01303+&LIST=LAW+&BROWSER=BROWSER+&TOKEN=249092
60+&TARGET=VIEW] [downloaded on July 8, 2013]


Utah Code § 78B-6-812(3) provides:

    (a)  If the defendant fails to comply with the order within the
time prescribed by the court, a sheriff or constable at the plaintiff's
direction may enter the premises by force using the least destructive
means possible to remove the defendant.
    (b)  Personal property of the defendant may be removed from
the premises by the sheriff or constable and transported to a suitable
location for safe storage.  The sheriff or constable may delegate
responsibility for inventory, moving, and storage to the plaintiff, who
shall store the personal property in a suitable place and in a reasonable
manner.
    (c)  A tenant may not access the property until the removal and
storage costs have been paid in full, except that the tenant shall be
provided reasonable access within five business days to retrieve:
        (i)  clothing;
        (ii)  identification;
        (iii)  financial documents, including all those related to
the tenant's immigration status, employment status;
        (iv)  documents pertaining to receipt of public services;
and
        (v)  medical information, prescription medications, and
any medical equipment required for maintenance of medical needs.
    (d)  The personal property removed and stored shall, after 15
calendar days, be considered abandoned property and subject to
Section 78B-6-816.


[available at http://le.utah.gov/code/TITLE78B/htm/78B06_081200.htm]
[downloaded on July 8, 2013]


**SPA072**

## TEXT OF SIGNIFICANT REGULATIONS

N.Y.C. Marshals HandBook of Regulations, ch. IV, § 1-2, as effective October 24, 1997,[1] provides:

> Section 1-2: **Parties to be Named**
>
> Generally, all persons in possession of real property who derive their right or title to possession through the respondent (tenant) must be named in the papers. If a sub-tenant is in possession, he must be joined in the proceedings. If he is not named, he may not be evicted, even though the prime tenant may be evicted. Generally, the children, spouse, or guests of a tenant need not be named. Where a landlord does not know the name of the tenant, or subtenants, he may proceed against them by designating such tenant "John or Jane Doe."

[available at
http://web.archive.org/web/20121106032249/http://www.nyc.gov/html/doi/html/marshals/mar4.shtml] [downloaded on July 9, 2013]

---

[1] The text above appears as it was in effect at the time of the alleged events in 2011. The N.Y.C. Marshals HandBook of Regulations has been revised effective April 24, 2013. The current edition is available at http://www.nyc.gov/html/doi/html/marshals/mar4.shtml. No substantive change appears to have been made to ch IV, § 1-2.

**SPA073**

N.Y.C. Marshals HandBook of Regulations, ch. IV, § 5-2, as effective October 24, 1997,[2] provides in relevant part:

> Section 5-2:  **Service**
>
> * * * *
>
> **Marshal Responsible for Service**
>
> The marshal must retain the affidavit of service for the notice of eviction in his office and provide a photocopy to the tenant and/or the tenant's attorney upon request.
>
> The Corporation Counsel has advised this Department that marshals may retain the services of a licensed process server to serve the notices of eviction as required by the RPAPL. However, responsibility for the actions of the process server rests with the marshal.

[available at http://web.archive.org/web/20121106032249/http://www.nyc.gov/html/doi/html/marshals/mar4.shtml] [downloaded on July 9, 2013]

---

[2] The text above appears as it was in effect at the time of the alleged events in 2011.  The N.Y.C. Marshals HandBook of Regulations has been revised effective April 24, 2013.  The current edition is available at http://www.nyc.gov/html/doi/html/marshals/mar4.shtml.  Ch. IV, § 5-2 has been revised to add a reference to ch. IV, § 2-2 concerning the marshal's responsibilities with respect to the use of a process server.  Ch. IV, § 2-2 contains substantial new text, including new regulations for the marshal's selection and supervision of a process server.

N.Y.C. Marshals HandBook of Regulations, ch. IV, § 6-2, as effective October 24, 1997,[3] provides in relevant part:

> Section 6-2: **Preliminaries**
>
> * * * *
>
> Furthermore, the marshal may only proceed if he has in his possession at the eviction site, the warrant of eviction, and a photocopy of the warrant to provide to the tenant upon request, as well as proof of service of the 72-hour notice of eviction (including the affidavit of service and if applicable, certificates of mailing and mailing receipts).
>
> In executing a warrant, a marshal must **first** knock on the tenant's door, identify himself as a city marshal, and state his purpose. For a marshal's own safety and that of the public, he **must** conspicuously wear his official badge while executing a warrant or performing any other official function as required by §1602 of the New York City Civil Court Act.
>
> * * * *
>
> The marshal must ensure before he conducts an eviction or legal possession that he is at the premises specified in the warrant of eviction.
>
> * * * *

[available at http://web.archive.org/web/20121106032249/http://www.nyc.gov/html/doi/html/marshals/mar4.shtml] [downloaded on July 9, 2013]

---

[3] The text above appears as it was in effect at the time of the alleged events in 2011. The N.Y.C. Marshals HandBook of Regulations has been revised effective April 24, 2013. The current edition is available at http://www.nyc.gov/html/doi/html/marshals/mar4.shtml. No substantive change appears to have been made to the portions provided from ch IV, § 6-2.

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Sasmor v. Powell _____ v.

_____

_____

**CERTIFICATE OF SERVICE**
Docket Number: 13-1223-cv _____

I, Jon Sasmor _____, hereby certify under penalty of perjury that on
July 16, 2013 (name)
(date) _____, I served a copy of (1) both volumes of the Joint Appendix, _____
and (2) the Brief and Special Appendix for Plaintiff-Appellant Jon Sasmor _____

(list all documents)

by (select all applicable)*

- [✔] United States Mail
- [ ] Federal Express
- [ ] Overnight Mail
- [ ] Facsimile
- [✔] E-mail
- [ ] Hand delivery

on the following parties (complete all information and add additional pages as necessary):

Please see attached list.

| Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

July 16, 2013 _____        _____
Today's Date                                Signature

\*If different methods of service have been used on different parties, please indicate on a separate page, the type of service used for each respective party.

Certificate of Service Form

**ATTACHMENT TO CERTIFICATE OF SERVICE: RECIPIENT LIST**
*Sasmor v. Powell*, No. 13-1223-cv
July 16 , 2013

Mark H. Shawhan, Assistant Solicitor General
Office of the N.Y.S. Attorney General
120 Broadway, 25th Floor
New York, NY 10271-0332
Attorney for Appellees Fisher and Alt
*via* email to mark.shawhan@ag.ny.gov pursuant to consent under Fed. R. App. P. 25(c)(1)(D)
    and 2d Cir. Rule 25.1(h)(1) and (4)

Kenneth D. Litwack, Esq.
38-08 Bell Blvd., 2nd Floor
Bayside, NY 11361
Attorney for Appellee Powell
*via* email to klitwack@aol.com pursuant to consent under Fed. R. App. P. 25(c)(1)(D) and 2d
    Cir. Rule 25.1(h)(1) and (4)

David Lyle Stern, Esq.
50 Court Street, Suite 1100
Brooklyn, NY 11201
E.D.N.Y. Attorney for Appellees Teitelbaum, Schneebalg, Goldberger, and Henry Mgmt., LLC
*via* email to sternandsternesq@aol.com, with a copy of this certificate of service *via* USPS First
Class Mail, both pursuant to Mr. Stern's written consent dated March 24, 2012 ("Email service is
fine.  Please just also send me some form of confirmation that a document has been served")

Roy I. Martin, Esq. and Carmine J. Castellano, Esq.
Hodgson Russ LLP
1540 Broadway, 24th Floor
New York, NY 10036
E.D.N.Y. Attorney for Appellees Teitelbaum and Schneebalg in Related Case No. 11-cv-976
*via* email to RMartin@hodgsonruss.com and CCastell@hodgsonruss.com


Because Appellees Teitelbaum, Schneebalg, Goldberger, and Henry Mgmt., LLC have not
appeared in this appeal, I made additional service to each of them directly by sending each a CD
containing (1) both volumes of the Joint Appendix and (2) two copies of the Brief and Special
Appendix for Plaintiff-Appellant Jon Sasmor, together with a print copy of this certificate of
service, by USPS First Class Mail to each of the following addresses:

Isaac Teitelbaum                          Abraham Schneebalg
237 Hooper Street                         238 Keap Street
Brooklyn, NY 11211                        Brooklyn, NY 11211

Chaim Goldberger                          Henry Management, LLC
198 Middleton Street                      503 Lafayette Avenue, Bsmt.
Brooklyn, NY 11206                        Brooklyn, NY 11205