# 13-1223-cv

## United States Court of Appeals

### for the

### Second Circuit



JON SASMOR,

*Plaintiff - Appellant,*

v.

STEVEN POWELL, Individually and as City Marshal,

*Defendant - Cross Claimant - Cross Defendant - Appellee,*

and,

CHAIM GOLDBERGER, aka Henry Goldberg, ISAAC TEITELBAUM, aka Isaac Titalbaum, ABRAHAM SCHNEEBALG, FERN FISHER, Individually and as Deputy Chief Administrative Judge for the New York City Courts, CAROL ALT, Individually and as Chief Clerk of the Civil Court of the City of New York, and HENRY MANAGEMENT, LLC,

*Defendants - Cross Defendants - Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

## JOINT APPENDIX
## Volume 2 of 2 (Pages JA248 to JA439)

---

JON SASMOR
287 Franklin Avenue
Brooklyn, NY 11205
(917) 318-2619
jonathan.sasmor@gmail.com

*Plaintiff-Appellant, Pro Se*

MARK H. SHAWHAN
Assistant Solicitor General
Ofice of N.Y.S. Att'y General
120 Broadway 25th Floor
New York, NY 10271-0332
(212) 416-6325
mark.shawhan@ag.ny.gov

*Attorney for Defendants -
Cross Defendants - Appellees
Fern Fisher and Carol Alt*

KENNETH D. LITWACK
Kenneth D. Litwack Counselor
at Law P.C.
38-08 Bell Blvd Second Floor
Bayside, NY 11361
(718) 428-4806
Klitwack@aol.com

*Attorney for Defendant - Cross
Claimant - Cross Defendant -
Appellee Steven Powell*

NO APPEARANCE *for Defendants - Cross Defendants - Appellees Chaim Goldberger, Isaac Teitelbaum, Abraham Schneebalg, and Henry Management, LLC*

# 13-1223-cv

## United States Court of Appeals

### for the

## Second Circuit

JON SASMOR,

*Plaintiff - Appellant,*

v.

STEVEN POWELL, Individually and as City Marshal,

*Defendant - Cross Claimant - Cross Defendant - Appellee,*

and,

CHAIM GOLDBERGER, aka Henry Goldberg, ISAAC TEITELBAUM, aka Isaac Titalbaum, ABRAHAM SCHNEEBALG, FERN FISHER, Individually and as Deputy Chief Administrative Judge for the New York City Courts, CAROL ALT, Individually and as Chief Clerk of the Civil Court of the City of New York, and HENRY MANAGEMENT, LLC,

*Defendants - Cross Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## JOINT APPENDIX
## Volume 2 of 2 (Pages JA248 to JA439)

JON SASMOR
287 Franklin Avenue
Brooklyn, NY 11205
(917) 318-2619
jonathan.sasmor@gmail.com

*Plaintiff-Appellant, Pro Se*

MARK H. SHAWHAN
Assistant Solicitor General
Office of N.Y.S. Att'y General
120 Broadway 25th Floor
New York, NY 10271-0332
(212) 416-6325
mark.shawhan@ag.ny.gov

*Attorney for Defendants -
Cross Defendants - Appellees
Fern Fisher and Carol Alt*

KENNETH D. LITWACK
Kenneth D. Litwack Counselor
at Law P.C.
38-08 Bell Blvd Second Floor
Bayside, NY 11361
(718) 428-4806
Klitwack@aol.com

*Attorney for Defendant - Cross
Claimant - Cross Defendant -
Appellee Steven Powell*

NO APPEARANCE *for Defendants - Cross Defendants - Appellees Chaim Goldberger, Isaac
Teitelbaum, Abraham Schneebalg, and Henry Management, LLC*

## JOINT APPENDIX TABLE OF CONTENTS

## VOLUME 1

District Court Docket Sheet..........................................................................JA001

Verified Amended Complaint filed by Plaintiff Jon Sasmor (ECF No. 6)...JA012

       Exhibit A: "All Persons" Warrant and *In Personam* Judgment
          from *Ronald Henry Land Trust v. Fletcher*
          (ECF No. 6 at 38-40)................................................................JA049

       Exhibit B: "All Persons" Warrant and *In Personam* Judgment
          from *Ronald Henry Land Trust v. Diaz*
          (ECF No. 6 at 41-43)................................................................JA052

       Exhibit C: "All Persons" Warrant and *In Personam* Judgment
          from *Ronald Henry Land Trust v. Rosenbaum*
          (ECF No. 6 at 44-46)................................................................JA055

Verified Answer filed by Defendant Steven Powell (ECF No. 9)................JA058

Notice of Appearance and Verified Answer filed by Defendants
       Chaim Goldberger, Isaac Teitelbaum, Abraham Schneebalg,
       and Henry Management, LLC (ECF No. 20)....................................JA065

Notice of Motion to Dismiss by Defendant Powell (ECF No. 36 at 1)........JA078

Declaration of Kenneth D. Litwack, Esq. dated March 21, 2012
       (ECF No. 36 at 2-5)...........................................................................JA079

       Exhibit A: Verified Amended Complaint filed by Plaintiff
          Jon Sasmor (ECF Nos. 36-1, 2, 3) *[omitted; see JA012]*

Exhibit B: Verified Answer filed by Defendant Steven Powell
(ECF No. 36-4 at 1-8) *[omitted; see JA058]*

Exhibit C: N.Y.C. Dep't of Investigation, N.Y.C. Marshals
Handbook of Regulations, Ch. IV, § 6-3
(ECF No. 36-4 at 9-12)............................................................JA083

Exhibit D: Warrant of Eviction in *Ronald Henry Land Trust v.
Rosenbaum* (ECF No. 36-5 at 1-2)  *[omitted; see JA056]*

Exhibit E: Warrant of Eviction in *Ronald Henry Land Trust v.
Fletcher* (ECF No. 36-5 at 3-4)  *[omitted; see JA050]*

Exhibit F: Warrant of Eviction in *Ronald Henry Land Trust v.
Diaz* (ECF No. 36-5 at 5-6)  *[omitted; see JA053]*

Exhibit G: Housing Court documents from *Ronald Henry Land
Trust v. Rosenbaum*, as follows:

Decision/Order of Housing Judge Marcia J. Sikowitz
dated May 31, 2011 (ECF No. 36-5 at 8-9)
*[omitted; see JA245]*

Decision & Order on Motion from Appellate Term dated
July 5, 2011 (ECF No. 36-5 at 10)
*[omitted; see JA247]*

Exhibit H: Housing Court documents from *Ronald Henry Land
Trust v. Fletcher*, as follows:

Order to Show Cause of Housing Judge George H.
Heymann dated May 26, 2011 (ECF No. 36-6 at 2)......JA087

Decision/Order of Housing Judge George H. Heymann
    dated June 3, 2011 (ECF No. 36-6 at 3)
    *[omitted; see JA230]*

Decision & Order on Motion from Appellate Term dated
    July 5, 2011 (ECF No. 36-6 at 4)
    *[omitted; see JA231]*

Exhibit I: Housing Court documents from *Ronald Henry Land
Trust v. Diaz*, as follows:

Decision/Order of Housing Judge George H. Heymann
    dated June 3, 2011 (ECF No. 36-6 at 6)
    *[omitted; see JA240]*

Order to Show Cause of Appellate Term dated June 6,
    2011 (ECF No. 36-6 at 7-8)..........................................JA089

Decision & Order on Motion from Appellate Term dated
    July 5, 2011 (ECF No. 36-6 at 9)
    *[omitted; see JA241]*

Exhibit J: N.Y. App. Div. Joint Administrative Order 453,
    reprinted in N.Y.C. Marshals Handbook of Regulations
    (ECF No. 36-6 at 10-14)..........................................JA092

Exhibit K: N.Y. App. Div. Joint Administrative Order 456,
    reprinted in N.Y.C. Marshals Handbook of Regulations
    (ECF No. 36-7 at 1-2)..............................................JA097

Exhibit L: N.Y.C. Dep't of Investigation, N.Y.C. Marshals
    Handbook of Regulations, Ch. IV, § 1-2
    (ECF No. 36-7 at 3-4).............................................JA099

Exhibit M: Proposed Amended Verified Answer by Defendant
     Steven Powell (ECF No. 36-7 at 5-9).......................................JA101

Notice of Motion to Dismiss by Defendants Fern Fisher and Carol Alt
     (ECF No. 48)....................................................................JA106

Declaration of Andrew H. Meier, Esq. dated March 22, 2012
     (ECF No. 48-2).................................................................JA108

     Exhibit 1: Verified Amended Complaint filed by Plaintiff
         Jon Sasmor (ECF No. 48-3) *[omitted; see JA012]*

     Exhibit 2: Plaintiff's Lease for 287 Franklin Avenue
         (ECF No. 48-4), as follows:........................................JA112

         People's Choice Realty Version of Lease with Rider
            (ECF No. 48-4 at 3-9)......................................JA114

         Version of Lease Provided by Defendant Goldberger
            without Rider (ECF No. 48-4 at 11-16).........................JA122

     Exhibit 3: Memorandum of Law in Support of Answer filed
         by Jon Sasmor in *Ronald Henry Land Trust v. Rosenbaum*
         (appendix and exhibits omitted) (ECF No. 48-5).....................JA128

     Exhibit 4: Check Copies and Receipts from Rent and Security
         Deposit (ECF No. 48-6) (redacted)...........................................JA169

     Exhibit 5: First Amended Complaint filed by 287 Franklin Av.
         Residents' Ass'n, Jon Sasmor, Lisa Lin, William Osterweil,
         Kurt Fletcher, and Vilija Skubutyte in Related Case
         *287 Franklin Av. Residents' Ass'n, et al. v. Meisels, et al.,*
         E.D.N.Y. No. 11-cv-976 (KAM) (JO) (ECF No. 48-7)
         *[omitted here; available on ECF]*

Exhibit 6: Housing Court Documents from *Ronald Henry Land Trust v. Lin, et al.* (ECF No. 48-8), as follows:........................JA175

    Judicial Request / Order for Housing Inspection dated December 1, 2010 (ECF No. 48-8 at 3-4)......................JA177

    N.Y.C. Dep't of Hous. Preservation and Development Violation Summary Report (ECF No. 48-8 at 6-7)........JA180

    Order to Repair / Vacate Order for Top Floor of 287 Franklin Av. dated January 18, 2011 (ECF No. 48-8 at 9)......................................................................JA183

Exhibit 7: Notice of Petition and Petition with Exhibits in *Ronald Henry Land Trust v. Fletcher* (ECF No. 48-9)........................JA184

Exhibit 8: Notice of Petition and Petition with Exhibits in *Ronald Henry Land Trust v. Diaz* (ECF No. 48-10)............................JA194

Exhibit 9: Notice of Petition and Petition with Exhibits in *Ronald Henry Land Trust v. Fletcher* (ECF No. 48-11)........................JA204

Exhibit 10: Printout of Housing Court Case History for *Ronald Henry Land Trust v. Sasmor and Lin* (ECF No. 48-12)..........JA213

Exhibit 11: Notice of Petition and Petition with Exhibits in *Ronald Henry Land Trust v. Sasmor and Lin* (ECF No. 48-13)..........JA215

Exhibit 12: Housing Court Documents from *Ronald Henry Land Trust v. Fletcher* (ECF No. 48-14), as follows:........................JA222

    Special Appearance filed by Jon Sasmor and Willie Osterweil (ECF No. 48-14 at 3-4)..................................JA224

5

Affidavit of Jon Sasmor and Willie Osterweil dated May
    17, 2011 in Support of Order to Show Cause to Stay
    Execution of Warrants as to Tenants Unnamed in
    Caption (ECF No. 48-14 at 5-7)....................................JA226

Order to Show Cause Denied by Housing Judge George
    M. Heymann dated May 18, 2011 (ECF No. 48-14
    at 8)..............................................................................JA229

Decision/Order of Housing Judge George H. Heymann
    dated June 3, 2011 (ECF No. 48-14 at 9)......................JA230

Decision & Order on Motion from Appellate Term dated
    July 5, 2011 (ECF No. 48-14 at 10)..............................JA231

Exhibit 13: Housing Court Documents from *Ronald Henry Land
Trust v. Diaz* (ECF No. 48-15), as follows:..............................JA232

    Housing Court History of Proceedings (ECF No. 48-15 at 2)..JA233

    Special Appearance filed by Jon Sasmor and Willie
        Osterweil (ECF No. 48-15 at 3-4)...................................JA234

    Affidavit of Jon Sasmor and Willie Osterweil dated May
        17, 2011 in Support of Order to Show Cause to Stay
        Execution of Warrants as to Tenants Unnamed in
        Caption (ECF No. 48-15 at 5-7)....................................JA236

    Order to Show Cause Denied by Housing Judge George
        M. Heymann dated May 18, 2011 (ECF No. 48-15
        at 8)..............................................................................JA239

    Decision/Order of Housing Judge George H. Heymann
        dated June 3, 2011 (ECF No. 48-15 at 9)......................JA240

Decision & Order on Motion from Appellate Term dated
July 5, 2011 (ECF No. 48-15 at 10)..............................JA241

Exhibit 14: Housing Court Documents from *Ronald Henry Land
Trust v. Rosenbaum* (ECF No. 48-16), as follows:..................JA242

Answer filed by Jon Sasmor and Lisa Lin (exhibits omitted)
(ECF No. 48-16 at 2-3)...................................................JA243

Decision/Order of Housing Judge Marcia J. Sikowitz
dated May 31, 2011 (ECF No. 48-16 at 4-5).................JA245

Decision & Order on Motion from Appellate Term dated
July 5, 2011 (ECF No. 48-16 at 6)................................JA247

## VOLUME 2

Declaration of Jon Sasmor dated March 22, 2012 (ECF No. 56)................JA248

Exhibit A: People's Choice Realty Receipts for Rent and
Security Deposit (ECF No. 56-1) *[omitted; see JA171, JA 172]*

Exhibit B: Plaintiff's Lease for 287 Franklin Avenue, People's
Choice Realty Version of Lease with Rider (ECF No. 56-2)
*[omitted; see JA114]*

Exhibit C: Plaintiff's Lease for 287 Franklin Avenue, Version of
Lease Provided by Defendant Goldberger without Rider
(ECF No. 56-3) *[omitted; see JA122]*

Exhibit D: Plaintiff's Lease for 287 Franklin Avenue, Altered
Version of People's Choice Realty Lease without Rider,
as Provided by Trust Defendants in Discovery in Related
Case (ECF No. 56-4)..............................................................JA270

Exhibit E: "Ronald Henry Land Trust" Deed dated May 12, 2009
(ECF No. 56-5)..................................................................JA274

Exhibit F: Trust Defendants' Interrogatory Responses in Related
Case Concerning Peter Henry a/k/a "Goro" (ECF No. 56-6)...JA283

Exhibit G: Invoice dated July 30, 2010 from Defendant Henry
Management, LLC Showing $50 Charge Related to "goro"
(ECF No. 56-7)..................................................................JA289

Exhibit H: Affidavit of Ronald Henry dated August 6, 2010
(ECF No. 56-8)..................................................................JA290

Exhibit I:  Rent Check to Ronald Henry (ECF No. 56-9)
(redacted)..........................................................................JA292

Exhibit J: Memorandum and Order of Magistrate Judge James
Orenstein in Related Case dated March 12, 2012 (ECF No.
56-10)................................................................................JA293

Exhibit K: Managing Agent's Affidavit of Ronald Henry dated
August 12, 2010 (ECF No. 56-11).......................................JA297

Exhibit L: Notice of Pendency of Action for *IndyMac Federal
Bank, FSB v. Ronald Henry* (ECF No. 56-12).......................JA299

Exhibit M: Docket as of February 28, 2012 for *OneWest Bank,
FSB v. Ronald Henry* (ECF No. 56-13)................................JA303

Exhibit N: Agreement and Declaration of Trust, Ronald Henry
Land Trust, dated May 13, 2009 (ECF No. 56-14)................JA304

Exhibit O: Assignment of Beneficial Interest in Land Trust, dated
May 13, 2009 (ECF No. 56-15)............................................JA312

8

Exhibit P: Affirmation of Defendant Chaim Goldberger dated
      July 21, 2011 (ECF No. 56-16)..............................................JA313

Exhibit Q: Nonpayment Petition in *Ronald Henry Land Trust*
      *v. Lin, et al.* (ECF No. 56-17)...................................................JA314

Exhibit R: *In Personam* Housing Court Judgments Against
      Fletcher, Diaz, and Rosenbaum (ECF No. 56-18)
      *[omitted; see JA051, JA054, JA057]*

Exhibit S: Transcript of April 28, 2011 Housing Court
      Proceedings before Housing Judge George M. Heymann
      in *Ronald Henry Land Trust v. Fletcher* and
      *Ronald Henry Land Trust v. Diaz* (ECF No. 56-19)................JA315

Exhibit T: Decision/Order of Housing Judge Marcia J. Sikowitz
      dated May 31, 2011 in *Ronald Henry Land Trust v.*
      *Rosenbaum* (ECF No. 56-20) *[omitted; see JA 245]*

Exhibit U: Decision & Orders on Motion from Appellate Term dated
      July 5, 2011 in *Ronald Henry Land Trust v. Fletcher,*
      *Ronald Henry Land Trust v. Diaz*, and *Ronald Henry Land*
      *Trust v. Rosenbaum* (ECF No. 56-21) *[omitted; see JA231,*
      *JA241, JA247]*

Exhibit V: *In Personam* Housing Court Judgments Against
      Osterweil, Skubutyte, and Campos (ECF No. 56-22)..............JA327

Exhibit W: "All Persons" Warrants Related to Fletcher, Diaz,
      and Rosenbaum Cases (ECF No. 56-23) *[omitted;*
      *see JA050, JA053, JA056]*

Exhibit X: "All Persons" Warrants Related to Osterweil, Skubutyte, and Campos Cases, Accompanied by Cover Letters Returning Warrants Unexecuted (ECF No. 56-24)....................................JA330

Exhibit Y: *In Personam* Notices of Petition (ECF No. 56-25)...........JA335

Exhibit Z: Housing Court Affidavits of Service (ECF No. 56-26).....JA341

Exhibit AA: Letters from Plaintiff Jon Sasmor to Defendant Steven Powell dated July 12, 2011; July 18, 2011; and October 3, 2011 (ECF No. 56-27)...........................................JA353

Reply Declaration of Jon Sasmor dated July 27, 2012 (ECF No. 57-1)......JA361

Exhibit A: *Bedford Apts. Co. v. Coutts*, 28 Hous. Ct. Rptr. 738A, N.Y.L.J., Nov. 30, 2000, p. 29, col. 6 (N.Y. App. Term 2000) (ECF No. 57-2)...............................................................JA363

Exhibit B: Deed Related to *Bedford Apts.* Case (ECF No. 57-3).......JA364

Exhibit C: Correspondence Between Plaintiff and Defendants' Counsel Regarding Preliminary Injunction Motion (ECF No. 57-4) *[omitted here; available on ECF]*

Exhibit D: Letter Included in Legislative History of Conn. Gen. Stat. § 47a-26h (ECF No. 57-5)...............................................JA366

Letter dated November 8, 2012 from Andrew H. Meier, Esq. to Magistrate Judge James Orenstein (ECF No. 58)...............................JA368

Exhibit A: Post-Trial Decision and Order dated October 10, 2012 in *Ronald Henry Land Trust v. Sasmor and Lin* (ECF No. 58 at 4-15)...............................................................................JA371

10

Letter dated November 15, 2012 from Jon Sasmor to Magistrate Judge
     James Orenstein (ECF No. 59)...........................................................JA383

     Exhibit 1: Notices of Appeal in *Ronald Henry Land Trust v.*
          *Sasmor and Lin* (ECF No. 59-1)..............................................JA386

Letter dated November 16, 2012 from Jon Sasmor to Magistrate Judge
     James Orenstein, Correcting Typographical Error (ECF No. 60).......JA391

Plaintiff's Objections to Report and Recommendation, dated March 15,
     2013 (ECF No. 63) (which are independently relevant because
     they affect the standard of review by the District Judge)....................JA392

Notice of Appeal filed by Jon Sasmor on April 2, 2013 (ECF No. 68).......JA438

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JON SASMOR, | | DECLARATION OF |
| Plaintiff, | | JON SASMOR |
| - against - | | |
| STEVEN POWELL, et al., | | No. 11-CV-4645 (KAM) (JO) |
| Defendants | | |

Jon Sasmor hereby declares as follows under penalty of perjury:

1. I am the Plaintiff in this case. I am of age and competent to testify. I make this declaration in support of my motion for preliminary injunction.

2. This case challenges the constitutionality of subdivision 749(1) of the New York Real Property Actions and Proceedings Law, which requires the issuance of a warrant commanding the removal of "all persons" following a judgment of eviction against any one person.

3. 287 Franklin Avenue, Brooklyn, NY is a rooming house with nine rooming units, a shared kitchen and living room, and two shared bathrooms. In both the rooming units and the common spaces, typical household items may be found, including mattresses, dishes, a refrigerator, food, bookshelves, and toiletries. There also is a flower garden.

4. Plaintiff moved into the top floor, front small room, also known as apt. #4F, of 287 Franklin Avenue on April 1, 2010. Plaintiff had discovered the rooms available for rent at 287 Franklin Avenue through a classified advertisement and made arrangements to move in through a real estate agency (People's Choice Realty) by having a credit check done, and by paying rent

1

**JA248**

and security deposit. EXHIBIT A. After accepting Plaintiff's rent and security deposit, the real
estate agency provided Plaintiff with keys to the front door.

5. Plaintiff returned to the People Choice Realty office on April 17, 2010 and signed a
lease, which was back-dated to March 20, 2010. The lease for "all floors, entire apartment" of
287 Franklin Avenue named ten co-tenants including Plaintiff and named Defendant Henry
Management, LLC as owner. EXHIBIT B.

6. A separate, slightly different copy of the lease without the rider was provided by
Defendant Chaim Goldberger a/k/a Henry Goldberg. EXHIBIT C. The owner signature on the
lease copy provided by Defendant Goldberger appears to say "Henry." The lease provided by
Defendant Goldberger also included Plaintiff as one of ten co-tenants and covered "all floors,
entire apartment" of 287 Franklin Avenue. This copy of the lease was provided by Defendant
Goldberger in April or May 2010 when the electricity had been turned off at 287 Franklin Avenue
and the electric company required the tenants to show a lease to restore electricity.

7. A third version of the lease was created by alteration of the first version of the lease
that Plaintiff had signed on April 17, 2010. On the lease signed by Plaintiff, Defendant
Goldberger or someone else whited out the name of one of the co-tenants, Anthony Steele, who
had moved out, and replaced the name with Amanda Diaz, a co-tenant moving in. Another
signature dated April 30, 2010, which appears to belong to Amanda Diaz, was added to the
signature page. This third version, as provided by Defendants Goldberger, Teitelbaum,
Schneebalg, and Henry Management, LLC in discovery in the related RICO case, also appears to
omit two pages that were in the other versions. EXHIBIT D.

8. At the time Plaintiff moved in, the agents at People Choice Realty told plaintiff that
"Isaac Titalbaum" was the owner of 287 Franklin Avenue and that "Henry" [referring to

**JA249**

Defendant Chaim Goldberger] was the managing agent.

9. In May 2010, Plaintiff became suspicious about the ownership of the building because a foreclosure pre-settlement conference notice arrived in the mail. The notice was addressed to Ronald Henry. One of the other tenants, Brian Dudjak, told Plaintiff that Ronald Henry had visited 287 Franklin Avenue before Plaintiff moved in, claimed he was the owner, and had been surprised to find people living in the building.

10. In June 2010, Plaintiff discovered that Defendant Isaac Teitelbaum a/k/a Isaac Titalbaum, was not the record owner of 287 Franklin Avenue. Instead, the most recent deed on file with the New York City Register (EXHIBIT E) listed "Ronald Henry Land Trust" as the record owner of 287 Franklin Avenue.

11. On or around July 21, 2010, Plaintiff and other tenants arranged for the front door locks to 287 Franklin Avenue to be changed. Plaintiff spoke with Defendant Goldberger in person and left voice messages for both Defendants Goldberger and Teitelbaum stating that he would provide them keys to the front door after receipt of the proof of ownership and requesting that they not return to 287 Franklin Avenue until they sent proof of their ownership and Plaintiff showed it to a lawyer.

12. On August 5, 2010, Plaintiff was about to leave 287 Franklin Avenue when he heard a loud noise. As he went downstairs, he discovered that someone was drilling at the locks on the front door. Plaintiff opened the front door to see what was happening. A large man with a drill was drilling into the locks. While Plaintiff was still in the vestibule, out of the view of the street, he heard Defendant Goldberger's voice call out to the man with the drill, "I thought you said no one was home." Plaintiff called the police. Defendant Goldberger told the police that he was connected with "Ronald Henry Land Trust" and showed the police a Trust Agreement, which

3

Plaintiff never had seen before. Defendant Goldberger also showed a lease between Ronald

Henry Land Trust and Peter Henry purportedly starting March 31, 2010 (the day before Plaintiff

and several other co-tenants moved in). A third man was present, a middle-aged Rastafarian

man, who showed an ID card listing his name as Peter Henry, but he called himself "Goro" or

"Guru." Goro said he had been paying $1000 per month rent for four months but had not yet

moved in. Police Officer Villanueva directed Plaintiff to permit the locks to be changed and

directed Defendant Goldberger to provide keys to Plaintiff. Goro said he would be moving in the

following Monday.

13. Discovery responses from the related RICO case, affirmed by Defendants

Goldberger, Teitelbaum, and Schneebalg, state that "No rent was collected from Peter Henry."

(EXHIBIT F) An invoice obtained in discovery in the RICO case shows a charge of $50 marked

"goro" a few days before the August 5, 2010 break-in. EXHIBIT G.

14. On August 6, 2010, Plaintiff found and met with Ronald Henry. Ronald Henry

claimed ownership of 287 Franklin Avenue and told Plaintiff and provided an affidavit

(EXHIBIT H) stating that he did not sign the deed granting possession of 287 Franklin Avenue

from himself as grantor to "Ronald Henry Land Trust" as grantee. Plaintiff was present when

Ronald Henry wrote the affidavit in the common dining room area of 287 Franklin Avenue and

went with him when Ronald Henry executed the affidavit before a notary at the Chase Bank at

Bedford Avenue and DeKalb Avenue. At the August 6, 2010 meeting, Ronald Henry told

Plaintiff and the co-tenants who were present that they could continue to live at 287 Franklin

Avenue.

15. By bank check dated August 11, 2010, 287 Franklin Avenue Residents' Association,

of which Plaintiff is the President, paid nominal rent to Ronald Henry for the entire building at

**JA251**

287 Franklin Avenue. (EXHIBIT I). The $100 amount was in consideration of Goro, and the possibility that he might return, and the tenants might need to leave imminently.

16. Goro did return on August 25, 2010. At that time stated that he needed to move some tools into the basement. Plaintiff told Goro that he had spoken with the real owner. Goro cursed at Plaintiff repeatedly and left.

17. Plaintiff saw Goro on one other occasion, November 20, 2011, for the purpose of service of process in the related RICO case. Goro physically assaulted the process server and threatened both Plaintiff and the process server. *See* EXHIBIT J (Memorandum and Order of Magistrate Judge Orenstein granting entry of default of Peter Henry a/k/a Guru in the related RICO case).

18. On or around August 10, 2010, Ronald Henry went with Plaintiff to the police station of the 79th Precinct of the New York Police Department. Ronald Henry spoke with Officer Villanueva, the same officer who had been present at the August 5, 2010 incident. Officer Villanueva was surprised to see Ronald Henry and told Ronald Henry he was "a sort of an urban legend." Officer Villanueva suggested to Ronald Henry that he change the front door locks again. Ronald Henry asked Plaintiff to have the locks changed and to provide him the key. The Police Department also provided paperwork to Ronald Henry for enrollment in the Formal Trespass Affidavit Program ("FTAP"). EXHIBIT K.

19. The FTAP program is a joint program between the New York Police Department and the District Attorney. The purpose of the program is to permit building owners or managing agents to register buildings where crimes have been committed and request heightened police protection against trespassing. The FTAP program has a website at http://www.brooklynda.org/f-tap/f-tap.htm.

5

**JA252**

20. On August 12, 2010, Plaintiff met with Ronald Henry in Manhattan and went with Ronald Henry to the Bank of America, 96th Street and Broadway, where Ronald Henry executed before a notary the paperwork that had been provided by the police for the FTAP program. While at the Bank of America, Plaintiff gave Ronald Henry the requested copy of the new front door key and also the $100 rent check discussed above (EXHIBIT I). At Ronald Henry's request, Plaintiff delivered the executed FTAP paperwork to the desk officer at the 79th Precinct.

21. As a result of the lock change at Ronald Henry's and Officer Villanueva's direction, for thirteen months between August 2010 and September 2011, Defendants Goldberger, Teitelbaum, Schneebalg, and Henry Management, LLC had no access to the front door locks of the building despite several break-in attempts by them and despite their being told on several different occasions by police officers that they could not change the front door locks.

22. Ronald Henry claimed that the Ronald Henry Land Trust deed (EXHIBIT E) was fraudulent. After August 2010, Plaintiff and other tenants have escrowed rent in part because of the conflicting claims to ownership.

23. The foreclosure case related to 287 Franklin Avenue is still pending, *OneWest Bank, FSB v. Ronald Henry, et al.*, No. 11344/09, Supreme Court of the State of New York, County of Kings. *See* EXHIBIT L (Notice of Pendency) and EXHIBIT M (docket).

24. In discovery within the related RICO case, Defendants Goldberger, Teitelbaum, Schneebalg, and Henry Management, LLC provided an "Agreement and Declaration of Trust" dated May 13, 2009 listing Defendants Schneebalg and Teitelbaum as trustees of Ronald Henry Land Trust and listing Ronald Henry as beneficiary. EXHIBIT N. The same Defendants also provided an "Assignment of Beneficial Interest in Land Trust," also dated May 13, 2009, in which Ronald Henry appears to sign away 100% of his beneficial interest, though the space for

6

the recipient of the beneficial interest is left blank. EXHIBIT O.

25. Defendant Goldberger has stated in an affirmation dated July 21, 2011 that "I was hired by Isaac Teitelbaum, trustee of Petitioner-trust to manage the property [287 Franklin Avenue] and did so as an employee of Henry Management LLC in connection with this premises." EXHIBIT P, ¶ 4. Based on this affirmed statement and similar affirmed statements made in discovery responses in the related RICO case, I state that Defendant Goldberger claims to be the managing agent for Ronald Henry Land Trust in his capacity as employee of Defendant Henry Management, LLC.

26. Based on information available in the public record, it appears that Defendants Goldberger, Teitelbaum, Schneebalg, and Henry Management, LLC have paid no property taxes, utilities, or violation penalties for the property and conduct business in the name of "Ronald Henry Land Trust" specifically for the purpose of avoiding lawful expenses of property ownership. Some of the utilities have been paid for by the City of New York as emergency repairs. Plaintiff has information and believes that many of the taxes and other expenses have been paid by OneWest Bank, FSB to protect the priority of the mortgage upon which it is in the process of foreclosing.

27. Until the September 20, 2011 break-in, Plaintiff, co-tenants, and Ronald Henry maintained exclusive access to the front door locks of 287 Franklin Avenue. On September 20, 2011, Defendant Goldberger and some other men used a drill and crowbar to knock open the upper front door. Plaintiff called the police. A process server was present and told the police that he was there to serve process. The police directed Plaintiff to permit the process server entry and to permit the locks to be changed. The police directed Defendant Goldberger to provide keys to the tenants. Since the September 20, 2011 break-in, Defendant Goldberger has key access to one

7

of the two front doors, while Ronald Henry has key access to the other front door. Plaintiff and co-tenants have been provided key access to both front doors, one door by each of the two groups claiming ownership.

28. Since April 1, 2010, 287 Franklin Avenue has constituted Plaintiff's permanent home and mailing address. 287 Franklin Avenue is the address listed on Plaintiff's driver's license. Plaintiff has no other residence.

29. Though 287 Franklin Avenue has a foreclosure case pending and though two groups of parties make conflicting claims to ownership, Plaintiff has paid rent to both groups, both groups have accepted Plaintiff's rent, and both groups have provided Plaintiff and co-tenants with keys to the front doors. All parties claiming to be the owners have at some time expressly given permission and acquiesced to Plaintiff's occupancy.

30. Plaintiff initially used only one of the rooming units at 287 Franklin Avenue when he moved in on April 1, 2010 (the "Top Floor Front Small Room"). He subsequently began using several other rooms when co-tenants moved out and gave him their keys and permission to use their rooms, each of which also were included in Plaintiff's shared lease. Many of the other tenants moved out because of Defendant Goldberger's repeated break-in attempts and harassment. The rooms to which former co-tenants provided Plaintiff with their keys upon moving out include the rooms discussed below formerly occupied by Kurt Fletcher, Amanda Diaz, Alex Rosenbaum, Willie Osterweil, Vilija Skubutyte, and Luis Campos.

31. "Ronald Henry Land Trust" brought a nonpayment eviction case in November 2010 in which its attorney, Stuart I. Jacobs, affirmed under penalty of perjury in a Verified Petition that Plaintiff and four others were tenants of "Apt: ENTIRE HOUSE in the building known as 287 FRANKLIN AVE." "pursuant to a Written rental agreement." EXHIBIT Q. Civil Court of the

8

**JA255**

City of New York, County of Kings, Housing Part, L&T No. 100576/10. On January 7, 2011, the

case was taken off calendar to be deemed dismissed if not restored in 45 days, and has not been

restored. Based on the lack of a Multiple Dwelling Registration, Housing Judge Marcia J.

Sikowitz told Plaintiff and co-tenants at the January 7, 2011 hearing, "Don't pay any rent."

32. "Ronald Henry Land Trust" brought seven holdover cases in March 2011 against

named tenants of 287 Franklin Avenue seeking their eviction from specific rooms. Civil Court of

the City of New York, County of Kings, Housing Part, L&T Nos. 64297/11, 64298/11, 64299/11,

64300/11, 64301/12, and 64303/11.

33. The holdover case listed above in which Plaintiff was named as a Respondent, No.

64299/11, was voluntarily discontinued by the Petitioner on June 30, 2011.

34. Also on June 30, 2011, just prior to the voluntary discontinuance of No. 64299/11,

another holdover eviction case naming Plaintiff as a Respondent was filed, No. 78902/11, and a

Notice of Petition was handed to Plaintiff at the courthouse. Plaintiff has answered with twenty-

four affirmative defenses. A bench trial is underway. Four days of trial have occurred already.

As of the time of this declaration, the trial is continued to March 29, 2012.

35. The six holdover eviction cases against the other named tenants at 287 Franklin

Avenue resulted in judgments as follows.

36. L&T Nos. 64297/11 (against Kurt Fletcher), 64298/11 (against Amanda Diaz), and

64303/11 (against Alex Rosenbaum) resulted in default judgments for Ronald Henry Land Trust.

EXHIBIT R. All three of Fletcher, Diaz, and Rosenbaum moved away, respectively, in

September 2010, January 2011, and August 2010, before these cases against them were filed in

March 2011. Accordingly, as they no longer lived in Brooklyn, they did not defend their cases.

Plaintiff and two other co-tenants attempted to defend these cases anyway, concerned that the

9

**JA256**

judgments against former tenants might adversely impact them. In the Fletcher and Diaz cases,

Housing Judge George M. Heymann asked whether Plaintiff had a separate case pending against

him, and then denied him an opportunity to speak further and rendered a default judgment.

EXHIBIT S, transcript. (The case pending against Plaintiff at that time, 64299/11, since has been

voluntarily discontinued). In the Rosenbaum case, which was about the room that was Plaintiff's

bedroom at the time, Plaintiff filed an answer, but Plaintiff's answer, though clearly labelled as

such, was described by the Housing Court as an attempted "motion to dismiss the petition on

behalf of respondent Rosenbaum" and judgment was made on default of Rosenbaum. EXHIBIT

T.

37. In the Fletcher, Diaz, and Rosenbaum cases, the Appellate Term of the Supreme

Court of the State of New York, Second Department, 2nd, 11th, and 13th Judicial Districts

dismissed Plaintiff's and other actual tenants' appeals on the Court's own motion stating that

"nonparty-appellants are not aggrieved by the final judgment." EXHIBIT U.

38. It is hardly surprising that Plaintiff was not accorded an opportunity in the Housing

Court to defend against the Fletcher, Diaz, and Rosenbaum judgments, and hardly surprising that

the Appellate Term found that Plaintiff was not aggrieved, considering that the judgments

themselves determine the rights of named parties only and not of Plaintiff. *See* EXHIBIT R

("Judgment of possession is granted in favor of: RONALD HENRY LAND TRUST, and against

FLETCHER, KURT;" "Judgment of possession is granted in favor of: RONALD HENRY

LAND TRUST, and against DIAZ, AMANDA;" "Judgment of possession is granted in favor of:

RONALD HENRY LAND TRUST, and against ROSENBAUM, ALEX").

39. L&T Nos. 64300/11 (against Willie Osterweil), 64301/11 (against Vilija Skubutyte),

and 64302/11 (against Luis Campos) resulted in summary judgments for Ronald Henry Land

10

**JA257**

Trust. All three of Osterweil, Skubutyte, and Campos were living at 287 Franklin Avenue during

the pendency of the cases against them and defended their cases in Housing Court, but lost.

Though the judgments against them have not been executed, all three of Osterweil, Skubutyte,

and Campos have since moved out of 287 Franklin Avenue, respectively, in August 2011, July

2011, and October 2011. Plaintiff did not make any appearance or attempt to defend the

Osterweil, Skubutyte, and Campos cases, but rather such attempts were made by the named

respondents themselves, Osterweil, Skubutyte, and Campos.

40. Like the other judgments discussed above, the judgments against Osterweil,

Skubutyte, and Campos similarly determine the rights of possession only as to the named parties.

*See* EXHIBIT V ("Judgment of possession is granted in favor of: RONALD HENRY LAND

TRUST, and against OSTERWEIL, WILLIE;" "Judgment of possession is granted in favor of:

RONALD HENRY LAND TRUST, and against SKUBUTYTE, VILIJA;" "Judgment of

possession is granted in favor of: RONALD HENRY LAND TRUST, and against CAMPOS,

LUIS").

41. No judgment whatsoever was made against "all persons" or "all other persons."

Instead, all the judgments in favor of Ronald Henry Land Trust were against named former

tenants only. *See* N.Y. Real Prop. Acts. Law § 747(1) ("The court shall direct that a final

judgment be entered determining the rights of the parties.").

42. No hearing was held about whether "all persons" should be evicted. Instead,

hearings were held about the possessory rights of individually named parties. The limitation of

the hearing to the named parties is evidenced by the judgments themselves, which determine

only the rights of the named parties and make no reference to "all persons." These *in personam*

judgments never authorized any "all persons" warrant.

11

**JA258**

43. Without any judgment whatsoever authorizing removal of "all persons," Defendant Alt nonetheless issued, and continues issuing, warrants commanding the removal of "all persons," as required by Subdivision 749(1) of the New York Real Property Actions and Proceedings Law. Yet neither the Clerk's office nor any other part of the Housing Court provides any notice or holds any hearing about whether an "all persons" warrant should issue.

44. "All persons" warrants were issued with respect to each of the above referenced *in personam* judgments against Fletcher, Diaz, Rosenbaum, Osterweil, Skubutyte, and Campos. Each warrant commanded the removal of the named respondent "AND ALL OTHER PERSONS." EXHIBITS W and X.

45. According to the warrants returned to the Housing Court, EXHIBIT W, the Rosenbaum "AND ALL OTHER PERSONS" warrant was executed on July 13, 2011 and the Fletcher "AND ALL OTHER PERSONS" and Diaz "AND ALL OTHER PERSONS" warrants were executed on July 20, 2011.

46. Though no warrant was shown at the times of the July 13 and July 20, 2011 evictions despite Plaintiff's repeated requests, Defendant Powell and Defendant Goldberger evicted Plaintiff from the rooms formerly occupied by Fletcher, Diaz, and Rosenbaum at the approximate times listed on the corresponding warrants next to Defendant Powell's signature. EXHIBIT W.

47. Plaintiff obtained the key to the Rosenbaum room, the second floor back large room, from Alex Rosenbaum in August 2010 when Rosenbaum moved out. Co-tenants Lisa Lin and Willie Osterweil also had keys to the Rosenbaum room. Starting in January 2011, Plaintiff lived in the Rosenbaum room as his bedroom and stored many of his possessions there. Plaintiff occupied the Rosenbaum room as his bedroom for approximately six months until the July 13, 2011 warrant execution. The Rosenbaum room is part of the demised premises described in the

12

**JA259**

leases, "all floors, entire apartment." EXHIBITS B, C, and D.

48. Plaintiff obtained the key to the Fletcher room, the top floor back small room, from Kurt Fletcher in August 2010 when Fletcher moved into a different room in the building and gave Plaintiff the key. Plaintiff does not know of anyone else with a copy of that key. Starting in August 2010, Plaintiff stored some possessions in the Fletcher room. Plaintiff occupied the Fletcher room as a storage room for approximately eleven months until the July 20, 2011 warrant execution. The Fletcher room is part of the demised premises described in the leases, "all floors, entire apartment." EXHIBITS B, C, and D.

49. Plaintiff obtained the key to the Diaz room, the top floor back large room, from Amanda Diaz in January 2011 when Diaz moved out. Co-tenant Willie Osterweil also used the Diaz room and had key access. Starting in January 2011, Plaintiff used the Diaz room to store a few items and as an exercise room. Plaintiff occupied the Diaz room as a storage and exercise room for approximately six months until the July 20, 2011 warrant execution. The Diaz room is part of the demised premises described in the leases, "all floors, entire apartment." EXHIBITS B, C, and D.

50. On July 13, 2011, Defendants Powell and Goldberger, along with a third man with a bag of tools, evicted Plaintiff from the Rosenbaum room. On July 20, 2011, Defendants Powell and Goldberger, along with the same third man with the bag of tools, evicted Plaintiff from the Fletcher and Diaz rooms.

51. Since the unconstitutional July 13 and July 20, 2011 evictions, Plaintiff has had no access to his bedroom, storage room, exercise room, and his possessions inside those rooms. Plaintiff's rooms continue to sit untouched, padlocked shut, with Plaintiff's possessions inside and Plaintiff locked out.

13

**JA260**

52. Since the filing of this case, Defendants Goldberger, Teitelbaum, Schneebalg, and Henry Management, LLC have made no known attempts to enter the Rosenbaum, Fletcher, and Diaz rooms or to take further action despite their possession of keys to the padlocks on those rooms.

53. Plaintiff's possessions locked inside the Rosenbaum room since July 13, 2011 include at least a couch and a lamp. Plaintiff's possessions locked inside the Fletcher room since July 20, 2011 include at least a laundry cart, a bicycle, a scooter, and some buckets. Plaintiff's possessions locked inside the Diaz room since July 20, 2011 include at least a box spring and a subway map.

54. The judgments against Osterweil, Skubutyte, and Campos remain outstanding and not yet executed.

55. Following the filing of this case, Defendant Powell returned unexecuted to the Housing Court the warrants for Osterweil "AND ALL OTHER PERSONS," Skubutyte "AND ALL OTHER PERSONS," and Campos "AND ALL OTHER PERSONS." EXHIBIT X.

56. There is substantial confusion about the target rooms of the Skubutyte and Campos warrants, as the rooming units listed in those Housing Court cases are described, respectively, as "Room #5 – Second Story" and "Room #1, 1st Story," though the rooming units at 287 Franklin Avenue are not numbered.

57. Plaintiff obtained the key to the Campos room, the second floor back small room, from Luis Campos sometime after September 2010 when Campos moved into a different room at 287 Franklin Avenue. One co-tenant also had a key to the Campos room. Beginning in June 2011, Plaintiff slept in the Campos room some nights and stored possessions there. Since around December 2011, Plaintiff has slept in the Campos room every night as a bedroom.

14

**JA261**

Because a notice of eviction for Luis Campos was delivered to the Campos room on September 20, 2011, Plaintiff states that the Campos judgment would be executed against the Campos room, which is currently his bedroom. The Campos room is part of the demised premises described in the leases, "all floors, entire apartment." EXHIBITS B, C, and D.

58. Plaintiff obtained the key to the Osterweil room, the second floor front large room, from Luis Campos in October 2011 when Campos moved out of 287 Franklin Avenue. Campos had taken over the room from Osterweil in or around August 2010. To my knowledge, no one else has a key to the Osterweil room. Because a notice of eviction for Willie Osterweil was delivered to the Osterweil room on September 20, 2011, Plaintiff states that the Osterweil judgment would be executed against the Osterweil room. The Osterweil room is part of the demised premises described in the leases, "all floors, entire apartment." EXHIBITS B, C, and D.

59. Plaintiff obtained the key to the Skubutyte room, the third floor front large room, from Vilija Skubutyte in July 2011 when Skubutyte moved out of 287 Franklin Avenue. A co-tenant, Lisa Lin, also has a key to the Skubutyte room. Plaintiff used the Skubutyte room as his bedroom most nights between July 2011 and December 2011. Plaintiff continues to store some possessions in the Skubutyte room, including court papers. Because no notice of eviction was served in the Skubutyte case and the premises description is so vague, "Room #5 – Second Story," it is speculative to determine at which room the Skubutyte judgment would be executed. The Skubutyte room is part of the demised premises described in the leases, "all floors, entire apartment." EXHIBITS B, C, and D.

60. Though Defendant Powell has returned unexecuted the warrants of eviction for the Osterweil, Skubutyte, and Campos rooms, it would be expected that replacement warrants will issue upon request to the Housing Court Clerk by Defendant Powell or by any other city marshal.

15

**JA262**

The warrants are *required by statute* to be issued against "all persons." N.Y. Real Prop. Acts.
Law § 749(1). Plaintiff is now living and sleeping in one of the rooms to which a notice of
eviction had been served, though the judgment was issued against a former tenant only. Thus,
once again, Plaintiff is imminently exposed to a concrete, particular threat of another "all
persons" warrant being used to evict him based upon an outstanding judgment against a named
former tenant.

      61. With respect to all six cases upon which the "all persons" warrants issued for
rooming units at 287 Franklin Avenue, the Notices of Petition served at the commencement of
each eviction case were addressed only to individual named respondents, and not to "all
persons." *See* N.Y. Real Prop. Acts. Law § 735 (requiring service of process upon named
respondent only); *compare with* Conn. Gen Stat. § 47a-26h(c) (requiring notice of judgment be
given to all occupants before any execution in Connecticut). The Notices of Petition in the
subject New York Housing Court cases advised the named individuals that a judgment could be
issued against them, but did not apprise any other persons of any rights or responsibilities.
EXHIBIT Y.

      62. False affidavits of service of the March 2011 Housing Court petitions were filed
respecting each of Fletcher, Diaz, Rosenbaum, Osterweil, Skubutyte, and Campos falsely stating
that the process server had gained access to the inside of 287 Franklin Avenue on several
occasions and had posted process on various interior doors. EXHIBIT Z. Yet the process server
Yisroel A. Simon never gained access to the interior of 287 Franklin Avenue because no one let
him in. None of these affidavits alleged any service to persons other than the named respondents
in the individual cases. No service whatsoever was made or alleged with respect to Plaintiff
Sasmor. Thus, there was no personal jurisdiction over Plaintiff, or anyone else, with respect to

16

**JA263**

the underlying Housing Court judgments.

63. Plaintiff makes no objection to the judgments that were made in the underlying eviction cases that bound long departed former tenants. These judgments could stand as made without interfering with Plaintiff's constitutional rights. Instead, Plaintiff objects to the inexplicable, unconstitutional state procedure by which warrants issued to remove "all other persons" as a result of these judgments against individually named people.

64. Defendant Alt had her signature stamped on the unconstitutional eviction warrants found by Plaintiff in Housing Court records, EXHIBITS W and X, and Plaintiff believes that Defendant Alt continues to direct that her signature be stamped on hundreds more unconstitutional eviction warrants daily.

65. Defendant Fisher is responsible for the administration and operation of the New York City Courts, including the procedures by which unconstitutional eviction warrants are issued.

66. Defendants Fisher and Alt are believed to be employed by the New York Office of Court Administration, a subdivision of New York State, and to act as state officers within the New York State Unified Court System.

67. Defendant City Marshal Powell is a state officer primarily responsible for enforcing Civil Court orders.

68. Throughout the July 13 and July 20, 2011 evictions, Defendant Powell wore a uniform that appeared identical to a New York Police Department uniform, except that the patches on his sleeves read "New York City Marshal" instead of "New York Police Department."

69. Defendant Powell as a city marshal is required to be bonded.

70. In each of the eviction cases in which a warrant was issued for a room at 287 Franklin Avenue, Stuart I. Jacobs, Esq., the attorney for the named petitioner "Ronald Henry

17

Land Trust," wrote a letter to Defendant City Marshal Steven Powell stating: "You are hereby requested to submit the papers in the above entitled action to the Judge for a final order. The Landlord requests that any judgement [sic] against 'John and/or Jane Doe' be severed." Defendant Powell filed these letters at the Brooklyn Housing Court with his Warrant Requisitions.

71.  Plaintiff by letters dated July 12, 2011, July 18, 2011, and October 3, 2011 put Defendant Powell on notice that Plaintiff occupied the rooms subject to the eviction notices and that it would be unconstitutional to evict other persons who had not been given due process opportunity to defend against the evictions. EXHIBIT AA.

72.  The office of Defendant Powell acknowledged receipt of the July 12, 2011 and July 18, 2011 letters prior to each of the past evictions. During Plaintiff's October 7, 2011 phone conversation with Attorney Litwack, attorney for Defendant Powell, Attorney Litwack stated that he had reviewed Plaintiff's October 3, 2011 letter to Defendant Powell.

73.  When Defendant Powell, Defendant Goldberger, and a third man with a bag of tools arrived at the front door of 287 Franklin Avenue on July 13, 2011, Plaintiff Jon Sasmor showed Defendant Marshal Powell the letter from Stuart I. Jacobs, Esq. requesting that "any judgement [sic] against 'John and/or Jane Doe' be severed." and also read aloud Chapter IV, Section 1-2 of the NYC Marshals' Handbook regarding "Parties to be Named."

74.  Defendant Powell told Plaintiff Sasmor "Are you going to let me do this or should I call the Fire Department and they'll vacate the whole building?"

75.  Defendant Powell then immediately instructed the man with the tools to knock down the front door of 287 Franklin Avenue. To save the front door from being knocked down, Plaintiff Sasmor unlocked and opened the door.

18

**JA265**

76. On July 13, 2011 and again on July 20, 2011, Plaintiff Sasmor stated at the threshold of the building and at each of the thresholds of each of the individual rooms that he did not consent to the entry of Defendant Powell, Defendant Goldberger, and the man with the tools.

77. The three men entered anyway notwithstanding Plaintiff Sasmor's explicit denial of consent.

78. The three men performed all three evictions without ever showing a warrant and refused Plaintiff Sasmor's repeated requests to see a warrant.

79. Defendant Powell also refused Plaintiff Sasmor's repeated requests to see his badge.

80. Defendant Powell asked Defendant Goldberger at which rooms the three evictions should occur rather than obtaining that information from a warrant.

81. Additionally, Defendant Powell called the Fire Department in an unsuccessful attempt to have the Fire Department vacate the whole building, which the Fire Department, after inspecting the building, refused to do because it deemed the building sufficiently safe.

82. At the end of each of the three evictions, Defendant Powell affixed a "Marshal's Legal Possession" notice to the door of each of the three rooms from which Plaintiff was evicted and locked out.

83. Defendant Goldberger arrived with Defendant Marshal Powell and was with Defendant Powell throughout the July 13 and July 20, 2011 evictions.

84. Defendant Goldberger willfully participated in the evictions in several ways. Defendant Goldberger identified for Defendant Powell the rooms at which the evictions would occur, gave instructions to the man with the tools about changing the locks, tested the new locks and kept the keys, retained possession of Plaintiff's belongings inside, talked with Defendant Powell privately inside the rooms while the locks were being changed, and remained in the

19

**JA266**

building after Defendant Powell departed on July 20 in order to conduct a search of Plaintiff's bedroom where the July 13 eviction occurred and to install an additional padlock.

85. Defendant Goldberger also verified the petitions which initiated the Housing Court cases that preceded the unconstitutional evictions, provided affirmations to the Housing Court, and testified at the inquests.

86. At all relevant times, Defendant Goldberger was acting on behalf of himself and/or Defendants Teitelbaum, Schneebalg, and Henry Management, LLC, i.e. as an employee or agent of Defendant Henry Management, LLC and/or of Defendants Isaac Teitelbaum and Abraham Schneebalg individually and/or as purported trustees of "Ronald Henry Land Trust." EXHIBITS N, O, and P.

87. The Housing Court eviction proceedings that resulted in all the unconstitutional warrants were filed one day after Defendants Goldberger, Teitelbaum, Schneebalg, and Henry Management, LLC filed an answer in the prior pending RICO case brought against them by Plaintiff and other persons in this Court, *287 Franklin Avenue Residents' Ass'n, et al. v. Meisels, et al.,* E.D.N.Y. Docket No. 11-cv-976 (KAM) (JO). All the Housing Court eviction cases related to 287 Franklin Avenue were brought in the name of the improper party "Ronald Henry Land Trust" in furtherance of Defendants' bad faith fraudulent scheme.

88. 287 Franklin Avenue, though previously a two-family house, was converted, before Plaintiff moved in, into nine rooming units. The rooming units each have an individual lock and entry. At trial on March 19, 2012 at the Brooklyn Housing Court in *Ronald Henry Land Trust v. Jon Sasmor and Lisa Lin*, L&T No. 78902/11, "Ronald Henry Land Trust" has stipulated that Jon Sasmor and Lisa Lin did not alter the premises to create the rooming house configuration.

89. There is no state case pending with identical parties, that is, between Plaintiff and

20

**JA267**

any of the Defendants.  There is an eviction case still pending, currently at trial, in the Civil

Court of the City of New York, Housing Part in which Plaintiff is one of the named respondents

and "Ronald Henry Land Trust" is the named petitioner.

      90.  The claims presented herein could not have been presented in any existing state

proceeding due to lack of subject matter jurisdiction for constitutional claims in the Housing

Court.  The Housing Part (commonly called the Housing Court), is a subdivision of the Civil

Court of the City of New York.  *See* N.Y. City Civil Ct. Act § 110.  The City Civil Court is a

court of limited jurisdiction.  *See* N.Y Const. Art. VI, § 15(b) (limiting powers of Civil Court of

the City of New York) and N.Y. City Civil Ct. Act § 209(b) (Civil Court may not issue

injunctions except in four categories of claims under specific New York statutes).  The City Civil

Court has no jurisdiction to determine the constitutionality of statutes nor to provide declaratory

or injunctive relief, nor to adjudicate claims with respect to state officer Defendants.

      91.  Additionally, Plaintiff could not raise his constitutional claim in the eviction case in

which he is named because his constitutional claims concern the execution of evictions against

people not named as parties, and Plaintiff would have no standing to raise such an objection in

the one case in which he actually is a party.

      92.  New York's unconstitutional eviction warrants statute remains in effect.

      93.  Defendant Alt continues to have her signature stamped on hundreds of

unconstitutional eviction warrants each business day.

      94.  Defendant Fisher continues to administer the issuance of hundreds of

unconstitutional eviction warrants each business day.

      95.  Defendant Powell continues to execute unconstitutional evictions each business day.

      96.  Defendants Goldberger, Teitelbaum, Schneebalg, and Henry Management, LLC

**JA268**

continue to operate fraudulent schemes that abuse unconstitutional warrants and may result in more additional unconstitutional evictions imminently.

97. Plaintiff and numerous others known as "all persons" are at peril in their homes while warrants continue to issue by the thousands from New York Courts to remove "all persons."

I declare under penalty of perjury that the foregoing information is true.

Dated: March 22, 2012
Brooklyn, New York

Respectfully submitted,

Jon Sasmor
Plaintiff, *Pro Se*
287 Franklin Avenue
Brooklyn, NY 11205
(917) 318-2619
jonathan.sasmor@gmail.com

JA269

A-N-01

## STANDARD FORM OF APARTMENT LEASE
### (FOR APARTMENTS NOT SUBJECT TO THE RENT STABILIZATION LAW)
### THE REAL ESTATE BOARD OF NEW YORK, INC.
©Copyright 1988. All Rights Reserved. Reproduction in whole or in part prohibited.

**PREAMBLE:** This lease contains the agreements between You and Owner concerning Your rights and obligations and the rights and obligations of Owner. You and Owner have other rights and obligations which are set forth in government laws and regulations.

You should read this Lease and all of its attached parts carefully. If you have any questions, or if you do not understand any words or statements, get clarification. Once you and Owner sign this Lease You and Owner will be presumed to have read it and understood it. You and Owner admit that all agreements between You and Owner have been written into this Lease. You understand that any agreements made before or after this Lease was signed and not written into it will not be enforceable.

THIS LEASE is made on _____ 3 _____ 20 _____ 10 _____ between

Owner, __Henry Management, LLC__

whose address is __287 Franklin Ave__

and You, the Tenant, __Amanda Diaz, Velija Skubutyte, Kurt Flocher, Alex Rosenbaum__

whose address is __William Osterweil, Jon Sosmer, Lisa Lin, et Jan Naizo, Brian Pudjat__

1. **APARTMENT AND USE**

    ▶ Owner agrees to lease to You Apartment __all floors__ on the __Office apt__ floor in the building at

    __287 Franklin Ave__ Borough of __Brooklyn__, City and State of New York.

    You shall use the Apartment for living purposes only. The Apartment may be occupied by the tenant or tenants named above and by the immediate family of the tenant or tenants and by occupants as defined in and only in accordance with Real Property Law § 235-f.

2. **LENGTH OF LEASE**

    ▶ The term (that means the length) of this Lease is __1__ years, __()__ months

    __0__ days, beginning on __April 1st 2010__

    and ending on __April 1st 2011__. If You do not do everything You agree to do in this Lease, Owner may have the right to end it before the above date. If Owner does not do everything that owner agrees to do in this Lease, You may have the right to end the Lease before ending date.

3. **RENT**

    ▶ Your monthly rent for the Apartment is $ __3850__

    You must pay Owner the rent, in advance, on the first day of each month either at Owner's office or at another place that Owner may inform You of by written notice. You must pay the first month's rent to Owner when You sign this Lease if the lease begins on the first day of the month. If the Lease begins after the first day of the month, You must pay when you sign this lease (1) the part of the rent from the beginning date of this Lease until the last day of the month and (2) the full rent for the next full calendar month. If this Lease is a Renewal Lease, the rent for the first month of this Lease need not be paid until the first day of the month when the renewal term begins.

4. **SECURITY DEPOSIT**

    ▶ You are required to give Owner the sum of $ __3850__ when You Sign this Lease as a security

    deposit, which is called in law a trust. Owner will deposit this security in _____

    _____ bank at _____ the Building contains

    six or more apartments, the bank account will earn interest. If You carry out all of your agreements in this Lease, at the end of each calendar year Owner or the bank will pay to Owner 1% interest on the deposit for administrative costs and to You all other interest earned on the security deposit.

    If You carry out all of your agreements in this Lease and if You move out of the Apartment and return it to Owner in the same condition it was in when You first occupied it, except for ordinary wear and tear or damage caused by fire or other casualty, Owner will return to You the full amount of your security deposit and interest to which You are entitled within 60 days after this Lease ends. However, if You do not carry out all your agreements in this Lease, Owner may keep all or part of your security deposit and any interest which has not yet been paid to You necessary to pay Owner for any losses incurred, including missed payments.

    If Owner sells or leases the building, Owner will turn over your security, with interest, either to You or to the person buying or leasing (lessee) the building within 5 days after the sale or lease. Owner will then notify You, by registered or certified mail, of the name and address of the person or company to whom the deposit has been turned over. In such case, Owner will have no further responsibility to You for the security deposit. The new owner or lessee will become responsible to You for the security deposit.

    ▶ Space to be filled in

__Dendum: Attached to this Standard Form Lease is a rider that overrides any and all provisions in the Standard Form Lease.__ 12/04/10  04/17/10  4/17/10

Case: 13-1223   Document: 39   Page: 37   07/16/2013   992914   208
Case 1:11-cv-04454-KAM-JO Document 54 Filed 07/27/12 Page 42 of 24 PageID #: 3473

Page 2

5. **IF YOU ARE UNABLE TO MOVE IN**

A situation could arise which might prevent Owner from letting You move into the Apartment on the beginning date set in this Lease. If this happens for reasons beyond Owner's reasonable control, Owner will not be responsible for Your damages or expenses, and this Lease will remain in effect. However, in such case, this Lease will start on the date when You can move in, and the ending date in Article 2 will be changed to a date reflecting the full term of years set forth in Article 2. You will not have to pay rent until the move-in date Owner gives You by written notice, or the date You move in, whichever is earlier. If Owner does not give You notice that the move-in date is within 30 days after the beginning date of the term of this Lease as stated in Article 2, You may tell Owner in writing, that Owner has 15 additional days to let You move in, or else the Lease will end. If Owner does not allow You to move in within those additional 15 days, then the Lease is ended. Any money paid by You on account of this Lease will then be refunded promptly by Owner.

6. **CAPTIONS**

In any dispute arising under this Lease, in the event of a conflict between the text and a caption, the text controls.

7. **WARRANTY OF HABITABILITY**

A. All of the sections of this Lease are subject to the provisions of the Warranty of Habitability Law in the form it may have from time to time during this Lease. Nothing in this Lease can be interpreted to mean that You have given up any of your rights under that law. Under that law, Owner agrees that the Apartment and the Building are fit for human habitation and that there will be no conditions which will be detrimental to life, health or safety.

B. You will do nothing to interfere or make more difficult Owner's efforts to provide You and all other occupants of the Building with the required facilities and services. Any condition caused by your misconduct or the misconduct of anyone under your direction or control shall not be a breach by Owner.

8. **CARE OF YOUR APARTMENT-END OF LEASE-MOVING OUT**

A. You will take good care of the apartment and will not permit or do any damage to it, except for damage which occurs through ordinary wear and tear. You will move out on or before the ending date of this lease and leave the Apartment in good order and in the same condition as it was when You first occupied it, except for ordinary wear and tear and damage caused by fire or other casualty.

B. When this Lease ends, You must remove all of your movable property. You must also remove at your own expense, any wall covering, bookcases, cabinets, mirrors, painted murals or any other installation or attachment You may have installed in the Apartment, even if it was done with Owner's consent. You must restore and repair to its original condition those portions of the Apartment affected by those installations and removals. You have not moved out until all persons, furniture and other property of yours is also out of the Apartment. If your property remains in the Apartment after the Lease ends, Owner may either treat You as still in occupancy and charge You for use, or may consider that You have given up the Apartment and any property remaining in the Apartment. In this event, Owner may either discard the property or store it at your expense. You agree to pay Owner for all costs and expenses incurred in removing such property. The provisions of this article will continue to be in effect after the end of this Lease.

9. **CHANGES AND ALTERATIONS TO APARTMENT**

You cannot build in, add to, change or alter, the Apartment in any way, including wallpapering, painting, repainting, or other decorating, without getting Owner's written consent before You do anything. Without Owner's prior written consent, You cannot install or use in the Apartment any of the following: dishwasher machines, clothes washing or drying machines, electric stoves, garbage disposal units, heating, ventilating or air conditioning units or any other electrical equipment which, in Owner's reasonable opinion, will overload the existing wiring installation in the Building or interfere with the use of such electrical wiring facilities by other tenants of the Building. Also, You cannot place in the Apartment water-filled furniture.

10. **YOUR DUTY TO OBEY AND COMPLY WITH LAWS, REGULATIONS AND LEASE RULES**

A. **Government Laws and Orders.** You will obey and comply (1) with all present and future laws and regulations, which affect the Building or the Apartment, and (2) with all orders and regulations of Insurance Rating Organizations which affect the Apartment and the Building. You will not allow any windows in the Apartment to be cleaned from the outside, unless the equipment and safety devices required by law are used.

B. **Owner's Rules Affecting You.** You will obey all Owner's rules listed in this Lease and all future reasonable rules of Owner or Owner's agent. Notice of all additional rules shall be delivered to You in writing or posted in the lobby or other public place in the building. Owner shall not be responsible to You for not enforcing any rules, regulations or provisions of another tenant's lease except to the extent required by law.

C. **Your Responsibility.** You are responsible for the behavior of yourself, of your immediate family, your servants and people who are visiting You. You will reimburse Owner as additional rent upon demand for the cost of all losses, damages, fines and reasonable legal expenses incurred by Owner because You, members of your immediate family, servants or people visiting You have not obeyed government laws and orders or the agreements or rules of this Lease.

11. **OBJECTIONABLE CONDUCT**

As a tenant in the Building, You will not engage in objectionable conduct. Objectionable conduct means behavior which makes or will make the Apartment or the Building less fit to live in for You or other occupants. It also means anything which interferes with the right of others to properly and peacefully enjoy their Apartments, or causes conditions that are dangerous, hazardous, unsanitary and detrimental to other tenants in the Building. Objectionable conduct by You gives Owner the right to end this Lease.

12. **SERVICES AND FACILITIES**

A. **Required Services.** Owner will provide cold and hot water and heat as required by law, repairs to the Apartment as required by law, elevator service if the Building has elevator equipment, and the utilities, if any, include in the rent, as set forth in sub-paragraph B. You are not entitled to any rent reduction because of a stoppage or reduction of any of the above services unless it is provided by law.

➤ B. The following utilities are included in the rent _heat and hot water_

➤➤ C. **Electricity and Other Utilities.** If Owner provides electricity or gas and the charges are included in the rent on Page 1, or if You buy electricity or gas from Owner for a separate (submetered) charge, your obligations are described in the Rider attached to this Lease. If electricity or gas is not included in the rent or is not charged separately by Owner, You must arrange for this service directly with the utility company. You must also pay directly for telephone service if it is not included in the rent.

D. **Appliances.** Appliances supplied by Owner in the Apartment are for your use. They will be maintained and repaired or replaced by Owner, but if repairs or replacement are made necessary because of your negligence or misuse, You will pay Owner for the cost of such repair or replacement as additional rent.

E. **Elevator Service.** If the elevator is the kind that requires an employee of Owner to operate it, Owner may end this service without reducing the rent if: (1) Owner gives You 10 days notice that this service will end; and (2) within a reasonable time

➤ Space to be filled in.

⎯ Rider to be added, if necessary

after the end of this year 10-day notice, Owner begins to substitute an automatic control type of elevator and proceeds diligently with its installation.

F.   **Storeroom Use.** If Owner permits You to use any storeroom, laundry or any other facility located in the building but outside of the Apartment, the use of this storeroom or facility will be furnished to You free of charge and all your own risk, except for loss suffered by You due to Owner's negligence. You will operate at your expense any coin operated appliances located in such storeroom or Laundries.

**13.   INABILITY TO PROVIDE SERVICES**

Because of a strike, labor trouble, national emergency, repairs, or any other cause beyond Owner's reasonable control, Owner may not be able to provide or may be delayed in providing any services or in making any repairs to the Building. In any of these events, any rights You may have against Owner are only those rights which are allowed by laws in effect when the reduction in service occurs.

**14.   ENTRY TO APARTMENT**

During reasonable hours and with reasonable notice, except in emergencies, Owner may enter the Apartment for the following reasons:

(A) To erect, use and maintain pipes and conduits in and through the walls and ceilings of the Apartment; to inspect the Apartment and to make any necessary repairs or changes Owner decides are necessary. Your rent will not be reduced because of any of this work, unless required by Law.

(B) To show the Apartment to persons who may wish to become owners or lessees of the entire Building or may be interested in lending money to Owner;

(C) For four months before the end of the Lease, to show the Apartment to persons who wish to rent it;

(D) If during the last month of the Lease You have moved out and removed all or almost all of your property from the Apartment, Owner may enter to make changes, repairs, or redecorations. Your rent will not be reduced or that month and this Lease will not be ended by Owner's entry.

(E) If at any time You are not personally present to permit Owner or Owner's representative to enter the Apartment and entry is necessary or allowed by law or under this lease, Owner or Owner's representatives may nevertheless enter the Apartment. Owner may enter by force in an emergency. Owner will not be responsible to You, unless during this entry, Owner or Owner's representative is negligent or misuses your property.

**15.   ASSIGNING; SUBLETTING; ABANDONMENT**

(a) Assigning and Subletting. ~~You cannot assign this Lease or sublet the Apartment without~~ Owner's advance written consent in each instance ~~In a request made by You~~ in the manner required by Real Property Law § 256b. Owner may refuse to consent to a lease assignment ~~for any reason or no reason,~~ but if Owner unreasonably refuses to consent to request for a Lease assignment properly made, at your request in writing, Owner will end this Lease effective as of thirty days after your request. ~~The first and every Other time You wish to sublet the Apartment, You must get the written consent of Owner unless~~ Owner unreasonably withholds consent ~~following your request to sublet in the manner provided by~~ Real Property Law § 226.

b.   Owner may impose a reasonable credit check fee on You in connection with an application to assign or sublet. If You fail to pay your rent Owner may collect rent from subtenant or occupant without releasing You from the Lease. Owner will credit the amount collected against the rent due from You; However, Owner's acceptance of such rent does not change the status of the subtenant or occupant to that of direct tenant of Owner and does not release You from this Lease.

(b) Abandonment. If You move out of the Apartment (abandonment) before the end of this Lease without the consent of Owner, this Lease will not be ended (except as provided by law following Owner's unreasonable refusal to consent to an assignment or subletting requested by You.) You will remain responsible for each monthly payment of rent as it becomes due until the end of this Lease. In case of abandonment, your responsibility for rent will end only if Owner chooses to end this Lease for default as provided in Article 16.

**16.   DEFAULT**

(1) You default under the Lease if You act in any of the following ways:

(a) You fail to carry out any agreement or provision of this Lease;

(b) You or another occupant of the Apartment behaves in an objectionable manner;

(c) You do not take possession or move into the Apartment 15 days after the beginning of this Lease;

(d) You and other legal occupants of the Apartment move out permanently before this Lease ends;

If You do default in any one of these ways, other than a default in the agreement to pay rent, Owner may serve You with a written notice to stop or correct the specified default within 10 days. You must then either stop or correct the default within 10 days, or, if You need more than 10 days, You must begin to correct the default within 10 days and continue to do all that is necessary to correct the default as soon as possible.

(2) If You do not stop or begin to correct a default within 10 days, Owner may give You a second written notice that this Lease will end six days after the date the second written notice is sent to You. At the end of the 6-day period , this Lease will end and You then must move out of the Apartment. Even though this Lease ends, You will remain liable to Owner for unpaid rent up to the end of this Lease, the value of your occupancy, If any, after the Lease ends, and damages caused to Owner or after that time as stated in Article 18.

(3) If You do not pay your rent when this Lease requires after a personal demand for rent has been made, or within three days after a statutory written demand for rent has been made, or if the Lease ends, Owner may do the following: (a) enter the apartment and retake possession of it if You have moved out or (b) go to court and ask that You and all other occupants in the Apartment be compelled to move out.

Once this Lease has been ended, whether because of default or otherwise, You give up any right You might otherwise have to reinstate or renew the Lease.

**17.   REMEDIES OF OWNER AND YOUR LIABILITY**

If this Lease is ended by Owner because of your default, the following are the rights and obligations of You and Owner.

(a) You must pay your rent until this Lease has ended. Thereafter, You must pay an equal amount for what the law calls "use and occupancy" until You actually move out.

(b) Once You are out, Owner may re-rent the Apartment or any portion of it for a period of time which may end before or after the ending date of this Lease. Owner may re-rent to a new tenant at a lesser rent or may charge a higher rent than the rent in this Lease.

(c) Whether the Apartment is re-rented or not, You must pay to Owner as damages:

(1) the difference between the rent in this Lease and the amount, if any, of the rents collected in any later lease or leases of the Apartment for what would have been the remaining period of this Lease; and

(2) Owner's expenses for advertisements, broker's fees and the cost of putting the Apartment in good condition for re-rental; and

***(3) ~~Owner's expenses for attorney's fees~~

(d) You shall pay all damages due in monthly installments on the rent day established in this Lease. Any legal action brought to collect one or more monthly installments of damages shall not prejudice in any way Owner's right to collect the damages for a later month by a similar action.

***This may be deleted.

*Based on income verificat

8. Notices to Owner. If You wish to give a notice to Owner, you must write it and deliver it or send it by registered or certified mail to Owner at the address noted on page 1 of this Lease or at another address of which Owner or Agent has given You written notice.

26.    GIVING UP RIGHT TO TRIAL BY JURY AND COUNTERCLAIM

A. Both You and Owner agree to give up the right to a trial by jury in a court action, proceeding or counterclaim on any matters concerning this Lease, the relationship of You and Owner as Tenant and Landlord or your use or occupancy of the Apartment. This agreement to give up the right to a jury trial does not include claims for personal injury or property damage.

B. If Owner begins any court action or proceeding against You which asks that You be compelled to move out, You cannot make a counterclaim unless You are claiming that Owner has not done what Owner is supposed to do about the condition of the Apartment or the Building.

27.    NO WAIVER OF LEASE PROVISIONS

A. Even if Owner accepts your rent or fails once or more often to take action against You when You have not done what You have agreed to do in this Lease, the failure of Owner to take action or Owner's acceptance of rent does not prevent Owner from taking action at a later date if You again do not do what You have agreed to do.

B. Only a written agreement between You and Owner can waive any violation of this Lease.

C. If You pay and Owner accepts an amount less than all the rent due, the amount received shall be considered to be in payment of all or a part of the earliest rent due. It will not be considered an agreement by Owner to accept this lesser amount in full satisfaction of all of the rent due.

D. Any agreement to end this Lease and also to end the rights and obligations of You and Owner must be in writing, signed by You and Owner or Owner's agent. Even if You give keys to the Apartment and they are accepted by any employee, or agent, or Owner, this Lease is not ended.

28.    CONDITION OF THE APARTMENT

When You signed this Lease, You did not rely on anything said by Owner, Owner's agent or superintendent about the physical condition of the Apartment, the Building or the land on which it is built. You did not rely on any promises as to what would be done, unless what was said or promised is written in this Lease and signed by both You and Owner or found in Owner's floor plans or brochure shown to You before You signed the Lease. Before signing this Lease, You have inspected the apartment and You accept it in its present condition "as is," except for any condition which You could not reasonably have seen during your inspection. You agree that Owner has not promised to do any work in the Apartment except as specified in attached "Work" rider.

29.    DEFINITIONS

A. Owner: The term "Owner" means the person or organization receiving or entitled to receive rent from You for the Apartment at any particular time other than a rent collector or managing agent of Owner. "Owner" includes the owner of the land or Building, a lessor, or sublessor of the land or Building and a mortgagee in possession. It does not include a former owner, even if the former owner signed this Lease.

B. You: The Term "You" means the person or persons signing this Lease as Tenant and the successors and assigns of the signer. This Lease has established a tenant-landlord relationship between You and Owner.

30.    SUCCESSOR INTERESTS

The agreements in this Lease shall be binding on Owner and You and on those who succeed to the interest of Owner or You by law, by approved assignment or by transfer.

**Owners Rules - a part of this lease - see page 6**

TO CONFIRM OUR AGREEMENTS, OWNER AND YOU RESPECTIVELY SIGN THIS LEASE AS OF THE DAY AND YEAR FIRST WRITTEN ON PAGE 1.

Witness _____    _____ [L.S.]

_____    Owner's Signature

_____    _____ [L.S.]
                                     Tenant's Signature

_____    _____ [L.S.]
                                     Tenant's Signature

                                     4-30-10

**GUARANTY**

The undersigned Guarantor guarantees to Owner the strict performance of and observance by Tenant of all the agreements, provisions and rules in the attached Lease. Guarantor agrees to waive all notices when Tenant is not paying rent or not observing and complying with all of the provisions of the attached Lease. Guarantor agrees to be equally liable with Tenant so that Owner may sue Guarantor directly without first suing Tenant. The Guarantor further agrees that his guaranty shall remain in full effect even if the Lease is renewed, changed or extended in any way and even if Owner has to make a claim against Guarantor. Owner and Guarantor agree to waive trial by jury in any action, proceeding or counterclaim brought against the other on any matters concerning the attached Lease or the Guaranty.

Dated, New York City _____

_____    Witness    _____ Guarantor

_____ Address

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2009051400302001001EE12A

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|

**Document ID: 2009051400302001**   Document Date: 05-12-2009   Preparation Date: 05-14-2009
Document Type: DEED
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| NY LAND TITLE AGENCY (PICK UP BRS) | NY LAND TITLE AGENCY (PICK UP BRS) |
| 38-08 BELL BLVD. | 38-08 BELL BLVD. |
| SUITE 11 | SUITE 11 |
| BAYSIDE, NY 11361 | BAYSIDE, NY 11361 |
| 516-620-4230 | 516-620-4230 |
| TITLE NO. NYL3114-09NY | TITLE NO. NYL3114-09NY |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1941 | 5 | Entire Lot | 287 FRANKLIN AVENUE |

Property Type: DWELLING ONLY - 3 FAMILY

**CROSS REFERENCE DATA**

CRFN_____ *or* Document ID_____ *or* _____ Year____ Reel ___ Page _____ *or* File Number_____

**PARTIES**

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| RONALD HENRY | RONALD HENRY LAND TRUST |
| 287 FRANKLIN AVENUE | 287 FRANKLIN AVENUE |
| BROOKLYN, NY 11205 | BROOKLYN, NY 11205 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 75.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed      05-18-2009 12:50
City Register File No.(CRFN):
**2009000147561**

*Annette M Hill*

*City Register Official Signature*

**JA274**

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made the ___12ᵗʰ___ day of ___May___ 2009

BETWEEN

RONALD HENRY
**with an address of** _____287 Franklin Avenue, Brooklyn, NY_____
party of the first part, and

RONALD HENRY LAND TRUST
**with an address of** _____287 Franklin Avenue, Brooklyn, NY_____
party of the second part,

**WITNESSETH**, that the party of the first part, in consideration of Ten Dollars and other good and valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

SEE ATTACHED SCHEDULE "A"

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" when ever the sense of this indenture so requires.

**IN WITNESS WHEREOF**, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

:    Ronald Henry

Standard N.Y.B.T.U. Form 8002 - Bargain and Sale Deed, with Covenant against Grantor's Acts – Uniform Acknowledgment Form **3290**

## NY LAND TITLE AGENCY
Issued on behalf of

Commitment Number:   NYL3114-09NY

### SCHEDULE A - LEGAL DESCRIPTION

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Franklin Avenue, distant 294 feet southerly from the southeasterly corner for DeKalb Avenue and Franklin Avenue;

RUNNING THENCE easterly and part of the distance through a party wall, 100 feet to a point;

THENCE southerly parallel with Franklin Avenue, 19 feet 5 inches;

THENCE westerly 100 feet to the easterly side of Franklin Avenue;

THENCE northerly along the easterly side of Franklin Avenue, 19 feet 5 inches to the point or place of BEGINNING.

For information only: Said premises are known as 287 Franklin Avenue, Brooklyn, NY and designated as Section   , Block 1941, Lot 5 as shown on the tax map of the City of Brooklyn and County of Kings.

**JA276**

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE**

State or Foreign Country of

On the          day of          in the year 2007  before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the

_____ in

_____

(insert the City or other political subdivision) (and insert the State or Country or other place the acknowledgment was taken)

_____

(signature and office of individual taking acknowledgment)

SEAL

# BARGAIN AND SALE DEED
**WITH COVENANT AGAINST GRANTOR'S ACTS**

**Title No.**

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE**

State of New York, County of   QUEENS          ss:

On the 12TH day of MAY          in the year 2009 before me, the undersigned, personally appeared

RONALD HENRY

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

(signature and office of individual taking acknowledgment)

BONNY K OH
NOTARY PUBLIC NEW YORK
NO. 01OH6144463
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES 04/24/2010

**SEAL**

*Ronald Henry*
**TO**
*Ronald Henry Land Trust*

SECTION
BLOCK **1941**
LOT **5**
COUNTY OR TOWN     **KINGS/ BROOKLYN**
STREET ADDRESS     **287 FRANKLIN AVENUE**

Recorded at Request of
Land Title Associates

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS
Distributed by

**JA277**

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER |  |
| --- | --- |

2009051400302001001S2FAB

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
| --- | --- |

| Document ID: 2009051400302001 | Document Date: 05-12-2009 | Preparation Date: 05-14-2009 |
| --- | --- | --- |
| Document Type: DEED | | |

**ASSOCIATED TAX FORM ID: 2009051200305**

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
| --- | --- |
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 2 |
| SMOKE DETECTOR AFFIDAVIT | 1 |

**JA278**

| FOR CITY USE ONLY | | | | | |
|---|---|---|---|---|---|
| C1. County Code | | C2. Date Deed Recorded | Month | Day | Year |
| C3. Book OR C5. CRFN | | C4. Page | | | |

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

# RP - 5217NYC
(Rev 11/2002)

## PROPERTY INFORMATION

**1. Property Location**  287  FRANKLIN AVENUE   BROOKLYN   11205
STREET NUMBER   STREET NAME   BOROUGH   ZIP CODE

**2. Buyer Name**  RONALD HENRY LAND TRUST
LAST NAME / COMPANY   FIRST NAME
LAST NAME / COMPANY   FIRST NAME

**3. Tax Billing Address**  Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY   FIRST NAME
STREET NUMBER AND STREET NAME   CITY OR TOWN   STATE   ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed**   1   # of Parcels OR ☐ Part of a Parcel

4A. Planning Board Approval - N/A for NYC
4B. Agricultural District Notice - N/A for NYC

Check the boxes below as they apply:
6. Ownership Type is Condominium ☐
7. New Construction on Vacant Land ☐

**5. Deed Property Size**   FRONT FEET  X  DEPTH  OR  ACRES

**6. Seller Name**  HENRY   RONALD
LAST NAME / COMPANY   FIRST NAME
LAST NAME / COMPANY   FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| A ☐ One Family Residential | C ☐ Residential Vacant Land | E ☐ Commercial | G ☐ Entertainment / Amusement | I ☐ Industrial |
| B ☑ 2 or 3 Family Residential | D ☐ Non-Residential Vacant Land | F ☐ Apartment | H ☐ Community Service | J ☐ Public Service |

## SALE INFORMATION

**10. Sale Contract Date**   5 / 12 / 2009
Month  Day  Year

**11. Date of Sale / Transfer**   5 / 12 / 2009
Month  Day  Year

**12. Full Sale Price** $   0
( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.)  Please round to the nearest whole dollar amount.

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**

A ☐ Sale Between Relatives or Former Relatives
B ☐ Sale Between Related Companies or Partners in Business
C ☐ One of the Buyers is also a Seller
D ☐ Buyer or Seller is Government Agency or Lending Institution
E ☐ Deed Type not Warranty or Bargain and Sale (Specify Below )
F ☐ Sale of Fractional or Less than Fee Interest ( Specify Below )
G ☐ Significant Change in Property Between Taxable Status and Sale Dates
H ☐ Sale of Business is Included in Sale Price
I ☐ Other Unusual Factors Affecting Sale Price ( Specify Below )
J ☑ None

## ASSESSMENT INFORMATION  - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class**   C, 0
**16. Total Assessed Value  (of all parcels in transfer)**   8 0 1 0

**17. Borough, Block and Lot / Roll Identifier(s)  ( if more than three, attach sheet with additional identifier(s) )**

BROOKLYN 1941 5

## CERTIFICATION

I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

**BUYER**

BUYER SIGNATURE   DATE
STREET NUMBER   STREET NAME  (AFTER SALE)
CITY OR TOWN   STATE   ZIP CODE

**BUYER'S ATTORNEY**

LAST NAME   FIRST NAME
AREA CODE   TELEPHONE NUMBER

**SELLER**

SELLER SIGNATURE   DATE

2009051200305201
JA279

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |

**BUYER**

| BUYER SIGNATURE | DATE |

**BUYER'S ATTORNEY**

| LAST NAME | FIRST NAME |

| STREET NUMBER | STREET NAME (AFTER SALE) |

| AREA CODE | TELEPHONE NUMBER |

**SELLER**

| CITY OR TOWN | STATE | ZIP CODE |

| SELLER SIGNATURE | DATE |

Affidavit of Compliance with Smoke Detector Requirement for One and Two Family Dwellings

# AFFIDAVIT OF COMPLIANCE
# WITH SMOKE DETECTOR REQUIREMENT
# FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York        )
                         ) SS.:
County of  Queens.  )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

### 287 FRANKLIN AVENUE

| Street Address | | | | Unit/Apt. |
|---|---|---|---|---|
| BROOKLYN | New York, | 1941 | 5 | (the "Premises"); |
| Borough | | Block | Lot | |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

| Name of Grantor (Type or Print) | Name of Grantee (Type or Print) |
|---|---|
| Signature of Grantor | Signature of Grantee |

Sworn to before me                          Sworn to before me
this  12th  date of  May  19 2009          this  12th  date of  May  19 2009 .

BONNY K OH                                  BONNY K OH
NOTARY PUBLIC NEW YORK                      NOTARY PUBLIC NEW YORK
NO. 01OH6144463                             NO. 01OH6144463
QUALIFIED IN QUEENS COUNTY                  QUALIFIED IN QUEENS COUN
COMMISSION EXPIRES 04/24/2010               COMMISSION EXPIRES 04/24/2010

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**SEAL**

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

1



**The City of New York**
**Department of Environmental Protection**
**Bureau of Customer Services**
**59-17 Junction Boulevard**
**Flushing, NY  11373-5108**

# Customer Registration Form for Water and Sewer Billing

## Property and Owner Information:

(1)   Property receiving service: **BOROUGH: BROOKLYN    BLOCK: 1941        LOT:  5**

(2)   Property Address: **287 FRANKLIN AVENUE, NEW YORK, NY 11205**

(3)   Owner's Name:    **RONALD HENRY LAND TRUST**

     Additional Name:

## Affirmation:

☑   Your water & sewer bills will be sent to the property address shown above.

## Customer Billing Information:

### Please Note:

**A.**   Water and sewer charges are the legal responsibility of the owner of a property receiving water and/or sewer service. The owner's responsibility to pay such charges is not affected by any lease, license or other arrangement, or any assignment of responsibility for payment of such charges. Water and sewer charges constitute a lien on the property until paid. In addition to legal action against the owner, a failure to pay such charges when due may result in foreclosure of the lien by the City of New York, the property being placed in a lien sale by the City or Service Termination.

**B.**   Original bills for water and/or sewer service will be mailed to the owner, **at the property address or to an alternate mailing address**.  DEP will provide a duplicate copy of bills to one other party (such as a managing agent), however, any failure or delay by DEP in providing duplicate copies of bills shall in no way  relieve the owner from his/her liability to pay all outstanding water and sewer charges. Contact DEP at (718) 595-7000 during business hours or visit www.nyc.gov/dep to provide us with the other party's information.

## Owner's Approval:

The undersigned certifies that he/she/it is the owner of the property receiving service referenced above; that he/she/it has read and understands Paragraphs A & B under the section captioned "Customer Billing Information"; and that the information supplied by the undersigned on this form is true and complete to the best of his/her/its knowledge.

Print Name of Owner:

Signature: _____ Date (mm/dd/yyyy)

Name and Title of Person Signing for Owner, if applicable:

BCS-7CRF-ACRIS   REV. 8/08

2

UNITED STATES DISTRICT COURT
EASTERN DISCTIRCT OF NEW YORK
----------------------------------------------------------------X

287 FRANKLIN AVENUE RESIDENTS                     Docket No.: CV11-0976
ASSOCIATION, JOHN SASMOR, LISA LIN,
WILLIAM OSTERWALL, KURT FLETCH
And VILIJA SKUBUTYTE,                             DEFENDANTS' SECOND
                                                  SUPPLEMENTAL RESPONSES
                                Plaintiffs,        TO PLAINTIFF'S FIRST
                                                  SET OF INTERROGATORIES

                -against-


CHAIM MEISELS a/k/a CLIAMAH MIZELLE,
CHAIM GOLDBERGER a/k/a HENRY
GOLDBERGER, ISAAC TEITELBAUM a/k/a
ISAAC TITALBAUM, ABRAHAM SCHNEEBALG,
RONALD HENRY, NATHAN DOE, JOSH DOE,
JOE DOE, RONALD HENRY LAND TRUST,
HENRY MANAGEMENT, LLC, PEOPLE CHOICE
REAL ESTATE, LLC a/k/a PEOPLES CHOICE
REAL ESTATE L.L.C. a/k/a PEOPLE'S CHOICE
REALTY INC, PETER HENRY a/k/a GURU,
LOUIS GARCIA, JOEL KAUFMAN, KINGS COUNTY
REALTY CORP., BRIAN DUDJAK, JOHND AND JANE
DOES #1 THROUGH #10 and OTHER
JOHN DOES ENTITIES #1 THROUGH #10,

                                Defendants.
----------------------------------------------------------------X

      Defendants Chaim Goldberger, Isaac Teitelbaum, Abraham
Schneebalg, Ronald Henry Land Trust and Henry Management LLC by their
attorneys Stern & Stern, Esqs. as and for their Second Supplemental Response
to Plaintiff's First Set of Interrogatories, respond as follows:

      Response to No. 5: Copies of Chaim Goldberger's and Isaac
Teitelbaum's New York State Tax Returns for the years 2009 and 2010
redacted for everything but rental income information, are annexed hereto as
Exhibit **"A"**. Abraham Schneebalg filed a short form State Tax form which does

**JA283**

not provide a designation for rental income. Copies of the Henry Management

LLC's tax returns for the years 2009 and 2010 redacted except as to rental

income is annexed hereto as Exhibit **"B"**.

      Response to No. 6:  Defendants Goldberger and Teitelbaum do not

know the address of the banks where their accounts were originated

      Response to No. 9:  Chaim Goldberger is the person who collected

rent from the tenants at 287 Franklin Avenue, Brooklyn, New York.

      Response to No. 18:  None of the responding Defendants have any

writings regarding Peter Henry. No rent was collected from Peter Henry.


Dated: Brooklyn New York
       February 23, 2012

                                         Respectfully Submitted

                                         David Lyle Stern (DLS 6420
                                         STERN & STERN, ESQS.
                                         Attorneys for Defendants
                                         Chaim Goldberger
                                         Isaac Teitelbaum
                                         Abraham Schneebalg
                                         Ronald Henry Land Trust
                                         Henry Management LLC
                                         50 Court Street, Suite 1100
                                         Brooklyn, New York 11201
                                         (718) 935-9458


TO:    JON SASMOR
        Plaintiff Pro Se
        287 Franklin Avenue
        Brooklyn, New York 11205
        (917) 318-2619

**JA284**

GIDEON OLIVER (GO8799)
Attorneys for Plaintiffs
299 Broadway, Suite 806
New York, New York 1007
(212) 766-8050

BORIS KOGAN, ESQ.
277 Broadway, Suite 701
New York, New York 10007
(212) 625-8910

**JA285**

## VERIFICATION

CHAIM GOLBERGER, affirms under penalty of perjury:

1.    I affirm rather than swear due to my religious beliefs,

2.    I am one of the Defendants in this action. I have read the foregoing Supplemental Responses to Interrogatories and know the contents thereof; the same is true to my own knowledge except as to the matters therein stated to be alleged on information and belief and as to those matters I believe it to be true.

3.    The grounds of my belief as to all matters not stated upon my own knowledge and belief is my review of the records which I maintain with regard to this case.

_____
CHAIM GOLDBERGER

Affirmed to before me
February 2 4 2012

_____
NOTARY PUBLIC

SOLOMON ITZKOWITZ
Notary Public, State of New York
No. 01IT4795441
Qualified in Kings County
Commission Expires July 31, 2014

**JA286**

## VERIFICATION

ISAAC TEITELBAUM, affirms under penalty of perjury:

1.     I affirm rather than swear due to my religious beliefs,

2,     I am one of the Defendants in this action. I have read the foregoing Supplemental Responses to Interrogatories and know the contents thereof: the same is true to my own knowledge except as to the matters therein stated to be alleged on information and belief and as to those matters I believe it to be true.

3.     The grounds of my belief as to all matters not stated upon my own knowledge and belief is my review of the records which I maintain with regard to this case.

_____

ISAAC  TEITELBAUM

Affirmed to before me
February 2?, 2012

_____
NOTARY PUBLIC

SOLOMON ITZKOWITZ
Notary Public, State of New York
No. 01IT4795441
Qualified in Kings County
Commission Expires July 31, 2014

**JA287**

## VERIFICATION

ABRAHAM SCHNEEBALG, affirms under penalty of perjury:

1.    I affirm rather than swear due to my religious beliefs,

2.    I am one of the Defendants in this action. I have read the foregoing Supplemental Responses to Interrogatories and know the contents thereof; the same is true to my own knowledge except as to the matters therein stated to be alleged on information and belief and as to those matters I believe it to be true.

3.    The grounds of my belief as to all matters not stated upon my own knowledge and belief is my review of the records which I maintain with regard to this case.

ABRAHAM SCHNEEBALG

Affirmed to before me
February 2?, 2012

NOTARY PUBLIC

SOLOMON ITZKOWITZ
Notary Public, State of New York
No. 01IT4795441
Qualified in Kings County
Commission Expires July 31, 2014

**JA288**

**Henry Management, LLC**
**320 Roebling St. Ste 518**
**Brooklyn, NY 11211**

# Invoice

**Date:**
7/30/2010

**Bill To:**
287 Franklin AVE

| Description | Amount |
|---|---|
| Management fee | $300.00 |
| goro | $50.00 |
| | |
| **Total** | **$350.00** |

**JA289**

State of
County of Kings

I Ronald Henry, being duly Sworn, depose and Say.

I am of Age And Competent to testify. I did Not Sign the deed Dated 5/5/09 Purporting to Convey 257 Franklin Ave. BK NY. 11205. from my Self to the Ronald Henry Land trust.

I have No Knowledge of the Ronald Henry Land trust. And did not participate its formation or Administration.

I'm the Grantee from 8/ 3/07 from Gail Richardson. To Ronald Henry.

**JA290**

RLA.

Pg 1 of 2

As far as I Am Aware there is know Basis for
or Legitimacy to Ronald Henry Land Trust

I have not Authorized Anyone To Act As my
agent for the administration of 287 Franklin Ave.
As A Rental Property.

I have Never met or otherwise Conferred with
Signed documents with or Received Anything of
Value from Either directly or indirectly With
Any of Chaim Goldberger, Isaac Teitelbaum, Abraham
Schwartzberg, Henry Management ████ LLC, &
People Choice Realty.

Ronald Henry     8/6/10

SHAWN M. BROCKMAN            8/6/2010             JA291
Notary Public, State of New York
Qualified in Queens County
Reg. No. 01BR6174370
My Commission Expires Sept. 17, 2011

Case 1:11-cv-04645-KAM-JO   Document 56-9   Filed 07/27/12   Page 1 of 1 PageID #: 1394

# Corporate Checking

IMAGE INQUIRY SELECTION

Print this Page

| Trace No. | Account | Draft | Date | Amount |
|-----------|---------|-------|------|--------|
| 4310 | 0001 | 201193 | 08/13/2010 | 100.00 |



**JA292**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
287 FRANKLIN AVENUE RESIDENTS'                    MEMORANDUM
ASSOCATION, et al.,                               AND ORDER
                              Plaintiffs,
            - against -
CHAIM MEISELS, et al.,                            11-CV-0976 (KAM) (JO)
                              Defendants.
-----------------------------------------------------------X

James Orenstein, Magistrate Judge:

    Plaintiff Jon Sasmor ("Sasmor") moves for the entry of default against defendant Peter

Henry ("Henry"). DE 85. Henry has failed to answer the Complaint or otherwise appear in this

action. The Clerk of Court has previously rejected Sasmor's request to enter Henry's default on the

ground that that the documents submitted by Sasmor in support of his request do not clearly

establish that Henry was properly served with the Complaint. *See* Notice dated February 10, 2012.

For the reasons set forth below, I grant Sasmor's motion.

    "When a party against whom a judgment for affirmative relief is sought has failed to plead

or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

party's default." Fed. R. Civ. P. 55(a). Although the rule expressly authorizes the Clerk to enter

default, it does not limit the court's authority to do so; a party may make an application to the court

to enter default against a party who has failed to plead or otherwise respond. *See United States v.*

*Edwards*, 2011 WL 2441682 (D. Idaho June 14, 2011) (citing 10 Charles A. Wright, et al., Federal

Practice and Procedure § 2682); *Fisher v. Taylor*, 1 F.R.D. 448, 448 (E.D. Tenn. 1940) ("[T]he

court has power to enter an order of default and Rule 55 is not a limitation thereof.").

    To secure the relief he seeks, Sasmor must show that he has properly effected service on

Henry. *See, e.g., Orellana v. World Courier, Inc.*, 2010 WL 3861002, at *2 (E.D.N.Y. Aug. 4,

2010) (recommending against default judgment based on inadequate proof of service); *Llaviganay*

**JA293**

*v. Cipriani 110 LLC*, 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (denying default judgment for same reason). Sasmor may do so by showing that he has used any of the service methods authorized under New York law or certain additional methods including "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2).

Here, the affidavit of service indicates that the process server, Tom Miller ("Miller"), made five unsuccessful attempts to personally serve Henry at his home address between November 11, 2011, and November 19, 2011.[1] DE 85-2 ("Miller Aff.") ¶¶ 2-5. On the occasion of his sixth attempt on November 20, 2011, Miller, accompanied by Sasmor, encountered Henry outside of the address. *Id.* ¶¶ 6-7. Miller called out to Henry by name and tried to hand Henry a manila envelope containing a copy of the Summons and Complaint. *Id.* ¶ 9. Henry swung his arm at Miller, striking him hard on the wrist and knocking the envelope containing the Summons and Complaint to the ground. *Id.* ¶ 10. Henry then walked towards a red SUV parked on the street, unlocked and opened the driver-side door of the vehicle, reached inside to retrieve some papers, closed and locked the door, and then reentered the building. *Id.* ¶¶ 11-12. Miller retrieved the Summons and Complaint from the ground and placed the envelope, which bore Henry's name and address, under one of the windshield wipers on the vehicle. *Id.* ¶ 13. Miller and Sasmor remained in front of the building and, approximately six minutes later, Henry reemerged and walked towards the location where they were standing. *Id.* ¶ 15. Miller held out another copy of the Summons and Complaint and stated to Henry, "This is a summons and complaint from federal court." *Id.* Henry did not take the Summons and Complaint, but yelled at Miller and Sasmor to "leave [him] alone," and continued walking. *Id.* ¶ 16.

---

[1] Miller determined Henry's home address from the billing records for Henry's cellular telephone which were obtained by Sasmor during discovery. Miller Aff. ¶ 1.

JA294

These facts establish effective personal service. A defendant's physical refusal to accept a summons does not suffice to avoid service where he is informed that service is being attempted. *See Sparton Engineered Prods. v. Cable Control Techs.* 178 F.3d 1296 (table), 1999 WL 115472, at *3 & n.2 (6th Cir. 1999). "If the defendant attempts to evade service or refuses to accept delivery after being informed by the process server of the nature of the papers, it usually is sufficient for the process server to touch the party to be served with the papers and leave them in defendant's presence, or, if a touching is impossible, simply to leave them in the defendant's physical proximity." *Travelers Cas. and Sur. Co. of America v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (quoting 4A Charles A. Wright, et al., Federal Practice and Procedure § 1095 (3d ed. 2002)); *accord Gambone v. Lite-Rock Drywall Corp.*, 124 Fed. Appx. 78, 79-80 (3d Cir. 2005); *United States v. Mahoney*, 2007 WL 4570843, at *1 (E.D. Cal. Dec. 27, 2007); *see also Doe 1 v. Liu Qi*, 349 F. Supp. 2d 1258, 1275 n.5 (N.D. Cal. 2004) ("Where a defendant attempts to avoid service ... by refusing to take the papers, it is sufficient if the server is in close proximity to the defendant, clearly communicates intent to serve court documents, and makes reasonable efforts to leave the papers with the defendant."). "It is not crucial in these circumstances that the defendant does not take the papers into his or her possession ... [s]ince this procedure satisfies the objective of giving notice to the party to be served." *Travelers Cas. and Sur. Co. of America*, 551 F.3d at 1135 (quoting 4A Charles A. Wright, et al., Federal Practice and Procedure § 1095 (3d ed. 2002)).

Miller twice attempted to hand the Summons and Complaint to Henry, who not only refused to accept the papers, but actually physically assaulted Miller in the first instance. While Miller did not inform Henry of the legal nature of the papers prior to Henry's initial refusal, Henry's aggressive behavior towards Miller and Sasmor strongly suggests that he understood the

3

**JA295**

purpose for their visit. In any event, Miller did inform Henry of the nature of the documents before attempting to hand them to Henry a second time, and Henry nonetheless refused to accept them. Finally, Miller left the documents in a conspicuous location under a windshield wiper of the red SUV from which he had observed Henry retrieve paperwork. Under these circumstances, I conclude that Henry was given adequate notice of the Complaint in this action and therefore was properly served.

Even if I were to conclude that the service described above were somehow deficient, I would still find that Henry has been properly served because, after attempting to personally serve Henry, Miller mailed the Summons and Complaint to Henry and affixed those documents to the front door of his apartment building. Miller Aff. ¶¶ 19-20. Such "nail and mail" service is authorized by under New York law where personal service cannot be made with due diligence. *See* N.Y. C.P.L.R. § 308(4). I find that Miller's attempts to personally serve Henry at his home address were sufficient to constitute due diligence, particularly in light of Henry's aggressive avoidance of service. Accordingly, I find that "nail and mail" service was authorized in this case. I therefore grant plaintiff Sasmor's motion and respectfully direct the Clerk to enter defendant Henry's default on the docket.[2]

SO ORDERED.

Dated: Brooklyn, New York
March 12, 2012

/s/
JAMES ORENSTEIN
U.S. Magistrate Judge

---

[2] I note that the docket reflects that as of the date and time of this order, the Clerk has already entered Henry's default at my request.

4

**JA296**

## OFFICE OF THE DISTRICT ATTORNEY, KINGS COUNTY



RENAISSANCE PLAZA at 350 JAY STREET
BROOKLYN, N.Y. 11201-2908
(718)-250-2000

**CHARLES J. HYNES**
*District Attorney*

## MANAGING AGENT'S AFFIDAVIT FOR AN OCCUPIED BUILDING
## IN BROOKLYN, NEW YORK

1. I am the managing agent of ___287 Franklin Avenue___.
   (Insert building address)

2. I have provided the _79_ Precinct with a current list of tenants in this building. This list is regularly updated and kept on file with the Kings County District Attorney's Office and the _79_ Precinct.

3. The building has many legitimate residents. Unfortunately, trespassers have come to use the building recently for the purchase and use of illegal drugs or to commit other crimes.

4. Accordingly, I have asked the _79_ Precinct to arrest anyone found trespassing in the building. I have made it clear to the Precinct Commander that if a person is not a tenant, or a guest or invitee of a tenant, or is unable to state a legitimate reason for being in the building, then his/her presence in the building is unauthorized; that such person has no permission or authority to enter or remain therein; and that he/she should be arrested for trespass and/or any other committed crime.

5. The building is conspicuously posted with signs saying "TENANTS AND THEIR GUESTS ONLY".

6. This affidavit will be in effect for a period of one hundred and twenty (120) days, which will commence upon execution of this document.

FTAP AFFIDAVIT EXPIRATION DATE: ___- 8/___

False statements made herein are Punishable as a class A Misdemeanor Pursuant to section 210.45 of the New York State Penal law.

X _Ronald H_
SIGNATURE OF MANAGING AGENT

Sworn to before me this
_12_ day of _August_, 20_10_

_Areta Vokrri_

**ARETA VOKRRI**
Notary Public - State of New York
No. 01VO6140009
Qualified in Bronx County
My Commission Expires Jan. 17, 2014

_Ronald Henry_
PRINT NAME

REVISED 2/22/06
**JA297**

Tenant List for 287 Franklin Av
(8/12/2010)

Amanda Diaz
Lisa Lin
Jonathan Sasmor
Vilija Skubutyte
Luis Campos
Kurt Fletcher
William Osterweil

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
----------------------------------------------------------------------------x
IndyMac Federal Bank FSB,

Index No.: 11344/09
Filed:

                            Plaintiff,

**NOTICE OF PENDENCY
OF ACTION**

    -against-

Ronald Henry, Bellevue Hospital/NYCHHC, Criminal Court of the
City of New York, New York State Department of Taxation and
Finance, United States of America - Department of the Treasury -
Internal Revenue Service, New York City Environmental Control
Board, New York City Parking Violations Bureau, New York City
Transit Adjudication Bureau and "JOHN DOE #1" through "JOHN
DOE #10", the last ten names being fictitious and unknown to the
plaintiff, the person or parties intended being the persons or parties,
if any, having or claiming an interest in or lien upon the Mortgage
premises described in the Complaint,

                         Defendants.
----------------------------------------------------------------------------x

     NOTICE IS HEREBY GIVEN, that an action has been commenced and is pending in this
Court upon a Complaint of the above named Plaintiff against the above named Defendants for the
foreclosure of a Mortgage, dated August 31, 2007, executed by Ronald Henry, as mortgagor, to
Mortgage Electronic Registration Systems, Inc., as nominee for IndyMac Bank, F.S.B., as mortgagee,
to secure the sum of $712,000.00, and recorded in the Office of the Clerk of the County of Kings on
October 2, 2007 at CRFN 2007000502883. The note and mortgage were assigned to IndyMac
Federal Bank FSB by an assignment which is in the process of being recorded. Plaintiff is also in
possession of the original note with a proper endorsement and/or allonge and is therefore, the holder
of both the note and mortgage, which passes as incident to the note.

     NOTICE IS FURTHER GIVEN, that the mortgaged premises affected by said foreclosure
action, at the time of the commencement of said action and at the time of the filing of this notice,
was situated at 287 Franklin Avenue, Brooklyn, NY 11205, County of Kings, State of New York at
Block 1941, Lot 5.



**JA299**



## SCHEDULE A

## DESCRIPTION OF MORTGAGED PREMISES

Title No. 4091241

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Franklin Avenue distant 294 feet southerly from the southeasterly corner of DeKalb Avenue and Franklin Avenue;

RUNNING THENCE easterly and part of the distance through a party wall, 100 feet to a point;

THENCE southerly parallel with Franklin Avenue, 19 feet 5 inches;

THENCE westerly 100 feet to the eastery side of Franklin Avenue;

THENCE northerly along the easterly side of Franklin Avenue, 19 feet 5 inches to the point or place of BEGINNING.

**JA300**

The Clerk of the County of Kings is directed to index this notice to the names of all of the above defendants. The premises known as 287 Franklin Avenue, Brooklyn, NY 11205, in Kings County, New York.

Dated: Bay Shore, New York
       May 7, 2009

Yours, etc.,
Frenkel, Lambert, Weiss, Weisman, & Gordon, LLP

By: Todd Falasco

BLOCK 1941
LOT 5

20 West Main Street
Bay Shore, New York 11706
(631) 969-3100
Our File No.: 31446

FILED
KINGS COUNTY CLERK
2009 MAY -8 PM 1:16

**JA301**

Index #

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

IndyMac Federal Bank FSB,

                                        Plaintiff,

            - against -

Ronald Henry, Bellevue Hospital/NYCHHC, Criminal Court of the City of New York, New
York State Department of Taxation and Finance, United States of America - Department of
the Treasury - Internal Revenue Service, New York City Environmental Control Board, New
York City Parking Violations Bureau, New York City Transit Adjudication Bureau, and
"JOHN DOE #1" through "JOHN DOE #10", the last ten names being fictitious and
unknown to the plaintiff, the person or parties intended being the persons or parties, if any,
having or claiming an interest in or lien upon the Mortgage premises described in the
Complaint,

                                        Mortgagor.

## NOTICE OF PENDENCY OF ACTION

Frenkel, Lambert, Weiss, Weisman, & Gordon, LLP
Attorneys for Plaintiff
20 West Main Street
Bay Shore, New York 11706
(631) 969-3100
Fax (631) 969-3101
Our File No.: 31446

To

Attorney(s) for

Service of a copy of the within

                                    is hereby admitted.

Dated,

Attorney(s) for

**JA302**

**11344 / 2009**

FEB 2 8 2012

Opened: **5/8/2009** Type: **Foreclosure Others**
**ONE WEST BANK FSB** vs. **HENRY, RONALD ETAL**
Atty: **FRENKEL**   Atty:

| Filed | | Actions | RecRoom |
|---|---|---|---|
| 9/24/2010 | | Ord. of reference and amend,etc | 9/30/2010 |
| 6/14/2010 | | Letter | 6/22/2010 |
| 9/28/2009 | | Req. judical interven. fee paid | 7/26/2010 |
| 9/28/2009 | | MOTION COVERPAGE (EX PARTE ORDER) FEEPAID- | 3/5/2010 |
| 8/5/2009 | | Notice of appearance and claim to monies bellevue hosital | 10/14/2009 |
| 7/1/2009 | | Notice of appear/waiver | 7/31/2009 |
| 6/26/2009 | | Affidavit of serv. | 7/30/2009 |
| 6/4/2009 | | Affidavit of serv. | 7/17/2009 |
| 5/29/2009 | | Affidavit of serv. | 7/24/2009 |
| 5/26/2009 | | Affidavit of serv. 3 | 6/4/2009 |
| 5/22/2009 | | Affidavit of serv. [2] | 10/6/2009 |
| 5/21/2009 | | Affidavit of serv. [2] | 6/26/2009 |
| 5/19/2009 | | Affidavit of serv. | 6/16/2009 |
| 5/18/2009 | | Affidavit of serv. | 6/15/2009 |
| 5/8/2009 | | Notice of pendency | 6/25/2009 |
| 5/8/2009 | | Summ. & compl. | 6/16/2009 |

Total: 16

**JA303**

## AGREEMENT AND DECLARATION OF TRUST
Ronald Henry Levell Trust

THIS AGREEMENT AND DECLARATION OF TRUST is made and entered into this _13_ day of _May_
200_4_, by and between _Ronald Henry_ _____, as Grantors and Beneficiaries, (hereinafter referred to as
the "Beneficiaries", whether one or more, which designation shall include all successors in interest of any
Beneficiary), and _Abraham Schneebalg & Isaac Teitelbaum_ whose address is_____ _____
hereinafter referred to as the "Trustee", which designation shall include all successor trustees). IT IS MUTUALLY
AGREED AS FOLLOWS:

1. **Trust Property.** The Beneficiaries are about to convey or cause to be conveyed to the Trustee by
   deed, absolute in form, the property described in the attached Exhibit "A", which said property shall
   be held by the Trustee, in trust, for the following uses and purposes, under the terms of this
   Agreement and shall be hereinafter referred to as the "Trust Property".

2. **Consideration.** No consideration was paid by Trustee for such conveyance. The conveyance will be
   accepted and will be held by Trustee subject to all existing encumbrances, easements, restrictions or
   other clouds or claims against the title thereto, whether the same are of record or otherwise. The
   property will be held on the trusts, terms and conditions, and for the purpose hereinafter set forth,
   until the whole of the trust estate is conveyed, free of this trust, as hereinafter provided.

3. **Beneficiaries.** The persons named in the attached Exhibit "B" are the Beneficiaries of this Trust, and as
   such, shall be entitled to all of the earnings, avails and proceeds of the Trust Property according to
   their interests set opposite their respective names.

4. **Interests.** The interests of the Beneficiaries shall consist solely of the following rights respecting the
   Trust Property:
   a) The right to direct the Trustee to convey or otherwise deal with the title to the Trust Property as
      hereinafter set out.
   b) The right to manage and control the Trust Property.
   c) The right to receive the proceeds and avails from the rental, sale, mortgage, or other disposition
      of the Trust Property.

   The foregoing rights shall be deemed to be personal property and may be assigned and otherwise
   transferred as such. No Beneficiary shall have any legal or equitable right, title or interest, as realty,
   in or to any real estate held in trust under this Agreement, or the right to require partition of that real
   estate, but shall have only the rights, as personally, set out above, and the death of a Beneficiary shall
   not terminate this Trust or in any manner affect the powers of the Trustee.

5. **Powers of Trustee.**
   a) With the consent of the Beneficiary, the Trustee shall have authority to issue notes or bonds and
      to secure the payment of the same by mortgaging the whole or any part of the Trust Property; to
      borrow money, giving notes therefore signed by him in his capacity as Trustee; to invest such
      part of the capital and the profits therefore and the proceeds of the sale of bonds and notes in
      such real estate, equities in real estate, and mortgages in real estate in the United States of
      America, as he may deem advisable.
   b) With the consent of the Beneficiary, the Trustee shall have the authority to hold the legal title to
      all of the Trust Property, and shall have the exclusive management and control of the property as

if he were the absolute owner thereof, and the Trustee is hereby given full power to do all things and perform all acts which in his judgment are necessary and proper for the protection of the Trust Property and for the interest of the Beneficiaries in the property of the Trust, subject to the restrictions, terms, and conditions herein set forth.

c)  Without prejudice to the general powers conferred on the Trustee hereunder, it is hereby declared that the Trustee shall have the following powers, with the consent of the Beneficiaries:

(1)  To purchase any real property for the Trust at such times and on such terms as may seem advisable; to assume mortgages upon the property.

(2)  To sell at public auction or private sale, to barter, to exchange, or to dispose of otherwise, any part, or the whole of the Trust Property which may, from time to time form part of the Trust estate, subject to such restrictions and for such consideration for cash and for credit, and generally upon such terms and condition as may seem judicious, to secure payment upon any loan or loans of the Trust, by mortgage with or without power of sale, and to include such provisions, terms, and conditions as may seem desirable.

(3)  To rent or lease the whole or any part of the Trust Property for long or short terms, but not for terms exceeding the term of the Trust then remaining.

(4)  To repair, alter, tear down, add to, or erect any building or buildings upon land belonging to the Trust; to fill, grade, drain, improve, and otherwise develop any land belonging to the Trust; to carry on, operate, or manage any building, apartment house, or hotel belonging to the Trust.

(5)  To make, execute, acknowledge, and deliver all deeds, releases, mortgages, leases contracts, agreements, instruments, and other obligations of whatsoever nature relating to the Trust Property, and generally to have full power to do all things and perform all acts necessary to make the instruments proper and legal.

(6)  To collect notes, obligations, dividends, and all other payments that may be due and payable to the Trust; to deposit the proceeds thereof, as well as any other moneys from whatsoever source they may be derived, in any suitable bank or depository, and to draw the same from time to time for the purposes herein provided.

(7)  To pay all lawful taxes and assessments and the necessary expenses of the Trust; to employ such officers, brokers, engineers, architects, carpenters, contractors, agents, counsel, and such other persons as may seem expedient, to designate their duties and fix their compensation; to fix a reasonable compensation for their own services to the Trust, as organizers thereof.

(8)  To represent the Trust and the Beneficiaries in all suits and legal proceedings relating to the Trust Property in any court of law or equity, or before any other bodies or tribunals; to begin suits and to prosecute them to final judgment or decree, to compromise claims or suits, and to submit the same to arbitration when, in his judgment, such course is necessary or proper.

(9)  To arrange and pay for and keep in force in the name and for the benefit of the Trustee, such insurance as the Trustee may deem advisable, in such companies, in such amounts, and against such risks as are determined necessary by the Trustee.

6.  Duties of Trustee. It shall be the duty of the Trustee in addition to the other duties herein imposed upon him:

a)  To keep a careful and complete record of all the beneficial interests in the Trust Property with the name and residence of the person or persons owning such beneficial interest, and such other items as he may deem of importance or as may be required by the Beneficiaries.

b)  To keep careful and accurate books showing the receipts and disbursements of the Trust and also of the Trust Property, and such other items as he may deem of importance or as the Beneficiaries hereunder may require.

c)  To keep books of the Trust open to the inspection of the Beneficiaries at such reasonable times at the main office of the Trust as they may appoint.

d) To furnish the Beneficiaries at special meetings at which the same shall be requested a careful, accurate, written report of his transactions as Trustee hereunder, of the financial standing of the Trust, and of such other information concerning the affairs of the Trust as they shall request.

e) To sell the Trust Property and distribute the proceeds therefore:

(1) If any property shall remain in trust under this Agreement for a term which exceeds that allowed under applicable state law, the Trustee forthwith shall sell same at public sale after a reasonable public advertisement and reasonable notice to the Beneficiaries and, after deducting his reasonable fees and expenses, he shall divide the proceeds of the sale among the Beneficiaries as their interests may then appear, without any direction or consent whatsoever, or

(2) To transfer, set over, convey and deliver to all the then Beneficiaries of this Trust their respective undivided interests in any non-divisible assets, or

(3) To transfer, set over and deliver all of the assets of the Trust to its Beneficiaries, in their respective proportionate shares, at any time when the assets of the Trust consist solely of cash.

7. **Compensation of Trustee.** The Beneficiaries jointly and severally agree that the Trustee shall receive the sum of $ ___50.00___ per month for his services as Trustee hereunder.

8. **Liability of Trustee.** The Trustee and his successor as Trustee shall not be required to give a bond, and each Trustee shall be liable only for his own acts and then only as a result of his own gross negligence or bad faith.

9. **Removal of Trustee.** The Beneficiaries shall have the power to remove a Trustee from his office or appoint a successor to succeed him.

10. **Resignation and Successor.**

a) Any Trustee may resign his office with thirty (30) days written notice to Beneficiaries and Beneficiaries shall proceed to elect a new Trustee to take the place of the Trustee who had resigned, but the resignation shall not take effect until a certificate thereof signed, sealed, and acknowledged by the Trustee, and a certificate of the election of the new Trustee, signed and sworn to by the Beneficiaries and containing an acceptance of the office, signed and acknowledged by the new Trustee, shall have been procured in a form which is acceptable for recording in the registries of deeds of all the counties in which properties held under this instrument are situated. If the Beneficiaries shall fail to elect a new Trustee within thirty (30) days after the resignation, then the Trustee may petition any appropriate court in this state to accept his resignation and appoint a new Trustee.

b) Any vacancy in the office of Trustee, whether arising from death or from any other cause not herein provided for, shall be filled within thirty (30) days from the date of the vacancy and the Beneficiaries shall proceed to elect a new Trustee to fill the vacancy, and immediately thereafter shall cause to be prepared a certificate of the election containing an acceptance of the office, signed, sealed, and acknowledged by the new Trustee, which shall be in a form acceptable for recording in the registries of deeds of all the counties in which properties held under this instrument are situated.

c) Whenever a new Trustee shall have been elected or appointed to the office of Trustee and shall have assumed the duties of office, he shall succeed to the title of all the properties of the Trust and shall have all the powers and be subject to all the restrictions granted to or imposed upon the Trustee by this agreement, and every Trustee shall have the same powers, rights, and interests regarding the Trust Property, and shall be subject to the same restrictions and duties as the original Trustee, except as the same shall have been modified by amendment, as herein provided for.

d) Notwithstanding any such resignation, the Trustee shall continue to have a lien on the Trust Property for all costs, expenses and attorney's fees incurred and for said Trustee's reasonable compensation.

11. <u>Objects and Purposes of Trust.</u> The objects and purposes of this Trust shall be to hold title to the Trust Property and to protect and conserve it until its sale or other disposition or liquidation. The Trustee shall not undertake any activity not strictly necessary to the attainment of the foregoing objects and purposes, nor shall the Trustee transact business within the meaning of applicable state law, or any other law, nor shall this Agreement be deemed to be, or create or evidence the existence of a corporation, de facto or de jure, or a Massachusetts Trust, or any other type of business trust, or an association in the nature of a corporation, or a co partnership or joint venture by or between the Trustee and the Beneficiaries, or by or between the Beneficiaries.

12. <u>Exculpation.</u> The Trustee shall have no power to bind the Beneficiaries personally and, in every written contract he may enter into, reference shall be made to this declaration and any person or corporation contracting with the Trustee, as well as any beneficiary, shall look to the funds and the Trust Property for payment under such contract, or for the payment of any debt, mortgage, judgment, or decree, or for any money that may otherwise become due or payable, whet er by reason or failure of the Trustee to perform the contract, or for any other reason, and neither the Trustee nor the Beneficiaries shall be liable personally therefore.

13. <u>Dealings with Trustee.</u> No party dealing with the Trustee in relation to the Trust Property in any manner whatsoever, and, without limiting the foregoing, no party to whom the property or any part of it or any interest in it shall be conveyed, contracted to be sold, leased or mortgaged by the Trustee, shall be obliged to see to the application of any purchase money, rent or money borrowed or otherwise advanced on the property; to see that the terms of this Trust Agreement have been complied with; to inquire into the authority, necessity or expediency of any act of the Trustee; or be privileged to inquire into any of the terms of this Trust Agreement. Every deed, mortgage, lease or other instrument executed by the Trustee in relation to the Trust Property sha be conclusive evidence in favor of every person claiming any right, title or interest under the Trust that at the time of its delivery the Trust created under this Agreement was in full force and effect; and that instrument was executed in accordance with the terms and conditions of this Agreement and all its amendments, if any, and is binding upon all Beneficiaries under it; that the Trustee was duly authorized and empowered to execute and deliver every such instrument; if a conveyance has been made to a successor or successors in trust, that the successor or successors have been appointed properly and are vested fully with all the title, estate, rights, powers, duties and obligations of its, his or their predecessor in Trust.

14. <u>Recording of Agreement.</u> This Agreement shall not be placed on record in the county in which the Trust Property is situated, or elsewhere, but if it is so recorded, that recording shall not be considered as notice of the rights of any person under this Agreement derogatory to the title or powers of the Trustee.

15. <u>Name of Trustee.</u> The name of the Trustee shall not be used by the Beneficiaries in connection with any advertising or other publicity whatsoever without the written consent of the Trustee.

16. <u>Income Tax Returns.</u> The Trustee shall be obligated to file any income tax retur is with respect to the Trust, as required by law, and the Beneficiaries individually shall report and pay their share of income taxes on the earnings and avails of the Trust Property or growing out of their interest under this Trust.

17. <u>Assignment.</u> The interest of a Beneficiary, or any part of that interest, may be transferred only by a written assignment, executed in duplicate and delivered to the Trustee. The Trustee shall note its acceptance on the original and duplicate original of the assignment, retaining the original and delivering the duplicate original to the assignee as and for evidence of ownership of a beneficial interest under this Agreement. No assignment of any interest under this Agreement, other than by operation of law, that is not so executed, delivered and accepted shall be valid without the written

approval of all of the other Beneficiaries who possess the power of direction. No person who is vested with the power of direction, but who is not a Beneficiary under this Agreement, shall assign that power without the written consent of all the Beneficiaries.

18. **Individual Liability of Trustee.** The Trustee shall not be required, in dealing with the Trust Property or in otherwise acting under this Agreement, to enter into any individual contract or other individual obligation whatsoever; nor to make himself individually liable to pay or incur the payment of any damages, attorney's fees, fines, and penalties, forfeitures, costs, charges or other sums of money whatsoever. The Trustee shall have no individual liability or obligation whatsoever arising from his ownership, as Trustee, of the legal title to the Trust Property, or with respect to any act done or contract entered into or indebtedness incurred by him in dealing with the Trust Property or in otherwise acting under this Agreement, except only as far as the Trust Property and any trust funds in the actual possession of the Trustee shall be applicable to the payment and discharge of that liability or obligation.

19. **Reimbursement and Indemnification of Trustee.** If the Trustee shall pay or incur any liability to pay any money on account of this Trust, or incur any liability to pay any money on account of being made a party to any litigation as a result of holding title to Trust Property or otherwise in connection with this Trust, whether because of breach of contract, injury to person or property fines or penalties under any law, or otherwise, the Beneficiaries, jointly and severally agree that on demand they will pay to the Trustee, with interest at the rate of __12__ % per annum, all such payments made or liabilities incurred by the Trustee, together with his expenses, including reasonable attorney's fees, and that they will indemnify and hold the Trustee harmless of and from any and all payments made or liabilities incurred by him for any reason whatsoever as a result of this Agreement; and all amounts so paid by the Trustee, as well as his compensation under this Agreement, shall constitute a lien on the Trust Property. The Trustee shall not be required to convey or otherwise deal with the Trust property as long as any money is due to the Trustee under this Agreement; nor shall the Trustee be required to advance or pay out any money on account of this Trust or to prosecute or defend any legal proceedings involving this Trust or any property or interest under this Agreement unless he shall be furnished with sufficient funds or be indemnified to his satisfaction.

20. **Entire Agreement.** This Agreement contains the entire understanding between the parties and may be amended, revoked, or terminated only by written agreement signed by the Trustee and all of the Beneficiaries.

21. **Governing Law.** This agreement, and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance with the laws of the State of __New York__. The parties herein waive trial by jury and agree to submit to the personal jurisdiction and venue of a court of subject matter jurisdiction located in __Kings__ County, State of __New York__. In the event that litigation results from or arises out of this Agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled. In such event, no action shall be entertained by said court or any court of competent jurisdiction if filed more than one year subsequent to the date the cause(s) of action actually accrued regardless of whether damages were otherwise as of said time calculable.

22. **Binding Effect.** The terms and conditions of this Agreement shall inure to the benefit of and be binding upon any successor trustee under it, as well as upon the executors, administrators, heirs, assigns and all other successors in interest of the Beneficiaries.

23. **Trustee's Liability to Beneficiaries.** The Trustee shall be liable to the Beneficiaries for the value of their respective beneficial interests only to the extent of the property held in Trust by him hereunder and

**JA308**

the Beneficiaries shall enforce such liability only against the Trust Property and not against the Trustee personally.

24. **Annual Statements.** There shall be no annual meeting of the Beneficiaries, but the Trustee shall prepare an annual report of their receipts and disbursements for the fiscal year preceding, which fiscal year shall coincide with the calendar year, and a copy of the report shall be sent by mail to the Beneficiaries not later than February 28 of each year.

25. **Termination.** This trust may be terminated at any time by the Beneficiaries and with thirty (30) days written notice of termination delivered to the Trustee, the Trustee shall execute any and all documents necessary to vest fee simple marketable title to any and all Trust Property in Beneficiaries.

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the day and year first above written.

BENEFICIARIES:

(Abraham Schwebels)

WITNESS                CO-TRUSTEE

(Isaac Teitelbaum

Witness    CO-TRUSTEE

Beneficiary
TRUSTEE:

Witness

STATE OF ___New York___
COUNTY OF ___Queens___

Before me personally appeared ___Ronald Henry, Abraham Schwebels, Isaac Teitelbaum___ to me well known and known to me to be the person described in and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

WITNESS my hand and official seal in the State and County aforesaid, this day of ___5/13___, 20_05_

Notary Public

(SEAL)                                                    State of _____
                                                          My Commission Expires: _____

EPHRAIM FRENKEL
Notary Public, State of New York
No. 01FR6068961
Qualified in Queens County
Commission Expires August 11, 20__

## EXHIBIT "A"

**Legal Description**

Block:              Lot:

1941               5        Kings county

*EXHIBIT "B"*

**Street Address**

287 Franklin Avenue, Bklyn NY

# ASSIGNMENT OF BENEFICIAL INTEREST IN LAND TRUST

The undersigned, for value received, hereby assigns to _____ _____
all of their right, title and interest in and to the beneficial interest in a certain Land Trust
created by a Agreement and Declaration of trust dated _5\13\09_ and known is the
_Ronald Ann   Lal Trust_ (insert Trust and Trustees name). We hereby
affirm that our beneficial interest assigned herein is ONE HUNDRED PERCENT (100%) of the
total beneficial interest in the aforesaid Land Trust.

~~Beneficiaries~~

_____          _____
~~Seller~~ Ω-Trustee                         Co-Trustee

Signed, sealed and delivered in the presence of:

State of _New York_
County of _Queens_

        This instrument was acknowledged before me on _13_ (date) by _May 2.15_ (name(s) of
person(s))

_____
Notary Public
My Commision expires: _____

EPHRAIM FRENKEL
Notary Public, State of New York
No. 01FR6063931
Qualified in Queens County
Commission Expires August 11, 20__

## ~~ACCEPTANCE BY TRUSTEE~~

~~Acceptance by aforementioned Trustee of this Assignment of Beneficial Interest in Land trust by the beneficial share holder(s):~~

_5-13-09_
Date

_____
~~Trustee~~ Beneficiary

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS HOUSING PART H
-------------------------------X
RONALD HENRY LAND TRUST                  INDEX#78902/11

         PETITIONER
                              AFFIRMATION

         VS

JON SASMOR & LISA LIN

         RESPONDENTS
-------------------------------X
STATE OF NEW YORK )
             :SS.:
COUNTY OF KINGS   )

    CHAIM GOLDBERGER, being duly affirmed states under penalty of perjury:

    1. I am the building manager of 287 Franklin Avenue, Brooklyn, NY and have personal knowledge of the facts stated herein.

    2. Respondents are very familiar with your affirmant.  I visited the premises almost on a daily basis.

    3. I collected rents, was in charge of maintaining the premises, making sure needed repairs were done, and resolved roommate disputes between the occupants.

    4. I was hired by Isaac Teitelbaum, trustee of Petitioner-trust to manage the property and did so as an employee of Henry Management LLC in connection with this premises.

    5. Respondents made payments to your affirmant payable to Isaac Teitelbaum.  Respondents ceased paying any rent approximately two(2) months after moving in.

    6. I go by the name of Chaim Goldberger, or Henry Goldberger.  Chaim is my hebrew name which many people have diffculty correctly pronouncing.

    7. At no time did your affirmant misrepresent or conceal anyone's true identity regarding the ownership or management of the premises.

    WHEREFORE, Petitioner respectfully requests that Respondent's motion be entirely denied, that Petitioner's cross motion for summary judgment be granted awarding Petitioner a final judgment of possession, issuance and execution of a warrant forthwith, and other relief the court deems just.

affirmed to before me on this
21st day July 2011
                             CHAIM GOLDBERGER

notary public
STUART I. JACOBS
NOTARY PUBLIC, State of New York
No. 24-4924809
Qualified in Kings County
Commission Expires 2/28/20__

**JA313**

Case 1:11-cv-04645-KAM-JO   Document 56-17   Filed 07/27/12   Page 1 of 1 PageID #: 1410

**L. & T. No.** 10057
RESIDENTIAL
*PETITION Non-Payment*

**Civil Court of the City of New York**

**County of** KINGS    **Housing Part**

_____ **Landlord**

RONALD HENRY LAND TRUST

*against*    **Tenant**

JON SASMOR & KURT FLETCHER & LISA LIN & WILLIE OSTERWEIL & AMANTA DIOZ
287 FRANKLIN AVE.
BROOKLYN, NY 11205-
Apt: ENTIRE HOUSE

_____ **Undertenant**

**Amount Claimed $** 15550.00

---

**PETITION–NON-PAYMENT**

Notice of
Petition served on _____ 20_____

Notice of
Petition returned on _____ 20_____

Notice of
Petition issued on _____ 20_____

Tenant appears on _____ 20_____

but fails to answer.

Tenant answers on _____ 20_____

Answer is _____

Set for Trial on _____ 20_____

Landlord notified on _____ 20_____

Sufficiency of answer referred

to court _____ 20_____

Raises _____ issue

---

*Attorney for Petitioner*    **Judge**

Law Offices of
Stuart I. Jacobs
1779 51st Street
Brooklyn, NY 11204
Tel: (718) 436-3395

---

**THE PETITION OF** RONALD HENRY LAND TRUST    alleges; upon Information and Belief

1. Petitioner is the landlord of the premises
287 FRANKLIN AVE. BROOKLYN, NY 11205-
LIN & WILLIE OSTERWEIL & AMANTA DIOZ
2. Respondent(s) JON SASMOR & KURT FLETCHER & LISA    is (are) in possession of said
premises pursuant to a Written    rental agreement
wherein respondent promised to pay to landlord as rent $    $ 3850.00
each    Month    in advance on the    1st.
3. Respondent    is the undertenant of the aforesaid respondent tenant(s).
4. Respondents are now in possession of said premises. Said premises are    the residence of the tenant(s) and undertenants herein.
5. The premises from which removal is sought were rented for Residential    purposes and are described as follows:
Apt: ENTIRE HOUSE    in building known as    287 FRANKLIN AVE.
situated within the territorial jurisdiction of the Civil Court of the City of New York, County of    KINGS
6. Pursuant to said agreement there was due from respondent tenant(s), the sum of $15550.00    in rent
and additional rent as follows: LEGAL FEES $ 150.00

Arrears history:    Nov 10 $ 3850.00 / Oct 10 $ 3850.00 / Sep 10 $ 3850.00
Aug 10 $ 3850.00

The apartment is not subject to the New York Emergency Housing Rent Law or
the Rent Stabilization Law of 1969 as amended because it is in a two fami
house and became vacant after 04-01-53.

8. Said rent has been demanded    X personally    ☐ by written 3/5/10 day demand   from the tenants since same became due.
9. Respondents have defaulted in the payments thereof and continue in possession of premises without permission after said default.
10. The premises are    NOT    a multiple dwelling and pursuant to Housing Maintenance Code Article 41 there is a currently effective
registration statement on file with the Office of Code Enforcement which designates the managing agent named below, a natural person over
21 years of age, to be in control of and responsible for the maintenance and operation of the dwelling.    MDR#

**Agent**

WHEREFORE Petitioner requests a final judgment against respondent(s) for the rent demanded therein, awarding possession of the premises
to petitioner landlord, and directing the issuance of a warrant to remove respondent(s) from possession of the premises together with costs
and disbursements of this proceeding.   Dated:   11/11/10   RONALD HENRY LAND TRUST

STATE OF NEW YORK, COUNTY OF    KINGS    . The Undersigned affirms under penalty of perjury that he is one
of the Attorneys for the Petitioner; that he has read the foregoing petition and knows the contents thereof; that the same are true to his
own knowledge except as to matters stated to be upon information and belief; and as to those matters he believes them to be true.
The grounds of his belief as to matters not stated upon his knowledge are statements and/or records provided by the petitioner, its agents
and/or employees and contained in the file in the attorney's office.
This verification is made pursuant to the provisions of RPAPL 741.

11/11/10    Stuart I. Jacobs    **JA314**
File # 0063125  - Form # D338035

```
THE CIVIL COURT OF CITY OF NEW YORK
COUNTY OF KINGS : PART J, ROOM 502
------------------------------------x    Index Number
RONALD HENRY LAND TRUST,                 64297/11

                    Petitioner,          FTR: #465/11

        - against -                      Start
                                         12:47:25 p.m.
KURT FLETCHER,

                    Respondent.
------------------------------------x    Index Number
RONALD HENRY LAND TRUST,                 64298/11

                    Petitioner,          FTR: #466/11

        - against -                      End
                                         12:57:39 p.m.
AMANDA DIAZ,

                    Respondent.
------------------------------------x


                                         April 28, 2011

                                         141 Livingston Street
                                         Brooklyn, N.Y. 11201


        BEFORE:    HONORABLE GEORGE HEYMANN
                        Judge

    APPEARANCES:   STUART I. JACOBS, ESQ.
                   Attorney for Petitioner
                   1779 51st Street
                   Brooklyn, New York 11204-1511
                   (718) 436-3396

                   HYEM GOLDBERG
                   Property manager

                   JON SASMOR
                   WILLIE OSTERWEIL
                   Non-Parties
```

## AA Express Transcripts

45 Washington Street - Suite 156, Brooklyn, New York 11201
(888) 456-9716 ◆ (800) 860-5722 fax

**JA315**

Ronald Henry Land Trust v. Fletcher and Diaz - 4/28/11     2

1            THE COURT:  This is Index Number 64298 of 2011.
2     I'm sorry, I want to do the other one first.
3            64297 of 2011, Ronald Henry Land Trust against
4     Kurt Fletcher and then we have --
5            MR. JACOBS:  Stuart Jacobs for Ronald --
6            THE COURT:  One minute.
7            MR. JACOBS:  I'm sorry.
8            THE COURT:  64298 of 2011, Ronald Henry Land
9     Trust against Amanda Diaz.  Mr. Jacobs, you're appearing on
10    behalf of the Petitioners in both these matters --
11           MR. JACOBS:  Yes.
12           THE COURT:  Is that correct?
13           MR. JACOBS:  Yes.
14           THE COURT:  And they involve the same residence,
15    is that correct?
16           MR. JACOBS:  Yes.
17           THE COURT:  Or at least the same physical
18    building --
19           MR. JACOBS:  Yes.
20           THE COURT:  -- but different apartments.
21           MR. JACOBS:  Yes.
22           THE COURT:  Okay.  Your witness as to both cases
23    is Mr. Hyem Goldberg?
24           MR. GOLDBERG:  Yes.
25           THE COURT:  Is that correct?  Sir, raise your

Ronald Henry Land Trust v. Fletcher and Diaz - 4/28/11        3

1    right hand.  Do you swear or affirm to tell the truth in

2    this proceeding, yes?

3              MR. GOLDBERG:  Yes.

4              THE COURT:  Okay.  Thank you.  Now, who are you,

5    gentlemen?

6              MR. SASMOR:  Good afternoon.  I'm Jon Sasmor, and

7    I'm actually in possession in both of those two rooms.

8              MR. OSTERWEIL:  My name is Willie Osterweil and

9    I'm also in possession of these rooms.

10             MR. JACOBS:  If I may interject here?

11             THE COURT:  Go ahead, please.

12             MR. JACOBS:  This is a legal three-family house

13   that's being occupied by seven or nine individuals.  The

14   landlord started seven or nine different holdover

15   proceedings.  The two index numbers in this proceeding are

16   the lowest two index numbers.

17             Mr. Sasmor has his own case, which is on in 507

18   before Judge Finkelstein today.  He made a motion for

19   consolidation, which it was denied.  And Mr. Osterweil was

20   here two weeks ago in front of Judge Sikowitz.  He also

21   made the same motion, and that was denied as well.  They

22   both are not attorneys; they both do not have standing.

23   And whether or not Mr. Fletcher and Ms. Diaz gave Mr.

24   Sasmor the keys to their rooms is irrelevant because they

25   didn't surrender possession to the Petitioner.

Ronald Henry Land Trust v. Fletcher and Diaz - 4/28/11      4

1        So, I'm asking the Court that these individuals

2   have no standing with regard to these proceedings, they do

3   have their own individual cases.

4        THE COURT:  You have your own individual cases?

5        MR. SASMOR:  Not as to these premises, as to

6   other premises.

7        THE COURT:  Okay.  Well, you have nothing to do

8   with these cases.

9        MR. SASMOR:  We have -- in the building --

10        THE COURT:  Okay --

11        MR. SASMOR:  Mr. Goldberg is not the landlord.

12        THE COURT:  I need -- listen to me.  You have no

13   standing to sit in front of me and tell me anything about

14   Mr. Goldberg.

15        MR. SASMOR:  Right.

16        THE COURT:  Do you have a case against you?

17        MR. SASMOR:  No, not with respect to the premises

18   in these cases.

19        THE COURT:  I asked you a question.  Do you have

20   any case against you?

21        MR. SASMOR:  Yes, I do, Your Honor.

22        THE COURT:  Fine.  Then you deal with your issues

23   in your case.  You're not part of this case.

24        MR. SASMOR:  Your Honor, could I ask you a

25   question, please?

Ronald Henry Land Trust v. Fletcher and Diaz – 4/28/11      5

1    MR. JACOBS:  Let me just warn the Court.  Mr.

2  Sasmor is a pro se litigant.  He's knowledgeable of

3  preparing legal documents; does his own legal research.

4    THE COURT:  Yeah, I saw; I read it.

5    MR. JACOBS:  And he will ask you question after

6  question.  Judge Finkelstein had to cut him short.

7    THE COURT:  I'm going to ask you the question.

8    MR. SASMOR:  Okay.

9    THE COURT:  Do you have another case where you're

10  the Respondent in the case?

11    MR. SASMOR:  Yes, Your Honor.

12    THE COURT:  Then you deal with your issues in

13  that case.  You're not a party to this case.

14    MR. SASMOR:  Your Honor, I attempted to file a

15  motion to consolidate in that case --

16    THE COURT:  And they were denied.

17    MR. SASMOR:  And it was denied and said it had to

18  be filed in this case.  So, how am I to file a motion if I

19  can't file it in either case?

20    THE COURT:  You have it in another part.  I'm not

21  consolidating it.  Okay?  So, you deal with your case in

22  your part, and the same with you, okay?  And we'll go

23  forward.

24    MR. JACOBS:  Thank you.

25    THE COURT:  Okay.

Ronald Henry Land Trust v. Fletcher and Diaz - 4/28/11      6

1            MR. JACOBS:  I do have with me a certified copy

2    of the deed.

3            THE COURT:  All right.  And the certified copy of

4    the deed will be deemed marked Petitioner's 1 in evidence.

5            MR. JACOBS:  Again, I would ask that these two

6    gentlemen remove themselves from the table; they're not a

7    part of this proceeding.

8            THE COURT:  Okay.  You can step out.

9            MR. JACOBS:  They're here mainly perhaps to

10   intimidate someone, but they're not doing any --

11           THE COURT:  There's nobody being intimidated.

12           MR. JACOBS:  Okay, good.

13           THE COURT:  Certainly not the Court.

14           MR. JACOBS:  I understand.

15           THE COURT:  Have a seat.  Step back

16           MR. SASMOR:  Your Honor, thank you for your

17   consideration.

18           THE COURT:  You're welcome, sir.  Okay.  This

19   will be deemed marked Petitioner's 1 in evidence.

20           (Petitioner's Exhibit 1 in evidence.)

21           THE COURT:  Mr. Goldberg, I draw your attention

22   to the premises, 287 Franklin Avenue, Brooklyn, New York.

23   Are you familiar with that premises?

24           MR. GOLDBERG:  Yes.

25           THE COURT:  Okay.  And what is your relationship

Ronald Henry Land Trust v. Fletcher and Diaz – 4/28/11      7

1    to the Petitioner?

2              MR. GOLDBERG:  Managing the building.

3              THE COURT:  Okay.  Now, with respect to Index

4    Number ending in 97, involving Mr. Kurt Fletcher, what part

5    of this premises did he reside in, or does reside in?

6              MR. GOLDBERG:  Top floor in the back room, the

7    small room.

8              THE COURT:  Okay.  Did there come a time that you

9    wanted to terminate that tenancy?  Is he still in the

10   apartment?

11             MR. JACOBS:  We don't know.

12             THE COURT:  You don't know.  All right.

13             MR. JACOBS:  But he didn't give back the keys.

14             THE COURT:  Why are you answering?

15             MR. JACOBS:  Oh, I'm sorry.

16             MR. GOLDBERG:  I don't know if he's still in the

17   apartment.

18             THE COURT:  You don't know.  Okay.  So, did there

19   come a time that you, as the manager, chose to terminate

20   whatever landlord/tenant relationship you had?

21             MR. GOLDBERG:  Yes.

22             THE COURT:  Yes?  You've got to speak up, sir.

23             MR. GOLDBERG:  Yes.  Yes.

24             THE COURT:  Thank you.  Okay.

25             MR. JACOBS:  He's nervous.  He --

Ronald Henry Land Trust v. Fletcher and Diaz - 4/28/11     8

1    THE COURT:  Why are you nervous?  They're simple

2    questions.

3    MR. GOLDBERG:  Okay.

4    THE COURT:  All right.  So, did you have served

5    upon this individual a thirty day notice of termination?

6    MR. GOLDBERG:  Yes.

7    THE COURT:  Okay.  The Court will take judicial

8    notice that it was dated January 26, '11, terminating his

9    tenancy on February 28, and was served by conspicuous

10   service on January 28, 2011.

11   Now, since you're not aware of whether or not he

12   left, you had Mr. Jacobs serve a notice of petition and

13   petition to begin this case, is that correct?

14   MR. GOLDBERG:  Yes.  Yes.

15   THE COURT:  And that was served by conspicuous

16   service on April 6, 2011.

17   Now, with respect to Index Number 98 -- ending in

18   98 against Amanda Diaz in regards to the same premises, 287

19   Franklin Avenue, Brooklyn, New York?

20   MR. GOLDBERG:  Yes.

21   THE COURT:  Okay.  And what apartment are we

22   dealing with here now?

23   MR. GOLDBERG:  She's living on the top floor in

24   the big room.

25   THE COURT:  In the big room.

Ronald Henry Land Trust v. Fletcher and Diaz - 4/28/11    9

1          MR. GOLDBERG:  The master.

2          THE COURT:  Okay.  Now, did there come a time

3    that you wanted to terminate her tenancy?

4          MR. GOLDBERG:  Yes.

5          THE COURT:  Okay.  Did you also have served a

6    thirty notice upon her?

7          MR. GOLDBERG:  Yes.

8          THE COURT:  And the Court will take judicial

9    notice that that was dated January 26, 2011, terminating

10   tenancy on February 28, 2011.  And it was served

11   conspicuously on January 28, 2011.

12         MR. GOLDBERG:  Yes.

13         THE COURT:  Did there come a time that you

14   requested Mr. Jacobs to serve a notice of petition and

15   petition --

16         MR. GOLDBERG:  Yes.

17         THE COURT:  -- or draft one and have it served

18   upon her?

19         MR. GOLDBERG:  Yes.

20         THE COURT:  Okay.  And the Court will take

21   judicial notice that was done conspicuously on March 30,

22   2011.

23         Sir, going back to Index Number ending in 97 with

24   regard to Mr. Fletcher.  Subsequent to February 28, 2011,

25   did you ever seek or collect any rent from that individual

Ronald Henry Land Trust v. Fletcher and Diaz — 4/28/11   10

1    subsequent to that day?

2            MR. GOLDBERG:  No.

3            THE COURT:  Okay.  Do you know whether or not

4    that individual is in the military?

5            MR. GOLDBERG:  No.

6            THE COURT:  No, you don't know, or no, he's not?

7            MR. GOLDBERG:  He's not.

8            THE COURT:  And you know that because?

9            MR. GOLDBERG:  (No response.)

10            THE COURT:  Have you ever seen him in military

11   uniform?

12            MR. GOLDBERG:  No.

13            THE COURT:  Has he ever told you he's in the

14   military?

15            MR. GOLDBERG:  No.

16            THE COURT:  Okay.  All right.  Now, with respect

17   to the index number ending in 98, Amanda Diaz, subsequent

18   to February 28, did you ever collect any rent from her or

19   seek to collect it?

20            MR. GOLDBERG:  No.

21            THE COURT:  Okay.  And do you know whether or not

22   she's in the military?

23            MR. GOLDBERG:  She's not.

24            THE COURT:  Okay.  Because?

25            MR. GOLDBERG:  I never saw her in a uniform.

Ronald Henry Land Trust v. Fletcher and Diaz — 4/28/11   11

1          THE COURT:  Okay.

2          MR. GOLDBERG:  And she never told me.

3          THE COURT:  All right.  Now, as a result of these

4    two matters being heard by the Court, you have an

5    application, Mr. Jacobs --

6          MR. JACOBS:  Yes.

7          THE COURT:  -- as to each one.

8          MR. JACOBS:  It's an application for a judgment

9    possession with the issuance of a warrant both in Index

10   Number 64297 and 64298.

11         THE COURT:  Okay.  As to Number 64297, the Court

12   will enter a -- after inquest -- a final judgment of

13   possession, warrant and execution forthwith.  And with

14   respect to Index Number 64298, after inquest, the Court

15   will enter a final judgment of possession, warrant and

16   execution thereof, forthwith as well.

17         MR. JACOBS:  Thank you, Your Honor.

18         THE COURT:  Okay.  You're welcome.  Thank you.

19   Make sure you take back all your documents.

20         MR. JACOBS:  Yes, thank you.

21         THE COURT:  Okay.  Here you go.  You can write

22   them up.  All right.

23                    - o0o -

24

25

12

## C E R T I F I C A T E

      I, Rochelle V. Grant, certify that the foregoing transcript of the proceedings held the Honorable George Heymann on 4/28/11 in the Civil Court of the City of New York, County of Kings, in the matters of Ronald Henry Land Trust v. Kurt Fletcher, Index Number 64297/11 and Ronald Henry Land Trust v. Amanda Diaz, Index Number 64298/11, was prepared using the required transcription equipment and is a true and accurate record of the proceedings to the best of my ability.

Rochelle V. Grant

Date audio transcribed:

June 5, 2011

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS        PART
DECISION AND JUDGMENT

INDEX # 064300/2011
JUDGMENT SEQ # 001

RONALD HENRY LAND TRUST,

Petitioner(s)

**AGAINST**
OSTERWEIL, WILLIE

Respondent(s)

**Decision and judgment is** rendered based upon
a decision made after a hearing on a motion as follows:
Judgment of possession is granted in favor of:
RONALD HENRY LAND TRUST,
and against
OSTERWEIL, WILLIE
A counterclaim is granted in favor of the respondent in the amount of     $0.00
(which if not being entered separately is offset and reflected in the
total amount due, listed below.)

A money judgment is hereby granted, along with cost and disbursements
in the amount of     $0.00 in favor of:
RONALD HENRY LAND TRUST,
and against
OSTERWEIL, WILLIE

for a total amount of     $0.00

(Monthly use and occupancy is set at     $0.00 per month, as per order,
stipulation or decision in record.)

Warrant to issue forthwith        Execution_____ a/o

Date _7-26-11_

MARCIA J. SIKOWITZ
JUDGE, HOUSING COURT
Judge, Civil/Housing Court

Section 5020(c) of the Civil Practice Law and Rules requires that a satisfaction be filed with the
clerk when the judgment is satisfied.  Failure to do so subjects the judgment creditor to penalties.

=================================================================

**ENTRY OF JUDGMENT**

Carol Alt
CHIEF CLERK

Judgment entered in accordance with the above on _____.

Chief Clerk, Civil Court

Warrant issued to Marshal _Powell_   On _8-16-11_

8-11

CIV-LT-50(2006)                                                    Page 1 of 1

**JA327**

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS        PART    F
DECISION AND JUDGMENT

INDEX # 064301/2011
JUDGMENT SEQ # 001

RONALD HENRY LAND TRUST,

Petitioner(s)

**AGAINST**
SKUBUTYTE, VILIJA

Respondent(s)

**Decision and judgment is** rendered based upon
a decision made after a hearing on a motion as follows:
Judgment of possession is granted in favor of:
RONALD HENRY LAND TRUST,
and against
SKUBUTYTE, VILIJA
A counterclaim is granted in favor of the respondent in the amount of    $0.00
(which if not being entered separately is offset and reflected in the
total amount due, listed below.)

A money judgment is hereby granted, along with cost and disbursements
in the amount of    $0.00 in favor of:
RONALD HENRY LAND TRUST,
and against
SKUBUTYTE, VILIJA

for a total amount of    $0.00

(Monthly use and occupancy is set at    $0.00 per month, as per order,
stipulation or decision in record.)

Warrant to issue forthwith

Date 5|31|11

Execution    APO
ANTHONY J. FIORELLA, JR.
JUDGE, HOUSING PART

Judge, Civil/Housing Court

Section 5020(c) of the Civil Practice Law and Rules requires that a satisfaction be filed with the
clerk when the judgment is satisfied.  Failure to do so subjects the judgment creditor to penalties.

==================================================================

**ENTRY OF JUDGMENT**

CHIEF CLERK

Judgment entered in accordance with the above on    5|31|11

Chief Clerk, Civil Court

Warrant issued to Marshal    _Pierson_    On    JUN 14 2011
6-13                                    cks 6-30-11 APO

CIV-LT-50(2006)

Page 1 of 1

JA328

Case 1:11-cv-04645-KAM-JO   Document 56-22   Filed 07/27/12   Page 3 of 3 PageID #: 1439

## CIVIL COURT OF THE CITY OF NEW YORK
### COUNTY OF KINGS         PART _____ E
### DECISION AND JUDGMENT

INDEX # 064302/2011
JUDGMENT SEQ # 001

RONALD HENRY LAND TRUST,

Petitioner(s)

**AGAINST**
CAMPOS, LUIS

Respondent(s)

**Decision and judgment is** rendered based upon
a decision made after trial as follows:
Judgment of possession is granted in favor of:
RONALD HENRY LAND TRUST,
and against
CAMPOS, LUIS
A counterclaim is granted in favor of the respondent in the amount of    $0.00
(which if not being entered separately is offset and reflected in the
total amount due, listed below.)

A money judgment is hereby granted, along with cost and disbursements
in the amount of    $0.00 in favor of:
RONALD HENRY LAND TRUST,
and against
CAMPOS, LUIS

for a total amount of    $0.00

(Monthly use and occupancy is set at    $0.00 per month, as per order,
stipulation or decision in record.)

_____

_____

_____

Warrant to issue forthwith          Execution_____ APO _____

JUN 1 0 2011

Date _____          _____
Judge, Civil/Housing Court

MARCIA J. SIKOWITZ
JUDGE, HOUSING COURT

Section 5020(c) of the Civil Practice Law and Rules requires that a satisfaction be filed with the
clerk when the judgment is satisfied.  Failure to do so subjects the judgment creditor to penalties.
===========================================================

**ENTRY OF JUDGMENT**
JUN 1 0 2011

Judgment entered in accordance with the above on _____.

*Carol Alt*
CHIEF CLERK
Chief Clerk, Civil Court

Warrant issued to Marshal *Powell*          On    JUN 2 4 2011
6-23                                    *EW APO*

CIV-LT-50(2006)                                    Page 1 of 1

**JA329**



STEVEN POWELL

## Marshal City of New York

774 MANOR ROAD • STATEN ISLAND, NEW YORK 10314
(718) 494-7474 • FAX (718) 983-7446

October 11,2011

RE:      Index# 64300/11 Docket# 57407
         Ronald Henry Land Trust Vs. Osterweil

         Index# 64302/11 Docket# 56921
         Ronald Henry Land Trust Vs. Campos

         Index# 64301/11 Docket# 56842
         Ronald Henry Land Trust Vs. Skubytyte

Dear Stuart I. Jacobs,

     As per our conversation with your office, enclosed you will find the
three un-executed warrants: Index# 64300/11, 64302/11 & 64301/11. Due to
advice from counsel we were unable to execute the enclosed warrants.

                                         Thank You,

                                         Steven Powell

**JA330**

# LAW OFFICES OF STUART I. JACOBS

**1779 FIFTY-FIRST STREET**
**BROOKLYN, NEW YORK 11204**

TELEPHONE (718) 436-3396
FAX (718) 436-4138

October 7, 2011

RE:    **INDEX # 64300/11 DOCKET # 57407**
       **RONALD HENRY LAND TRUST V. OSTERWEIL**

       **INDEX # 64302/11 DOCKET # 56921**
       **RONALD HENRY LAND TRUST V. CAMPOS**

       **INDEX # 64301/11 DOCKET # 56842**
       **RONALD HENRY LAND TRUST V. SKUBYTYTE**

Dear Marshall Powell,

Since you have refused to execute the warrants of eviction on the above referenced matters please return the warrants to the court clerk.

Thank you,

Stuart I. Jacobs

**JA331**

## CIVIL COURT OF THE CITY OF NEW YORK
## COUNTY OF KINGS

Warrant Index Number
064300/2011/C001
FJ SEQ 001

### WARRANT OF EVICTION

TO THE SHERIFF OF THE CITY OF NEW YORK OR ANY MARSHAL, GREETINGS:
After a decision and the entry of a judgement of possession in favor of the
petitioner(s)

RONALD HENRY LAND TRUST,

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK, you are commanded TO
REMOVE THE RESPONDENT(S):

OSTERWEIL, WILLIE

AND ALL OTHER PERSONS from the premises

287 FRANKLIN AVE 2ND FL BROOKLYN, NY 11205
SECOND FLOOR, FRONT LARGE ROOM--ADD; A/K/A #3-R
and to put the petitioner(s) in full possession
This warrant may be executed as per stipulation.

WITNESS, HON. MARCIA J. SIKOWITZ
         Judge, Civil/Housing Court

*NOT USED*
*Steven Powell*
*City Marshal Badge #55*

Date 08/16/2011          Chief Clerk Carol Alt          _Carol Alt_
                                                        CHIEF CLERK

RETURN: Pursuant to the command of this warrant I have this day put the
petitioner(s) above named into full possession of the premises by
              Legal Possession____          Eviction____

                         Signature

Docket Number: 057407                 STEVEN POWELL
APS Control Number:                   774 MANOR ROAD -
                                      STATEN ISLAND, NY 10314
                                      (718) 494-7474

(To be signed in case of Legal Possession)
Possession of the premises with the contents intact is hereby acknowledged.
The petitioner accepts responsibility for all property on the premises,
releases the marshal from any liability, and agrees to hold the marshal
harmless from any action resulting from the execution of this warrant.

                         Petitioner, Agent, Attorney for Landlord

232011064300001

**JA332**

## CIVIL COURT OF THE CITY OF NEW YORK
### COUNTY OF KINGS

Warrant Index Number
064301/2011/001
FJ SEQ 001

## WARRANT OF EVICTION

**TO THE SHERIFF OF THE CITY OF NEW YORK OR ANY MARSHAL, GREETINGS:**
After a decision and the entry of a judgement of possession in favor of the petitioner(s)

RONALD HENRY LAND TRUST,

**IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK, you are commanded TO REMOVE THE RESPONDENT(S):**

SKUBUTYTE, VILIJA

**AND ALL OTHER PERSONS from the premises**

287 FRANKLIN AVE 5 BROOKLYN, NY 11205
ROOM #5 - SECOND STORY
and to put the petitioner(s) in full possession.
This warrant may be executed as per stipulation/

WITNESS, HON. ANTHONY J. FIORELLA
     Judge, Civil/Housing Court

*Carol Alt*
CHIEF CLERK

Date 06/14/2011          Chief Clerk Carol Alt _____

**RETURN:** Pursuant to the command of this warrant I have this day put the petitioner(s) above named into full possession of the premises by
          Legal Possession____          Eviction____

                    Signature    _____

Docket Number: 056842              **STEVEN POWELL**
APS Control Number:                774 MANOR ROAD -
                                   STATEN ISLAND, NY 10314
                                   (718) 494-7474

(To be signed in case of Legal Possession)
Possession of the premises with the contents intact is hereby acknowledged. The petitioner accepts responsibility for all property on the premises, releases the marshal from any liability, and agrees to hold the marshal harmless from any action resulting from the execution of this warrant.

                    _____
                    Petitioner, Agent, Attorney for Landlord

232011064301001

JA333

## CIVIL COURT OF THE CITY OF NEW YORK
### COUNTY OF KINGS

Warrant Index Number
064302/2011/001
FJ SEQ 001

## WARRANT OF EVICTION

**TO THE SHERIFF OF THE CITY OF NEW YORK OR ANY MARSHAL, GREETINGS:**
After a decision and the entry of a judgement of possession in favor of the petitioner(s)

RONALD HENRY LAND TRUST,

**IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK, you are commanded TO REMOVE THE RESPONDENT(S):**

CAMPOS, LUIS

**AND ALL OTHER PERSONS from the premises**

287 FRANKLIN AVE RM1 BROOKLYN, NY 11205
ROOM #1 ON THE 1ST STORY
and to put the petitioner(s) in full possession.
This warrant may be executed as per stipulation.

WITNESS, HON. MARCIA J. SIKOWITZ
    Judge, Civil/Housing Court

Date 06/24/2011          Chief Clerk Carol Alt        **CHIEF CLERK**

NOT USED
Steven Powell

---

**RETURN:** Pursuant to the command of this warrant I have this day put the petitioner(s) above named into full possession of the premises by
        Legal Possession_____        Eviction_____

                    Signature _____

Docket Number: 056921          STEVEN POWELL
APS Control Number:             774 MANOR ROAD -
                                STATEN ISLAND, NY 10314
                                (718) 494-7474

---

(To be signed in case of Legal Possession)
Possession of the premises with the contents intact is hereby acknowledged.
The petitioner accepts responsibility for all property on the premises,
releases the marshal from any liability, and agrees to hold the marshal
harmless from any action resulting from the execution of this warrant.

                            Petitioner, Agent, Attorney for Landlord

232011064302001

**JA334**

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS

INDEX #_____

------------------------------------------X

RONALD HENRY LAND TRUST
                    PETITIONER(landlord)

                                                    NOTICE OF PETITION
        VS.                                         HOLD OVER

KURT FLETCHER              RESPONDENT
287 FRANKLIN AVE
TOP FL BACK SMALL ROOM
BROOKLYN, NY 11205         ADDRESS


            RESPONDENT(UNDERTENANT)

------------------------------------------X

        To the Respondent(s) above named and described, in possession of the
premises hereinafter described or claiming possession thereof:

        PLEASE TAKE NOTICE that a hearing at which you must appear will be held
at the Civil Court of the City of New York, Housing    Part to be held at
141 Livingston St                                      J -Part 502
County of   Kings   on   April 13, 2011 at 2:00 p.m. on the annexed Petition
of Ronald Henry Land Trust  which prays for a final judgment of eviction,
awarding to the Petitioner the possession of premises designated and described as
follows:

the small   room on the Top   Floor Back Apartment   at 287 Frankling Ave
  City  of New York, County of Kings  other and further relief as is demanded in
the Petition, which you must answer.

        TAKE NOTICE also that demand is made in the petition herein for judgment
against you, the Respondent, for the sum of        with interest thereon from
         plus all use and occupancy and legal fees due at trial.

        TAKE NOTICE that your answer may set forth any defense or counterclaim you
may have against the Petitioner.

        TAKE NOTICE also that if you shall fail at such time to interpose and
establish any defense that you may have to the allegations of the Petition, you
may be precluded from asserting such defense or the claim on which it is based in
any other proceeding or action.

        TAKE NOTICE also that your answer may be made at the time of hearing
specified above unless this Notice of Petition is served upon you on or before
at least eight days prior to court date  in which event you must answer at least
3 days before the Petition is noticed to be heard, either orally before the clerk
of the court at his or her office or in writing by serving a copy thereof upon
the undersigned attorney for the Petitioner, and by filing the original of such
written answer with proof of service thereof in the office of the clerk at least
3 days before
the time the Petition is noticed to be heard; in addition thereto, you must
appear before the court at the time and place herein above set forth for the
hearing.

        TAKE NOTICE that your failure to appear and answer may result in final
judgment by default for the Petitioner in the amount demanded in the Petition.

Dated: March 9, 2011                                   CHIEF CLERK

    STUART I. JACOBS                  CAROL ALT      MAR 24 2011
    Attorney for Petitioner           Chief Clerk    KINGS COUNTY
                                                     CIVIL COURT
        LAW OFFICES OF STUART I. JACOBS
            1779 51 STREET
            BROOKLYN, N.Y. 11204
            718-436-3396                                        JA335

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS
-------------------------------------------X

                          INDEX # 64298

RONALD HENRY LAND TRUST
                PETITIONER(landlord)

                             NOTICE OF PETITION
      VS.                             HOLD OVER

AMANDA DIAZ          RESPONDENT
287 FRANKLIN AVE
TOP FL BACK LARGE ROOM      ADDRESS
BROOKLYN, NY 11205

           RESPONDENT(UNDERTENANT)
-------------------------------------------X

      To the Respondent(s) above named and described, in possession of the premises hereinafter described or claiming possession thereof:

      PLEASE TAKE NOTICE that a hearing at which you must appear will be held at the Civil Court of the City of New York, Housing J Part to be held at 141 Livingston St County of Kings on April 5 / 2011 at 2:00 p.m. on the annexed Petition of Ronald Henry Land Trust which prays for a final judgment of eviction, awarding to the Petitioner the possession of premises designated and described as follows:

the Large room on the Top Floor Back Room at 287 Franklin Ave City of New York, County of Kings other and further relief as is demanded in the Petition, which you must answer.

      TAKE NOTICE also that demand is made in the petition herein for judgment against you, the Respondent, for the sum of with interest thereon from plus all use and occupancy and legal fees due at trial.

      TAKE NOTICE that your answer may set forth any defense or counterclaim you may have against the Petitioner.

      TAKE NOTICE also that if you shall fail at such time to interpose and establish any defense that you may have to the allegations of the Petition, you may be precluded from asserting such defense or the claim on which it is based in any other proceeding or action.

      TAKE NOTICE also that your answer may be made at the time of hearing specified above unless this Notice of Petition is served upon you on or before at least eight days prior to court date in which event you must answer at least 3 days before the Petition is noticed to be heard, either orally before the clerk of the court at his or her office or in writing by serving a copy thereof upon the undersigned attorney for the Petitioner, and by filing the original of such written answer with proof of service thereof in the office of the clerk at least 3 days before the time the Petition is noticed to be heard; in addition thereto, you must appear before the court at the time and place herein above set forth for the hearing.

      TAKE NOTICE that your failure to appear and answer may result in final judgment by default for the Petitioner in the amount demanded in the Petition.

Dated:March 9, 2011

   STUART I. JACOBS                 CAROL ALT
   Attorney for Petitioner           Chief Clerk

LAW OFFICES OF STUART I. JACOBS
1779 51 STREET
BROOKLYN, N.Y. 11204
713-478-3396

**JA336**

*CIVIL COURT OF THE CITY OF NEW YORK*
*COUNTY OF   KINGS*

INDEX #_____

----------------------------------------X

**RONALD HENRY LAND TRUST**

          PETITIONER(landlord)

                                        **NOTICE OF PETITION**
          VS.                           **HOLD OVER**

ALEX ROSENBAUM          **RESPONDENT**
287 FRANKLIN AVE
2ND FL BACK LARGE ROOM
BROOKLYN, NY 11205      **ADDRESS**

          RESPONDENT(UNDERTENANT)

----------------------------------------X

          To the Respondent(s) above named and described, in possession of the
premises hereinafter described or claiming possession thereof:

          **PLEASE TAKE NOTICE** that a hearing at which you must appear will be held
at the Civil Court of the City of New York,   Housing Part to be held at
141 Livingston St
County of   Kings   on April 19 , 2011 at 2:00 p.m. on the annexed Petition of    E - RM 509
Ronald Henry Land Trust  which prays for a final judgment of eviction, awarding
to the Petitioner the possession of premises designated and described as follows:

the large  room on the second  Floor back Apartment NO#  at 287 Franklin Ave
    City  of New York, County of Kings  other and further relief as is demanded
in the Petition, which you must answer.

          **TAKE NOTICE** also that demand is made in the petition herein for judgment
against you, the Respondent, for the sum of        with interest thereon from
          **plus all use and occupancy and legal fees due at trial.**

          **TAKE NOTICE** that your answer may set forth any defense or counterclaim you
may have against the Petitioner.

          **TAKE NOTICE** also that if you shall fail at such time to interpose and
establish any defense that you may have to the allegations of the Petition, you
may be precluded from asserting such defense or the claim on which it is based in
any other proceeding or action.

          **TAKE NOTICE** also that your answer may be made at the time of hearing
specified above unless this Notice of Petition is served upon you on or before
at least eight days prior to court date  in which event you must answer at least
3 days before the Petition is noticed to be heard, either orally before the clerk
of the court at his or her office or in writing by serving a copy thereof upon
the undersigned attorney for the Petitioner, and by filing the original of such
written answer with proof of service thereof in the office of the clerk at least
3 days before
the time the Petition is noticed to be heard; in addition thereto, you must
appear before the court at the time and place herein above set forth for the
hearing.

          **TAKE NOTICE** that your failure to appear and answer may result in final
judgment by default for the Petitioner in the amount demanded in the Petition.

Dated: **March 9, 2011**

                                        CHIEF CLERK

     STUART I. JACOBS               CAROL ALT          MAR 2 4 2011
     Attorney for Petitioner        Chief Clerk        KINGS COUNTY
                                                       CIVIL COURT
          LAW OFFICES OF STUART I. JACOBS                        JA337
               1775 E1 STREET
          BROOKLYN, N.Y. 11204
               718-453-3398

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS                                                  INDEX # 64300
-------------------------------------------X
 RONALD HENRY LAND TRUST

                        PETITIONER(landlord)

                                                        NOTICE OF PETITION
              VS.                                       HOLD OVER

WILLIE OSTERWEIL           RESPONDENT
287 FRANKLIN AVE
2ND FL FRONT LARGE ROOM        ADDRESS
BROOKLYN, NY 11205

                  RESPONDENT(UNDERTENANT)

-------------------------------------------X

        To the Respondent(s) above named and described, in possession of the
premises hereinafter described or claiming possession thereof:

        PLEASE TAKE NOTICE that a hearing at which you must appear will be held
at the Civil Court of the City of New York, Housing Part to be held at
141 Livingston St
County of  Kings  on April 8 , 2011 at 9:30  a.m. on the annexed Petition of
Ronald Henry Land Trust which prays for a final judgment of eviction, awarding
to the Petitioner the possession of premises designated and described as follows:

the  Large  rooms on the second  Floor Front Room  at 287 Franklin Ave
   City of New York, County of  Kings   other and further relief as is
demanded in the Petition, which you must answer.


        TAKE NOTICE also that demand is made in the petition herein for judgment
against you, the Respondent, for the sum of      with interest thereon from
          plus all use and occupancy and legal fees due at trial.

        TAKE NOTICE that your answer may set forth any defense or counterclaim you
may have against the Petitioner.

        TAKE NOTICE also that if you shall fail at such time to interpose and
establish any defense that you may have to the allegations of the Petition, you
may be precluded from asserting such defense or the claim on which it is based in
any other proceeding or action.

        TAKE NOTICE also that your answer may be made at the time of hearing
specified above unless this Notice of Petition is served upon you on or before
at least eight days   prior to court date  in which event you must answer at
least 3 days before the Petition is noticed to be heard, either orally before the
clerk of the court at his or her office or in writing by serving a copy thereof
upon the undersigned attorney for the Petitioner, and by filing the original of
such written answer with proof of service thereof in the office of the clerk at
least 3 days before
the time the Petition is noticed to be heard; in addition thereto, you must
appear before the court at the time and place herein above set forth for the
hearing.

        TAKE NOTICE that your failure to appear and answer may result in final
judgment by default for the Petitioner in the amount demanded in the Petition.

Dated:March 9, 2011

    STUART I. JACOBS                         CAROL ALT
    Attorney for Petitioner                 Chief Clerk

LAW OFFICES OF STUART I. JACOBS
     1779 51 STREET
   BROOKLYN, N.Y. 11204
     718-436-3396                                          JA338

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF   KINGS

INDEX # __64301/11__

------------------------------------------X
RONALD HENRY LAND TRUST
                    PETITIONER(landlord)

                                                    NOTICE OF PETITION
                                                    HOLD OVER
         VS.

    VILIJA SKUBUTYTE      RESPONDENT
    287 FRANKLIN AVE
    ROOM #5-SECOND STORY
    BROOKLYN, NY 11205      ADDRESS


              RESPONDENT(UNDERTENANT)

------------------------------------------X

         To the Respondent(s) above named and described, in possession of the
premises hereinafter described or claiming possession thereof:

         PLEASE TAKE NOTICE that a hearing at which you must appear will be held
at the Civil Court of the City of New York,   Housing   Part to be held at
141 Livingston St PtS  April 11  2011 at 9:30 a.m.  2PM  on the annexed Petition of
County of Kings   on        /     2011 at          on the annexed Petition of
         which prays for a final judgment of eviction, awarding to the
Petitioner the possession of premises designated and described as follows:

the   Room #5 on the second Story Floor    at 287 Franklin Ave  City  of New
York, County of Kings  other and further relief as is demanded in the Petition,
which you must answer.

         TAKE NOTICE also that demand is made in the petition herein for judgment
against you, the Respondent, for the sum of    with interest thereon from
         plus all use and occupancy and legal fees due at trial.

         TAKE NOTICE that your answer may set forth any defense or counterclaim you
may have against the Petitioner.

         TAKE NOTICE also that if you shall fail at such time to interpose and
establish any defense that you may have to the allegations of the Petition, you
may be precluded from asserting such defense or the claim on which it is based in
any other proceeding or action.

         TAKE NOTICE also that your answer may be made at the time of hearing
specified above unless this Notice of Petition is served upon you on or before
at least eight days  prior to court date  in which event you must answer at least
3 days before the Petition is noticed to be heard, either orally before the clerk
of the court at his or her office or in writing by serving a copy thereof upon
the undersigned attorney for the Petitioner, and by filing the original of such
written answer with proof of service thereof in the office of the clerk at least
3 days before
the time the Petition is noticed to be heard; in addition thereto, you must
appear before the court at the time and place herein above set forth for the
hearing.

         TAKE NOTICE that your failure to appear and answer may result in final
judgment by default for the Petitioner in the amount demanded in the Petition.

Dated:March 9, 2011

    __STUART I. JACOBS__              ___CAROL ALT___
    Attorney for Petitioner              Chief Clerk


    LAW OFFICES OF STUART I. JACOBS
         1779 51 STREET
       BROOKLYN, N.Y. 11204
         718-436-3396

                                                    JA339

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS

INDEX # 64302/11

------------------------------------------X
RONALD HENRY LAND TRUST
                    PETITIONER(landlord)

                                        NOTICE OF PETITION
                                        HOLD OVER
        VS.

LUIS CAMPOS              RESPONDENT
287 FRANKLIN AVE
ROOM #1-1ST STORY
BROOKLYN, NY 11205      ADDRESS


              RESPONDENT(UNDERTENANT)

------------------------------------------X

        To the Respondent(s) above named and described, in possession of the
premises hereinafter described or claiming possession thereof:

        PLEASE TAKE NOTICE that a hearing at which you must appear will be held
at the Civil Court of the City of New York,   Housing  Part to be held at
141 Livingston St                                        E  Rm 509
County of Kings  on April  17, 2011 at 2:00  p.m. on the annexed Petition of
Ronald Henry Land Trust   which prays for a final judgment of eviction, awarding
to the Petitioner the possession of premises designated and described as follows:

Room #1  on the First Story  Floor    at 287 Franklin Ave   City  of New York,
County of   Kings    other and further relief as is demanded in the Petition,
which you must answer.

        TAKE NOTICE also that demand is made in the petition herein for judgment
against you, the Respondent, for the sum of          with interest thereon from
          plus all use and occupancy and legal fees due at trial.

        TAKE NOTICE that your answer may set forth any defense or counterclaim you
may have against the Petitioner.

        TAKE NOTICE also that if you shall fail at such time to interpose and
establish any defense that you may have to the allegations of the Petition, you
may be precluded from asserting such defense or the claim on which it is based in
any other proceeding or action.

        TAKE NOTICE also that your answer may be made at the time of hearing
specified above unless this Notice of Petition is served upon you on or before
at least eight days   prior to court date  in which event you must answer at
least 3 days before the Petition is noticed to be heard, either orally before the
clerk of the court at his or her office or in writing by serving a copy thereof
upon the undersigned attorney for the Petitioner, and by filing the original of
such written answer with proof of service thereof in the office of the clerk at
least 3 days before
the time the Petition is noticed to be heard; in addition thereto, you must
appear before the court at the time and place herein above set forth for the
hearing.

        TAKE NOTICE that your failure to appear and answer may result in final
judgment by default for the Petitioner in the amount demanded in the Petition.

Dated:March 9, 2011

        STUART I. JACOBS                    CAROL ALT
        Attorney for Petitioner            Chief Clerk
        LAW OFFICES OF STUART I. JACOBS
              1779 61 STREET
          BROOKLYN, N.Y. 11204
            718-228-3396

JA340

**AFFIDAVIT OF CONSPICUOUS SERVICE**

STATE OF NEW YORK       )                    CASE # RONALD HENRY LAND TRUST.
COUNTY OF KINGS          )

    YISROEL A. SIMON, BEING DULY SWORN DEPOSES AND SAYS AS FOLLOWS:
THAT I AM NOT A PARTY TO THE WITHIN ACTION; AM A LICENSED
PROCESS SERVER OVER 18 YEARS OF AGE AND RESIDE IN NEW YORK CITY.

DEPONENT WAS UNABLE TO SERVE **KURT FLETCHER** TENANT(S)/OCCUPANT(S) BY
PERSONAL DELIVERY

AT **287 FRANKLIN AVENUE**, APT. **TOP FLOOR BACK SMALL ROOM**,
BROOKLYN, N.Y. 11205

ON JANUARY 28TH 2011, AT 9:03AM DEPONENT SERVED THE ATTACHED

NOTICE OF TERMINATION

[X] BY AFFIXING ONE TRUE COPY FOR EACH TENANT/OCCUPANT UPON A
CONSPICUOUS PART, TO WIT-THE ENTRANCE DOOR.

DEPONENT WAS UNABLE TO FIND A PERSON OF SUITABLE AGE AND DISCRETION
WILLING TO RECEIVE THE SAME AT THIS TIME OR DURING THE PRIOR ATTEMPT
MADE ON JANUARY 27TH 2011 AT 6:09PM.

SERVICE ON THE RESPONDENTS WAS COMPLETED ON JANUARY 28TH 2011, WHEN
DEPONENT CAUSED TRUE COPIES OF THE FOREGOING NOTICE TO BE FORWARDED TO
THE RESPONDENTS AT THE PREMISES, BY CERTIFIED MAIL, AND BY ORDINARY
FIRST CLASS REGULAR MAIL, BY GIVING THE SAME IN POSTPAID PROPERLY
ADDRESSED ENVELOPES TO A POSTAL EMPLOYEE AT THE UNITED STATES POST
OFFICE IN THE STATE OF NEW YORK, FOR PROCESSING UNDER THE EXCLUSIVE
CARE AND CUSTODY OF THE UNITED STATES POSTAL SERVICE.

                                          YISROEL A. SIMON
                                          LICENSE #1161183

SWORN TO BEFORE ME THIS
28TH DAY OF JANUARY, 2011

NOTARY PUBLIC

        ESTHER M. OLITSKY
    Notary Public State of New York
         No. OL6156414
     Qualified in Kings County
Commission Expires November 27, 2014

**JA341**

**AFFIDAVIT OF CONSPICUOUS SERVICE**

STATE OF NEW YORK        )              CASE # RONALD HENRY LAND TRUST.
COUNTY OF KINGS          )              L&T # 064297/11K

    YISROEL A. SIMON, BEING DULY SWORN DEPOSES AND SAYS AS FOLLOWS:
THAT I AM NOT A PARTY TO THE WITHIN ACTION; AM A LICENSED
PROCESS SERVER OVER 18 YEARS OF AGE AND RESIDE IN NEW YORK CITY.

DEPONENT WAS UNABLE TO SERVE KURT FLETCHER TENANT(S)/OCCUPANT(S) BY
PERSONAL DELIVERY

AT 287 FRANKLIN AVENUE, APT. TOP FLOOR BACK SMALL ROOM,
BROOKLYN, N.Y. 11205

ON APRIL 6TH 2011 AT 9:21AM DEPONENT SERVED THE ATTACHED

            NOTICE OF PETITION & PETITION HOLDOVER

[X] BY AFFIXING ONE TRUE COPY FOR EACH TENANT/OCCUPANT UPON A
CONSPICUOUS PART, TO WIT-THE ENTRANCE DOOR.

DEPONENT WAS UNABLE TO FIND A PERSON OF SUITABLE AGE AND DISCRETION
WILLING TO RECEIVE THE SAME AT THIS TIME OR DURING THE PRIOR ATTEMPT
MADE ON APRIL 5TH 2011 AT 6:02PM.

SERVICE ON THE RESPONDENTS WAS COMPLETED ON APRIL 7TH 2011, WHEN
DEPONENT CAUSED TRUE COPIES OF THE FOREGOING PLEADINGS TO BE FORWARDED
TO THE RESPONDENTS AT THE PREMISES, BY CERTIFIED MAIL, AND BY ORDINARY
FIRST CLASS REGULAR MAIL, BY GIVING THE SAME IN POSTPAID PROPERLY
ADDRESSED ENVELOPES TO A POSTAL EMPLOYEE AT THE UNITED STATES POST
OFFICE IN THE STATE OF NEW YORK, FOR PROCESSING UNDER THE EXCLUSIVE
CARE AND CUSTODY OF THE UNITED STATES POSTAL SERVICE.

                                    _____
                                    YISROEL A. SIMON
                                    LICENSE #1161183

SWORN TO BEFORE ME THIS
7TH DAY OF APRIL, 2011

_____
NOTARY PUBLIC

        ESTHER M. OLITSKY
    Notary Public State of New York
        No. OL6156414
      Qualified in Kings County
   Commission Expires November 27, 2014

                                                    **JA342**

## AFFIDAVIT OF CONSPICUOUS SERVICE

STATE OF NEW YORK      )              CASE # RONALD HENRY LAND TRUST.
COUNTY OF KINGS        )

    YISROEL A. SIMON, BEING DULY SWORN DEPOSES AND SAYS AS FOLLOWS:
THAT I AM NOT A PARTY TO THE WITHIN ACTION; AM A LICENSED
PROCESS SERVER OVER 18 YEARS OF AGE AND RESIDE IN NEW YORK CITY.

DEPONENT WAS UNABLE TO SERVE **AMANDA DIAZ** TENANT(S)/OCCUPANT(S) BY
PERSONAL DELIVERY

AT 287 FRANKLIN AVENUE, APT. TOP FLOOR BACK LARGE ROOM,
BROOKLYN, N.Y. 11205

ON JANUARY 28TH 2011, AT 9:01AM DEPONENT SERVED THE ATTACHED

### NOTICE OF TERMINATION

[X] BY AFFIXING ONE TRUE COPY FOR EACH TENANT/OCCUPANT UPON A
CONSPICUOUS PART, TO WIT-THE ENTRANCE DOOR.

DEPONENT WAS UNABLE TO FIND A PERSON OF SUITABLE AGE AND DISCRETION
WILLING TO RECEIVE THE SAME AT THIS TIME OR DURING THE PRIOR ATTEMPT
MADE ON JANUARY 27TH 2011 AT 6:07PM.

SERVICE ON THE RESPONDENTS WAS COMPLETED ON JANUARY 28TH 2011, WHEN
DEPONENT CAUSED TRUE COPIES OF THE FOREGOING NOTICE TO BE FORWARDED TO
THE RESPONDENTS AT THE PREMISES, BY CERTIFIED MAIL, AND BY ORDINARY
FIRST CLASS REGULAR MAIL, BY GIVING THE SAME IN POSTPAID PROPERLY
ADDRESSED ENVELOPES TO A POSTAL EMPLOYEE AT THE UNITED STATES POST
OFFICE IN THE STATE OF NEW YORK, FOR PROCESSING UNDER THE EXCLUSIVE
CARE AND CUSTODY OF THE UNITED STATES POSTAL SERVICE.

                                      YISROEL A. SIMON
                                      LICENSE #1161183

SWORN TO BEFORE ME THIS
28TH DAY OF JANUARY, 2011

NOTARY PUBLIC

        ESTHER M. OLITSKY
   Notary Public State of New York
        No. OL6156414
    Qualified in Kings County
Commission Expires November 27, 2014

**JA343**

## AFFIDAVIT OF CONSPICUOUS SERVICE

| | | |
|---|---|---|
| STATE OF NEW YORK | ) | CASE # RONALD HENRY LAND TRUST. |
| COUNTY OF KINGS | ) | L&T # 064298/11K |

YISROEL A. SIMON, BEING DULY SWORN DEPOSES AND SAYS AS FOLLOWS: THAT I AM NOT A PARTY TO THE WITHIN ACTION; AM A LICENSED PROCESS SERVER OVER 18 YEARS OF AGE AND RESIDE IN NEW YORK CITY.

DEPONENT WAS UNABLE TO SERVE AMANDA DIAZ TENANT(S)/OCCUPANT(S) BY PERSONAL DELIVERY

AT 287 FRANKLIN AVENUE, APT. TOP FLOOR BACK LARGE ROOM, BROOKLYN, N.Y. 11205

ON MARCH 30TH 2011 AT 9:03AM DEPONENT SERVED THE ATTACHED

### NOTICE OF PETITION & PETITION HOLDOVER

[X] BY AFFIXING ONE TRUE COPY FOR EACH TENANT/OCCUPANT UPON A CONSPICUOUS PART, TO WIT-THE ENTRANCE DOOR.

DEPONENT WAS UNABLE TO FIND A PERSON OF SUITABLE AGE AND DISCRETION WILLING TO RECEIVE THE SAME AT THIS TIME OR DURING THE PRIOR ATTEMPT MADE ON MARCH 29TH 2011 AT 9:49PM.

SERVICE ON THE RESPONDENTS WAS COMPLETED ON MARCH 30TH 2011, WHEN DEPONENT CAUSED TRUE COPIES OF THE FOREGOING PLEADINGS TO BE FORWARDED TO THE RESPONDENTS AT THE PREMISES, BY CERTIFIED MAIL, AND BY ORDINARY FIRST CLASS REGULAR MAIL, BY GIVING THE SAME IN POSTPAID PROPERLY ADDRESSED ENVELOPES TO A POSTAL EMPLOYEE AT THE UNITED STATES POST OFFICE IN THE STATE OF NEW YORK, FOR PROCESSING UNDER THE EXCLUSIVE CARE AND CUSTODY OF THE UNITED STATES POSTAL SERVICE.

YISROEL A. SIMON
LICENSE #1161183

SWORN TO BEFORE ME THIS
30TH DAY OF MARCH, 2011

NOTARY PUBLIC

ESTHER M. OLITSKY
Notary Public State of New York
No. OL6156414
Qualified in Kings County
Commission Expires November 27, 2014

**JA344**

## AFFIDAVIT OF CONSPICUOUS SERVICE

STATE OF NEW YORK          )                    CASE # RONALD HENRY LAND TRUST.
COUNTY OF KINGS            )

       YISROEL A. SIMON, BEING DULY SWORN DEPOSES AND SAYS AS FOLLOWS:
THAT I AM NOT A PARTY TO THE WITHIN ACTION; AM A LICENSED
PROCESS SERVER OVER 18 YEARS OF AGE AND RESIDE IN NEW YORK CITY.

DEPONENT WAS UNABLE TO SERVE **ALEX ROSENBAUM** TENANT(S)/OCCUPANT(S)
BY PERSONAL DELIVERY

AT 287 FRANKLIN AVENUE, APT. 2ND FLOOR BACK LARGE ROOM,
BROOKLYN, N.Y. 11205

ON JANUARY 28TH 2011, AT 9:05AM DEPONENT SERVED THE ATTACHED

### NOTICE OF TERMINATION

[X] BY AFFIXING ONE TRUE COPY FOR EACH TENANT/OCCUPANT UPON A
CONSPICUOUS PART, TO WIT-THE ENTRANCE DOOR.

DEPONENT WAS UNABLE TO FIND A PERSON OF SUITABLE AGE AND DISCRETION
WILLING TO RECEIVE THE SAME AT THIS TIME OR DURING THE PRIOR ATTEMPT
MADE ON JANUARY 27TH 2011 AT 6:15PM.

SERVICE ON THE RESPONDENTS WAS COMPLETED ON JANUARY 28TH 2011, WHEN
DEPONENT CAUSED TRUE COPIES OF THE FOREGOING NOTICE TO BE FORWARDED TO
THE RESPONDENTS AT THE PREMISES, BY CERTIFIED MAIL, AND BY ORDINARY
FIRST CLASS REGULAR MAIL, BY GIVING THE SAME IN POSTPAID PROPERLY
ADDRESSED ENVELOPES TO A POSTAL EMPLOYEE AT THE UNITED STATES POST
OFFICE IN THE STATE OF NEW YORK, FOR PROCESSING UNDER THE EXCLUSIVE
CARE AND CUSTODY OF THE UNITED STATES POSTAL SERVICE.

                                 YISROEL A. SIMON
                                 LICENSE #1161183

SWORN TO BEFORE ME THIS
28TH DAY OF JANUARY, 2011

NOTARY PUBLIC

      ESTHER M. OLITSKY
  Notary Public State of New York
       No. OL6156414
   Qualified in Kings County
Commission Expires November 27, 2014

**JA345**

### AFFIDAVIT OF CONSPICUOUS SERVICE

STATE OF NEW YORK          )          CASE # RONALD HENRY LAND TRUST.
COUNTY OF KINGS            )                L&T # 064303/11K

YISROEL A. SIMON, BEING DULY SWORN DEPOSES AND SAYS AS FOLLOWS:
THAT I AM NOT A PARTY TO THE WITHIN ACTION; AM A LICENSED
PROCESS SERVER OVER 18 YEARS OF AGE AND RESIDE IN NEW YORK CITY.

DEPONENT WAS UNABLE TO SERVE ALEX ROSENBAUM TENANT(S)/OCCUPANT(S)
BY PERSONAL DELIVERY

AT 287 FRANKLIN AVENUE, APT. 2ND FLOOR BACK LARGE ROOM,
BROOKLYN, N.Y. 11205

ON APRIL 6TH 2011 AT 9:23AM DEPONENT SERVED THE ATTACHED

NOTICE OF PETITION & PETITION HOLDOVER

[X] BY AFFIXING ONE TRUE COPY FOR EACH TENANT/OCCUPANT UPON A
CONSPICUOUS PART, TO WIT-THE ENTRANCE DOOR.

DEPONENT WAS UNABLE TO FIND A PERSON OF SUITABLE AGE AND DISCRETION
WILLING TO RECEIVE THE SAME AT THIS TIME OR DURING THE PRIOR ATTEMPT
MADE ON APRIL 5TH 2011 AT 6:04PM.

SERVICE ON THE RESPONDENTS WAS COMPLETED ON APRIL 7TH 2011, WHEN
DEPONENT CAUSED TRUE COPIES OF THE FOREGOING PLEADINGS TO BE FORWARDED
TO THE RESPONDENTS AT THE PREMISES, BY CERTIFIED MAIL, AND BY ORDINARY
FIRST CLASS REGULAR MAIL, BY GIVING THE SAME IN POSTPAID PROPERLY
ADDRESSED ENVELOPES TO A POSTAL EMPLOYEE AT THE UNITED STATES POST
OFFICE IN THE STATE OF NEW YORK, FOR PROCESSING UNDER THE EXCLUSIVE
CARE AND CUSTODY OF THE UNITED STATES POSTAL SERVICE.

YISROEL A. SIMON
LICENSE #1161183

SWORN TO BEFORE ME THIS
7TH DAY OF APRIL, 2011

NOTARY PUBLIC

ESTHER M. OLITSKY
Notary Public State of New York
No. OL6156414
Qualified in Kings County
Commission Expires November 27, 2014

**JA346**

## AFFIDAVIT OF PERSONAL SERVICE

STATE OF NEW YORK      )                 CASE # RONALD HENRY LAND TRUST.
COUNTY OF KINGS        )

YISROEL A. SIMON, BEING DULY SWORN DEPOSES AND SAYS AS FOLLOWS:
THAT I AM NOT A PARTY TO THE WITHIN ACTION; AM A LICENSED
PROCESS SERVER OVER 18 YEARS OF AGE AND RESIDE IN NEW YORK CITY.

DEPONENT SERVED WILLIE OSTERWEIL TENANT(S)/OCCUPANT(S) BY PERSONAL
DELIVERY

AT 287 FRANKLIN AVENUE, APT. 2ND FLOOR FRONT LARGE ROOM,
BROOKLYN, N.Y. 11205

ON JANUARY 27TH 2011 AT 6:13PM DEPONENT SERVED THE ATTACHED

### NOTICE OF TERMINATION

BY DELIVERING TO AND LEAVING A COPY\COPIES THEREOF TO SAID
TENANT(S)/OCCUPANT(S) DEPONENT KNEW THE PERSON SO SERVED TO BE THE
PERSON(S) DESCRIBED AS SAID TENANT(S)/OCCUPANT(S) THEREIN.

DEPONENT DESCRIBES THE INDIVIDUAL AS FOLLOWS:
SEX: MALE
SKIN COLOR: WHITE
HAIR COLOR: BLACK
AGE: 21-35
HEIGHT: 5'4"-5'8"
WEIGHT: 161-200
ADDITIONAL FEATURES:

NAME OF SAID INDIVIDUAL SERVED: WILLIE OSTERWEIL

YISROEL A. SIMON
LICENSE #1161183

SWORN TO BEFORE ME THIS
28TH DAY OF JANUARY, 2011

NOTARY PUBLIC

ESTHER M. OLITSKY
Notary Public State of New York
No. OL6156414
Qualified in Kings County
Commission Expires November 27, 2014

**JA347**

AFFIDAVIT OF PERSONAL SERVICE

STATE OF NEW YORK        )          CASE # RONALD HENRY LAND TRUST.
COUNTY OF KINGS          )                L&T # 064300/11K

    YISROEL A. SIMON, BEING DULY SWORN DEPOSES AND SAYS AS FOLLOWS:
THAT I AM NOT A PARTY TO THE WITHIN ACTION; AM A LICENSED
PROCESS SERVER OVER 18 YEARS OF AGE AND RESIDE IN NEW YORK CITY.

DEPONENT SERVED WILLIE OSTERWEIL TENANT(S)/OCCUPANT(S) BY PERSONAL
DELIVERY

AT 287 FRANKLIN AVENUE, APT. 2ND FLOOR FRONT LARGE ROOM,
BROOKLYN, N.Y. 11205

ON MARCH 29TH 2011 AT 9:51PM DEPONENT SERVED THE ATTACHED

NOTICE OF PETITION & PETITION HOLDOVER

BY DELIVERING TO AND LEAVING A COPY\COPIES THEREOF TO SAID
TENANT(S)/OCCUPANT(S) DEPONENT KNEW THE PERSON SO SERVED TO BE THE
PERSON(S) DESCRIBED AS SAID TENANT(S)/OCCUPANT(S) THEREIN.

DEPONENT DESCRIBES THE INDIVIDUAL AS FOLLOWS:
SEX: MALE
SKIN COLOR: WHITE
HAIR COLOR: BLACK
AGE: 21-35
HEIGHT: 5'4"-5'8"
WEIGHT: 161-200
ADDITIONAL FEATURES:

NAME OF SAID INDIVIDUAL SERVED: WILLIE OSTERWEIL

 

                                                                 YISROEL A. SIMON
                                                                 LICENSE #1161183

SWORN TO BEFORE ME THIS
30TH DAY OF MARCH, 2011

NOTARY PUBLIC

      ESTHER M. OLITSKY
   Notary Public State of New York
       No. OL6156414
    Qualified in Kings County
Commission Expires November 27, 2014

JA348

## AFFIDAVIT OF CONSPICUOUS SERVICE

STATE OF NEW YORK    )            CASE # RONALD HENRY LAND TRUST.
COUNTY OF KINGS    )

    *YISROEL A. SIMON, BEING DULY SWORN DEPOSES AND SAYS AS FOLLOWS:
THAT I AM NOT A PARTY TO THE WITHIN ACTION; AM A LICENSED
PROCESS SERVER OVER 18 YEARS OF AGE AND RESIDE IN NEW YORK CITY.*

*DEPONENT WAS UNABLE TO SERVE VILIJA SKUBUTYTE
TENANT(S)/OCCUPANT(S) BY PERSONAL DELIVERY*

*AT 287 FRANKLIN AVENUE, APT. ROOM 5, 2ND STORY, BROOKLYN,
N.Y. 11205*

*ON JANUARY 28TH 2011, AT 9:07AM DEPONENT SERVED THE ATTACHED*

*NOTICE OF TERMINATION*

*[X] BY AFFIXING ONE TRUE COPY FOR EACH TENANT/OCCUPANT UPON A
CONSPICUOUS PART, TO WIT-THE ENTRANCE DOOR.*

*DEPONENT WAS UNABLE TO FIND A PERSON OF SUITABLE AGE AND DISCRETION
WILLING TO RECEIVE THE SAME AT THIS TIME OR DURING THE PRIOR ATTEMPT
MADE ON JANUARY 27TH 2011 AT 6:17PM.*

*SERVICE ON THE RESPONDENTS WAS COMPLETED ON JANUARY 28TH 2011, WHEN
DEPONENT CAUSED TRUE COPIES OF THE FOREGOING NOTICE TO BE FORWARDED TO
THE RESPONDENTS AT THE PREMISES, BY CERTIFIED MAIL, AND BY ORDINARY
FIRST CLASS REGULAR MAIL, BY GIVING THE SAME IN POSTPAID PROPERLY
ADDRESSED ENVELOPES TO A POSTAL EMPLOYEE AT THE UNITED STATES POST
OFFICE IN THE STATE OF NEW YORK, FOR PROCESSING UNDER THE EXCLUSIVE
CARE AND CUSTODY OF THE UNITED STATES POSTAL SERVICE.*

                                            **YISROEL A. SIMON**
                                            **LICENSE #1161183**

*SWORN TO BEFORE ME THIS
28TH DAY OF JANUARY, 2011*

**NOTARY PUBLIC**

    ESTHER M. OLITSKY
  Notary Public State of New York
        No. OL61156414
    Qualified in Kings County
Commission Expires November 27, 2014

JA349

*AFFIDAVIT OF CONSPICUOUS SERVICE*

*STATE OF NEW YORK*       )                    *CASE # RONALD HENRY LAND TRUST.*
*COUNTY OF KINGS*          )                        *L&T # 064301/11K*

*YISROEL A. SIMON, BEING DULY SWORN DEPOSES AND SAYS AS FOLLOWS:
THAT I AM NOT A PARTY TO THE WITHIN ACTION; AM A LICENSED
PROCESS SERVER OVER 18 YEARS OF AGE AND RESIDE IN NEW YORK CITY.*

*DEPONENT WAS UNABLE TO SERVE VILIJA SKUBUTYTE
TENANT(S)/OCCUPANT(S) BY PERSONAL DELIVERY*

*AT 287 FRANKLIN AVENUE, APT. ROOM #5, 2ND STORY, BROOKLYN,
N.Y. 11205*

*ON APRIL 6TH 2011 AT 9:25AM DEPONENT SERVED THE ATTACHED*

*NOTICE OF PETITION & PETITION HOLDOVER*

*[X] BY AFFIXING ONE TRUE COPY FOR EACH TENANT/OCCUPANT UPON A
CONSPICUOUS PART, TO WIT-THE ENTRANCE DOOR.*

*DEPONENT WAS UNABLE TO FIND A PERSON OF SUITABLE AGE AND DISCRETION
WILLING TO RECEIVE THE SAME AT THIS TIME OR DURING THE PRIOR ATTEMPT
MADE ON APRIL 5TH 2011 AT 6:06PM.*

*SERVICE ON THE RESPONDENTS WAS COMPLETED ON APRIL 7TH 2011, WHEN
DEPONENT CAUSED TRUE COPIES OF THE FOREGOING PLEADINGS TO BE FORWARDED
TO THE RESPONDENTS AT THE PREMISES, BY CERTIFIED MAIL, AND BY ORDINARY
FIRST CLASS REGULAR MAIL, BY GIVING THE SAME IN POSTPAID PROPERLY
ADDRESSED ENVELOPES TO A POSTAL EMPLOYEE AT THE UNITED STATES POST
OFFICE IN THE STATE OF NEW YORK, FOR PROCESSING UNDER THE EXCLUSIVE
CARE AND CUSTODY OF THE UNITED STATES POSTAL SERVICE.*

*YISROEL A. SIMON
LICENSE #1161183*

*SWORN TO BEFORE ME THIS
7TH DAY OF APRIL, 2011*

*NOTARY PUBLIC*

*ESTHER M. OLITSKY
Notary Public State of New York
No. 01OL6156414
Qualified in Kings County
Commission Expires November 27, 2014*

**JA350**

## AFFIDAVIT OF CONSPICUOUS SERVICE

STATE OF NEW YORK        )            CASE # RONALD HENRY LAND TRUST.
COUNTY OF KINGS          )

YISROEL A. SIMON, BEING DULY SWORN DEPOSES AND SAYS AS FOLLOWS:
THAT I AM NOT A PARTY TO THE WITHIN ACTION; AM A LICENSED
PROCESS SERVER OVER 18 YEARS OF AGE AND RESIDE IN NEW YORK CITY.

DEPONENT WAS UNABLE TO SERVE LUIS CAMPOS TENANT(S)/OCCUPANT(S) BY
PERSONAL DELIVERY

AT 287 FRANKLIN AVENUE, APT. ROOM 1, 1ST STORY, BROOKLYN,
N.Y. 11205

ON JANUARY 28TH 2011, AT 9:09AM DEPONENT SERVED THE ATTACHED

### NOTICE OF TERMINATION

[X] BY AFFIXING ONE TRUE COPY FOR EACH TENANT/OCCUPANT UPON A
CONSPICUOUS PART, TO WIT-THE ENTRANCE DOOR.

DEPONENT WAS UNABLE TO FIND A PERSON OF SUITABLE AGE AND DISCRETION
WILLING TO RECEIVE THE SAME AT THIS TIME OR DURING THE PRIOR ATTEMPT
MADE ON JANUARY 27TH 2011 AT 6:19PM.

SERVICE ON THE RESPONDENTS WAS COMPLETED ON JANUARY 28TH 2011, WHEN
DEPONENT CAUSED TRUE COPIES OF THE FOREGOING NOTICE TO BE FORWARDED TO
THE RESPONDENTS AT THE PREMISES, BY CERTIFIED MAIL, AND BY ORDINARY
FIRST CLASS REGULAR MAIL, BY GIVING THE SAME IN POSTPAID PROPERLY
ADDRESSED ENVELOPES TO A POSTAL EMPLOYEE AT THE UNITED STATES POST
OFFICE IN THE STATE OF NEW YORK, FOR PROCESSING UNDER THE EXCLUSIVE
CARE AND CUSTODY OF THE UNITED STATES POSTAL SERVICE.

YISROEL A. SIMON
LICENSE #1161183

SWORN TO BEFORE ME THIS
28TH DAY OF JANUARY, 2011

NOTARY PUBLIC

ESTHER M. OLITSKY
Notary Public State of New York
No. OL6156414
Qualified in Kings County
Commission Expires November 27, 2014

**JA351**

### AFFIDAVIT OF CONSPICUOUS SERVICE

STATE OF NEW YORK          )          CASE # RONALD HENRY LAND TRUST.
COUNTY OF KINGS            )                L&T # 064302/11K

YISROEL A. SIMON, BEING DULY SWORN DEPOSES AND SAYS AS FOLLOWS:
THAT I AM NOT A PARTY TO THE WITHIN ACTION; AM A LICENSED
PROCESS SERVER OVER 18 YEARS OF AGE AND RESIDE IN NEW YORK CITY.

DEPONENT WAS UNABLE TO SERVE LUIS CAMPOS TENANT(S)/OCCUPANT(S) BY
PERSONAL DELIVERY

AT 287 FRANKLIN AVENUE, APT. ROOM #1, 1ST STORY, BROOKLYN,
N.Y. 11205

ON APRIL 6TH 2011 AT 9:27AM DEPONENT SERVED THE ATTACHED

### NOTICE OF PETITION & PETITION HOLDOVER

[X] BY AFFIXING ONE TRUE COPY FOR EACH TENANT/OCCUPANT UPON A
CONSPICUOUS PART, TO WIT-THE ENTRANCE DOOR.

DEPONENT WAS UNABLE TO FIND A PERSON OF SUITABLE AGE AND DISCRETION
WILLING TO RECEIVE THE SAME AT THIS TIME OR DURING THE PRIOR ATTEMPT
MADE ON APRIL 5TH 2011 AT 6:08PM.

SERVICE ON THE RESPONDENTS WAS COMPLETED ON APRIL 7TH 2011, WHEN
DEPONENT CAUSED TRUE COPIES OF THE FOREGOING PLEADINGS TO BE FORWARDED
TO THE RESPONDENTS AT THE PREMISES, BY CERTIFIED MAIL, AND BY ORDINARY
FIRST CLASS REGULAR MAIL, BY GIVING THE SAME IN POSTPAID PROPERLY
ADDRESSED ENVELOPES TO A POSTAL EMPLOYEE AT THE UNITED STATES POST
OFFICE IN THE STATE OF NEW YORK, FOR PROCESSING UNDER THE EXCLUSIVE
CARE AND CUSTODY OF THE UNITED STATES POSTAL SERVICE.

YISROEL A. SIMON
LICENSE #1161183

SWORN TO BEFORE ME THIS
7TH DAY OF APRIL, 2011

NOTARY PUBLIC

ESTHER M. OLITSKY
Notary Public State of New York
No. OL6156414
Qualified in Kings County
Commission Expires November 27, 2014

**JA352**

Jon Sasmor
287 Franklin Avenue
Brooklyn, NY 11205

July 12, 2011

Steven Powell, City Marshal
774 Manor Road
Staten Island, NY 10314

via fax to (718) 983-7446, First Class Mail, and Certified Mail No. 7010 2780 0000 5833 6945

Re: *Ronald Henry Land Trust v Alex Rosenbaum*, Your Docket No. 56784
Civil Court of the City of New York, County of Kings, Housing Part, L&T No. 64303/11,

Dear Mr. Powell:

I was informed by a phone call to your office staff yesterday that you are scheduled on Wednesday, July 13 to execute the eviction warrant in the above referenced case. I write to bring to your attention that the named respondent, Mr. Rosenbaum, moved out in August 2010 and took with him at that time all of his personal property so that nothing belonging to Mr. Rosenbaum remains. Lisa Lin and I currently are the tenants occupying the subject premises, which is the "second floor back large room" at 287 Franklin Avenue, Brooklyn. We also occupy several other rooms in the building.

We write to advise you that, although Lisa and I would follow your instructions as to execution of the warrant, we respectfully disagree with and object to our eviction based on the warrant against Mr. Rosenbaum because we were not named parties in the underlying housing court case, and especially because the answer we filed as the actual occupants was rejected by the housing court, which denied us standing. We have not had any due process opportunity to defend our rights as tenants as to the subject premises.

Lisa and I respectfully draw your attention to the following:

(1) Section 1-2 of the NYC Marshals' Handbook

(2) Letter from Attorney for Petitioner Stuart I. Jacobs to you dated June 2, 2011, a copy of which is in the Court file with your Warrant Requisition, stating "The Landlord requests that any judgement against 'John and/or Jane Doe' be severed."

**JA353**

(3) The following Court decisions: *Teacher's College v Wolterding*, 75 Misc 2d 465, 470-1 [1973] [eviction of subtenant not made a party would be wrongful and could subject landlord's attorney to liability]; *Marluted Realty v Decker*, 46 Misc 2d 736, 739-40 [1965] [eviction of tenant not made a party to the proceeding was wrongful].

(4) "Persons Removable," 3 Rasch's Landlord and Tenant § 46:10 at 198-9 [4th Ed] ["Notwithstanding the provision of the Real Property Actions and Proceedings Law that the executing officer shall remove 'all persons,' it has been held that this section does not justify the removal of an occupant of property involved in a summary proceeding who should have been, but was not, made a party to the proceeding."]; *see also* "Additional Parties" 2 Rasch's § 38:28, et seq. at 595.

We think execution of the warrant against us might be adequate basis for the filing of a federal civil rights case. We are in part sending this letter so we can assert that there is no qualified immunity defense. Because the only named Respondent, Mr. Rosenbaum, is long gone, perhaps any execution of the warrant involving at least your entry into the common areas of 287 Franklin Avenue, to which we have rights of possession, might give rise to a civil rights violation. We respectfully object to your entry into 287 Franklin Avenue for any purpose other than evicting Mr. Rosenbaum, which is completely unnecessary because neither he nor any of his possessions is here.

Additionally, Lisa and I respectfully object to your Notice of Eviction for two reasons. First, although we received a copy of your Notice of Eviction that was sent from your office by First Class Mail to "Alex Rosenbaum and John and Jane Doe," this first class mail service was the only service, and first class mail service, standing alone, is insufficient. Second, we object to the inclusion of "John and Jane Doe" in the Notice of Eviction, as these parties were not named in the Warrant Requisition in the Court's file, and appear to exceed the authorization granted by the warrant.

So that we can be available, Lisa and I would appreciate it if you would let us know what time on Wednesday you plan to execute the warrant. Please feel free to call me at (917) 318-2619.

Thank you for your consideration.

Sincerely yours,

Jon Sasmor

**JA354**

Jon Sasmor
287 Franklin Avenue
Brooklyn, NY 11205

July 18, 2011

Steven Powell, City Marshal
774 Manor Road
Staten Island, NY 10314

via hand delivery, First Class Mail, and Certified Mail No. 7010 2780 0000 5832 2047

Re: *Ronald Henry Land Trust v Alex Rosenbaum*, Your Docket No. 56784
Civil Court of the City of New York, County of Kings, Housing Part, L&T No. 64303/11;
*Ronald Henry Land Trust v Kurt Fletcher*, Your Docket No. 56507
Civil Court of the City of New York, County of Kings, Housing Part, L&T No. 64297/11;
and *Ronald Henry Land Trust v Amanda Diaz*, Your Docket No. 56508
Civil Court of the City of New York, County of Kings, Housing Part, L&T No. 64298/11

Dear Mr. Powell:

As discussed in my letter dated July 12, 2011, the eviction of tenants not named in a judgment
is unlawful. Though you evicted Lisa Lin and myself from our bedroom on July 13, we did
not have any due process opportunity to defend our rights as tenants as to the subject premises.
Your position as marshal does not entitle you to remove tenants from the real property they
possess without a judgment against them. Your actions were unlawful. Your actions violated
our Federal and State rights.

When I called your office on July 12 at 2:23 p.m., Ebony said that your office had received my
letter dated July 12. On July 13 around 11:28 a.m., when you arrived at 287 Franklin Avenue,
you also said that you had received my letter. Upon your arrival, I showed you the letter from
Attorney for Petitioner Stuart I. Jacobs to you dated June 2, 2011, a copy of which is in the
Court file with your Warrant Requisition. Attorney Jacobs' letter states "The Landlord requests
that any judgement [*sic*] against 'John and/or Jane Doe' be severed." I also read aloud to you
Chapter IV, Section 1-2 of the NYC Marshals' Handbook, which states, "Generally, all persons
in possession of real property who derive their right or title to possession through the respondent
(tenant) must be named in the papers. If a sub-tenant is in possession, he must be joined in
the proceedings. If he is not named, he may not be evicted, even though the prime tenant may
be evicted. Generally, the children, spouse, or guests of a tenant need not be named. Where a

**JA355**

landlord does not know the name of the tenant, or subtenants, he may proceed against them by designating such tenant "John or Jane Doe.""

You were on notice that no John or Jane Doe had been named in this case, and that it would be unlawful to evict a tenant or subtenant who was not named in the judgment. Notwithstanding your having been on notice, you proceeded anyway, under the color of state law, to deprive Lisa Lin and myself of our Federal rights by evicting us without due process, using the judgment against former tenant Alex Rosenbaum.

At the time of the eviction, you produced a copy of the Order of the Appellate Term dismissing Lisa Lin's and my appeal in the *Alex Rosenbaum* case. As I stated in my July 12 letter, the answer that Lisa Lin and I filed as the actual occupants was rejected by the housing court, which denied us standing. The Appellate Term dismissed our appeal on its own motion, as a result of which we still have been granted no standing to present defenses and no due process to have a hearing on our rights. The Appellate Term Order neither expands the judgment of the housing court to be binding as to our rights, nor authorizes or issues any other judgment against us, nor provides any warrant or other authority by which to evict us.

Willie Osterweil, Lisa Lin, myself, and other tenants of 287 Franklin Avenue are concerned that your unlawful behavior may repeat. I was informed by a phone call to your office staff Friday that you are scheduled on Wednesday, July 20 to execute the eviction warrants in the above referenced *Kurt Fletcher* and *Amanda Diaz* cases. Mr. Fletcher and Ms. Diaz moved out of 287 Franklin Avenue, respectively, in September 2010 and January 2011, and no personal property belonging to either Mr. Fletcher or Ms. Diaz remains. Willie Osterweil, myself, and other tenants of the building currently occupy the subject premises, which are the "top floor back large room" and "top floor back small room" at 287 Franklin Avenue, Brooklyn. We use those rooms for storage.

In both the *Kurt Fletcher* and the *Amanda Diaz* cases, Willie Osterweil and I filed special appearances at the housing court as the actual occupants, but our appearances were rejected and we were denied standing to speak. The Appellate Term dismissed our appeals, again indicating that as parties not named in the caption we were not aggrieved. Judgment was found by inquest against the former tenants, *but not against us*. We have not had any due process opportunity to defend our rights as tenants as to the subject premises.

Like the *Alex Rosenbaum* warrant, it would be unlawful for you to remove us or our possessions using the warrants from the *Kurt Fletcher* and the *Amanda Diaz* cases. We were not named in the housing court cases and cannot be deprived of life, liberty or property without due process of law. We write to advise you that, although Willie, Lisa, and I, and the other tenants would

follow your instructions as to execution of the warrants, we respectfully disagree with and object to our eviction based on the warrants against Mr. Fletcher and Ms. Diaz because we have not had any due process opportunity to defend our rights as tenants as to the subject premises, and because it is clearly established law that tenants may not be evicted unless named in a judgment in a summary proceeding.

Willie, Lisa, the other tenants, and I respectfully draw your attention to the following, which were also mentioned in my July 12 letter:

(1) Chapter IV, Section 1-2 of the NYC Marshals' Handbook

(2) Letters from Attorney for Petitioner Stuart I. Jacobs to you, which are in the Court files with your Warrant Requisition in each of the three captioned cases, each stating "The Landlord requests that any judgement [*sic*] against 'John and/or Jane Doe' be severed."

(3) The following Court decisions: *Teacher's College v Wolterding*, 75 Misc 2d 465, 470-1 [1973] [eviction of subtenant not made a party would be wrongful and could subject landlord's attorney to liability]; *Marluted Realty v Decker*, 46 Misc 2d 736, 739-40 [1965] [eviction of tenant not made a party to the proceeding was wrongful].

(4) "Persons Removable," 3 Rasch's Landlord and Tenant § 46:10 at 198-9 [4th Ed] ["Notwithstanding the provision of the Real Property Actions and Proceedings Law that the executing officer shall remove 'all persons,' it has been held that this section does not justify the removal of an occupant of property involved in a summary proceeding who should have been, but was not, made a party to the proceeding."]; *see also* "Additional Parties" 2 Rasch's § 38:28, et seq. at 595.

You were on notice that your July 13 conduct was unlawful, and we respectfully advise you not to repeat your unlawful conduct in violation of our clearly established Federal and State rights. We continue to consider filing a federal civil rights case under 42 U.S.C. § 1983 and/or making other claims against you. We in part sent the July 12 letter and are in part sending this letter to bolster our assertion that you have no qualified immunity defense. The above authorities and others "clearly establish" the law prohibiting your evicting persons not named on a warrant who did not have due process. *See Pearson v. Callahan*, 129 S. Ct. 808 (2009) (conduct that violates "clearly established" law does not result in qualified immunity).

Because the only named Respondents in the upcoming evictions, Mr. Fletcher and Ms. Diaz, are long gone, perhaps any execution of the warrant involving at least your entry into the common

**JA357**

areas of 287 Franklin Avenue, to which we have rights of possession, might give rise to another civil rights violation. We respectfully object to your entry into 287 Franklin Avenue for any purpose other than evicting Mr. Fletcher and Ms. Diaz, which is completely unnecessary because neither of them nor any of their possessions is here.

Additionally, Willie, Lisa, the other tenants, and I respectfully object to your Notices of Eviction for two reasons. First, although we received a copies of your Notices of Eviction that were sent from your office by First Class Mail to "Kurt Fletcher and John and Jane Doe," and to "Amanda Diaz and John and Jane Doe," this first class mail service was the only service, and first class mail service, standing alone, is insufficient. Second, we object to the inclusion of "John and Jane Doe" in the Notice of Eviction, as these parties were not named in the Warrant Requisition in the Court's file, and appear to exceed the authorization granted by the warrant.

This letter intentionally does not address other possible civil rights violations that occurred on July 13, including, but not limited to, your refusal to produce your badge upon request, your refusal to produce the warrant upon request, and your unlawful attempt to vacate the entire building by calling the Fire Department. We intend to address those issues at a later time.

So that we can be available, Willie, Lisa, and I would appreciate it if you would let us know what time on Wednesday you plan to execute the warrant. Please feel free to call me at (917) 318-2619.

Thank you for your consideration.

Sincerely yours,

Jon Sasmor

**JA358**

Jon Sasmor
287 Franklin Avenue
Brooklyn, NY 11205

October 3, 2011

Steven Powell, City Marshal
774 Manor Road
Staten Island, NY 10314

via fax to (718) 983-7446, First Class Mail, and Certified Mail No. 7010 2780 0000 5833 7102

Re: *Ronald Henry Land Trust v Willie Osterweil*, Your Docket No. 57407
Civil Court of the City of New York, County of Kings, Housing Part, L&T No. 64300/11
and *Ronald Henry Land Trust v Luis Campos*, Your Docket No. 56921
Civil Court of the City of New York, County of Kings, Housing Part, L&T No. 64302/11

Dear Mr. Powell:

I have filed a lawsuit against you, *Sasmor v. Powell, et al.*, No. 11-CV-4645 (KAM) (JO), United
States District Court for the Eastern District of New York. I intend to serve the summons and
complaint upon you shortly and to move at the federal court for a preliminary injunction. I
am also sending you today as a separate fax a courtesy copy of the summons and complaint.
Would you agree to postpone the above referenced evictions to provide Judge Matsumoto an
opportunity to hold a hearing on the intended preliminary injunction motion?

Please direct your attention to clear deficiencies in the papers for the two above referenced cases.
The Notices of Eviction were addressed to "Room #1, 1st Story" and "2Fl Frnt Large Room,"
but were delivered to two rooms on the same floor. Surely one or the other must be mistaken
because they describe rooms on two different floors, but were delivered to two rooms on the
same floor. The warrants violate clearly established law of the Fourth Amendment requiring
particularity of warrants and also violate other relevant law.

The notices of eviction for the above two cases were delivered on September 20, 2011 when a
process server, Chaim Goldberger, Abraham Schneebalg, and another man drilled out the locks
on the front door of the building, pried open the barrel bolts with a crowbar, and shattered pieces
of the doorframe. Without permission and without a warrant, the men entered and delivered the
notices of eviction. The process server asked Mr. Goldberger to which rooms the notices should
be delivered and then delivered the notices to those rooms without consulting the premises

**JA359**

description on the notices themselves. The warrantless entry and search would not have been permissible to seize criminal evidence, nor to make a felony arrest, and certainly does not qualify as valid service of process.

As discussed in my letters dated July 12, 2011 and July 18, 2011, the eviction of tenants not named in a judgment is unconstitutional. Though you evicted me and other tenants from rooms of our homes on July 13 and July 20, we did not have any due process opportunity to defend our rights as tenants as to the subject premises. At both the previous eviction dates, you refused my repeated requests to see your badge and the warrants. You conducted warrantless searches and seizures in violation of the Fourth and Fourteenth Amendments to the United States Constitution and other relevant law.

You are on notice that the Notices of Eviction for the two above referenced cases are defective because they do not contain sufficient particularity to identify any premises and because they were improperly served. Myself and other persons who were given a lease for the entire building in April 2010 continue to occupy the various rooms of 287 Franklin Avenue and have not been given an opportunity to be heard regarding the rooms of the two above referenced cases, whereas the named tenants in the above referenced cases no longer live in the building. You are also on notice that evictions without showing a warrant and evictions upon warrants lacking sufficient particularity to identify the premises are unconstitutional, illegal, and in complete absence of all jurisdiction.

Although the other tenants and I will follow your instructions as to execution of the warrants because you are a state officer, we respectfully disagree with and object to our evictions. We are in part sending this letter and the previous July 12 and July 18 letters to bolster our assertion that you have no qualified immunity defense. The evictions you have conducted violated clearly established law, and we request that you abstain from further unconstitutional, illegal actions.

This letter intentionally does not address other legal matters to be addressed in the lawsuit or at a later time. Please feel free to be in touch with me by phone at (917) 318-2619.

Thank you for your consideration.

Sincerely yours,

Jon Sasmor

**JA360**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JON SASMOR, | REPLY |
| | DECLARATION OF |
| Plaintiff, | JON SASMOR |
| - against - | |
| | No. 11-CV-4645 (KAM) (JO) |
| STEVEN POWELL, et al., | |
| Defendants | |

Jon Sasmor hereby declares as follows under penalty of perjury:

1.      I am the Plaintiff in this case.  I am of age and competent to testify.  I make this declaration in further support of my motion for preliminary injunction.

2.      Further evictions remain imminent as described in paragraphs 54 through 60 of my Declaration dated March 22, 2012.  The judgments against Willie Osterweil, Vilija Skubutyte, and Luis Campos remain outstanding and not yet executed.

3.      This paragraph serves as an update to paragraph 34 of the Declaration of Jon Sasmor dated March 22, 2012.  In the Housing Court case to which Plaintiff is a party, *Ronald Henry Land Trust v. Sasmor and Lin*, No. 78902/11, Civil Court of the City of New York, County of Kings, Housing Part, the Housing Court has reserved decision after trial.  Plaintiff presented twenty-four (24) affirmative defenses at a five-day bench trial that concluded on March 29, 2012.  Post-trial submissions were due April 16, 2012.  As of July 26, 2012, Plaintiff has not received any decision and the Housing Court Clerk's office told Plaintiff over the phone on July 26, 2012 that no decision yet had been filed.

4.      EXHIBIT A is a copy of *Bedford Apts. Co. v. Coutts*, 28 Hous. Ct. Rptr. 738A, N.Y.L.J., Nov. 30, 2000, p. 29, col. 6 (N.Y. App. Term 2000), as photocopied by Plaintiff from the Housing Court Reporter, published by Treiman Publications, available at the law library of the Supreme Court of the State of New York, County of Kings.

1

**JA361**

5.    EXHIBIT B is a printout of a deed related to the *Bedford Apts.* case.  EXHIBIT B was obtained by Plaintiff by searching the ACRIS property records database of the New York City Department of Finance, located at http://a836-acris.nyc.gov/Scripts/DocSearch.dll/PName, for documents related to "Bedford Apts."  The attached deed, EXHIBIT B, related to 166-174 West 86th Street, Manhattan Block 1216, Lot 60, indicates that such property was conveyed to Chill Rosen d/b/a Bedford Apartments Company, by a deed recorded April 3, 1972, Reel 235, page 1869.  Thus, EXHIBIT B shows that Bedford Apartments Co. is a trade name and *not* a trust.

6.    EXHIBIT C contains printouts of email correspondence between Plaintiff and Mr. Litwack and between Plaintiff and Mr. Stern about the positions on Plaintiff's motion for preliminary injunction, respectively, of Defendant Powell and of the Trust Defendants.

7.    EXHIBIT D contains a copy of a letter from Richard W. Davis, Executive Director, Apt. House Council of Conn. to Conn. Judiciary Comm. re H.B. 7588, AAC Enforcement of Summary Process Judgements [sic], dated Apr. 1, 1987, as published in Conn. Joint Standing Committee Hearings, Judiciary, Part 6, at 2028 (1987 Sess.).  Plaintiff obtained a legislative history of Conn. Gen. Stat. § 47a-26h from the Connecticut State Library by mail, and EXHIBIT D was included in those materials sent by the Connecticut State Library.  EXHIBIT D shows that Connecticut's measures to provide notice and opportunity to be heard to all occupants before any eviction were adopted after "a recent federal court overturned a local eviction proceeding for possible lack of 'due process.'"  Plaintiff has not been able to locate the referenced federal court decision.

I declare under penalty of perjury that the foregoing information is true.

Dated: July 27, 2012
Brooklyn, New York

Respectfully submitted,

/s/

Jon Sasmor
Plaintiff, *Pro Se*
287 Franklin Avenue
Brooklyn, NY 11205
(917) 318-2619
jonathan.sasmor@gmail.com

2

**JA362**

**28 HCR 738**  No. 11, November 2000

**Digest notes:**
*>201 Restoration*
Questions of fact held to preclude restoration on motion of tenant who reasserts claim to apartment after his girlfriend left it nearly empty.
**Commentary:**
*There is at present no Editor's Commentary for this decision.*
**History:**
*No previous HCR report indicated.*

**Decision**

Orders dated November 12, 1999 and January 21, 2000 (Laurie L. Lau, J.) unanimously affirmed, with $10 costs.

Petitioner-appellant brought this illegal lockout proceeding against the landlord, seeking restoration pursuant to RPAPL §713(10) as well as treble damages pursuant to RPAPL §853. The record raises triable issues as to whether appellant abandoned the subject premises. According to the affidavits of numerous tenants in the building, appellant has been out of possession of the apartment for six years, having assigned his lease rights to his girlfriend under a putative "roommate agreement." The latter vacated the apartment in 1999 leaving the premises virtually empty. Since there are obvious questions of fact as to whether appellant vacated the subject apartment and whether he was in occupancy at the time of the alleged lockout, Civil Court properly denied appellant's motion for summary restoration (*see, Nieves v. 331 East 109th Street Corp.*, 112 AD2d 59, 61).

This constitutes the decision and order of the court.

>>>>>A<<<<<

**Bedford Apts. Co. v. Coutts,** 28 HCR 738A, NYLJ 11/30/00, 29:6, HCR Serial #00012226 (AT1 McCooe: Davis, Suarez)
**NOTES:**
**Index topics:**
Agents; attorneys; notice to quit; RPAPL §713, §721(1).
**Facts:**
A trust was misdescribed in a petition as a partnership.
**Digest notes:**
*>1057 Trusts*
*>163 Parties * 8 * Generally*
Trust held authorized to maintain summary proceeding.
*>1057 Trusts*
*>520 Pleadings * 7 * Petitions and complaints: Interest of the parties*
Held misdescription of trust as partnership is harmless and petition will not be dismissed.
*>151 Notice to quit*
Held notice to quit may be signed by landlord's attorney.
**Commentary:**
*There is at present no Editor's Commentary for this decision.*
**History:**
*No previous HCR report indicated.*

**Decision**

Order dated October 15, 1999 (Thomas Fitzpatrick, J.) unanimously affirmed, with $10 costs.

The record establishes that Bedford Apartments company is an authorized entity entitled to maintain this holdover proceeding under the Statute (RPAPL 721 [1]; *Matter of G.N. Assoc. v. Griffen*, 178 AD2d 747). The tenants of record entered into leases with Bedford Apartments Company as landlord. Bedford Apartments Company is the trade name or the trust formed under the will of the original title holder. Any misdescription of Bedford Apartments as a partnership in the petition was not a jurisdictional defect and could not have reasonably misled respondents as to petitioner's authority to commence the proceeding (*Jackson v. New York City Housing Authority*, 88 Misc 2d 121).

We have considered respondent's remaining arguments for reversal and find them lacking in merit. The statutory notice to quit (RPAPL 713) was not rendered legally insufficient because it was signed by landlord's attorney (*Kwong v. Eng*, 183 AD2d 558; *cf. Siegel v. Kentucky Fried Chicken*, 108 AD2d 218 *affd* 67 NY2d 792).

This constitutes the decision and order of the court.

>>>>>B<<<<<

**Gershenson v. Saunders Owners of Queens, Ltd.,** 28 HCR 738B, NYLJ 11/30/00, 32:5, HCR Serial #00012227 (Sup Queens LaTorella)
**NOTES:**
**Index topics:**
BCL §610, §612(g), §619; coop conversion; coops; CPLR 602(a); Limited Liability Law §§408-410, §412.
**Facts:**
There was a disputed board election in a coop where a substantial number of the shares were voted by holders of unsold shares.
**Digest notes:**
*>892 Coops and condos * 1 * Boards*
Held supreme court may inquire into actions affecting the election of directors of a corporation, but not actions taken at the meeting which did not affect the election.
*>892 Coops and condos * 1 * Boards*
*>987 Corporations * 3 * Board of directors*
Held election which conformed with the technical rules and did not have misleading notices will be upheld.
*>987 Corporations * 3 * Board of directors*
Authorized agent of entity held not to require a separate proxy for authority to vote shares at a corporate election.
*>987 Corporations * 3 * Board of directors*
One who has not pledged to vote a particular way in a corporate election, held not bound to.
*>987 Corporations * 3 * Board of directors*
Held apparently that there is no consequence of inspectors at election to fail to sign an oath.
*>987 Corporations * 3 * Board of directors*
Held election will not be invalidated where the irregularity has no actual effect on the outcome.
**Commentary:**
*There is at present no Editor's Commentary for this decision.*
**History:**
*No previous HCR report indicated.*

406468'2

Standard N. Y. B. T. U. Form 8007 • 9-93-70M • Bargain and Sale Deed, with Covenant against Grantor's Acts—Individual or Corporation (single sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

REEL 235 IMAGE 1869

*Exempt no chars.*

**THIS INDENTURE,** made the 26th day of July, nineteen hundred and Seventy-one

**BETWEEN** CROWN LAND CORPORATION, a New York corporation, having its principal place of business at 155 Riverside Drive, New York City

12-16 / 60

party of the first part, and CHILL ROSEN, doing business under the name of Bedford Apartments Co., having its office at 155 Riverside Drive, New York, New York, also known as Chill Rosenblatt

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of Ten Dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of 86th Street distant 30 feet easterly from the corner formed by the intersection of the southerly side of 86th Street and the easterly side of Amsterdam Avenue; Running thence Southerly parallel with Amsterdam Avenue and part of the distance through a party wall 102 feet 2 inches to the center line of the block; Thence easterly along the center line of the block 100 feet; thence northerly parallel with Amsterdam Avenue and part of the distance through a party wall 102 feet 2 inches to the southerly side of 86th Street; thence Westerly along the southerly side of 86th Street 100 feet to the point of place of BEGINNING. Said premises being known as and by the street number 166-174 West 86th Street.

This deed is executed and delivered to correct a deed dated December 8, 1966 executed and delivered by Crown Land Corporation to Bedford Apartments Co. which was duly recorded in the office of the Register of the County of New York in Liber 131 of Records at P. 50 on December 12, 1966 wherein the Bedford Apartments Co. was incorrectly stated as grantee, it being the true intent in and by the said deed to convey the aforementioned premises to Chill Rosen, doing business as Bedford Apartments Co.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.
The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

CROWN LAND CORPORATION

By _____
Manuel Perrik                President

**JA364**



STATE OF NEW YORK, COUNTY OF

On the 26 day of July 19 71, before me personally came

Marcus Retter

to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that executed the same.

STATE OF NEW YORK, COUNTY OF

On the day of 19, before me personally came

REEL 235 PAGE 1870

to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that executed the same.

REAL ESTATE ★ STATE OF ★
TRANSFER TAX ★ NEW YORK ★
Dept. of
Taxation
& Finance ≡00.00 ★

STATE OF NEW YORK, COUNTY OF  New York

On the 26 day of July 19 71, before me personally came  Marcus Retter
to me known, who, being by me duly sworn, did depose and say that  he resides at No.  160 Riverside Drive
M.I.C. ;
that  he is the President
of  Crown Land Corporation
, the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that  he signed h i same thereto by like order.

Samuel A. Falcide
Notary Public, State of New York
No. 0-2680000
Qualified in New York County
Commission Expires March 30, 1972

STATE OF NEW YORK, COUNTY OF

On the day of 19, before me personally came
the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that  he resides at No.

that  he knows

to be the individual described in and who executed the foregoing instrument; that he, said subscribing witness, was present and saw execute the same; and that he, said witness, at the same time subscribed h name as witness thereto.

**Bargain and Sale Deed**
WITH COVENANT AGAINST GRANTOR'S ACTS
TITLE NO. 904 9282

CROWN LAND CORPORATION

TO

CHILL ROSEN, doing business as
Bedford Apartments Co.

Please Record and Return to
CITY TITLE
INSURANCE COMPANY
37 Broadway, New York, N.Y. 10004

SECTION
BLOCK  1216
LOT   60
COUNTY OR TOWN

Please Record and Return to
CITY TITLE
INSURANCE COMPANY
17 Broadway, New York, N.Y. 10004
Zip No.

APR-3-72 — 21509

APR-3-72  21568  A-Lst

RDED IN NEW YORK COUNTY
BLOCK 1216 LOT 60
SERIAL NUMBER
03925  1972 APR -3 AM 11:09
Victor M. Rivera
CITY REGISTER

JA365



JOINT
STANDING
COMMITTEE
HEARINGS

JUDICIARY
PART 6
1700-2097

1987

**JA366**

2028

# APARTMENT HOUSE
# COUNCIL OF CONNECTICUT

### 60 WASHINGTON STREET, SUITE 207, HARTFORD, CONNECTICUT 06106

Telephone 247-4416

April 1, 1987

TO:      Judiciary Committee

FROM:   Richard W. Davis, Executive Director

RE:      HB 7588, AAC Enforcement Of Summary Process Judgements

COUNCIL POSITION - SUPPORT

Public Hearing:  April 4, 1987

The bill makes legal a practice used in eviction proceedings where a landlord attempts to serve notice to quit on a tenant who has a number of unrelated "John Doe" parties residing in the same unit.   Landlords often cannot secure the name of these additional tenants and a recent federal court overturned a local eviction proceeding for possible lack of "due process."

"HB 7588 will allow sheriffs to serve all occupants after a reasonable effort to secure actual and legal names.

**JA367**



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL

KENT T. STAUFFER
EXECUTIVE DEPUTY ATTORNEY GENERAL
DIVISION OF STATE COUNSEL

LISA R. DELL
ASSISTANT ATTORNEY GENERAL IN CHARGE
LITIGATION BUREAU

November 8, 2012

**By ECF**
Hon. James Orenstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Sasmor v. Powell, et al.*, E.D.N.Y., 11-cv-4645-KAM-JO

Dear Judge Orenstein:

This Office represents Deputy Chief Administrative Judge Fern Fisher and Chief Clerk Carol Alt (collectively the "Judicial Defendants") in the above-referenced case, in which plaintiff Jon Sasmor's ("Plaintiff") motion for a preliminary injunction and the Judicial Defendants' motion to dismiss are currently pending. As this case arises from Plaintiff's ongoing Housing Court litigation, we write to inform the Court of a recent decision issued by the Housing Court that decides some of the issues involved in the pending motions to Plaintiff's detriment, and thereby further compels the granting of the motion to dismiss and the denial of Plaintiff's motion for a preliminary injunction. A copy of the decision is enclosed herein as Exhibit A.

Plaintiff's claims in this case arise from his allegedly wrongful eviction, or potential future eviction, from certain disputed apartments in the building located at 287 Franklin Avenue in Brooklyn, New York. Plaintiff claims a right to possess the disputed apartments by a number of competing theories, one of which being that he is party to a lease agreement that provides him with a leasehold interest in "all floors entire apartment in the building." *See* Exhibit A, at 5. This identical contention was considered by the Housing Court, which found, as the Judicial Defendants have argued both in their motion to dismiss and in opposition to Plaintiff's motion for a preliminary injunction, that a rider to the lease "specifies that Jon Sasmor and Lisa Lin were renting apartment 4F," and that "the terms of the rider . . . 'override(s) any and all provisions in the Standard Form Lease.'" *Id.*

Additionally, the Housing Court rejected the arguments, which Plaintiff has also made in the instant action, that the Ronald Henry Land Trust (petitioner in all of the related Housing

**JA368**

Page 2

Court matters) is not the actual owner of 287 Franklin Avenue and is legally incapable of maintaining the Housing Court matters. *Id.*, at 10-12.

Having considered and rejected these and all of Plaintiff's other arguments, the Housing Court awarded lawful possession of the disputed premises to the Ronald Henry Land Trust and directed that a warrant of eviction be issued forthwith, though the Housing Court stayed execution of the warrant until October 31, 2012, in order to provide Plaintiff with an opportunity to vacate the premises.

With this decision, in combination with the Housing Court's prior decisions, the Ronald Henry Land Trust has now been awarded lawful possession of all of the apartments governed by the lease agreement signed by Plaintiff and his fellow tenants.

The decision also further compels dismissal of this matter as against the Judicial Defendants. Even if this Court could find that Plaintiff's action against the Judicial Defendants was not barred in the entirety by the lack of an Article III case or controversy, the *Rooker-Feldman* doctrine, principles of abstention, and the other jurisdictional and procedural arguments submitted on the Judicial Defendants' behalf in the pending motions, Plaintiff's claims would still fail on the merits because it is even clearer now, if it was ever in doubt, that Plaintiff never had more than a licensee's interest in any of the disputed apartments, and was subject to ejection from all of them without any process whatsoever, much less the due process that he received.

Accordingly, on behalf of the Judicial Defendants we respectfully submit that Plaintiff's motion for a preliminary injunction should be denied and this matter should be dismissed in the entirety.

Respectfully submitted,

Andrew H. Meier
Assistant Attorney General

**Enclosure**

cc:    All parties (by ECF)

**EXHIBIT A**

JA370

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: HOUSING PART O
------------------------------------------------------------------------ X
RONALD HENRY LAND TRUST,                          Index No. 78902/2011

                              Petitioner,                  POST-TRIAL
                                                    DECISION AND ORDER
                  -against-

JON SASMOR and LISA LIN,

                              Respondents,
------------------------------------------------------------------------ X
HONORABLE ELEANORA OFSHTEIN, J.H.C.:

      Petitioner commenced this summary holdover proceeding seeking to recover possession

of the front small room on the top floor of the building located at 287 Franklin Avenue, in

Brooklyn, New York. The proceeding commenced by notice of petition and petition, after

service of a thirty-day notice of termination which alleges that Jon Sasmor and Lisa Lin

("respondents") reside in a unit which is not legal for residential use and indicates a violation

issued by the City of New York Department of Housing Preservation and Development ("HPD").

      Respondents interposed a written answer asserting twenty-four (24) affirmative defenses

and a demand for a jury trial. The pre-trial motions included petitioner's motion for summary

judgment, which was denied by decision dated August 3, 2011; petitioner's motion to strike the

jury demand, which was granted by decision dated November 2, 2011; and respondents' motion

for re-argument, wherein the Court denied a stay pending appeal, by decision dated November

18, 2011.

      The matter was referred to Part O for trial, wherein petitioner was represented by an

attorney and respondents appeared pro se. The trial commenced on November 29, 2011

(digitally recorded FTR 505, start at 2:38PM) and petitioner rested after its prima facie case. The

Court reserved decision on respondents' oral motion to dismiss pending the conclusion of the

1

**JA371**

trial, and the matter was adjourned to December 13, 2011 for respondents' case. In the interim,

respondents served a number of subpoenas, petitioner filed two motions to quash the subpoenas

and respondents filed a cross-motion to admit the Notice to Admit. The Court ruled on the

motions by decision dated January 20, 2012, and the trial continued on February 27, 2012 (FTR

505, start at 10:48AM), March 1, 2012 (FTR 505, start at 9:57AM), March 19, 2012 (FTR 505,

start at 9:59AM), and concluded on March 29, 2012 (FTR 505, start at 9:45AM). Thereafter, the

parties submitted their memorandum of law.

This summary holdover proceeding was brought to gain possession of the 'top floor front

small room' pursuant to the following termination notice:

> The subject premises are not legal for residential use. Violation # 8739976 was placed on
> 12/18/10 and the premises are also described and referred to under said violation as 1st
> room from North at West located at b Room 4f, 3rd story. As the premises are not legal
> any lease or agreement to occupy same is null and void.

At trial, petitioner introduced a certified copy of the HPD violation summary for the

subject building (petitioner's 2), which includes four violations to discontinue use of specific

rooming units in the basement, 2nd and 3rd floors of the building, and four violation indicating that

HPD vacated four rooms on the 3rd floor, including the subject room. The violations specific to

the subject apartment/room, 4F, state as follows:

> Violation #8739983, December 18, 2010: §27-2077 ADM CODE- DISCONTINUE THE
> ROOMING UNIT FOR TENANT AMANDA DIAZ IN THE 1ST ROOM FROM EAST
> AT SOUTH LOCATED AT B-ROOM 4F, 3RD STORY
>
> Violation #8739976, December 18, 2010: §27-2077 ADM CODE- DISCONTINUE THE
> ROOMING UNIT FOR TENANT JON SASMOR AND LISA LIN IN THE 1ST ROOM
> FROM NORTH AT WEST LOCATED AT B-ROOM 4F, 3RD STORY
>
> Violation #8774390, January 18, 2011: §27-2142 ADM CODE- THE PREMISES OR
> APTS. HAVE BEEN VACATED BY THE DEPARTMENT AND CANNOT BE
> REOCCUPIED UNTIL SO ORDERED AFTER PROOF OF COMPLIANCE FOR 3RD
> STY 4F.

**JA372**

Mr. Chaim Goldberger testified that he was the manager of the building for Isaac Teitelbaum, the trustee of the petitioner, Ronald Henry Land Trust, and that he managed the building pursuant to a verbal agreement with Mr. Teitelbaum, through Mr. Goldberger's company, Henry Management LLC. A certified copy of the deed for the subject premises, dated May 12, 2009, was introduced and indicates that the property was deeded from Ronald Henry to Ronald Henry Land Trust (petitioner's 1). Mr. Goldberger testified that he was in charge of collecting rent and dealing with repairs, was known to respondents by the name "Henry", which also referred to Henry Management LLC, the landlord listed on respondents' lease, and that he collected the rent from respondents.

Mr. Goldberger introduced a copy of a check from respondent Lisa Lin as an example of the rent he collected from respondents (petitioner's 3). The check is dated March 2012, is made out to Isaac Teitelbaum, and is earmarked as April rent. Mr. Goldberger testified that respondents stopped paying the rent, which he last collected in June or July 2010, and that he stopped coming to the building to collect the rent because Jon Sasmor threatened him and sent him a letter stating he should not come to the building (petitioner's 4). Mr. Goldberger states that respondents have not vacated and seeks a judgment of possession.

Mr. Abraham Schneebalg testified that he and Isaac Teitelbaum were trustees in the petitioner-trust which owns the property, and that they hired Mr. Goldberger to manage and take care of the building. He further testified that he was present at the signing of the deed but was very vague about any additional trust documents involved in the closing.

Mr. Isaac Teitelbaum testified that he was part of the trust as a co-trustee, that he hired Mr. Goldberger to manage the building, that he was also present when the deed was signed, and that Ronald Henry is the listed beneficiary of the trust.

3

**JA373**

On respondents' case, Mr. Jon Sasmor testified that due to the HPD vacate order for the

third floor, respondents use the room only to store their belongings, and otherwise stay on the

lower floors of the building. Mr. Sasmor further testified that respondents initially found the unit

on the internet, signed a lease at the broker's office, and moved in on April 1, 2010. He stated

that the door to the room was not locked and that other tenants were moving into other rooms in

the building at the same time. He further stated that due to a concern for safety, he contacted Mr.

Goldberger, whom he knew as "Henry", and that Mr. Goldberger directed someone to come and

install a lock on the door of respondents' room. Mr. Sasmor testified that he believed the first

floor of the building was being used as a hostel and saw different people coming in and out at all

hours.

Mr. Sasmor stated that in May 2010, a notice of foreclosure was mailed to the building,

addressed to "Ronald Henry", and that since Mr. Sasmor did not know that name and made his

rent checks to Mr. Teitelbaum, he inquired with Mr. Goldberger. Mr. Sasmor testified that Mr.

Goldberger told him to continue to pay rent to him and that he would 'take care of it'. Mr.

Sasmor further testified that after some research, he came to understand that there was no

multiple dwelling or certificate of occupancy on file for the building, and came to believe that the

hostel was illegal and that the rent was not legally collectable.

Mr. Sasmor testified about a few incidents where police were called to the building when

Mr. Goldberger was attempting to drill the locks and about finding Mr. Ronald Henry to seek out

the truth about the trust. The Court notes that Ronald Henry did not appear for the trial. Mr.

Sasmor stated that in late July 2010, the tenants formed a resident association and in early August

2010, he met with Mr. Ronald Henry, who claimed to be the owner. He further testified that Mr.

Henry accompanied him to the police station and authorized him to get a locksmith and change

the locks in the building, with a copy of the key given to Ronald Henry.

4

**JA374**

Mr. Sasmor stated that petitioner's first case against the respondents (Index # 100576/10) was a nonpayment action, wherein respondents sought an HPD inspection, which took place December 18, 2010, and is the basis of this action. The nonpayment action was marked off the Court's calendar in January 2011 and petitioner subsequently brought a number of individual holdover proceedings in March 2011. One such case against respondents (Index # 64299/11), was scheduled for a traverse hearing. During the wait for a judge to hold the traverse hearing, respondents were served process in the courthouse for the current case, and the prior case was subsequently discontinued.

Additionally, Mr. Sasmor introduced a copy of the lease he signed (respondents' P, Q and R[1]). The lease agreement appears to be between "Henry Management LLC" and a list of nine tenants, including respondents, for the period April 1, 2010 through April 1, 2011, at a monthly rent of $3850.00. Although the lease indicates that it is for "all floors entire apartment in the building", the attached lease rider specifies that Jon Sasmor and Lisa Lin were renting apartment 4F and "have entered into a lease with the Landlord(s) Isaac Titlebaum, Brooklyn Corporation, and Peoples Choice Real Estate, LLC...". The lease includes an addendum clause which allows the terms of the rider to "override(s) any and all provisions in the Standard Form Lease".

The testimony and evidence at trial indicates that the apartment was subdivided into illegal rooming units, which are the basis of the violations placed by HPD, and that HPD vacated the units and ordered discontinuance of their use. Additionally, at trial, petitioner did not contest

---

[1] Mr. Sasmor introduced three different copies of the same lease and testified that respondents' Q was a copy of the original unaltered lease which he received the day it was signed and which includes the names of the original tenants, the addendum clause and the lease rider. Mr. Sasmor testified that respondents' P is a copy which includes the Addendum clause but is missing page 4 of the lease and has been altered as to one of the tenants, Anthony Steele, whose name is deleted with white-out and replaced by the name Amanda Diaz. Respondents' R is similar to Q but is missing the Addendum clause as well as the lease rider, and was previously submitted by the petitioner as an exhibit in petitioner's motion for summary judgment.

that the premises were rented to respondents as subdivided rooms and that respondents did not themselves illegally create the rooms. Mr. Sasmor was able to show some inconsistencies in the trust documents, including the blank line in the "Assignment of Beneficial Interest in Land Trust", wherein the assignee names are not filled in (respondents' D), the different entities to whom rent checks were made, and petitioner's unclean hands in the renting of these illegal rooms for profit. However, respondents' D also indicates a signed and notarized "Agreement and Declaration of Trust", made on May 13, 2009, between Ronald Henry, as grantor and beneficiary, and Abraham Schneebalg and Isaac Teitelbaum, as trustees.

Although artlessly crafted, the thirty-day termination notice provides respondents with sufficient notice as to the basis upon which petitioner is seeking possession of the illegal subject room, as well as the specific violation issued by HPD. Despite petitioner's apparent 'unclean hands', in allowing the rental of the illegal rooming units, and the other remedies available to petitioner, including injunctive relief and an ejectment action, this Court agrees with the logic of the decision in Del Gigante v Danilova, 188 Misc 2d 240 (Civ Ct, Bronx County 2001), wherein the Court declined to dismiss a holdover proceeding, commenced by a landlord against an occupant of an illegal cellar/basement, after the Department of Buildings issued a violation against the owner, subjecting the owner to civil or criminal penalties.

As noted by the Court in the Del Gigante decision, the New York City Civil Court Act §110, which created a special housing part, commonly known as the 'Housing Court', gives the Housing Court jurisdiction to issue injunctions and restraining orders for enforcement of housing standards, and offers some flexibility "to recommend or employ any remedy, program, procedure or sanction authorized by law for the enforcement of housing standards if the Court believes they will be more effective to accomplish compliance or to protect and promote the public interest. CCA §110 ( c)". The Court further noted that

6

JA376

(although) a petitioner who has acted with unclean hands in collecting rent from an illegal basement apartment could be relegated to bringing a more costly and time-consuming ejectment action...rather than benefitting from the speedier and more cost-effective summary proceeding adjudicated in the Housing Court...(i)n weighing the equities it is clear that public policy compels this Court to place first and foremost the well-being of the tenant, the public and any firefighters or other emergency personnel that might be called to the premises if calamity struck. (Del Gigante, citing Sorensen v Ramon, NYLJ, May 17, 2000, at 34, col.1 [Civ Ct, Richmond County])[2].

In Sorensen v Ramon, NYLJ, May 17, 2000, at 35, col. 4 (Civ Ct, Richmond County), the

Court noted, in a similar situation, that

(t)o adopt the position of the defendant would mean that the tenant could not only be unjustly enriched by living in the illegal apartment and not be required to pay rent while an ejectment proceeding transpired, but the landlord would be facing penalties from the City for each day the illegal occupancy continued...All the while, the tenant would technically remain in danger, since the building is presumably unsafe and not built to code.

The Court in the Sorensen case went on to hold that

(s)ince the primary purpose of the laws is guaranteeing safe living accommodations and not the immediate punishment of the landlord, the Court has the inherent power to terminate a tenancy in any action brought before it where the safety of individuals is at stake. If a tenant is damaged because of the need to compel compliance with the Code, the tenant may, in fact, have a separate cause of action against the landlord in that regard, totally independent of this issue...

Additionally, in Hornfeld v Gaare, 130 AD2d 398 (1st Dept 1987), wherein the tenant

stopped paying use and occupancy while asserting the right to remain a stabilized tenant, with

continuous renewals, even though the basement unit was deemed illegal, the Appellate Division

considered this "bizarre 'Catch-22' situation (to be) unjust, and cannot be permitted to continue

---

[2]Parenthetically, the Sorensen case involved the occupancy of a basement unit which was found by the Department of Buildings to be in violation of the Certificate of Occupancy and ordered the illegal use to be discontinued. In that case before the Civil Court, the defendant-tenant argued that the only action available to the plaintiff is an ejectment proceeding *or a summary proceeding* (see also Marrocco v Lugero, NYLJ, Oct 6, 1999, at 31, col. 2, wherein the Court held that it has subject-matter jurisdiction even when there are mistakes in pleading in the petition, holding that such defects go to the ability to prove the landlord's cause of action, and not to the ability of the Court to hear the case).

7

**JA377**

(citation omitted)", and therefore allowed the judgement to be entered against the respondent.

Respondents' reliance on <u>Sima Realty v Philips</u>, 282 AD2d 394 (1st Dept 2001), is misplaced since the facts in <u>Sima Realty</u> indicate that petitioner's sole cause of action for ejectment was the lack of the certificate of occupancy. However, the facts before this Court indicate more then a breach of the certificate of occupancy or the Multiple Dwelling Law ("MDL"). HPD has already vacated the rooming units, issued an order to discontinue use of the premises, and subjected petitioner to various penalties (see also <u>Wack v Boutin</u>, 81 NYS2d 281 [App Term, 2nd Dept 1947]). Therefore, this Court finds respondents' 11th and 20th affirmative defenses to be without merit.

Another threshold issue raised by respondents' 1st affirmative defense involves the propriety of service of process made upon them in the courthouse, while they were awaiting a hearing on their traverse defense in a prior proceeding with the same petitioner. Respondents assert that service was improper because they are protected from being served in the courthouse by the 'Courthouse Sanctuary Rule'.

The Courthouse Sanctuary Rule, as explained by the Court of Appeals in <u>Person v Grier</u>, 66 NY 124 (1876) and <u>Thermoid Co v Fabel</u>, 4 NY2d 494 (1958), "is an ancient rule in most States including New York that a suitor in attendance in a court outside the territorial jurisdiction of his residence is immune from service of civil process while attending court for a reasonable time before and after, that is, going to court and returning to his home" (<u>Thermoid Co v Fabel</u> Court citing <u>Person v Grier</u>), and is an "immunity (of) necessities of the administration of justice, (since the) courts would often be embarrassed if suitors or witnesses, while attending court, could be molested with process. Witnesses might be deterred, and parties prevented from attending, and delays might ensure or injustice be done." (<u>Person v Grier</u>, 66 NY 124 [1876]).

In <u>Baumgartner v Baumgartner</u>, 273 AD 411 (1st Dept 1948), the Appellate Division

8

overturned the lower Court's decision to hold an attorney in contempt for serving the wife of his

client with process in the courthouse building hallway. Although the Court admonished such

conduct and strongly disfavored such service, the Court concluded that "it is not unlawful to

effect service of a summons on a resident defendant in a courthouse building unless, of course, it

is done under such circumstances as constitutes a disturbance directly tending to interrupt the

proceedings of the court or to interrupt the respect due to its authority." Moreover, such a

foreign resident immunity is based upon the witness entering the jurisdiction voluntarily and

without 'compulsion of law', such as by subpoena, in order to "encourage voluntary attendance

upon courts and to expedite the administration of justice" (Chauvin v Dayon, 14 AD2d 146 [3d

Dept 1961]; and see also DHPD v Koenigsberg, 133 Misc 2d 893 [Civ Ct, NY County 1986]

[wherein the Court strongly disfavored such service but concluded that it "did not deprive the

court of jurisdiction"]).

Recently, two District Courts came to opposite decisions on this issue. In Ford Motor

Credit Co v Bobo, 1 Misc 3d 901(A) (Dist Ct, Nassau County 2003), the Court held that the rule

in New York is that a resident defendant has no immunity from courthouse service and declined

to dismiss the proceeding, stating that "(i)t is for the Legislature to determine whether or not

service of civil process generally should be prohibited in any part of a courthouse building".

However, in a decision made less than a year later, in North Fork Bank v Grover, 3 Misc 3d 341

(Dist Ct, Suffolk County 2004), another District Court extended the sanctuary rule to protect the

defendant from the second service, even though service did not result in a disturbance or

interruption of court proceedings. A further in-depth analysis of the Courthouse Sanctuary Rule

is provided in Dexter 345 Inc v Labosky, (Index # 61690/06, Civ Ct, NY County, Honorable

Marc Finkelstein), wherein the Court dismissed the proceeding where the respondent was a

resident of New York who was served while voluntarily attending judicial process as a witness in

9

a separate, unrelated Housing Court proceeding on behalf of a neighbor.

In accordance with the Court of Appeals and Appellate Division rulings which decline to extend the Courthouse Sanctuary Rule for in-state respondents appearing in court to defend their own cases, this Court declines to extend the Courthouse Sanctuary Rule under the circumstances of this case. Although such service is strongly disfavored, especially in light of the charged atmosphere of the Housing Court, where many of the litigants appear pro se and each Resolution Part Judge often hears 60 to 80 cases per day, respondents herein are not out-of-state residents, voluntarily in court, and are not in-state residents, appearing as voluntary witnesses for an unrelated proceeding.

Respondents have failed to prove their 2nd, 3rd, and 13th affirmative defenses predicated upon estoppel arguments. The prior proceedings in housing court brought by petitioner against respondents were discontinued without prejudice and without a decision on the merits.

Respondents' 4th, 17th and 18th affirmative defenses are predicated upon retaliatory eviction. Respondents assert that petitioner filed this action in retaliation for respondents' request for a traverse hearing in the prior proceeding, for respondents' request for an HPD inspection of the premises, and for withholding rent due to MDL violations. However, petitioner's need to gain possession of the illegal unit in order to comply with HPD violations and vacate orders, rebuts the presumption of retaliation and acts as a credible explanation of petitioner's non-retaliatory motives (see Gelmo Realty v Fiore, 1 Misc 3d 129[A] [App Term, 9th & 10th Jud Dists 2003]).

Respondents 5th through 10th and 14th, 15th and 21st affirmative defenses are predicated upon the assertions that petitioner is not a proper party to this action and lacks capacity to sue because it is a trust and not an individual, is not the landlord, does not hold proper title and does not exist legally to do business. Although questions of title and ownership "cannot be

10

**JA380**

determined as an affirmative claim in the context of a summary proceeding, a question of title

can properly be raised as a defense to the proceeding" (Yacoob v Persaud, 2012 NY Slip Op

50249[U] [App Term 2nd 11th & 13th Jud Dists]; see also Ferber v Salon Maderne Inc, 174 Misc

2d 945 [App Term, 1st Dept 1997]; and Drake v Cunningham, 127 AD 79 [2nd Dept 1908]).

It is well settled that a party can assert a defense to show that the party sued is the rightful

owner of the property (see Chopra v Prusik, 9 Misc 3d 42 [App Term, 2nd Dept 2005]; and Freire

v Fajardo, 28 Misc 3d 137[A] [App Term 2nd, 11th & 13th Jud Dists 2010]), or a defense to show

that the party suing is not the proper owner of the property (see Decaudin v Velazquez, 15 Misc

3d 45 [App Term 2nd Dept 2007]; and Muzio v Rogers, 20 Misc 3d 143[A] [App Term, 9th & 10th

Jud Dists 2008]). "(T)he court is not outed from jurisdiction, for purposes of determining the

right to present possession at issue in this proceeding, by the nature of this defense" since "any

legal or equitable defense, or counterclaim may be interposed in a summary proceeding" (Chopra

v Prusik, 9 Misc 3d 42 [App Term, 2nd Dept 2005], citing RPAPL §743; and Nissenquogue Boat

Club v State of New York, 14 AD3d 542 [2005]).

Although respondents were able to present evidence of inconsistencies in some of the

testimony and documents in relation to the trust agreement, and have a Federal Action pending

against the trustees behind this trust, the evidence was insufficient to prove, by a preponderance

of the evidence, that petitioner is not entitled to possession of this illegal unit.

Respondents' 12th and 16th affirmative defenses, asserting that the demand notice and

petition are insufficient because they are unsigned or signed without authority are also without

merit. The notice is signed by Chaim Goldberger, as the managing agent for Ronald Henry Land

Trust, and the petition indicates the stamp of petitioner, Ronald Henry Land Trust. Furthermore,

proof of authority to act for an owner is only required when a lease specifically provides that all

notices must emanate from the landlord (Siegel v Kentucky Fried Chicken, 108 AD 2d 218, affd,

11

**JA381**

67 NY2d 792). No such lease provision has been shown in this case. Additionally, when a tenant has had prior dealings with the person executing the notice, no proof of authority need be attached (see <u>West Bushwick NRP Assoc LP v Bushwick Coop Federal Credit Union</u>, 10 Misc 3d 1078[A] [Civ Ct, Kings County]). Both parties acknowledged knowing each other and respondents did not contest that Mr. Goldberger had collected rent from respondents.

Although respondents argue that the petitioner-trust cannot hold property or bring a lawsuit in its own name, a trust is a legal entity capable of owning property or bringing a lawsuit (see <u>In Re Ihmsen's Estate</u>, 253 AD 472 [3rd Dept 1938]; and <u>Bedford Apts Co v Coutts</u>, NYLJ, Nov 30, 2000, at 29, col. 6 [App Term 1st Dept]). Additionally, according to the "Agreement and Declaration of Trust" (respondents' D), the powers of the trustees (as delineated in paragraph 5. a-c [1-9)]) include the authority to hold legal title to all of the trust property and manage, control and protect the property, which includes rental or leasing of the property, and the bringing of lawsuits.

The Court finds respondents have failed to prove their remaining affirmative defenses.

Therefore, petitioner is awarded a judgment of possession against respondents. The warrant may issue forthwith but execution of the warrant is stayed to October 31, 2012 for respondents to vacate the subject premises. Any request for use and occupancy is denied.

Both sides may pick up their exhibits from the file within thirty days.

This constitutes the decision and order of the court.

Dated: Brooklyn, New York
     October 10, 2012

                                  ELEANORA OFSHTEIN
                                  JUDGE HOUSING COURT

**JA382**

November 15, 2012

Hon. James Orenstein, U.S.M.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    Sasmor v. Powell, et al.
       Docket No. 11-CV-4645 (KAM) (JO)

Dear Judge Orenstein:

I am the Plaintiff, *pro se*, in this case. This letter responds to Defendants Fisher and Alt's ("State Defendants'") letter dated November 8, 2012 (ECF No. 58)[1] regarding a recent state Housing Court decision. That decision is under appeal. *See* Exhibit 1 (Notices of Appeal).

In their letter, ECF No. 58, the State Defendants have mischaracterized both the Housing Court's ruling itself and also its relevance (or lack thereof) to this case. The Housing Court's October 10, 2012 Post-Trial Decision and Order is irrelevant here because it concerns only one specific room not involved in this case and because it decides based on circumstances particular to that room.[2] This case involves different rooms with different circumstances. This 42 U.S.C. § 1983 case challenges the constitutionality, under the Fourth and Fourteenth Amendments, of the New York statutory scheme permitting enforcement against me, with respect to those other rooms, of judgments against individually named other people not including me.

Two other Courts facing almost an identical constitutional question as that presented here held that the former Illinois and California eviction processes were unconstitutional because, just like the presently at issue New York eviction warrant statute (N.Y. Real Prop. Acts. Law § 749(1)), those states' former statutes permitted the eviction of occupants not given notice and opportunity to be heard in the underlying eviction process. *Rembert v. Sheahan*, No. 92-cv-67, 1994 U.S. Dist. LEXIS 9164, *12-13, *1-3, *5-13 (N.D. Ill. July 6, 1994) ("enforcement of orders that refer only to named individuals other than the individuals being evicted is a violation of due process."), *vacated*, 67 F.3d 937, 941-3 (7th Cir. 1995) (describing use of generic names as "troubling;" remanding for determination about whether sheriff continues to evict persons not named), *permanent injunction issued on remand*, No. 92-cv-67, Judgment Order, slip op. at *4-9 (N.D. Ill. Nov. 3, 1995) (sheriff shall enforce orders of possession "only against an occupant of the premises who is personally and by name designated in said order. . ."); *Arrieta v. Mahon*, 31

---

[1] All page number citations refer to page numbering in the Court's ECF electronic filing system.

[2] State Defendants' statement is absolutely false that "the Ronald Henry Land Trust now has been awarded lawful possession of all of the apartments governed by the lease agreement signed by Plaintiff and his fellow tenants." ECF No. 58 at *2. *See also* ECF No. 55-2 (listing eighteen (18) previous false, incomplete, contradictory, prejudicial, and/or unsupported factual allegations asserted by the State Defendants); ECF No. 51-1 at *6-7 n.4 (listing eleven (11) additional unsupported and inconsistent factual allegations asserted by the State Defendants).

**JA383**

Cal. 3d 381, 383-6, 389-93 (1982) (eviction of occupants not named in writ violates due process).[3]  *See* ECF No. 55-1 at *28-30 (my reply memorandum arguing that the Court should follow *Rembert* and *Arrieta*); *see also id.* at *3, *10 n.20, *18, *21 n.36, *23 n.39, *25, *27-8, *31 n.46 (discussion of *Rembert* and *Arrieta*).

Property rights relevant to this case were untouched by the Housing Court's recent ruling.  The Housing Court discusses the lease and the different versions of it, ECF No. 58 at *8 and n.1, one version of which was submitted without the Rider, *id.* at *8 n.1, but decides on other grounds[4] and does not address how the leases should be construed.  Thus, the Housing Court's discussion of the leases is descriptive only and is dictum.  Moreover, there are several other bases, entirely independent of the lease, for my privacy interests and tenancy rights in the rooming units involved in this case, *see e.g.* ECF No. 51-1 at *27-32, ECF No. 54-2 at *13-21, including statutory rights under N.Y. Real Prop. Acts. Law § 711, N.Y. City Admin. Code § 26-521, and N.Y. Real Prop. Law § 228, *see* ECF No. 51-1 at *28-30, ECF No. 54-2 at *17-20.  The State Defendants continue to claim that I am a licensee, ECF No. 58 at *2, but ignore my statutory property rights and other protected interests.  *See* ECF No. 55-1 at *30-31 (my reply memorandum discussing State Defendants' lack of response to my specific, additional property rights created under New York law).[5]

I respectfully submit that the Court must not permit New York eviction warrants to continue to remove "all persons" following judgments against named individuals only.  The Court should follow *Rembert* and *Arrieta, supra,* should deny the Defendants' motions to dismiss, and should grant my motion for preliminary injunction.

Thank you for your consideration.

---

[3] In *Arrieta*, the trial court also held that the marshal's policy violated the Fourth Amendment. 31 Cal. 3d at 384 n.1. The California Supreme Court affirmed on due process grounds and therefore did not reach the Fourth Amendment. *Id.*

[4] The Housing Court decision focuses on safety concerns.  It relies heavily on a vacate order, which also affects two rooms from which I was evicted on July 13, 2011, but not my bedroom from which I was evicted on July 20, 2011 and not the additional rooms from which I face imminent eviction based on outstanding judgments against named former tenants.  Without explanation, the Housing Court substituted its own judgment of safety for firefighters in lieu of the judgment of the firefighters' Battalion Chief himself.  *See* ECF No. 56 at *19, ¶ 81 (Fire Department, after inspection of the building, refused Defendant Powell's request to vacate the building).  The Housing Court noted Petitioner's unclean hands, ECF No. 58 at *9, *10, but found that safety concerns outweighed the unclean hands defense.  The Housing Court's ruling suggests that absent the vacate order (and, therefore, with respect to some of the rooms involved in the present case), the unclean hands defense would have been successful.

[5] To the extent the Housing Court ruled that a trust is a proper party to a lawsuit and can own property in the name of the trust, the decision is plain error and is likely to be reversed.  *Compare* ECF No. 58 at *15 ("a trust is a legal entity capable of owning property or bringing a lawsuit.") *with* George G. Bogert, et al., *Trusts and Trustees* § 712 at 273 (3d ed 2009) ("A trust is not a legal person. . .") *and* N.Y. Est. Powers & Trusts Law § 7-2.1(a), (c) (with exceptions that parties agree do not apply to this Housing Court case, trust cannot hold property in the name of the trust; instead, property must be held by the trustee).  Indeed, the judgment associated with the Decision and Order provided by the State Defendants, like the other "Ronald Henry Land Trust" judgments, is a nullity and is subject to collateral attack because it lacked a proper party on one side.  *See* ECF No. 51-1 at *19 and n.30.

2

**JA384**

Yours respectfully,

/s/

Jon Sasmor,
Plaintiff, *Pro Se*
287 Franklin Avenue
Brooklyn, NY 11205
(917) 318-2619
jonathan.sasmor@gmail.com

Cc: Monica Connell, Esq., (*via* ECF), Andrew Meier, Esq., (*via* ECF),
Kenneth Litwack, Esq., (*via* ECF), and David Lyle Stern, Esq. (*via* ECF).

**JA385**

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS, HOUSING PART O
-----------------------------------------------------------------------X
RONALD HENRY LAND TRUST,
                    Petitioner

                 -against-

JON SASMOR and LISA LIN,
                    Respondents.
-----------------------------------------------------------------------X

                                     NOTICE OF APPEAL

                                     Index No. L&T 78902/11

**PLEASE TAKE NOTICE** that the Respondent-Appellant, Jon Sasmor, hereby appeals to the

Appellate Term of the Supreme Court for the Second, Eleventh, and Thirteenth Judicial Districts

from the Decision and Judgment by the Honorable Eleanora Ofshtein, Judge of the Civil Court of

the City of New York, County of Kings, Housing Part, a copy of which is annexed as Exhibit A,

and is dated "10-15-12 NOT 10-10-12," and was entered in the office of the Clerk of said Court

on or around October 15, 2012 with the space on the Decision and Judgment for date of entry left

blank, and this appeal is taken from each and every part thereof.

Dated: Brooklyn, New York
October 20, 2012

                                 Jon Sasmor
                                 Respondent-Appellant, *Pro Se*
                                 287 Franklin Avenue
                                 Brooklyn, NY 11205
                                 (917) 318-2619

To: Civil Court of the City of New York, County of Kings
Housing Part Clerk
141 Livingston Street
Brooklyn, NY 11201

To: Stuart I. Jacobs, Attorney for Petitioner
1779 51 Street
Brooklyn, NY 11204

**JA386**

EXHIBIT A

## CIVIL COURT OF THE CITY OF NEW YORK
## COUNTY OF KINGS        PART    O

INDEX # 078902/2011
JUDGMENT SEQ # 001

### DECISION AND JUDGMENT

RONALD HENRY LAND TRUST,

Petitioner(s)

**AGAINST**
SASMOR, JON
LIN, LISA

Respondent(s)

---

**Decision and judgment is** rendered based upon
a decision made after trial as follows:
Judgment of possession is granted in favor of:
RONALD HENRY LAND TRUST,
and against
SASMOR, JON
LIN, LISA
A counterclaim is granted in favor of the respondent in the amount of      $0.00
(which if not being entered separately is offset and reflected in the
total amount due, listed below.)

A money judgment is hereby granted, along with cost and disbursements
in the amount of      $0.00 in favor of:
RONALD HENRY LAND TRUST,
and against
SASMOR, JON
LIN, LISA

for a total amount of      $0.00

(Monthly use and occupancy is set at      $0.00 per month, as per order,
stipulation or decision in record.)

---

Warrant to issue forthwith        Execution____ AP O

Date  10-15-12
NOT 10-10-12        Judge, Civil/Housing Court   **HON. ELEANORA OFSHTEIN**

Section 5020(c) of the Civil Practice Law and Rules requires that a satisfaction be filed with the
clerk when the judgment is satisfied.  Failure to do so subjects the judgment creditor to penalties.

====================================================================

### ENTRY OF JUDGMENT

*Carol Alt*

Judgment entered in accordance with the above on _____ .   **CHIEF CLERK**
Chief Clerk, Civil Court

Warrant issued to Marshal _____   On _____

CIV-LT-50(2006)                                                Page 1 of 1

**JA387**

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS, HOUSING PART O

-------------------------------------------------------------------------X

RONALD HENRY LAND TRUST,

                Petitioner                            CERTIFICATE OF
                                                               SERVICE

        -against-

JON SASMOR and LISA LIN,                             Index No. L&T 78902/11

                      Respondents.

-------------------------------------------------------------------------X

STATE OF NEW YORK
COUNTY OF KINGS         ss.:

    Hsiang-Hsin Wang, being duly sworn, hereby deposes and says:

    I am over 18 years of age and not a party to this case. On October 20, 2012 at 9:34pm,

I served the Notice of Appeal dated October 20, 2012, and the exhibit annexed thereto, upon

Stuart I. Jacobs, Attorney for Petitioner, by depositing the papers in a properly addressed,

postage-paid envelope into a USPS mailbox for delivery by USPS First Class Mail to the

attorney at 1779 51st St, Brooklyn, NY 11204.

                                    Hsiang Hsin Way

                                     ALLISON THOMPSON
                                 Notary Public - State of New York
                                 No. 01TH6099607
                               Qualified in Kings County
Sworn to before me this 2 day of October 2012    My Commission Expires Sept. 29, 2015

                                            **JA388**

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS, HOUSING PART O
-------------------------------------------------------------------X

RONALD HENRY LAND TRUST,

                Petitioner

                                                NOTICE OF APPEAL

       -against-

                                                Index No. L&T 78902/11

JON SASMOR and LISA LIN,

                Respondents.
-------------------------------------------------------------------X

**PLEASE TAKE NOTICE** that the Respondent-Appellant, Jon Sasmor, hereby appeals to the

Appellate Term of the Supreme Court for the Second, Eleventh, and Thirteenth Judicial Districts

from the Decision and Judgment and the accompanying Post-Trial Decision and Order by the

Honorable Eleanora Ofshtein, Judge of the Civil Court of the City of New York, County of Kings,

Housing Part, entered in the office of the Clerk of said Court on the 10th day of October, 2012,

and this appeal is taken from each and every part thereof.


Dated:  Brooklyn, New York
October 15, 2012

                              Jon Sasmor
                              Respondent-Appellant, *Pro Se*
                              287 Franklin Avenue
                              Brooklyn, NY 11205
                              (917) 318-2619


To: Civil Court of the City of New York, County of Kings
Housing Part Clerk
141 Livingston Street
Brooklyn, NY 11201


To: Stuart I. Jacobs, Attorney for Petitioner
1779 51 Street
Brooklyn, NY 11204

**JA389**

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS, HOUSING PART O

------------------------------------------------------------------X
RONALD HENRY LAND TRUST,
                    Petitioner

     -against-

JON SASMOR and LISA LIN,
               Respondents.
------------------------------------------------------------------X

**CERTIFICATE OF SERVICE**

Index No. L&T 78902/11

STATE OF NEW YORK
COUNTY OF KINGS    ss.:

Caroline Donnley being duly sworn, hereby deposes and says:

I am over 18 years of age and not a party to this case. On October 15, 2012 at 11:16 a.m. I served the Notice of Appeal dated October 15, 2012 upon Stuart I. Jacobs, Attorney for Petitioner, by depositing it in a properly addressed, postage-paid envelope into a USPS mailbox for delivery by USPS First Class Mail to the attorney at 1779 51st St, Brooklyn, NY 11204.

Caroline Donnley

CLASSIE DOCKERY
COMMISSIONER OF DEEDS
City of New York - No. 212903
Qualified in Kings County
Commission Expires November 1, 20_15_

Sworn to before me this _15_ day of _October_ 2012

**JA390**

November 16, 2012

Hon. James Orenstein, U.S.M.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    Sasmor v. Powell, et al.
       Docket No. 11-CV-4645 (KAM) (JO)

Dear Judge Orenstein:

I inadvertently switched the two dates in the second sentence of footnote 4 on page 2 of the letter I submitted yesterday, ECF No. 59.

The corrected sentence should read:

> It relies heavily on a vacate order, which also affects two rooms from which I was evicted on July 20, 2011, but not my bedroom from which I was evicted on July 13, 2011 and not the additional rooms from which I face imminent eviction based on outstanding judgments against named former tenants.

I apologize for this mistake, any confusion that may have resulted, and the need for this correction.  Thank you very much for your kind attention.

Yours respectfully,

    /s/

Jon Sasmor,
Plaintiff, *Pro Se*
287 Franklin Avenue
Brooklyn, NY 11205
(917) 318-2619
jonathan.sasmor@gmail.com

Cc:  Monica Connell, Esq., (*via* ECF), Andrew Meier, Esq., (*via* ECF),
Kenneth Litwack, Esq., (*via* ECF), and David Lyle Stern, Esq. (*via* ECF).

**JA391**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JON SASMOR, | |
| Plaintiff | |
| v. | No. 11-CV-4645 (KAM) (JO) |
| STEVEN POWELL, Individually and as City Marshal; CHAIM GOLDBERGER a/k/a HENRY GOLDBERG; HENRY MANAGEMENT, LLC; ISAAC TEITELBAUM a/k/a ISAAC TITALBAUM; ABRAHAM SCHNEEBALG; FERN FISHER, Individually and as Deputy Chief Administrative Judge for the New York City Courts; and CAROL ALT, Individually and as Chief Clerk of the Civil Court of the City of New York, | |
| Defendants. | |

PLAINTIFF'S OBJECTIONS TO
REPORT AND RECOMMENDATION

Dated: March 15, 2013
Brooklyn, New York

Respectfully submitted,

/s/

Jon Sasmor
Plaintiff, *Pro Se*
287 Franklin Avenue
Brooklyn, NY 11205
(917) 318-2619
jonathan.sasmor@gmail.com

**JA392**

TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FIRST OBJECTION:  Property Rights Are Not Determinative of this Action . . . . . . . . . . . . . .2

    A.  Fourth Amendment Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    B.  Liberty Interests Procedural Due Process Claims . . . . . . . . . . . . . . . . . . . . . . . 5

    C.  Equal Protection Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    D.  Substantive Due Process Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SECOND OBJECTION: Collateral Estoppel Does Not Determine My Property Rights . . . . . . . . .5

    A.  The R&R Neither Recognizes, Nor Applies the Correct Standard for Collateral
    Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.  Fletcher, Diaz, and Rosenbaum Eviction Cases . . . . . . . . . . . . . . . . . . . . . . . . 6

        1.  The Appellate Term Already Has Determined That Collateral Estoppel Does Not
        Apply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

        2.  The Housing Court Already Has Determined That Collateral Estoppel Does Not
        Apply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

        3.  My Property Rights Were Not Decided . . . . . . . . . . . . . . . . . . . . . . . . .7

        4.  My Property Rights Were Not Necessarily Decided . . . . . . . . . . . . . . . . . . 8

        5.  I Did Not Have a Full and Fair Opportunity to Litigate . . . . . . . . . . . . . . . .9

    C.  Osterweil, Campos, and Skubutyte Eviction Cases . . . . . . . . . . . . . . . . . . . . . . 10

        1.  I Have Independent Rights of Possession . . . . . . . . . . . . . . . . . . . . . . . 10

        2.  Successor Estoppel Does Not Apply . . . . . . . . . . . . . . . . . . . . . . . . . . .11

        3.  There Was No Full and Fair Opportunity to Litigate . . . . . . . . . . . . . . . . . .11

    D.  The "Ronald Henry Land Trust" Eviction Proceedings All Are Nullities . . . . . . . . . 13

    E.  The R&R Does Not Consider, as Required by the United States Supreme Court, the
    Constitutional Limits of Nonparty Collateral Estoppel . . . . . . . . . . . . . . . . . . . . . . .16

        1.  Fundamental Supreme Court Precedent Limits Nonparty Preclusion . . . . . . . .16

        2.  I Did Not Become A "Party" to the Fletcher, Diaz and Rosenbaum Cases Within
          the Meaning of *Smith v. Bayer Corp.* . . . . . . . . . . . . . . . . . . . . . . . . .16

        3.  The Six *Taylor v. Sturgell* Exceptions Do Not Apply . . . . . . . . . . . . . . . . 17

**JA393**

         4.   Nonparty Preclusion Would Violate Due Process . . . . . . . . . . . . . . . . . . . . . 20

         5.   The Court Should Follow Cases that Previously Decided the Same Due Process Question Presented by this Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

   F.   The Court Should Not Apply Collateral Estoppel Because of Exceptions Listed in the Restatement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

         1.   The Thirteen Restatement Exceptions . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

         2.   Exception 28(1) Applies: No Opportunity to Appeal . . . . . . . . . . . . . . . . . .23

         3.   Exceptions 28(2) and 29(7) Apply: Unmixed Legal Issues . . . . . . . . . . . . . .24

         4.   Exception 28(3) Applies: Differences in the Quality or Extensiveness of the Procedures Followed in the Two Courts . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

         5.   Exception 28(4) Applies: Different Burdens of Proof . . . . . . . . . . . . . . . . . 24

         6.   Exception 29(2) Applies: Additional Procedural Opportunities . . . . . . . . . . . 24

         7:   Exception 29(3) Applies: I Could Have Been Joined in Housing Court . . . . . 25

         8.   Exception 29(4) Applies: Inconsistent Determinations . . . . . . . . . . . . . . . .25

         9.   Exception 29(5) Applies: Change in Relationships . . . . . . . . . . . . . . . . . . . 25

         10.   Exceptions 28(5) and 29(8) Apply: Fairness and Compelling Circumstances. .26

THIRD OBJECTION: *Res Judicata* Does Not Determine My Property Rights . . . . . . . . . . . . .26

FOURTH OBJECTION: I Have Property Rights to the Rooms . . . . . . . . . . . . . . . . . . . . . . . .27

   A.   The R&R Misconstrues N.Y. Real Prop. Acts. Law § 711 . . . . . . . . . . . . . . . . . .27

   B.   The R&R Misconstrues N.Y. City Admin. Code § 26-521 . . . . . . . . . . . . . . . . .29

   C.   My Lease Covers All the Subject Rooming Units . . . . . . . . . . . . . . . . . . . . . . . .30

   D.   R&R Does Not Discuss My rights as Tenant at Will or at Sufferance . . . . . . . . . . .32

   E.   R&R Does Not Discuss Agreement to My Tenancy Rights by Parties Claiming Ownership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

   F.   Tenancy Under State Law is Protected by the Due Process Clause . . . . . . . . . . . . . 32

FIFTH OBJECTION: My Personal Property Is Still Being Held and Is Not Moot . . . . . . . . . .32

SIXTH OBJECTION: Eviction from Osterweil, Campos, and Skubutyte Rooms is More than a "Mere Possibility". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

SEVENTH OBJECTION: Identification of Premises by a Third Party is Unreasonable . . . . . . .34

**JA394**

EIGHTH OBJECTION: I Am Not Estopped from Arguing Correctly that a Trust is Not an Entity
and Cannot Own Property in its Name . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

NINTH OBJECTION: It was Unreasonable that Defendant Powell Failed to Show His Badge and
the Warrants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

TENTH OBJECTION: The July 13 and 20, 2011 Evictions were Unreasonable Searches and
Seizures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

ELEVENTH OBJECTION: The September 20, 2011 Break-In was a Warrantless Search and was
Not *De Minimis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

TWELFTH OBJECTION: Defendant Powell Should Not be Accorded Judgment on a Qualified
Immunity Affirmative Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

THIRTEENTH OBJECTION: Section 1985(3) Claims Should Be Dismissed Without Prejudice. .38

FOURTEENTH OBJECTION: State Law Claims Should be Retained . . . . . . . . . . . . . . . . . .39

FIFTEENTH OBJECTION: Private Defendants Should Be Retained . . . . . . . . . . . . . . . . . . .39

SIXTEENTH OBJECTION: Defendants' Other Defenses Do Not Have Merit . . . . . . . . . . . . .39

SEVENTEENTH OBJECTION: My Claims Are Appropriately Raised in Federal Court . . . . . . .39

EIGHTEENTH OBJECTION: The R&R Makes Factual Errors . . . . . . . . . . . . . . . . . . . . . . .41

NINETEENTH OBJECTION: Preliminary Injunction Should Be Granted . . . . . . . . . . . . . . . .41

TWENTIETH OBJECTION: If Any Claim is Dismissed, Leave to Amend Should be Granted . . 41

REQUEST FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

## INTRODUCTION

Magistrate Judge Orenstein's Report and Recommendation ("R&R") dated February 21, 2013,[1] ECF 61, recommends "that the court deny Sasmor's motion for a preliminary injunction and dismiss the Amended Complaint in its entirety, with prejudice as to all of the federal claims." R&R at *1.  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), I respectfully submit these objections to the Report and Recommendation, in which I object to specified facts and to other characterizations in the R&R, and also to the entirety of the R&R's legal analysis.  Among these objections: the R&R fails to consider several of my § 1983 claims, the R&R applies nonparty collateral estoppel inappropriately and outside the bounds of Supreme Court precedent, and the R&R also fails to recognize property rights plainly provided by New York statute.

These objections require *de novo* review.  *See* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."); *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291 (NGG) (SMG) (E.D.N.Y. Apr. 18, 2012) (where plaintiff filed objections to each portion of R&R, conducting *de novo* review).  Thank you for considering these objections.

---

[1] By Order dated March 6, 2013, the Court extended the filing deadline for these objections until March 15, 2013. Order granting in part and denying in part ECF 62.

**JA396**

Case 1:11-cv-04645-KAM-JO   Document 63   Filed 03/15/13   Page 6 of 46 PageID #: 1547

OBJECTIONS

FIRST OBJECTION:  Property Rights Are Not Determinative of this Action.

"To prevail on a [42 U.S.C.] § 1983 claim, a plaintiff must establish that a person acting

under color of state law deprived him of a federal right."  *Thomas v. Roach*, 165 F. 3d 137, 142

(2d Cir. 1999) (citations omitted).  My § 1983 complaint alleges violations of the following federal

rights:

A) Fourth Amendment rights to be secure from unreasonable searches and seizures, from
   warrants issued without probable cause, and from imprecise warrants, Verif. Am. Compl.
   ¶¶ 52, 133, 136, 139, 142, 145;

B) Fourteenth Amendment right to procedural due process based upon liberty interests, *Id.* ¶¶
   51, 134, 137, 140, 143;

C) Fourteenth Amendment right to equal protection, *Id.* ¶¶ 2, 3, 70, 134, 137, 143;

D) Fourteenth Amendment right to substantive due process based upon liberty interests, *Id.* ¶¶
   51, 134, 137, 140, 143;

E) Fourteenth Amendment right to procedural due process based upon property interests, *Id.*
   ¶¶ 36-50, 134, 137, 140, 143;

The R&R analyzes the elements of *only one of the five* federal rights for which I claim

protection — the right labelled (E) above.  *See* R&R at *10 (setting forth elements of "deprivation

of a property right under § 1983"); *id.* at *10-15 (discussing "property interest" element.[2]  The R&R

does not address the elements for the remaining four federal rights — (A), (B), (C), and (D) above

— under each of which I *also* assert § 1983 claims:

A. Fourth Amendment Claims

A Fourth Amendment right depends on a "legitimate expectation of
privacy." *Rakas v. Illinois*, 439 U.S. 128, 143 and n.12 (1978). The inquiry into
legitimate expectation of privacy requires two questions: (1) "whether the individual,
by his conduct, has 'exhibited an actual (subjective) expectation of privacy,'" and (2)
"whether the individual's subjective expectation of privacy is 'one that society is

---

[2] With one possible exception that is discussed below, *infra* at 39, the Report and Recommendation appears to rely
entirely on the "deprivation of a federal right" prong of § 1983 rather than the "color of state law" prong, see *Roach*,
165 F.3d at 142. Therefore, I discuss "deprivation of a federal right" here. For discussion of "color of state law," see
ECF 51-1 at 42 n.71; ECF 52-1 at 6-9; ECF 53-1 at 24-5; ECF 54-2 at 31-4; ECF 55-1 at 19.

2

**JA397**

prepared to recognize as "reasonable.""" *Smith v. Maryland*, 442 U.S. 735 (1979)
(quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).
    "Legitimation of expectations of privacy by law must have a source outside
of the Fourth Amendment, either by reference to concepts of real or personal
property law or to understandings that are recognized and permitted by society."
*Rakas*, 439 U.S. at 143 n.12.

ECF 51-1 at 25-6.

    The R&R makes no inquiry whatsoever into my "legitimate expectation of privacy" as

required by the Supreme Court, *Rakas*, 439 U.S. at 143 and n.12. Thus, though the R&R describes

the Fourth Amendment as "[a]t the heart of all the claims now before the court," R&R at *7, the

R&R fails to consider my Fourth Amendment protected interest under the correct standard —

"legitimate expectation of privacy."[3]

    The Supreme Court's definition of Fourth Amendment privacy rights, which includes

"understandings that are recognized and permitted by society," *Rakas*, 439 U.S. at 143 n.12, shows

that Fourth Amendment rights extend *beyond* property rights and thus are *more expansive* than

property rights. *See Minnesota v. Olson*, 495 U.S. 91, 99 (1990) (private places to sleep convey

legitimate expectation of privacy); *United States v. Martin*, No. 09-CR-747, slip op. at *8-9 (D.

Utah Jan. 14, 2010) (invitation to live in a bedroom by a person with apparent authority to make

the invitation, even where ownership of building in dispute during foreclosure, conveys legitimate

expectation of privacy); *Ostensen v. County of Suffolk*, 378 F. Supp. 2d 140, 145-6 (E.D.N.Y.

2005) (plaintiff who occupied house as guest of owner for a year and five months and considered it

her home had legitimate expectation of privacy, even in the absence of property rights under New

York law), *aff'd* 236 F. App'x 651 (2d Cir. 2007).[4] Thus, while, as a tenant, I *do* have property

rights that trigger a "legitimate expectation of privacy," *see infra* at 5-33, I also satisfy the

---

[3] The R&R errs to the extent it implies that I would have to own my home in order to have Fourth Amendment rights,
R&R at *7. *Compare* R&R at *7 ("the essential flaw with all of Sasmor's federal claims [is that] the home into which
he wishes to retreat is not his own.") *with Minnesota v. Olson*, 495 U.S. 91, 97-8 (1990) ("a person can have a legally
sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable
governmental intrusion into that place.") (quoting *Rakas v. Illinois*, 439 U.S. 128, 142 (1978)). *See also Minnesota v.
Carter*, 525 U.S. 83, 95-6 (1998) (Scalia, J., concurring) ("People call a house 'their' home when legal title is in the
bank, when they rent it, and even when they merely occupy it rent free—*so long as they actually live there*.")

[4] Neither of the two "Thirty Day Rule" statutes discussed below as among the bases for my property rights, *infra* at 27-
30, would have applied to the determination of the property rights in *Ostensen*, which involved a dwelling that was
neither a rooming house nor a hotel and also was not in New York City. *Ostensen*, 378 F. Supp. 2d at 144 (house in
Suffolk County). N.Y. Real Prop. Acts. § 711 creates property rights only for residents of rooming houses and hotels,
while N.Y. City Admin. Code § 26-521 applies only in New York City. *See infra* at 27-30.

**JA398**

"legitimate expectation of privacy" element of my Fourth Amendment claims *independently of my property rights* through "understandings that are recognized and permitted by society," *Rakas*, 439 U.S. at 143 n.12. *See* ECF 51-1 at 25-30, 52-1 at 9-14, 53-1 at 3-7, 54-2 at 10-18, 55-1 at 21 (Plaintiff's memoranda discussing "legitimate expectation of privacy").

The Fourth Amendment provides in part, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Though this case directly concerns the language of specific warrants, Verif. Am. Compl. ¶¶ 1-4, 6, and though I have alleged a legitimate expectation of privacy which accords me the protections of the Fourth Amendment, *see supra* at 2-3 and n.3, the R&R does not discuss my claims and arguments under the Fourth Amendment's Warrants Clause. *See* ECF 51-1 at 31-3; ECF 52-1 at 15-16; ECF 53-1 at 8-10; ECF 54-2 at 18-23 (Plaintiff's memoranda discussing Warrants Clause).

The Fourth Amendment also provides in part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . ." Because I have a legitimate expectation of privacy, *see supra* at 2-3 and n.3, the Fourth Amendment accords me protection from unreasonable searches and seizures.[5]

The July 13 and 20, 2011 evictions, as well as the additional imminent imminent evictions, constitute both searches and seizures. ECF 51-1 at 30; ECF 52-1 at 14; ECF 53-1 at 8; ECF 54-2 at 22-3. Additionally, the September 20, 2011 break-in constitutes a search. ECF 52-1 at 14; ECF 53-1 at 8. I have argued seven reasons why the alleged searches and seizures were unreasonable. ECF 52-1 at 15-23; ECF 53-1 at 8-16.

The R&R does not consider my claims that the evictions constitute searches and seizures. The R&R also does not consider several of the reasons why I claim the alleged searches and seizures were unreasonable (including, notably, the issuance and execution of "all persons" "general warrants"). Nor does the R&R consider "the totality of the circumstances" as required by the

---

[5] Property interests are required only for those of my Fourth Amendment claims that relate to "seizures" — because there must be property to be seized. *Ostensen v. County of Suffolk*, 378 F. Supp. 2d 140, 147-8 (E.D.N.Y. 2005). However, no such limitation to property rights applies to my Fourth Amendment claims that relate to "searches" — for which a "legitimate expectation of privacy entitles me to protection. *Id.* at 145-6.

**JA399**

Supreme Court. *See* ECF 53-1 at 15 (reasonableness "is measured in objective terms by examining the totality of the circumstances.") (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (citation omitted)). Therefore, I respectfully request *de novo* review.

### B. Liberty Interests Procedural Due Process Claims

I have asserted injury to two protected liberty interests: (1) liberty from general warrants, and (2) liberty from enforcement of judgments by which I am not bound. ECF 51-1 at 34-5, 42; ECF 52-1 at 23-5, 31-2; ECF 53-1 at 17-18, 24; ECF 54-2 at 23-5, 31. The R&R does not address my procedural due process claims based on protected liberty interests. Therefore, I respectfully request *de novo* review.

### C. Equal Protection Claims

I have alleged that my rights to equal protection were violated because I was included on eviction warrants in the category of "all other persons" but was not accorded the equal process as the named parties in the underlying eviction proceedings and judgments. ECF 51-1 at 40-1; ECF 52-1 at 30-1; ECF 53-1 at 23-4; ECF 54-2 at 29-30. The R&R does not address my equal protection claims. Therefore, I respectfully request *de novo* review.

### D. Substantive Due Process Claims

I have argued that the liberty interests discussed above "are sufficiently fundamental and deeply rooted in this Nation's history and traditions to trigger the guarantees of substantive due process." ECF 51-1 at 41-2; ECF 52-1 at 31-2; ECF 53-1 at 24; ECF 54-2 at 30-1. The R&R does not address my substantive due process claims. Therefore, I respectfully request *de novo* review.

## SECOND OBJECTION: Collateral Estoppel Does Not Determine My Property Rights

### A. The R&R Neither Recognizes, Nor Applies the Correct Standard for Collateral Estoppel

"Claim preclusion, like issue preclusion, is an affirmative defense. Ordinarily, it is incumbent on the defendant to plead and prove such a defense, and we have never recognized claim preclusion as an exception to that general rule." *Taylor v. Sturgell*, 553 U.S. 880, ____, 128

**JA400**

S.Ct. 2161, 2179-80 (2008) (citing, *inter alia*, 18 Wright & Miller § 4405, p. 83 ("[A] party

asserting preclusion must carry the burden of establishing all necessary elements.").

    The R&R neither recognizes, nor applies the correct standard for collateral estoppel as *an*

*affirmative defense.*[6] For all the reasons set forth below, the "face of the complaint" does not

support judgment on this affirmative defense at the pleadings stage.

    B. Fletcher, Diaz, and Rosenbaum Eviction Cases[7]

        1. The Appellate Term Already Has Determined That Collateral Estoppel Does Not
        Apply

    In each of the Fletcher, Diaz, and Rosenbaum cases, the Appellate Term, on its own motion,

dismissed Plaintiff's nonparty appeals on the grounds that Plaintiff was "not aggrieved by the final

judgment." *See* R&R at *4; Meier Decl. Ex. 12 at 9, Ex. 13 at 9, Ex. 14 at 5 (citing N.Y. C.P.L.R.

5511). However, under New York law, one is aggrieved when "a specific finding at [the] trial

[level] might prejudice a party in a future proceeding by way of collateral estoppel." *Feldman v.*

*Planning Bd. of the Town of Rochester*, 99 A.D.3d 1161, 1165 (N.Y. App. Div. 2012) (quoting

*Lincoln v. Austic*, 60 A.D.2d 487, 490 (N.Y. App. Div. 1978), *lv. denied* 44 N.Y.2d 644 (1978)).

By determining that I was not aggrieved, the Appellate Term necessarily determined that I would

not be "prejudice[d] in a future proceeding by way of collateral estoppel," *id.*

    "[28 U.S.C.] Section 1738 requires federal courts to give the same preclusive effect to state

court judgments that those judgments would be given in the courts of the State from which the

---

[6]    "Because the burden is on the defendants to prove their affirmative defense, '[t]he pleading
requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate
potential affirmative defenses . . . and to affirmatively plead facts in avoidance of such defenses."
*St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 157 (E.D.N.Y. 2010) (quoting *Abbas v.*
*Dixon*, 480 F.3d 636, 640 (2d Cir. 2007)) (second ellipsis added). Thus, while dismissal based on
an affirmative defense is frequently premature at the motion to dismiss stage, "an affirmative defense
may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary
judgment procedure, if the defense appears on the face of the complaint." *LaFlamme v. Societe Air*
*France*, 702 F. Supp. 2d 136, 149 (E.D.N.Y. 2010) (Matsumoto, J.) (quoting *McKenna v. Wright*,
386 F.3d 432, 436 (2d Cir. 2004)). "A plaintiff, however, is entitled to all reasonable inferences
from the facts alleged that defeat the immunity [or other affirmative] defense." *LaFlamme*, 702 F.
Supp. 2d at 149 (citing *McKenna*, 386 F.3d at 436).
ECF 52-1 at 38-9.

[7] The R&R discusses the Fletcher, Diaz, and Rosenbaum cases in the section called "The Judicial Defendants," R&R at
*10-13. However, my claims against the Judicial Defendants are not based upon my past evictions from the Fletcher,
Diaz, and Rosenbaum room — but rather upon the additional imminent evictions from the Osterweil, Campos, and
Skubutyte rooms. ECF 51-1 at 11-12, 43.

**JA401**

judgments emerged." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). This Court therefore must give full faith and credit to the Appellate Term's determination that the Fletcher, Diaz, and Rosenbaum cases do not bind me collaterally.

### 2. The Housing Court Already Has Determined That Collateral Estoppel Does Not Apply.

N.Y. C.P.L.R. 1012(a)(2) permits intervention as of right "when the representation of the person's interest by the parties is or may be inadequate and the person is or may be bound by the judgment." In the Fletcher, Diaz, and Rosenbaum cases, the representation of the defense clearly was inadequate because all three former tenants defaulted. Thus, if I am or may be bound by the judgment, I would have been permitted to intervene. Since the Housing Court did not permit me to intervene, it necessarily determined that I am not bound by its determination in the Fletcher, Diaz, and Rosenbaum cases.

### 3. My Property Rights Were Not Decided

In the Fletcher and Diaz cases, the transcript of the hearing shows that the only question the Court considered before refusing to let me participate was: "Do you have a case against you?" ECF 56-19 at *4-5. Upon determining that I was not a party to the Fletcher and Diaz cases but was party to another one, the Housing Court refused to accord me a hearing and instructed me, "you deal with your issues in your case. You're not part of this case." *Id.* at *4. As the transcript shows, *id.* at *4-6, this ruling was not a determination on the merits of my property rights. Moreover, the Housing Court's reference to judgments against the "tenants of record," Meier Decl. Ex. 12 at 9, Ex. 13 at 9, do not on their face mean any more than that the judgments ran against the tenants who were listed in the record of each case — Fletcher and Diaz — which those judgments did. ECF 56-18 at *1-2.

In the Rosenbaum case, a slightly different event occurred. In its May 31, 2011 Decision/Order, the Housing Court determined that I had "attempted to file a motion to dismiss the petition on behalf of respondent Rosenbaum herein," ECF 56-20 at *1, but that I "ha[d] no standing to represent respondent Rosenbaum," *id.* Therefore, the Housing Court awarded a default judgment

**JA402**

against Rosenbaum. *Id.* at *1-2. The Housing Court simply determined that I could not represent Rosenbaum as an attorney. *Id.* It did not make any determination of my own personal property rights in doing so. *Id.*

In all three of the Fletcher, Diaz, and Rosenbaum cases, the Appellate Term on appeal determined no more than that I was "not aggrieved." As discussed above, *supra* at 6-7, this determination that I was "not aggrieved" indicates *not* that the Appellate Term had determined my rights — but rather that the Appellate Term had determined that these cases *did not affect my rights.*

### 4. My Property Rights Were Not Necessarily Decided

Though "neither the Housing Court nor the appellate court explicitly held that Sasmor lacked a property interest," R&R at *11, the Report and Recommendation infers that both courts necessarily conducted an inquiry into "necessary parties" and determined my property rights through such an inquiry. *Id.* at *11-12. However, there is no evidence in the record that the state courts did so in the Fletcher, Diaz, and Rosenbaum cases. "Necessary parties" is not an inquiry conducted in every case. If it were so, every judgment would be binding on the whole world — for implicitly, each Court would have decided in each case that everyone else but the named parties was not a "necessary party." Thus, "necessary parties" are not "necessarily decided" for collateral estoppel purposes.

In the Fletcher and Diaz cases, the Court determined that I was party to a different case other than those cases. ECF 56-19 at *4-6. Therefore, it explicitly allowed me to raise my rights elsewhere — at least in the Housing Court case where I was a party. *Id.* In the Rosenbaum case, the Court only determined that I could not represent Rosenbaum — but did not consider whether I was a necessary party myself. Neither Housing Court determination construed my appearance as a motion to dismiss the case *as against the named respondent* for failure to include a necessary party. Such a motion would trigger the "necessary parties" inquiry which was conducted in *M&M Crown*

**JA403**

*Realty, LLC v. Griffith*, 2011 WL 3370860, at *3 (N.Y. City Civ. Ct. June 17, 2011), but such a
motion never was made or considered in any of the eviction cases related to this action.[8]

Moreover, the Appellate Term had no need to determine my property rights — for it had
determined already that I would not be "aggrieved" or bound by the judgment. *Supra* at 6-7. Even
if I had property rights, the Appellate Term still could have made the identical ruling — that I was
not aggrieved by the judgment because not bound by it. *Cf. Glass v. Estate of Gold*, 48 A.D.3d
746, 747 (N.Y. App. Div. 2008) ("The absence of a necessary party in a mortgage foreclosure
action simply leaves that party's rights unaffected by the judgment of foreclosure and sale.")
(citations omitted). Anyone looking at the *judgments* ought to be able to determine that I am not
aggrieved — for the judgments on their face determine the rights of Fletcher, Diaz, and Rosenbaum
only — not my rights. ECF 56-18 at *1-3.

### 5. I Did Not Have a Full and Fair Opportunity to Litigate

My *unsuccessful attempts to participate* in the Fletcher, Diaz, and Rosenbaum cases cannot
be characterized as "a full and fair opportunity to litigate" as required for collateral estoppel. This
case is distinguishable from cases where intervention is permitted and *a hearing is held on the
rights of the intervenor* — such as the trial that was held in *Cobert Constr. Corp. v. Bassett*, 109
Misc. 2d 119, 119-20 (N.Y. App. Term 1981) (cited in R&R at *11). In the Fletcher and Diaz
cases, I was denied opportunity to speak and asked to "step out," ECF 56-19 at *6, simply because
I was not a named party to the case, *id.* My property interest was not discussed, nor was I given
*any* opportunity to present evidence about it. Likewise, the question of my property rights was not
litigated at all in the Rosenbaum case — as the only question the Court heard with respect to me
was whether I had "standing to represent respondent Rosenbaum," ECF 56-20 at *1, which it
determined I did not.

---

[8] There never was any burden upon me — as a nonparty — to make a motion to dismiss for failure to include
necessary parties. *Martin v. Wilks*, 490 U.S. 755, 763 (1989) ("The law does not impose upon any person absolutely
entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger. . . . Unless duly
summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein
will not affect his legal rights.") (quoting *Chase National Bank v. Norwalk*, 291 U.S. 431, 441 (1934)). *See infra* at
10-11, 16-21 (no privity here); *see also Kaufman v. Lilly & Co.*, 65 N.Y.2d 449, 456-7 (1985) ("An issue is not
actually litigated [and collateral estoppel does not apply] if, for example, there has been . . . a failure to place a matter
in issue by proper pleading. . .") (citations omitted).

**JA404**

In all three cases, no jury trial was held nor was I given opportunity to demand a jury trial, as I would have been were I made a party. *See Gilberg v. Barbieri*, 53 N.Y.2d 285, 293-4 (1981) (brief nonjury trial in prior case insufficient to warrant collateral estoppel on issue triable by jury in subsequent civil case).

The Housing Court never obtained personal jurisdiction over me in any of the cases against former tenants. Moreover, while it could determine, as between the named parties, whether exclusion of necessary parties required dismissal, it lacked jurisdiction to adjudicate property rights as to a nonparty not made a party — even if there had been a hearing on "necessary parties" — which there was not.

Moreover, because the judgments in the Fletcher, Diaz, and Rosenbaum cases were entered on default, they have no collateral estoppel value against anyone. *Chambers v. City of N.Y.*, 309 A.D.2d 81, 85 (N.Y. App. Div. 2003) ("An issue is not actually litigated if * * * there has been a default") (quoting *Kaufman v. Lilly & Co.*, 65 N.Y.2d 449, 456-7 (1985) ("An issue is not actually litigated if, for example, there has been a default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation.") (citations omitted)).

Furthermore, the Appellate Term's *sua sponte* dismissals of my nonparty appeals do not constitute "a full and fair opportunity to litigate." No briefs were submitted and no appeal was heard in any of the three cases. No papers whatsoever were submitted to the Appellate Term in the Rosenbaum case — the case related to my bedroom from which I have been locked out.

### C. Osterweil, Campos, and Skubutyte Eviction Cases

#### 1. I Have Independent Rights of Possession

The R&R also suggests that collateral estoppel should be applied against me from the Osterweil, Campos, and Skubutyte eviction cases, R&R at *14-15, and that this estoppel is the basis for dismissal with prejudice as to the additional imminent evictions, *id.* at *14. However, the R&R recognizes that I also claim independent rights of possession not derived from the rights of Osterweil, Skubutyte, and Campos, R&R at *14 n.5, and that if I had independent rights, collateral estoppel would not apply, *id.* In my fourth objection below, *infra* at 27-32, I object to the R&R's

**JA405**

analysis of my independent rights.  I agree with the R&R that my independent rights are sufficient to defeat collateral estoppel.

### 2.  Successor Estoppel Does Not Apply

I first acquired property rights in the subject rooms at the time I moved into 287 Franklin Avenue in April 2010.  *See infra* at 30-1. These rights were acknowledged by my Housing Court opponent, "Ronald Henry Land Trust," in November 2010 in its nonpayment petition in which it claimed that, "pursuant to a Written rental agreement," ECF 56-17, I was tenant of "ENTIRE HOUSE," *id.*  Since I had property rights before the institution of the Osterweil, Campos, and Skubutyte cases, successor estoppel does not apply.  *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 487 (1979) ("an assignee is not privy to a judgment where the succession to the rights affected thereby has taken place prior to the institution of the suit against the assignor. In the present case, since there is no dispute that the assignment was made well before commencement of the consumer fraud action against plaintiff's assignor, plaintiff is not bound by the terms of that judgment.") (citations omitted).  *See also infra* at 18 (further discussion of inapplicability of successor estoppel).

### 3.  There Was No Full and Fair Opportunity to Litigate

The R&R concludes that simply because "those former occupants [Osterweil, Campos, and Skubutyte] themselves appeared in the Housing Court to defend against the eviction proceedings," R&R at *14 (citing Sasmor Decl. ¶ 39), therefore they "had a full and fair opportunity to litigate the merits of the eviction proceedings in state court," *id.*  The R&R notes that "Sasmor's declaration is extraneous to the pleadings and therefore not part of the record for purposes of analyzing the motions to dismiss," *id.* at *14 n.4, but nonetheless uses only my declaration to support the critical legal conclusion quoted at the beginning of this paragraph, R&R at *14 (citing Sasmor Decl. ¶ 39).

If I were exclusively in privity with Osterweil, Campos, and Skubutyte — which I am not, *see supra* at 10-11 and *infra* at 16-21 (discussing privity) — I might eventually have the burden of proving that Osterweil, Campos, and Skubutyte did not have a full and fair opportunity to be heard,

**JA406**

*see Kaufman,* 65 N.Y.2d at 456 ("The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action."). However, I am not required to do so *at the pleadings stage. Supra* at 5-6 (collateral estoppel is an affirmative defense).

Nonetheless, I make the following offer of facts that could defeat the collateral estoppel defense to illustrate that dismissal is not appropriate at the pleading stage. For Campos and Skubutyte, English is not their first language. Campos required a Spanish interpreter at Housing Court. Osterweil, Campos, and Skubutyte all represented themselves. None intended to pursue the eviction litigation to the end of all appeals as I might have in their position; instead all three have moved away, and thus did not have incentive to litigate their appeals. *See Thomas v. Venditto,* Nos. 11-CV-6084 (JS) (ETB), 12-CV-0065 (JS) (ETB), slip op. at II.A.1.b. (E.D.N.Y. Feb. 21, 2013) ("In determining whether the party against whom preclusion is sought was afforded a 'full and fair opportunity' to litigate in the prior proceeding, a court must consider 'the realities of the [prior] litigation, including the context and other circumstances which . . . may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him.'") (quoting *Ryan v. N.Y. Tele. Co.,* 62 N.Y.2d 494, 501 (1984)). *See also Thomas,* slip op. at II.A.1.b. (""If a party has not had an opportunity to appeal an adverse finding, then it has not a full and fair opportunity to litigate that issue.") (quoting *Johnson v. Watkins,* 101 F.3d 792, 795 (2d Cir. 1996)).

Moreover, Campos did not submit any opposition to his opponent's summary judgment motion; therefore the judgment against him was deemed by the Appellate Term to be rendered on default and unappealable. *Ronald Henry Land Trust v. Campos,* 2011 NY Slip Op 82284(U) (N.Y. App. Term Aug. 24, 2011) ("Since appellant submitted no papers in opposition to the motion of respondent giving rise to the order and final judgment being appealed, the order and final judgment are deemed entered on default and are not appealable.") (citations omitted). Because the Campos

**JA407**

judgment was "rendered on default," *id.*, it certainly has no collateral estoppel value. *Kaufman*, 65

N.Y.2d at 456-7; *Chambers*, 309 A.D.2d at 85.  *See also Thomas,* slip op. at II.A.1.b. (""If a party

has not had an opportunity to appeal an adverse finding, then it has not a full and fair opportunity

to litigate that issue.") (quoting *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996)).

### D.  The "Ronald Henry Land Trust" Eviction Proceedings All Are Nullities

"From its very nature, the rule that a judgment on the merits is binding on the parties to the

litigation assumes the existence of such parties." *Little Shoppe Around the Corner v. Carl*, 80

Misc. 2d 717, 718 (N.Y. County Ct. 1975) (quoting *MacAffer v. Boston & Maine R.R.*, 268 N.Y.

400, 403 (1935)).  "Absent a party plaintiff, 'the judgment is in such case futile, because in truth no

action is then pending between the parties named. If the plaintiff in that action was not in existence,

the defendants named in the summons and complaint were, in fact, not required to appear in court

and answer the complaint.'" *Little Shoppe Around the Corner*, 80 Misc. 2d at 719 (quoting

*MacAffer*, 268 N.Y. at 403).

In each of the eviction cases that the R&R uses against me by collateral estoppel, the

named petitioner was "Ronald Henry Land Trust."  However, a trust in the name of the trust, such

as "Ronald Henry Land Trust," is not a proper party to a lawsuit in New York. *Limouze v M. M.*

*& P. Maritime Advancement, Training, Education, and Safety Pgm.*, 397 F. Supp 784, 789-90 (D.

Md. 1975) (dismissing trust as improper party under New York law).  Thus, pursuant to 28

U.S.C. § 1738, this Court should accord those proceedings the same preclusive effect they would be

given by New York courts — none. *See Gov't Empls. Ins. Co. v. Estate of Sosnov*, 244 A.D.2d

485, 486 (N.Y. App. Div. 1997) (absent proper party on one side; order appealed from declared a

nullity and appeal dismissed).  Because no "in truth no action [wa]s then pending," *MacAffer*, 268

N.Y. at 403, no issues were necessarily decided in any of the eviction proceedings at issue — the

proceedings were a "nullity" *ab initio. Little Shoppe Around the Corner*, 80 Misc. 2d at 719.

It is the fundamental law of trusts that a trust is *not* an entity itself, but is, instead, *a*

*relationship between individuals* — named individual trustee(s) who hold certain property for the

benefit of named individual beneficiary(ies) at a later time.  Hess, Bogert & Bogert, Trusts and

**JA408**

Trustees § 712 at 273 (3d ed 2009) ("A trust is not a legal person. . ."); *Matter of Mannara*, 5 Misc.
3d 556, 558 (Sur. Ct. 2004) ("A trust is a 'fiduciary relationship in which one person holds a
property interest, subject to an equitable obligation to keep or use that interest for the benefit of
another'") (quoting Bogert, Trusts and Trustees § 1 at 1 (2d ed 1984)).  Also fundamental in New
York is that a trust, in the name of the trust, is not a proper party to legal proceedings, *Limouze*,
397 F. Supp. at 789-90, nor may a trust hold property in the name of the trust, N.Y. Est. Powers &
Trusts Law § 7-2.1(a), (c) (with exceptions that parties agree do not apply, trust cannot hold
property in the name of the trust; instead, property must be held in the name of the trustee).

 The R&R, however, does not address the merits of this issue because it concludes that
"Sasmor is also estopped from prosecuting the legal theory on which he bases this claim — namely,
that the Trust is 'not a person or entity itself and is not capable of owning property in its name[.]'"
R&R at *17 (quoting Verif. Am. Compl. ¶ 139).  The R&R then quotes — and adopts — the
Housing Court's post-trial determination, in the eviction case in which I am a party, that "a trust is
a legal entity capable of owning property or bringing a lawsuit."  R&R at *17 (quoting ECF 58, Ex.
A at 10).

 The R&R also cites to the two authorities cited by the Housing Court — *In re Ihmsen's
Estate*, 3 N.Y.S.2d 125 (App. Div. 1938); *Bedford Apts. Co. v. Coutts*, NYLJ, Nov. 30, 2000, at 29,
Col. 6 (App. Term).  R&R at *17.  However, neither *Ihmsen* nor *Bedford* supports the proposition
for which the Housing Court, and now the R&R, have cited them.  *Ihmsen* in dictum describes
uses the word "entity" to describe a trust — before determining that no trust ever was created in
that case. 3 N.Y.S.2d at 127-8.  *Bedford Apts.* involved a trade name, not a trust.  *See* ECF 55-1 at
13 n.25 (discussing *Bedford Apts.* in detail); ECF 57-2 (Bedford Apts. decision); ECF 57-3
(Bedford Apts. trade name deed).  Neither *Ihmsen* nor *Bedford Apts.* suggests a decision about
trusts intended judicially to create a new form of entity and new form of property ownership in
New York.

 I have appealed the Housing Court's decision, ECF 58, Ex. A, and my appeal is pending.
ECF 59 and 59-1.  While "the mere pendency of an appeal does not prevent the use of the

**JA409**

challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding," *Amica Mut. Ins. Co. v. Jones*, 85 A.D.2d 727, 728 (N.Y. App. Div. 1981), "it may not necessarily have been wise" to apply estoppel where "there was substantial doubt that Trial Term's judgment would survive scrutiny on appeal, *id.* at 728-9. I respectfully submit that it might embarrass this Court to adopt the Housing Court's analysis of trusts. In effect, this Court would join the Housing Court in creating a new form of corporate entity in New York — the Trust — and would endorse concealed property ownership in Trusts in such a way as has been prohibited by the New York Legislature. N.Y. Est. Powers & Trusts Law § 7-2.1(a), (c).[9]

Furthermore, the Housing Court's decision does not support collateral estoppel because it determines a pure question of law. *Held v. N.Y. State Workers' Compensation Bd.*, 58 A.D.3d 971, 972-3 (N.Y. App. Div. 2009) ("The interpretation of a statute presents a pure question of law and, as a result, collateral estoppel would not apply. . .") (citing *American Home Assur. Co. v International Ins. Co.*, 90 N.Y.2d 433, 440 (1997); *Brown v State*, 9 A.D.3d 23, 27 n.2 (N.Y. App. Div. 2004)).

Finally, the "Ronald Henry Land Trust" proceedings are subject to collateral attack under federal law because they are "not voidable merely, but void." *Noble v. Union River Logging R. Co.*, 147 U.S. 165, 173 (1893) ("It is true that in every proceeding of a judicial nature, there are one or more facts which are strictly jurisdictional, the existence of which is necessary to the validity of the proceedings, and without which the act of the court is a mere nullity. . . [providing eight examples of proceedings, each analogous to conveying property to something that cannot own property, which are] not voidable merely, but void. In these and similar cases the action of the court or officer fails for want of jurisdiction over the person or subject-matter. The proceeding is a nullity, and its invalidity may be shown in a collateral proceeding.") (citations omitted).

---

[9] *See also Canigiani v. Bd. of Assessors*, 98 A.D.2d 233, 248 (N.Y. App. Div. 1983) ("[Collateral estoppel] is only applicable where the [prior determination] is not otherwise barred by a valid and applicable statute. The doctrine cannot be used to negate an act of the Legislature which validly prohibits the use of the State rates in a particular proceeding.").

**JA410**

**E.  The R&R Does Not Consider, as Required by the United States Supreme Court, the Constitutional Limits of Nonparty Collateral Estoppel**

**1.  Fundamental Supreme Court Precedent Limits Nonparty Preclusion**

> It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process. *Pennoyer v. Neff,* 95 U.S. 714; 1 Freeman on Judgments (5th ed.), § 407. A judgment rendered in such circumstances is not entitled to the full faith and credit which the Constitution and statute of the United States, R.S. § 905, 28 U.S.C. § 687, prescribe, *Pennoyer v. Neff, supra; Lafayette Ins. Co. v. French,* 18 How. 404; *Hall v. Lanning,* 91 U.S. 160; *Baker v. Baker, Eccles & Co.,* 242 U.S. 394; and judicial action enforcing it against the person or property of the absent party is not that due process which the Fifth and Fourteenth Amendments require. *Postal Telegraph Cable Co. v. Newport,* 247 U.S. 464; *Old Wayne Mutual Life Assn. v. McDonough,* 204 U.S. 8.

*Hansberry v. Lee,* 311 U.S. 32, 40-1 (1940).

> A court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions. See, *e.g.,* 18A Wright & Miller § 4449, at 330. The importance of this rule and the narrowness of its exceptions go hand in hand. We have repeatedly "emphasize[d] the fundamental nature of the general rule" that only parties can be bound by prior judgments; accordingly, we have taken a "constrained approach to nonparty preclusion." *Taylor v. Sturgell,* 553 U.S. 880, 898, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008).

*Smith v. Bayer Corp.,* ___ U.S. ___, 131 S.Ct. 2368, 2379 (2011).  Thus, before applying nonparty preclusion, the Court must determine that doing so would not violate due process.  *Taylor,* 553 U.S. at ___, 128 S.Ct. at 2171; *Richards v. Jefferson County,* 517 U.S. 793, 797 (1996); *Hansberry,* 311 U.S. at 37.[10]

**2.  I Did Not Become A "Party" to the Fletcher, Diaz and Rosenbaum Cases Within the Meaning of *Smith v. Bayer Corp.***

In *Smith v. Bayer Corp.,* 131 S. Ct. at 2379-80, Bayer Corp. sought a preclusive effect against a nonparty based upon a decision in a prior case denying class certification.  *Id.*  Though a class member could be bound were certification granted, the Supreme Court held that a prospective class member did not become bound where certification was denied, and thus, where the prospective class member never officially was made a party.  *Id.*

---

[10] *See also Gilberg v. Barbieri,* 53 N.Y.2d 285, 291 (1981) ("Due process, of course, would not permit a litigant to be bound by an adverse determination made in a prior proceeding to which he was not a party or in privity with a party.") (citations omitted); *Gramatan Home Investors Corp. v. Lopez,* 46 N.Y.2d 481, 487 (1979) ("Considerations of due process prohibit personally binding a party by the results of an action in which that party has never been afforded an opportunity to be heard.").

**JA411**

To the extent that the R&R recommends that I be bound by my unsuccessful attempts to intervene in the Fletcher, Diaz, and Rosenbaum cases, R&R at *10-13, the R&R "ill-comports with any proper understanding of what a 'party' is. In general, '[a] "party" to litigation is "[o]ne by or against whom a lawsuit is brought,"' or one who 'become[s] a party by intervention, substitution, or third-party practice.'" *Smith*, ___ U.S. at ___, 131 S.Ct. at 2379.  Since I never became a party by intervention, I am not bound.  *Id.  See also Greater N.Y. Health Care Facilities Ass'n v. DeBuono*, 91 N.Y.2d 716, 721 (1998) ("a *successful* intervenor becomes a party for all purposes") (emphasis in original).

The R&R disregards my "formal status in the Housing Court and appellate proceedings," R&R at *12.  Thus, the R&R disregards the "principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry*, 311 U.S. at 40 (citations omitted).  As in *Smith*, ___ U.S. at ___, 131 S.Ct. at 2379, because I never formally became a party to the Fletcher, Diaz, and Rosenbaum cases, I am not bound.

### 3. The Six *Taylor v. Sturgell* Exceptions Do Not Apply

The Supreme Court has set forth six categories of exceptions to "the rule against nonparty preclusion." *Taylor*, 553 U.S. at ___, 128 S.Ct. at 2172-3.  "In *Taylor*, the Supreme Court emphasized the due process limits on affording judgments preclusive effect against non-parties." *Esquire Trade & Finance, Inc. v. CBQ, Inc.*, 562 F.3d 516, 521 (2d Cir. 2009).  In *Esquire*, the Second Circuit adopted the *Taylor* categories of exceptions to analyze the applicability of nonparty preclusion. *Esquire*, 562 F.2d at 521-2.  Upon finding that none of the *Taylor* exceptions applied, the Second Circuit held "that affording the order dismissing the Socrates Action *res judicata* effect against Esquire would violate due process." *Id.* at 522.

The first *Taylor* exception, agreement to be bound, 553 U.S. at ___, 128 S.Ct. at 2172, clearly does not apply here because I never agreed to be bound by judgments against former tenants.

**JA412**

The second *Taylor* exception, for legal relationships, such as succession to property interests, *id.*, also does not apply here, but requires more analysis. However, my property interests are not exclusively successor interests, *supra* at 10-11; *infra* at 27-31, and successor privity does not apply because I acquired my successor property rights before the institution of the eviction proceedings, *see supra* at 11 (citing *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 487 (1979)).

Indeed, prior to the start of the eviction proceedings in March 2011: (i) my lease with other co-tenants for the entire house started in April 2010, Verif. Am. Compl. ¶¶ 37-8; Sasmor Decl. ¶¶ 5-7, 30, 47-9, 57-9, and Exs. B-D; (ii) a nonpayment eviction case was brought against four other tenants and me in November 2010 alleging that we were tenants of the entire house, Sasmor Decl. ¶ 31 and Ex. Q; (iii) I obtained the keys to the Fletcher, Diaz, Rosenbaum, and Campos rooms from the former tenants and began occupying those rooms in or before January 2011, Sasmor Decl. ¶¶ 47-9, 57. Thus, even if I were limited to successor rights, I would not be bound because my rights predated the institution of any of the holdover eviction proceedings against Fletcher, Diaz, Rosenbaum, Osterweil, Campos, and Skubutyte. *Gramatan*, 46 N.Y.2d at 487.

Because I have independent property interests and because I succeeded my predecessors prior to the start of the eviction proceedings, the second *Taylor* exception does not apply. *See* R&R at *12, *14-15 (suggesting I am bound as successor in interest without analyzing date of transfer as required by *Gramatan*). *See also* R&R at *14 n.5 (implying that my independent property rights, if any, would defeat successor preclusion).

The third *Taylor* exception is for adequate representation in the prior case, such as class actions and suits brought by trustees, guardians, or fiduciaries. 553 U.S. at ___, 128 S.Ct. at 2172-3. "The Court's earlier decision in *Richards* 'established that representation is "adequate" for purposes of nonparty preclusion only if (at a minimum) one of ... two circumstances is present': (1) 'special procedures to protect the nonparties' interests' or (2) 'an understanding by the concerned parties that the first suit was brought in a representative capacity.'" *Esquire*, 562 F.2d at 521-2 (quoting *Taylor*, 128 S.Ct. at 2174 (citing *Richards*, 517 U.S. at 801-2)).

**JA413**

While no one has suggested that "adequate representation" is present here, this exception is worth considering because it highlights the unfairness of the "all persons" warrants. Clearly in this case, there was no understanding that the suit was brought in a representative capacity, nor were special procedures present to protect nonparties such as myself. This unfairness is at the heart of my case. In other states, such as California, Connecticut, and Illinois, where the execution of evictions against nonparties to the judgment has been held unconstitutional, *see* ECF 55-1 at 21-22 n.39 (collecting cases), those states have responded by enacting special procedures to protect the interests of nonparties in possession of the premises. *See* ECF 55-1 at 21 (collecting statutes). Thus, in California, Connecticut, and Illinois, all occupants truly may be bound by eviction judgments under the third exception to *Taylor* — because procedures have been followed to give them notice and an opportunity to be heard. Nonetheless, no such procedure is in place in New York, at this time — and thus I was evicted, and face further eviction, without notice and opportunity to be heard. *See* ECF 55-1 at 19-28 (arguing that Plaintiff was not accorded the process that was due through the prior proceedings against individually named former tenants).

The fourth *Taylor* exception, assuming control over the litigation, 553 U.S. at ___, 128 S.Ct. at 2173, does not apply here. Unlike the case in *Montana v. United States*, 440 U.S. 147, 155 (1979), no evidence has been presented, nor does it appear on the face of the public record, that someone else conducted the litigation at my direction. *Compare with Montana*, 440 U.S. at 155 (seven stipulated facts showing that the United States controlled prior litigation). Indeed, *no one* controlled the Fletcher, Diaz, and Roesnbaum cases because those long-gone former tenants defaulted, whereas Osterweil, Campos, and Skubutyte defended and controlled their own litigation. My lack of control over the Fletcher, Diaz, and Rosenbaum cases is especially poignant because I was allowed neither to intervene nor even to speak or participate. While the R&R suggests the control over the litigation exception may apply, R&R at *12 (citing *Moran v. City of New Rochelle*, 346 F. Supp. 2d 507, 515 (S.D.N.Y. 2004), the R&R provides not a single fact that I can identify to suggest why this exception should apply. *Moran* is readily distinguishable. 346 F. Supp. 2d at 515 ("Here the Morans were the sole shareholders of Souci Farms, and undoubtedly

19

**JA414**

controlled both that company and the litigation at issue."). Collateral estoppel is an affirmative

defense, *supra* at 5-6 and n.6, and I have not been given notice of a single fact suggesting that I

controlled any of the Housing Court litigation in which I was not a party. Thus, the exception

does not apply nor have I been given sufficient notice to defend against it.

The fifth *Taylor* exception, relitigation through a proxy, 553 U.S. at ___, 128 S.Ct. at 2173,

clearly does not apply.

Likewise, the sixth *Taylor* exception, for special statutory schemes otherwise consistent with

due process, such as bankruptcy or probate proceedings or other proceedings "brought only on

behalf of the public at large," *id.*, also clearly does not apply to the prior, private, *in personam*

eviction proceedings.

### 4. Nonparty Preclusion Would Violate Due Process

The Court should not rule *sub silentio* about the constitutional question whether nonparty

preclusion here would violate due process. The R&R does not discuss the constitutional limits of

nonparty preclusion, as set forth in *Hansberry, Richards, Taylor,* and *Smith.* However,

constitutionality under the Due Process Clause must be considered before applying nonparty

preclusion. *Id.* In doing so, the Court necessarily must consider whether the eviction of "all

persons" upon an *in personam* judgment against one named individual satisfies due process. *See*

ECF 55-1 at 19-29.

### 5. The Court Should Follow Cases that Previously Decided the Same Due Process Question Presented by this Case

Two other Courts facing an almost identical due process constitutional question to that

presented here held that the former Illinois and California eviction processes were unconstitutional

because, just like the presently at issue New York eviction warrant statute (N.Y. Real Prop. Acts.

Law § 749(1)), Illinois' and California's former statutes permitted the eviction of occupants not

given notice and opportunity to be heard in the underlying eviction process. *Rembert v. Sheahan,*

No. 92-cv-67, 1994 U.S. Dist. LEXIS 9164, *12-13, *1-3, *5-13 (N.D. Ill. July 6, 1994)

("enforcement of orders that refer only to named individuals other than the individuals being

**JA415**

evicted is a violation of due process."), *vacated,* 67 F.3d 937, 941-3 (7th Cir. 1995) (describing use of generic names as "troubling;" remanding for determination about whether sheriff continues to evict persons not named), *permanent injunction issued on remand,* No. 92-cv-67, Judgment Order, slip op. at *4-9 (N.D. Ill. Nov. 3, 1995) (sheriff shall enforce orders of possession "only against an occupant of the premises who is personally and by name designated in said order. . ."); *Arrieta v. Mahon,* 31 Cal. 3d 381, 383-6, 389-93 (1982) (eviction of occupants not named in writ violates due process).[11][12] *See* ECF No. 55-1 at *28-30 (my reply memorandum arguing that the Court should follow *Rembert* and *Arrieta); see also id.* at *3, *10 n.20, *18, *21 n.36, *23 n.39, *25, *27-8, *31 n.46 (discussion of *Rembert* and *Arrieta); Kassim v. City of Schenectady,* 255 F. Supp. 2d 32, 36, 39 (N.D.N.Y. 2003) (city procedure to evict nonparty following city tax foreclosure without separate notice violates due process)*, later proceedings at* 415 F.3d 246 (2d Cir. 2005)*; Tappin v. Homecomings Financial Network, Inc.,* 830 A.2d 711, 724 (Conn. 2003) (tenants must be named in the foreclosure action or a separate summary eviction proceeding must be brought to remove them); *Hite v. Field,* 462 A.2d 393, 398 (Conn. Super. Ct. 1982) (enjoining ejectment of tenants not named in the foreclosure action).  Thus, operation of state eviction judgments against nonparties violates due process — and, therefore, preclusion fails under *Hansberry* and its progeny, *supra* at 16-17.

---

[11] In *Arrieta,* the trial court also held that the marshal's policy violated the Fourth Amendment. 31 Cal. 3d at 384 n.1. The California Supreme Court affirmed on due process grounds and therefore did not reach the Fourth Amendment. *Id.*

[12] Sarah Arrieta, like me, attempted to participate in the eviction proceedings but was denied an opportunity to do so. 31 Cal. 3d at 385 ("On March 28, 1979, Arrieta's attorneys filed motions to stay execution and recall or quash the writ of execution on the grounds that she had had no notice of the proceeding. These motions were denied on the ground, inter alia, that Arrieta was not a party to the unlawful detainer proceeding.").  *See also U.S. Bank Nat'l Ass'n v. Patterson,* 2013 NY Slip Op 00325 (N.Y. App. Div. Jan. 23, 2013) (any rights tenant has are unaffected notwithstanding attempts to participate in and defend foreclosure proceeding in which he was not a party).

**JA416**

F.  The Court Should Not Apply Collateral Estoppel Because of Exceptions Listed in the Restatement.

### 1.  The Thirteen Restatement Exceptions

Sections 28 and 29 of the Restatement 2d of Judgments provide exceptions to issue preclusion.  At least section 29 of the Restatement has been adopted by the New York Court of Appeals as "relevant factors to be considered" before applying nonparty preclusion.  *Koch v. Consolidated Edison Co. of N.Y.*, 62 N.Y.2d 548, 555 n.4 (1984).

§  28, "Exceptions to the General Rule of Issue Preclusion:

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or

(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or

(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or

(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or

(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

Restatement 2d of Judgments, § 28 ("Exceptions to the General Rule of Issue Preclusion") (quoted in *Breeden v. Bennett (In re Bennett Funding Group, Inc.)*, 367 B.R. 269, 293 (Bankr. N.D.N.Y. 2007)).

**JA417**

§ 29. Issue Preclusion in Subsequent Litigation with Others

"A party precluded from relitigating an issue with an opposing party, in accordance with § § 27 and 28, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which considerations should be given include those enumerated in § 28 and also whether:

"(1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;

"(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;

"(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;

"(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;

"(5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;

"(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;

"(7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;

"(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue."

Restatement 2d of Judgments, § 29 ("Issue Preclusion in Subsequent Litigation with Others")

(quoted in *Koch v. Consolidated Edison Co. of N.Y.*, 62 N.Y.2d 548, 555 n.4 (1984)).

## 2. Exception 28(1) Applies: No Opportunity to Appeal

Because I was not a party to the eviction proceedings against former tenants, I did not have the same rights of appeal as the named parties. *See Thomas v. Venditto*, Nos. 11-CV-6084 (JS) (ETB), 12-CV-0065 (JS) (ETB), slip op. at II.A.1.b. (E.D.N.Y. Feb. 21, 2013) (importance of appeal rights in N.Y. collateral estoppel law). As discussed above, the Appellate Term held in the

**JA418**

Fletcher, Diaz, and Rosenbaum cases that I was "not aggrieved," and therefore had no opportunity to appeal — thus indicating that it found I was not bound by the judgments. *Supra* at 6-7.

### 3. Exceptions 28(2) and 29(7) Apply: Unmixed Legal Issues

The issue about whether a trust is an entity and can own property is an unmixed legal issue to which Restatement 2d of Judgments § 28(2) applies. I have discussed the argument against applying collateral estoppel to this erroneous legal conclusion, *supra* at 14-15. *See also Burlington Northern Railroad Co. v. Hyundai Merchant Marine*, 63 F.3d 1227, 1233-9 (3d Cir. 1995) (discussing "unmixed questions of law" exception to collateral estoppel).

### 4. Exception 28(3) Applies: Differences in the Quality or Extensiveness of the Procedures Followed in the Two Courts

The differences between the Housing Court's and Appellate Term's treatment of my unsuccessful intervention attempts and this Court's careful review of the issues are self-evident.

### 5. Exception 28(4) Applies: Different Burdens of Proof

In the Housing Court, my burden was heavier: I had to convince a Housing Judge to let me intervene — or to the extent the Court considers the judgments against the former tenants — those tenants had to prove their case by a preponderance of the evidence. Here, the standard at the pleadings stage requires inferences to be drawn in my favor that were not drawn in the Housing Court. *See R&R* at *8-9 (standard of review for motion to dismiss); *supra* at 5-6 and n.6 (standard of review for affirmative defenses). Since the burden was higher in the Housing Court, and since the burden of proof now has shifted to my opponent to prove an affirmative defense, collateral estoppel now is inapplicable. *See Canigiani v. Bd. of Assessors*, 98 A.D.2d 233, 248 (N.Y. App. Div. 1983) (denying application of collateral estoppel, citing, *inter alia*, Restatement Exception 28(4)).

### 6. Exception 29(2) Applies: Additional Procedural Opportunities

The present case offers me more procedural opportunities than the Housing Court — most notably, here, I am a party, so I have the rights and responsibilities of a party. I ask that my arguments on property rights be considered by the Court here — because in the Housing Court I

**JA419**

never passed the procedural hurdles of intervention which would have entitled me to a hearing and trial on my property rights.

### 7: Exception 29(3) Applies: I Could Have Been Joined in Housing Court

Not only *could* I have been joined as a party in Housing Court — I actually *was* joined in a prior nonpayment proceeding in Housing Court for the "ENTIRE HOUSE." ECF 56-17 (verified nonpayment petition). While Housing Court proceedings commonly include "John and Jane Doe" as respondents, none of the holdover eviction cases against Fletcher, Diaz, Rosenbaum, Osterweil, Campos, or Skubutyte did so — thus eliminating another means by which I could have participated. I could have been joined as a party in Housing Court — and my Housing Court opponent should not be rewarded for intentionally excluding me from those cases.

### 8. Exception 29(4) Applies: Inconsistent Determinations

In the Rosenbaum case, the Housing Court determined that "[t]he lease was signed by nine tenants and the petitioner renting the entire house. . ." ECF 56-20 at *2. The R&R now recommends that I be estopped on a contradictory determination — that I was "a non-party to the leases at issue," R&R at *12, and that my "lease explicitly refers only to [my] own room, not those of other residents," R&R at *14 n.5.

Additionally, in the Housing Court case in which I was a party, the Housing Court noted Petitioner's unclean hands, ECF No. 58 at *9, *10, but found that safety concerns outweighed the unclean hands defense. The Housing Court's ruling suggests that absent the vacate order (and, therefore, with respect to some of the rooms involved in the present case — including my bedroom), the unclean hands defense would have been successful. It is inequitable to cherry-pick determinations to apply selectively against me.

### 9. Exception 29(5) Applies: Change in Relationships

The issues determined — if any — at the Housing Court would have related to property rights at a different time than the time that the federal rights at issue here arose and continue. Especially since no summary proceeding ever was brought *against me* for the rooming units involved in this case, *see infra* at 27-9 (discussing N.Y. Real. Prop. Acts. Law § 711), the

**JA420**

determination of property rights must be made *de novo* for the times at issue in the present case —

July 13, 2011 (eviction) to the present for the Rosenbaum room, July 20, 2011 (evictions) to the

present for the Fletcher and Diaz rooms, and the present time for the Osterweil, Campos, and

Skubutyte rooms.  *See People ex rel. Watchtower Bible & Tract Society v. Haring*, 286 A.D. 676,

680 (N.Y. App. Div. 1955) (collateral estoppel inapplicable where determination made as of a

different time).

### 10.  Exceptions 28(5) and 29(8) Apply: Fairness and Compelling Circumstances

I was not given any substantive hearing in the Housing Court on my property rights to any

of the rooms relevant to this case — the Fletcher, Diaz, and Rosenbaum rooms from which I was

evicted and the Osterweil, Campos, and Skubutyte rooms from which I face imminent eviction.

*See Thomas v. Venditto*, Nos. 11-CV-6084 (JS) (ETB), 12-CV-0065 (JS) (ETB), slip op. at II.A.1.

(E.D.N.Y. Feb. 21, 2013) ("Issue preclusion will apply only if it is quite clear that these

requirements have been satisfied, lest a party be 'precluded from obtaining at least one full hearing

on his or her claim.'") (quoting *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 485

(1979)).


### THIRD OBJECTION: *Res Judicata* Does Not Determine My Property Rights

The R&R recommends that *res judicata* applies based on my unsuccessful intervention

attempts in the Fletcher, Diaz, and Rosenbaum cases to preclude my arguments about property

rights.  "The doctrine of res judicata bars later litigation if an earlier decision was (1) a final

judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same

parties or their privies, and (4) involving the same cause of action."  *Esquire Trade & Finance, Inc.

v. CBQ, Inc.*, 562 F.3d 516, 520 (2d Cir. 2009).  The R&R neither mentions nor discusses these

elements.

*Res judicata* is inapplicable for all the same reasons discussed above in my second

objection related to collateral estoppel.  *Supra* at 5-26.  Additionally, the first *Esquire* element for

*res judicata* plainly was not met in the Fletcher, Diaz, and Rosenbaum cases because the judgments

**JA421**

there were made on default. *See supra* at 10. The second element was not met because the

proceedings were nullities. *Supra* at 13-15. The third element was not met because I was not a

party and because none of the *Taylor* exceptions applies. *Supra* at 17-20. The fourth element was

not met because my rights were not at issue in the prior cases and were not determined — and also

could not be determined because I was not permitted to intervene. *Supra* at 6-10.

  *See also Martin v. Wilks*, 490 U.S. 755, 763 (1989) ("The law does not impose upon any

person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is

a stranger. . . . Unless duly summoned to appear in a legal proceeding, a person not a privy may

rest assured that a judgment recovered therein will not affect his legal rights.") (quoting *Chase*

*National Bank v. Norwalk*, 291 U. S. 431, 441 (1934)). *Compare with* N.Y. Real Prop. Law. § 735

and § 749(1) (jurisdiction obtained over named respondents only but warrants issued to remove "all

persons").

## FOURTH OBJECTION: I Have Property Rights to the Rooms

### A. The R&R Misconstrues N.Y. Real Prop. Acts. Law § 711

  Section 711 of the New York Real Property Actions and Proceedings Law provides, in

relevant part, "A tenant shall include an occupant of one or more rooms in a rooming house . . .

who has been in possession for thirty consecutive days or longer; he shall not be removed from

possession except in a special proceeding. "As with any question of statutory interpretation, our

analysis begins with the plain language of the statute. It is well established that, when the statutory

language is plain, we must enforce it according to its terms." *Jimenez v. Quarterman*, 555 U.S.

113, 118 (2009) (citations omitted).

  "[T]he law is unmistakeably clear. RPAPL 711 declares that a tenant includes any occupant

or resident who has been in possession of the premises for 30 consecutive days or longer. It asserts

further that such a person shall not be removed from possession except in a special proceeding."

*Mitchell v. City of New York*, 154 Misc. 2d 222, 223 (N.Y. City Civ. Ct. 1992). "RPAPL 711

*expands* the class of people protected against self-help eviction by including certain occupants or

**JA422**

residents of a rooming house [or] in a hotel within the definition of tenant." *Nutter v. W&J Hotel Co.*, 171 Misc. 2d 302, 308 (N.Y. City Civ. Ct. 1997). "[T]he design of section 711 of the RPAPL is to provide that an occupant who has been in possession for 30 consecutive days or longer as a tenant has a substantive right to that room or apartment by prohibiting his or her eviction except upon Court order following a judicial proceeding." *Truglio v. VNO 11 E. 68th St. LLC*, 2012 NY Slip Op. 31338(U) (N.Y. Civ. Ct. May 21, 2012) (quoting *Mitchell*, 154 Misc. 2d at 223).

The Report and Recommendation suggests that Section 711 "provide[s] procedural protections against self-help eviction to tenants who have occupied premises for more than 30 days," but "do[es] not give rise to independent rights of possession." R&R at *14 n.5. This conclusion, however, is contrary both to the plain language of section 711 and also to well-established interpretation of it. *Mitchell*, 154 Misc. 2d at 223 (tenancy rights afforded to tenant exclusively under § 711); *Universal Motor Lodges, Inc. v. Seignious*, 146 Misc. 2d 395, 397 (N.Y. Vill. Just. Ct. 1990) (same); *Mann v. 125 E. 50th St. Corp.*, 124 Misc. 2d 115, 116-7 (N.Y. City Civ. Ct. 1984) (same); *see also Truglio*, 2012 NY Slip Op. 31338(U) (citing § 711 to support conclusion that petitioner had tenancy rights); *Nutter*, 171 Misc. 2d at 308 (implying tenancy rights may be accorded exclusively under § 711, but not reaching § 711 tenancy rights because hotel occupant otherwise qualifies as tenant under rent stabilization law); *Stiles v. Donovan*, 100 Misc. 2d 1048, 1049-50 (N.Y. City Civ. Ct. 1979) (superintendent residing in rooming unit six months after discharge, otherwise a tenant at will, qualifies under § 711 as a tenant and may not be removed except by court order).[13] [14]

Magistrate Judge Orenstein correctly describes 287 Franklin Avenue as "a rooming house." R&R at *1, *2. Thus, as "an occupant of one or more rooms in a rooming house . . . who has been in possession for thirty consecutive days or longer," N.Y. Real Prop. Acts. Law § 711, I am

---

[13] The R&R also suggests that, because only tenants with an existing rental agreement may be removed in a nonpayment proceeding, section 711 could not provide any independent rights. R&R at *14 n.5 (citing Carmody Wait 2d New York Practice § 90:38 (citing N.Y. Real Prop. Acts. Law § 711(2))). However, a nonpayment proceeding under subdivision 711(2) is only one of six forms of special proceedings to evict tenants that are offered under section 711. *See, e.g.*, N.Y. Real Prop. Acts. Law § 711(1) (special proceeding to evict tenant holding over after expiration of term).

[14] *See also Smith v. Donovan*, 61 A.D.3d 505, 510 (N.Y. App. Div. 2009) (rooming house occupants are tenants under § 711 even if, as here, the owner has not properly obtained a certificate of occupancy for the rooming house).

**JA423**

included as a tenant under New York law, *id.*, and must be accorded the rights of a tenant, *id.*; *Truglio*; *Nutter*; *Mitchell*; *Seignious*; *Mann*; *Stiles*.

### B. The R&R Misconstrues N.Y. City Admin. Code § 26-521

"Under New York City Administrative Code 26-521, eviction by means enumerated in the Code is unlawful with respect to 'an occupant of a dwelling unit who has *lawfully occupied* the dwelling unit for thirty consecutive days or longer or who has entered into a lease with respect to such dwelling unit . . . .' (emphasis added)" ECF 5 at *4 n.4 (quoting N.Y. City Admin. Code § 26-521). As with Real Property Actions and Proceedings Law section 711, the Report and Recommendation suggests that New York City Administrative Code section 26-521 "provide[s] procedural protections against self-help eviction to tenants who have occupied premises for more than 30 days," but "do[es] not give rise to independent rights of possession." R&R at *14 n.5. For all the same reasons discussed above with respect to section 711, I object to the Report and Recommendation's analysis of section 26-521. However, section 26-521 is not as "unmistakeably clear," *Mitchell*, 154 Misc. 2d at 223, as section 711. Therefore, since my property rights are indeed unmistakeably clear under section 711, there is no need to reach section 26-521. Nonetheless, if for any reason the Court rejects my arguments about section 711, then section 26-521 should be applied.[15]

The 30-day provision of section 26-521 has an additional word that section 711 does not contain — section 26-521 requires 30 days of "lawful[] occup[ancy]." I have not been able to locate case law construing the word "lawfully" in section 26-521. Several courts have found that occupancy for thirty consecutive days intrinsically satisfies the "lawful occupancy" requirement of the 30-day provision of section 26-521, so that the word "lawful" is not treated as creating a separate, additional element. ECF 51-1 at 27 n.45 (collecting three cases from Federal Court,

---

[15] The R&R appears to describe my briefing of N.Y. Real Prop. Acts. Law § 711 and N.Y. City Admin. Code § 26-521 as "assert[ing] a property interest in the rooms that derives . . . from the doctrine of adverse possession." I disagree and believe that these 30-day statutes in no way relate to the separate and distinct doctrine of adverse possession. Indeed, adverse possession may require as much as 20 years for a tenant's possessory rights to become ownership rights. *See generally Gallea v. Hess Realty Corp.*, 128 A.D.2d 274, 275-7 (N.Y. App. Div. 1987) (discussing adverse possession). I do not claim rights by adverse possession here.

**JA424**

Family Court, and Criminal Court).[16]  *See also Smith v. Donovan*, 61 A.D.3d 505, 510 (N.Y. App.

Div. 2009) (rooming house occupants are tenants even if owner has not properly obtained a

certificate of occupancy for the rooming house) (citing, *inter alia, Sima Realty L.L.C. v. Philips*,

282 A.D.2d 394, 395 (N.Y. App. Div. 2001) ("[the multiple dwelling] law was enacted to protect

tenants of multiple dwellings against unsafe living conditions, not to provide a vehicle for landlords

to evict tenants on the ground that premises are unsafe.").

     Even if the Court determines that a separate, additional element arises from the use of the

word "lawful" in section 26-521, there are good reasons why my occupancy is and was "lawful"

within the meaning of section 26-521.  *See* ECF 51-1 at 27-8 (collecting reasons).  This is

especially true at the pleadings stage where "[t]he court should consider the 'legal sufficiency of the

complaint, taking its factual allegations to be true and drawing all reasonable inferences in the

plaintiff's favor.'"  R&R at *8 (quoting *Harris v. Mills,* 572 F.3d 66, 71 (2d Cir. 2009)).

Additionally, section 26-521 applies independently because I "entered into a lease with respect to

such dwelling unit."  *Id.; see also infra* at 30-1 and n.17 (discussing lease).

     **C.  My Lease Covers All the Subject Rooming Units**

     The Report and Recommendation does not examine the details of the leases I presented, nor

does it recognize what is, at least, a factual dispute about the lease.  The R&R cites to a Rider,

which it claims "explicitly refers only to [my] own room," R&R at *14 n.5 (citing Meier Decl. Ex.

2 at 8).  Though the R&R also notes that "[t]he lease was signed by defendant Chaim Goldberger

("Goldberger") for defendant Henry Management, LLC ("HM")," R&R at *2, the R&R does not

recognize that "the copy of the lease later signed by Defendant Goldberger omitted the rider."  ECF

55-1 at 29 (citing Sasmor Decl. ¶ 6 and Ex. C; Meier Decl. Ex. 2 at 10-15).  Indeed, "Ronald

Henry Land Trust" brought a nonpayment case in November 2010 alleging that the lease *covered*

*the entire building.*  ECF 56-17 (attorney for "Ronald Henry Land Trust" affirmed under penalty of

---

[16] MFY Legal Services, Inc. has produced a pamphlet in which it suggests that the "Thirty Day Rule" indeed would apply to tenants under § 26-521 without any additional "lawfulness" requirement.  *See* MFY Legal Service, Inc., "Three-Quarter House Residents: Know Your Rights," http://www.mfy.org/wp-content/uploads/pdf/IBH-Know-your-Rights.pdf (last accessed March 15, 2013) ("**The only person who can evict you from a three-quarter house is a judge.** Once you have lived in the house for 30 or more days, even if you don't have a lease, the landlord must take you to court to evict you.") (citing N.Y. City Admin. Code § 26-521) (emphasis in original).

**JA425**

perjury in a verified nonpayment petition that four others and I were tenants of "Apt: ENTIRE HOUSE in the building known as 287 FRANKLIN AVE." "pursuant to a Written rental agreement.") (emphasis in original).

Moreover, Goldberger recently testified at deposition in the related case, *287 Franklin Ave. Residents' Ass'n, et al. v. Meisels, et al.*, E.D.N.Y. No. 11-CV-976 (KAM) (JO) that: (1) the lease covered the entire house, and (2) the People Choice Real Estate brokers were not authorized to sign lease documents. Thus, even Defendant Goldberger takes the position that the lease covered the entire building and that the Rider written and signed by People Choice was invalid. It is primarily the Judicial Defendants — who are supposed to be neutral court administrators — who are taking a position that the lease means something different from what the parties to it believe that it does. *See also* ECF 55-1 at 29 (discussing additional reasons why the lease must be construed as covering all the rooms).

The R&R also cites dictum in the Housing Court decision in the case against me. R&R at *14 n.5 (citing ECF 58, Ex. A at 5). However, the facts cited are taken from the facts section of that decision and are not used anywhere in the analysis section of that decision. Indeed, in determining possessory rights for the "top floor front small room" only, the Housing Court had no occasion necessarily to decide whether the lease covered other rooms besides the "top floor front small room." Nor did the Housing Court need to consider for any other reason whether the Rider affected the lease in any way, because its decision did not rely on construction of the lease. ECF 58, Ex. A. It would be especially unfair to apply estoppel on the lease construction issue because a different Housing Court decision made a contrary determination — that "[t]he lease was signed by nine tenants and the petitioner renting the entire house. . ." ECF 56-20 at *2. *See supra* at 25 (discussing Restatement exception 29(4) to collateral estoppel for inconsistent determinations).[17]

---

[17] While the lease now has expired, the plain language of N.Y. City Admin. Code section 26-521 ("or who *has entered* into a lease") (emphasis added) still appears to convey rights based on a previous lease. *See supra* at 29-30 (discussing § 26-521). Moreover, an expired lease creates a tenancy at sufferance where, as here, the person claiming possession has taken no action to evict me in my own name over an extended period of time of more than three months. *See N. Shore Comm. Svcs., Inc. v. Lehrfeld*, 3 Misc. 3d 436, 438-9 (N.Y. Dist. Ct. 2004) (tenancy at sufferance created by laches of landlord in attempting to evict tenant after expiration of lease; tenant at sufferance entitled to statutory notice under N.Y. Real Prop. Law § 228). *See infra* at 32 (R&R does not address my arguments about tenancy at will and at sufferance) (citing ECF 51-1 at 28).

**JA426**

### D. R&R Does Not Discuss My rights as Tenant at Will or at Sufferance

The R&R does not discuss my property rights as a tenant at will or at sufferance.  ECF 51-1 at 28 (facts, statute, and cases).

### E. R&R Does Not Discuss Agreement to My Tenancy Rights by Parties Claiming Ownership

The R&R does not discuss my property rights created by the agreement and acquiescence of the parties claiming ownership, including acceptance of rent, the leases, and the nonpayment proceeding alleging that others and I were tenants of the entire building.  ECF 51-1 at 28-9 (facts and authorities).[18]

### F. Tenancy Under State Law is Protected by the Due Process Clause

It is well-established that tenancy under state law constitutes a property interest protected by the Due Process Clause.  *See* ECF 51-1 at 35-6 (collecting cases).  Thus, regardless of which basis the Court finds I am a tenant under state law, I must be accorded federal Due Process.[19]


**FIFTH OBJECTION: My Personal Property Is Still Being Held and Is Not Moot**

The R&R concludes that I have not alleged sufficient facts about my personal property in the rooms from which I was evicted, and that the issue is moot because the Judicial Defendants have conceded that I am entitled to my personal property.  R&R at *15.  However, I did allege that I had possessions inside those rooms from which I have been and remain locked out.  Verif. Am. Compl. ¶ 71.  I described those possessions in greater detail in my declaration.  ECF 56,

---

[18] To the extent that the R&R characterizes "Ronald Henry Land Trust" as "[my] landlord," R&R at *7, *8, I object to this characterization.  A "landlord" is "one that owns and rents land, buildings, or dwelling units." Free Dictionary by Farlex, "Landlord," http://www.thefreedictionary.com/landlord, accessed March 14, 2013.  I never paid any rent to "Ronald Henry Land Trust" but rather to other individuals who have held out conflicting claims of ownership.  Moreover, "Ronald Henry Land Trust" could not possibly be the "landlord" because it, as a trust, which is a form of relationship among individuals, is not capable of owning property in its name.  *See supra* at 13-15.  I also object to the characterization that the Private Defendants "own and manage" 287 Franklin Avenue, R&R at *1.  This is not what I have alleged.  Verif. Am. Compl. ¶¶ 40-45, 50 (discussing conflicting claims of ownership between Private Defendants claiming ownership in the name of "Ronald Henry Land Trust" and Ronald Henry claiming ownership himself).

[19] As an additional basis for my property rights, N.Y. Real Prop. Acts. Law § 711, through its requirement that a tenant, "shall not be removed from possession except in a special proceeding," *id.*, creates a "procedural right," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 — which has reduced standards for standing.  *Id.*  The other statutes discussed herein requiring pre-eviction process under New York law likewise constitute "procedural rights" — rights of 30-day occupants, lessees, and other forms of tenants to participate, as a party, in a summary eviction proceeding in advance of an eviction.

**JA427**

¶ 53 ("Plaintiff's possessions locked inside the Rosenbaum room since July 13, 2011 include at

least a couch and a lamp. Plaintiff's possessions locked inside the Fletcher room since July 20,

2011 include at least a laundry cart, a bicycle, a scooter, and some buckets. Plaintiff's possessions

locked inside the Diaz room since July 20, 2011 include at least a box spring and a subway map.").

It *does not* moot the issue, as the R&R suggests, R&R at *15, that the court administrator

Judicial Defendants agree that I should have my personal property back.  They are not the ones in

control of my personal property.  *See* ECF 51-1 at 11 ("Plaintiff concedes that the first form of

ongoing injury, *supra* at 8, based upon the continuing effects of the July 13 and 20, 2011 evictions,

could not be redressed by the State Defendants.  While *other* Defendants might be able to restore

Plaintiff to his rooming units and possessions, any change in the administration of the warrant

procedures would not alter the ongoing effect of the past evictions.  Nonetheless, State Defendants

in their memorandum address, almost exclusively, the past evictions from the rooming units

formerly occupied by Kurt Fletcher, Amanda Diaz, and Alex Rosenbaum.").


SIXTH OBJECTION: Eviction from Osterweil, Campos, and Skubutyte Rooms is More than a
"Mere Possibility"

> Though Defendant Powell has returned unexecuted the warrants of eviction for the
> Osterweil, Skubutyte, and Campos rooms, it would be expected that replacement
> warrants will issue upon request to the Housing Court Clerk by Defendant Powell
> or by any other city marshal. The warrants are *required by statute* to be issued
> against "all persons." N.Y. Real Prop. Acts. Law § 749(1). Plaintiff is now living
> and sleeping in one of the rooms to which a notice of eviction had been served,
> though the judgment was issued against a former tenant only. Thus, once again,
> Plaintiff is imminently exposed to a concrete, particular threat of another "all
> persons" warrant being used to evict him based upon an outstanding judgment
> against a named former tenant.

ECF 56 (Sasmor Decl.) ¶ 60; *see also* ECF 56-20 (cover letters and unexecuted warrants).

The Report and Recommendation dismisses as "a mere possibility" the possibility that the

outstanding judgments against Osterweil, Campos, and Skubutyte would result in issuance of new

warrants  R&R at *10, *13-14.  However, judgments of eviction usually result in warrants, and

warrants usually result in evictions unless the tenant leaves before the warrants are executed.

**JA428**

Therefore, outstanding judgments are more than sufficient to constitute imminent harm.  *See* ECF 51-1 at 9 (collecting cases about the standard for imminent injury).

Moreover, the Report and Recommendation suggests that if lack of imminence "were the only defect in the claim concerning [the Osterweil, Campos, and Skubutyte] rooms, I would not recommend dismissal with prejudice based on a lack of standing." R&R at *14.  The R&R then recommends dismissal *with prejudice* based on collateral estoppel on property rights.  *Id.*  I have zealously objected above to this application of collateral estoppel, *supra* at 5-27, and also to the disregard of my other protected interests besides property rights, *supra* at 2-5.  I now also zealously object to the characterization of the execution of outstanding judgments as "a mere possibility," R&R at *13 — but even if the Court follows the Report and Recommendation on this basis, it should still dismiss *without* prejudice.


**SEVENTH OBJECTION: Identification of Premises by a Third Party is Unreasonable**

I object to footnote 7 starting on page 16 of the Report and Recommendation.  In that footnote, the R&R, without providing any authorities, suggests that imprecise language of warrants may be cured by the executing officer's receiving assistance from a private third party, such as Defendant Goldberger.  R&R at *16 n.7.  *But see Marron v. United States,* 275 U.S. 192, 196 (1927) ("The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is to be left to the discretion of the officer executing the warrant.").  *See also Empire State Bldg. Co., LLC v. Progressive Catering Svcs., Inc.,* 2 Misc. 3d 545, 547 (N.Y. City Civ. Ct. 2003) ("The description of the premises must be accurate enough to allow the marshal, when executing the warrant of eviction, to locate the premises without additional information.");  ECF 53-1 at 10-11 and n.17 (discussion of improper premises descriptions as repugnant to Fourth Amendment heritage of integrity of warrants).

**JA429**

**EIGHTH OBJECTION: I Am Not Estopped from Arguing Correctly that a Trust is Not an Entity and Cannot Own Property in its Name.**

I object to the R&R's recommendation that I am "estopped from prosecuting the legal theory . . . that the Trust is 'not a person or entity itself and is not capable of owning property in its name[.]'" R&R at *17 (quoting Verif. Am. Compl. ¶ 139). I have discussed the reasons for this objection above in the section entitled The "'Ronald Henry Land Trust' Eviction Proceedings All Are Nullities." *Supra* at 13-15.


**NINTH OBJECTION: It was Unreasonable that Defendant Powell Failed to Show His Badge and the Warrants**

I object to the R&R's analysis of Count Four, R&R at *18, for the reasons discussed above, and also additionally as follows.  Contrary to the R&R's suggestion that I have "identified no legal authority to support the proposition that in executing the warrants, Marshal Powell violated any right that Sasmor enjoyed under federal law to demand to see Powell's badge or the warrants," R&R at *18, I did in fact present legal authorities in my memorandum.  ECF 53-1 at 12-13 and n.24.  Moreover, the failure to present a badge and warrant need not constitute intrinsic harm itself as the R&R suggests, at *18.  Instead, Powell's failure to show his badge and the warrants contributes to the unreasonableness of the searches and seizures — to satisfy the "unreasonableness" element of my Fourth Amendment claims.  ECF 53-1 at 12-13 and n.24 (citing authorities that make it unlawful for a city marshal not to show the warrant — and which also make it a criminal offense for him not to show his badge); *see also* ECF 53-1 at 15-16 ("totality of the circumstances" must be considered in assessing reasonableness) (citing *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) and other cases).

**JA430**

**TENTH OBJECTION: The July 13 and 20, 2011 Evictions were Unreasonable Searches and Seizures**

"To the extent [Count 5] relates to Powell's conduct in July 2011," R&R at *18, I vigorously disagree with the R&R that "there is no dispute that [Powell] acted on the basis of warrants that were issued in accordance with New York law," *see id.* Indeed, I have asserted claims under the New York Constitution, Verif. Am. Compl. Count 7, ¶¶ 149-53. The warrants were just as invalid under New York law as under federal law.[20] Moreover, I object not only to the invalidity of the issuance of the warrants, but also to the events of the execution of the July 13 and 20, 2011 evictions. Verif. Am. Compl. ¶ 145. *See* ECF 53-1 at 3-16 (memorandum discussing my Fourth Amendment claims against Powell).

**ELEVENTH OBJECTION: The September 20, 2011 Break-In was a Warrantless Search and was Not *De Minimis***

On September 20, 2011, the process server, as Defendant Powell's agent, entered and searched the halls of 287 Franklin Avenue for the rooms at which to serve process. Verif. Am. Compl. ¶¶ 86-91, 121. There was no warrant. *Id.* Contrary to the R&R, at *19 (Sasmor "does not allege that the process server searched the premises. . ."), I believe the existing allegations, Verif. Am. Compl. ¶¶ 86-91, 121, are sufficient to constitute a search within the meaning of the Fourth Amendment. A search for the rooms, and for the persons named on the notices, did occur! If the Court deems the present allegations incomplete or insufficient, I respectfully request leave to replead them.[21]

Nor can the unreasonable search be dismissed as "*de minimis*," R&R at *19 — especially at the pleadings stage. After the front door was broken open, the process server walked around the interior halls, knocked on doors, and called out names. *See Ryan v. Mary Immaculate Queen Ctr.*,

---

[20] I also have argued that the protections of the New York Constitution are even broader than the United States Constitution. ECF 53-1 at 28 n.50.

[21] *See also* ECF 53-1 at 8 ("searches within the meaning of the Fourth Amendment have been alleged when the Defendants and their agents entered into 287 Franklin Avenue and into interior rooms on July 13, July 20, and September 20, 2011, including when they searched for rooms at which to execute evictions (July 13 and 20, 2011) and when they searched for persons upon whom to serve notices of eviction (September 20, 2011).") (citations omitted).

**JA431**

188 F.3d 857, 859 (7th Cir. 1999) (Posner, J.) (reversing dismissal of claims where officers conducted search to attempt to serve eviction notices).

*Artes-Roy v. City of Aspen,* 31 F.3d 958, 962-63 (10th Cir.1994) (cited in R&R at *19) is distinguishable because, in that case, the building inspector never went further inside than the front entryway, *id.,* and did not do so to inspect inside or to make a seizure inside, *id.* Here, however, as in *Ryan,* 188 F.3d at 859, the process server entered with intention of conducting a search inside — and he did so.  Verif. Am. Compl. ¶¶ 86-91, 121.

*Porter v. Jewell,* 453 F. App'x 934, 937 (11th Cir. 2012) (unpublished) (cited in R&R at *19-20) is distinguishable because no search was alleged in that case.  *Id.*  Though the doorframe and deadbolt were damaged in *Porter, id.,* the officer did not enter or search the premises, *id.* Instead, the plaintiffs in *Porter* claimed injury from the circumstance of being *trapped inside* by the broken door.  *Id.*  Thus, *Porter* is the mirror opposite of the search that was conducted by the process server after breaking and entering 287 Franklin Avenue on September 20, 2011.  *See United States v. United States District Court,* 407 U.S. 297, 313 (1972) ("physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed").

Finally, *United States v. Jacobson,* 466 U.S. 109, 125 (1984) (cited in R&R at *20) involved destruction of "a trace amount" of powder during cocaine testing, *id.,* and has no apparent application to the facts of this case.  *Compare with Ryan,* 188 F.3d at 859 (officers conducted search to attempt to serve eviction notices).[22]  The Court must not make a ruling that authorizes process servers to break down the front doors of people's homes and then enter and conduct searches as part of their routine service of process.

---

[22] Judge Posner, the author of the decision in *Ryan v. Mary Immaculate Queen Ctr.,* 188 F.3d 857, 859 (7th Cir. 1999), apparently was familiar with the "*de minimis*" constitutional injury concept because Judge Posner considered it in *Ford v. Wilson,* 90 F.3d 245, 248 (7th Cir. 1996) in the context of a traffic stop.  Notably, Judge Posner *did not* apply the "*de minimis*" doctrine in *Ryan,* a case with facts remarkably similar to the instant case, also involving a warrantless search by officers attempting to serve process.  *Id. See also Kelly v. Rogers,* No. 1:07-cv-1573, slip op. at III.C. n.10 (M.D. Penn. May 13, 2012) (declining to make a "*de minimis*" determination where the argument was not raised by the parties)

**JA432**

**TWELFTH OBJECTION: Defendant Powell Should Not be Accorded Judgment on a Qualified Immunity Affirmative Defense**

The Report and Recommendation addresses qualified immunity as follows:

> While the court need not address the issue of qualified immunity, I conclude that Powell is also entitled to dismissal on that basis. He is alleged to have executed a facially valid warrant in accord with a state law that has never been held unconstitutional, and all of the alleged harms that Sasmor claims flow exclusively from that conduct, regardless of the propriety or impropriety of other aspects of Powell's conduct that Sasmor criticizes as unlawful.

R&R at *16 n.6. I object to every clause of this footnote. The warrants were not facially valid, were not in accord with state law, and were contrary to clearly established law. *See* ECF 53-1 at 35-8 (memorandum section: "Qualified Immunity Does Not Appear on the Face of the Complaint"). Defendant Powell acted outside his duties, beyond the warrants, and contrary to established procedures. *Id.* The existence of a facially invalid warrant — or even a facially valid one — should not be held to permit any actions whatsoever that an officer may take. The officer, Defendant Powell, has not met his burden on this affirmative defense. *Id.*


**THIRTEENTH OBJECTION: Section 1985(3) Claims Should Be Dismissed Without Prejudice**

I have admitted neglecting to plead "class-based, invidious discriminatory animus" as required under 42 U.S.C. § 1985(3). ECF 53-1 at 26. Magistrate Judge Orenstein correctly notes that, "[this] pleading defect is potentially curable, and by itself warrants only dismissal without prejudice." R&R at *20. However, I object to the R&R's suggestion thereafter that "even if the defendants acted with an improper motive, they did not cause Sasmor to suffer any cognizable harm that would support a cause of action for the alleged conspiracy to violate of his civil rights." *Id.* My objections to the R&R's analysis of my injury have been discussed elsewhere herein. Therefore, I also object to the R&R's injury-based recommendation on my § 1985(3) claim. I note that while § 1985(3) involves, in part, deprivation "of the equal protection of the laws," *id.*, the R&R neglects to address my equal protection claims, *supra* at 2, 5.

**JA433**

**FOURTEENTH OBJECTION: State Law Claims Should be Retained**

Because the Court should not dismiss my federal claims, the Court also should retain and adjudicate my state law claims.

**FIFTEENTH OBJECTION: Private Defendants Should Be Retained**

For the same reasons that the Court should not dismiss my claims against the other Defendants, the Court also should not dismiss my claims against the Private Defendants. Additionally, while I have alleged a § 1983 conspiracy, *see* R&R at \*21; ECF 52-1 at 8-9, I also have alleged that the Private Defendants *themselves were state actors* due to (a) their invocation of the unconstitutional state eviction warrants process, (b) their actual joint participation in the July 13 and 20, 2011 evictions and the September 20, 2011 break-in and search, and (c) the partial delegation to them of the state function of executing the evictions, e.g., Defendant Goldberger identifying the rooms. *See* ECF 52-1 at 6-7 (citing, *inter alia*, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) and *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010) (per curiam)). In its discussion of the Private Defendants, R&R at \*21, the R&R does not consider the alternate theory of liability against the Private Defendants — that they themselves were state actors. None of the Defendants should be dismissed — and, even if the other Defendants are dismissed, the Private Defendants should be retained.

**SIXTEENTH OBJECTION: Defendants' Other Defenses Do Not Have Merit**

I object to the R&R's conclusory characterization that some of the Defendants' defenses "appear to have merit." R&R at \*10. I respectfully request *de novo* review.

**SEVENTEENTH OBJECTION: My Claims Are Appropriately Raised in Federal Court**

The R&R mischaracterizes this case:

> That apparent complexity, however, is only superficial: in essence, this case is the result of Sasmor's misguided attempt to transform a routine landlord-tenant dispute that can be (and apparently has been) properly handled in state court into a federal

**JA434**

civil rights case against not only his landlord, but the state officials who for the most part are alleged to have done no more than discharge their lawful duties.

R&R at *7. However, when state officials enforce an unconstitutional state statute, they *are not* "discharg[ing] their lawful duties," R&R at *7. In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court held that when a state officer enforces a law that is unconstitutional, "he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Young*, 209 U.S. at 160 (citing *In re Ayers*, 123 U.S. 443, 507 (1887)). Moreover, I have had no opportunity whatsoever in state court to assert my federal claims and to challenge the constitutionality of N.Y. Real Prop. Acts. Law § 749(1) and the New York eviction warrants procedure. *See* ECF 51-1 at 18-19 (discussing reasons).[23]

> [T]he constitutionality of a state's eviction statutes and procedures is appropriately considered by the United States District Court under 42 U.S.C. § 1983. *Greene v. Lindsey*, 456 U.S. 444, 445, 447, 455-6 (1982) (Kentucky statute for service of process in eviction cases held to violate Fourteenth Amendment due process; case originally filed in U.S. District Court under 42 U.S.C. § 1983); *Lindsey v. Normet*, 405 U.S. 56, 59, 74-9 (1972) (Oregon statute requiring double bond for appeal in eviction cases held to violate Fourteenth Amendment equal protection; case originally filed in U.S. District Court under 42 U.S.C. § 1983); *Rembert v. Sheahan*, 67 F.3d 937, 938-9 (7th Cir. 1995) (considering Fourteenth Amendment due process challenge to Illinois procedures for enforcement of orders of possession to evict tenants not named in order; case originally filed in U.S. District Court under 42 U.S.C. § 1983), *permanent injunction issued on remand*, No. 92-cv-67, Judgment Order (N.D. Ill. Nov. 3, 1995); *Velazquez v. Thompson*, 451 F. 2d 202, 203, 206 (2d Cir. 1971) (New York statute for service of process in eviction cases held sufficient to satisfy due process; case originally filed in U.S. District Court under 42 U.S.C. § 1983); *Escalera v. N.Y. City Hous. Auth.*, 425 F.2d 853, 856, 867 (2d Cir. 1970) (claim stated for Housing Authority eviction procedures that appear "deficient in several specific aspects" under Fourteenth Amendment due process; case originally filed in U.S. District Court under 42 U.S.C. § 1983). *See also Lugar v. Edmundson Oil Co. Inc.*, 457 U.S. 922, 942 (1982) (claim stated under 42 U.S.C. § 1983 insofar as plaintiff challenged constitutionality of Virginia prejudgment attachment statute); *Fuentes v. Shevin*, 407 U.S. 67, 71 n.3, 96 (1972) (Florida and Pennsylvania prejudgment replevin statutes violated due process; cases originally filed in U.S. District Courts under 42 U.S.C. § 1983); *Linares v. Jackson*, 531 F. Supp. 2d 460, 470 (E.D.N.Y. 2008) (a federal regulation held facially unconstitutional because of permitting eviction without procedural due process), *reconsideration granted in part on other grounds*, 548 F. Supp. 2d 21, 23-4

---

[23] Thus, I object to the characterizations "that the relevant government officials performed their normal functions," R&R at *8, that "New York's courts provide an adequate forum for resolving [the underlying disputes]," *id.*, and that "[s]hould the owners of 287 Franklin seek to exclude him from other rooms in that building in the future, New York law will again give Sasmor a further opportunity to vindicate his perceived rights in the state's court system," *id.*

**JA435**

(E.D.N.Y. 2008), Complaint, No. 06-CV-876 (FB) (KAM), ¶¶ 4, 20 (E.D.N.Y. Feb. 28, 2006) (*Linares* case originally filed in U.S. District Court under a different statute, 5 U.S.C. § 701, *et seq.*).

ECF 55-1 at 8-9 n.20.

### EIGHTEENTH OBJECTION: The R&R Makes Factual Errors

I respectfully object to certain characterizations of the facts in the R&R, including those discussed above in footnotes 18 and 23; and also the description of Alex Rosenbaum as "Alexa" Rosenbaum, R&R at *3; as well as the incorrect index number of the Housing Court case *Ronald Henry Land Trust v. Sasmor and Lin*, #78902/11, incorrectly listed as 64303/11, R&R at *5.[24] I also object to the R&R's incomplete description, R&R at *6, of the relief I request in my preliminary injunction motion. *See* ECF 54-2 at 50 (request for relief).

### NINETEENTH OBJECTION: Preliminary Injunction Should Be Granted

A preliminary injunction should be granted for the reasons set forth herein and in my prior memoranda of law. ECF 54-2, 55-1.

### TWENTIETH OBJECTION: If Any Claim is Dismissed, Leave to Amend Should be Granted

"A *pro se* complaint 'should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation omitted). I respectfully request leave to replead any claim that is dismissed.

---

[24] The Housing Court case against me instituted at the same time as those of the other tenants, numbered 64299/11, was voluntarily discontinued. Case number 78902/11 was instituted later, in June 2011.

41

**JA436**

## REQUEST FOR RELIEF

WHEREFORE I respectfully request consideration of my objections, *de novo* review, and such

other and further relief as the Court deems just and proper.


Dated: March 15, 2013                       Respectfully submitted,
Brooklyn, New York

                                                 /s/

                                            Jon Sasmor
                                            Plaintiff, *Pro Se*
                                            287 Franklin Avenue
                                            Brooklyn, NY 11205
                                            (917) 318-2619
                                            jonathan.sasmor@gmail.com



Cc: Andrew Meier, Esq. (*via* ECF), Monica Connell, Esq. (*via* ECF),
Kenneth Litwack, Esq. (*via* ECF), and David Lyle Stern, Esq. (*via* ECF).

**JA437**

# UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JON SASMOR, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | )   Case No. 11-CV-4645 (KAM) (JO) |
| STEVEN POWELL, Individually and as City | ) |
| Marshal; CHAIM GOLDBERGER a/k/a | ) |
| HENRY GOLDBERG; | ) |
| HENRY MANAGEMENT, LLC; | ) |
| ISAAC TEITELBAUM a/k/a ISAAC | ) |
| TITALBAUM; ABRAHAM SCHNEEBALG; | ) |
| FERN FISHER Individually and as Deputy | ) |
| Chief Administrative Judge for the New York | ) |
| City Courts; and CAROL ALT, Individually | ) |
| and as Chief Clerk of the Civil Court of the | ) |
| City of New York, | ) |
| | ) |
| Defendants | ) |
| | ) |

## NOTICE OF APPEAL

Notice is hereby given that Jon Sasmor, Plaintiff in the above named case, hereby appeals
to the United States Court of Appeals for the Second Circuit from the final judgment entered in
this action on April 2, 2013 (ECF No. 67) and from the Order Adopting Report and
Recommendations entered in this action on Easter Sunday, March 31, 2013 (ECF No. 66).


Date:  April 2, 2013
Brooklyn, New York

Jon Sasmor
Plaintiff, *Pro Se*
287 Franklin Avenue
Brooklyn, NY 11205
jonathan.sasmor@gmail.com
(917) 318-2619

**JA438**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JON SASMOR, | |
|         Plaintiff | |
|     v. | No. 11-CV-4645 (KAM) (JO) |
| STEVEN POWELL, Individually and as City Marshal; CHAIM GOLDBERGER a/k/a HENRY GOLDBERG; HENRY MANAGEMENT, LLC; ISAAC TEITELBAUM a/k/a ISAAC TITALBAUM; ABRAHAM SCHNEEBALG; FERN FISHER, Individually and as Deputy Chief Administrative Judge for the New York City Courts; and CAROL ALT, Individually and as Chief Clerk of the Civil Court of the City of New York, | CERTIFICATE OF SERVICE |
|         Defendants. | |

Jon Sasmor hereby declares as follows under penalty of perjury:

On April 2, 2013, I filed on the Court's ECF electronic filing system, and thereby served, a true and complete copy of the preceding Notice of Appeal, upon each of the following:

Kenneth Litwack, Esq.
klitwack@aol.com
Attorney for Defendant Powell

David Lyle Stern, Esq.
sternandsternesq@aol.com
Attorney for Defendants Goldberger, Teitelbaum, Schneebalg, and Henry Management, LLC

Andrew Hodge Meier, Esq.
andrew.meier@ag.ny.gov
Attorney for Defendants Fisher and Alt

I declare under penalty of perjury that the foregoing information is true.

Respectfully submitted,

Jon Sasmor
Plaintiff, *Pro Se*
287 Franklin Avenue
Brooklyn, NY 11205
(917) 318-2619
jonathan.sasmor@gmail.com

Dated:  April 2, 2013
Brooklyn, New York

**JA439**

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Sasmor v. Powell_____ v.

**CERTIFICATE OF SERVICE**
Docket Number: 13-1223-cv

_____

_____

I, Jon Sasmor_____, hereby certify under penalty of perjury that on
__July 16, 2013__ (name)____, I served a copy of (1) both volumes of the Joint Appendix,
and (2) the Brief and Special Appendix for Plaintiff-Appellant Jon Sasmor
(date)
_____
(list all documents)

by (select all applicable)*

- ☑ United States Mail
- ☐ Federal Express
- ☐ Overnight Mail
- ☐ Facsimile
- ☑ E-mail
- ☐ Hand delivery

on the following parties (complete all information and add additional pages as necessary):

**Please see attached list.**

| Name | Address | City | State | Zip Code |
|------|---------|------|-------|----------|
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

__July 16, 2013__                    _____
Today's Date                              Signature

*If different methods of service have been used on different parties, please indicate on a separate
page, the type of service used for each respective party.

Certificate of Service Form

**ATTACHMENT TO CERTIFICATE OF SERVICE: RECIPIENT LIST**
*Sasmor v. Powell*, No. 13-1223-cv
July ⎿6⏌, 2013

Mark H. Shawhan, Assistant Solicitor General
Office of the N.Y.S. Attorney General
120 Broadway, 25th Floor
New York, NY 10271-0332
Attorney for Appellees Fisher and Alt
*via* email to mark.shawhan@ag.ny.gov pursuant to consent under Fed. R. App. P. 25(c)(1)(D)
    and 2d Cir. Rule 25.1(h)(1) and (4)

Kenneth D. Litwack, Esq.
38-08 Bell Blvd., 2nd Floor
Bayside, NY 11361
Attorney for Appellee Powell
*via* email to klitwack@aol.com pursuant to consent under Fed. R. App. P. 25(c)(1)(D) and 2d
    Cir. Rule 25.1(h)(1) and (4)

David Lyle Stern, Esq.
50 Court Street, Suite 1100
Brooklyn, NY 11201
E.D.N.Y. Attorney for Appellees Teitelbaum, Schneebalg, Goldberger, and Henry Mgmt., LLC
*via* email to sternandsternesq@aol.com, with a copy of this certificate of service *via* USPS First
Class Mail, both pursuant to Mr. Stern's written consent dated March 24, 2012 ("Email service is
fine.  Please just also send me some form of confirmation that a document has been served")

Roy I. Martin, Esq. and Carmine J. Castellano, Esq.
Hodgson Russ LLP
1540 Broadway, 24th Floor
New York, NY 10036
E.D.N.Y. Attorney for Appellees Teitelbaum and Schneebalg in Related Case No. 11-cv-976
*via* email to RMartin@hodgsonruss.com and CCastell@hodgsonruss.com

Because Appellees Teitelbaum, Schneebalg, Goldberger, and Henry Mgmt., LLC have not
appeared in this appeal, I made additional service to each of them directly by sending each a CD
containing (1) both volumes of the Joint Appendix and (2) two copies of the Brief and Special
Appendix for Plaintiff-Appellant Jon Sasmor, together with a print copy of this certificate of
service, by USPS First Class Mail to each of the following addresses:

|                         |                            |
|-------------------------|----------------------------|
| Isaac Teitelbaum        | Abraham Schneebalg         |
| 237 Hooper Street       | 238 Keap Street            |
| Brooklyn, NY 11211      | Brooklyn, NY 11211         |
|                         |                            |
| Chaim Goldberger        | Henry Management, LLC      |
| 198 Middleton Street    | 503 Lafayette Avenue, Bsmt.|
| Brooklyn, NY 11206      | Brooklyn, NY 11205         |