# 13-1223-cv

## United States Court of Appeals
## for the Second Circuit

JON SASMOR,

*Plaintiff - Appellant,*

v.

STEVEN POWELL, Individually and as City Marshal,

*Defendant - Cross Claimant - Cross Defendant - Appellee.*

and,

CHAIM GOLDBERGER, aka Henry Goldberg, ISAAC TEITELBAUM, aka Isaac Titalbaum, ABRAHAM SCHNEEBALG, FERN FISHER, Individually and as Deputy Chief Adminstrative Judge for the New York City Courts, CAROL ALT, Individually and as Chief Clerk of the Civil Court of the City of New York, HENRY MANAGEMENT, LLC,

*Defendants - Cross Defendants - Appellees.*

On Appeal from the United States District Court
for the Eastern District of New York

### BRIEF FOR STATE APPELLEES FISHER AND ALT

BARBARA D. UNDERWOOD
*Solicitor General*
STEVEN C. WU
*Deputy Solicitor General*
MARK H. SHAWHAN
*Assistant Solicitor General*
*of Counsel*

ERIC T. SCHNEIDERMAN
*Attorney General of the*
*State of New York*
Attorney for State Appellees
120 Broadway
New York, New York 10271
(212) 416-6325

Dated: October 15, 2013

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................ii

PRELIMINARY STATEMENT ........................................................... 1

JURISDICTIONAL STATEMENT ..................................................... 2

ISSUES PRESENTED ......................................................................... 2

STATEMENT OF THE CASE ............................................................. 3

    A.   New York's Pre-Eviction Safeguards for Tenants.................. 3

    B.   Sasmor's Litigation in Housing Court ................................... 6

        1.   The Diaz, Fletcher, and Rosenbaum Eviction
            Proceedings ........................................................ 6

        2.   The Campos, Osterweil, and Skubutyte Eviction
            Proceedings ........................................................ 8

    C.   Sasmor's § 1983 Action in Federal Court ............................ 9

SUMMARY OF ARGUMENT ............................................................ 11

ARGUMENT ..................................................................................... 12

POINT I  -  SASMOR LACKS STANDING TO PROSECUTE
          THIS LANDLORD-TENANT ACTION IN
          FEDERAL COURT........................................................ 12

POINT II -  SASMOR HAS FAILED TO STATE A CLAIM
          UPON WHICH RELIEF CAN BE GRANTED ................ 17

CONCLUSION .................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Anderson v. N.Y. City Housing Auth.,*
   No. 91-2584, 1995 WL 571375 (S.D.N.Y. Sept. 26, 1995) ............. 19-20

*Arjay Assocs., Inc. v. Bush,*
   891 F.2d 894 (Fed. Cir. 1989) ............................................................. 13

*Baker v. Latham Sparrowbush Assocs.,*
   72 F.3d 246 (2d Cir. 1995) .................................................................. 18

*City of N.Y. v. Utsey,*
   185 Misc. 2d 715 (App. Term 2000) .................................................. 17

*County of Sacramento v. Lewis,*
   523 U.S. 833 (1998) ............................................................................ 20

*Cox v. J.D. Realty Assocs.,*
   217 A.D.2d 179 (1st Dep't 1995) ......................................................... 3

*Hoblock v. Alb. County Bd. of Elections,*
   422 F.3d 77 (2d Cir. 2005) .................................................................. 14

*Hynes v. Squillace,*
   143 F.3d 653 (2d Cir. 1998) ............................................................... 17

*Jennings v. Comm'r N.Y.S. Dep't Soc. Servs.,*
   71 A.D.3d 98 (2d Dep't 2010) ............................................................ 13

*Lippe v. Prof'l Surgical Supply Co.,*
   132 Misc. 2d 293 (N.Y. City Civ. Ct. 1986) ......................................... 4

*Loira v. Anagnastopolous,*
   204 A.D.2d 608 (2d Dep't 1994) .......................................................... 5

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ............................................................................ 12

*Martz v. Inc. Vill. of Valley Stream,*
   22 F.3d 26 (2d Cir. 1994) ................................................................... 17

# TABLE OF AUTHORITIES (cont'd)

**Cases**                                                              **Page(s)**

*Matter of Brusco v. Braun,*
84 N.Y.2d 674 (1994) ............................................................... 5

*Mennella v. Lopez-Torres,*
91 N.Y.2d 474 (1998) ............................................................... 3

*N.Y. County Dist. Attorney's Office v. Oquendo,*
147 Misc. 2d 125 (N.Y. City Civ. Ct. 1990)................................ 5

*Rothstein v. UBS AG,*
708 F.3d 82 (2d Cir. 2013) ..................................................... 12

*Sheppard v. Beerman,*
18 F.3d 147 (2d Cir. 1994) ..................................................... 19

*Soldal v. Cook County, Ill.,*
506 U.S. 56 (1992)................................................................. 19

*Stanford Realty Assoc. v. Rollins,*
161 Misc. 2d 754 (N.Y. City Civ. Ct. 1994)............................... 4

*United States v. Hayes,*
551 F.3d 138 (2d Cir. 2008) ................................................... 18

*United States v. Sanchez,*
635 F.2d 47 (2d Cir. 1980) ..................................................... 19

**Laws**

C.P.L.R. 5511....................................................................... 3

C.P.L.R. 5703....................................................................... 3

ch. 982 § 1, 1972 N.Y. Laws 3582............................................ 3

New York City Administrative Code § 26-521 ....................... 16

# TABLE OF AUTHORITIES (cont'd)

**Laws**                                                                              **Page(s)**

New York City Civil Court Act

    § 110 ........................................................................................... 3

    § 1702 ......................................................................................... 3

Real Property Actiions and Proceedings Law

    § 711 ......................................................................................... 16

    § 731 ........................................................................................... 4

    § 735 ........................................................................................... 4

    § 743 ........................................................................................... 4

    § 745 ........................................................................................... 4

    § 749 ..................................................................................... 5, 19

    § 853 ........................................................................................... 5

## PRELIMINARY STATEMENT

Plaintiff-appellant Jon Sasmor has been engaged in a long-running dispute with his landlord over Sasmor's alleged possessory interests in certain apartments. This dispute led the landlord to successfully move in New York City Housing Court to evict Sasmor and other tenants. Rather than defend his interests in Housing Court, Sasmor brought this 42 U.S.C. § 1983 action against several state judicial officers, raising various constitutional claims that are all predicated on his assertion that New York's statutory eviction procedures wrongly deprive rightful tenants of their property interests.

The district court (Matsumoto, J.) correctly held that Sasmor lacks standing to bring these constitutional claims because the state courts have already found that Sasmor has no property rights in the apartments—thus leaving him with no legally protected interests that New York's eviction procedures could injure. The court accordingly dismissed "Sasmor's misguided attempt to transform a routine landlord-tenant dispute . . . into a federal civil rights case." (Special Appendix ("SPA.") 7.) This Court should affirm.

## JURISDICTIONAL STATEMENT

As explained in Point I below, this Court lacks subject-matter jurisdiction because Sasmor lacks Article III standing.

## ISSUES PRESENTED

1.    Whether a purported tenant lacks standing to challenge statutory eviction proceedings in federal court, on the sole basis of alleged injuries to his state-law property rights, when state courts have already held that he has no legally protected property interests.

2.    Whether the district court properly dismissed this action with prejudice, where the plaintiff has failed to put forward any allegations to support his claims that he has state-law property interests that have been injured.

## STATEMENT OF THE CASE

### A.  New York's Pre-Eviction Safeguards for Tenants

In New York, landlords evict residential tenants principally through a summary proceeding to recover possession of real property. Such proceedings are governed by article 7 of the Real Property Actions and Proceedings Law (RPAPL). In New York City, RPAPL article 7 proceedings are brought in a specialized part of City Civil Court, the Housing Court.[1] *See* New York City Civil Court Act (CCA) § 110; ch. 982, § 1, 1972 N.Y. Laws 3582 (establishing Housing Court as a separate part).

"[A]rticle 7 provides an elaborate set of notice requirements to ensure that tenants are not unjustly evicted from premises without an opportunity to defend." *Mennella v. Lopez-Torres*, 91 N.Y.2d 474, 478 (1998). The statute makes every individual with a possessory interest in

---

[1] Like other appeals from City Civil Court, appeals from decisions of Housing Court may be taken as of right by "any person aggrieved" by the decision, C.P.L.R. 5511, to the Appellate Term of Supreme Court, CCA § 1702. Appeals may be taken from Appellate Term to the Appellate Division by leave of court. C.P.L.R. 5703(a). Supreme Court, as a court of general jurisdiction, has concurrent original jurisdiction over RPAPL article 7 proceedings, but initiating landlord-tenant proceedings in Supreme Court is disfavored. *See, e.g.*, *Cox v. J.D. Realty Assocs.*, 217 A.D.2d 179, 181 (1st Dep't 1995) (citing *Post v. 120 E. End Ave. Corp.*, 62 N.Y.2d 19, 28 (1984)).

the premises a necessary party-respondent. Failure to name such an individual in the petition warrants dismissal. *See, e.g.*, *Stanford Realty Assoc. v. Rollins*, 161 Misc. 2d 754, 755-57 (N.Y. City Civ. Ct. 1994). Individuals with possessory interests derived from the tenant, such as subtenants, are not necessary parties, but may be joined to ensure that a later warrant of eviction will be effective against them as well. *See, e.g.*, *Lippe v. Prof'l Surgical Supply Co.*, 132 Misc. 2d 293, 297-98 (N.Y. City Civ. Ct. 1986).

The petition and notice of petition that commence the proceeding must be served on each respondent by personal, substituted, or conspicuous service. RPAPL § 735(1). The notice of petition must specify the time and place of the hearing. *Id.* § 731(2).

At the hearing before Housing Court, "*any* person in possession or claiming possession of the premises"—including individuals who were neither named as respondents nor have formally intervened—may answer and assert any available defense, such as failure to name a necessary party. *Id.* § 743 (emphasis added). And any such person may demand trial by jury to resolve the landlord-tenant dispute. *Id.* § 745(1).

4

If judgment is entered for the landlord, the court "*shall* issue a warrant . . . describing the property, and commanding the officer to remove all persons and . . . put the [landlord] into full possession." *Id.* § 749(1) (emphasis added). It is well-established that such a warrant authorizes the eviction, not only of the named parties to the proceeding, but also all other persons present on the premises who lack a possessory interest, such as children or guests. *See, e.g., Loira v. Anagnastopolous*, 204 A.D.2d 608, 609 (2d Dep't 1994) (daughter of tenant); *N.Y. County Dist. Attorney's Office v. Oquendo*, 147 Misc. 2d 125, 127 (N.Y. City Civ. Ct. 1990) (children, grandchildren, servants, boarders, and guests of tenants).

Housing Court may vacate the warrant at any time between issuance and execution on good cause shown, RPAPL § 749(3), and may in appropriate circumstances restore a tenant to possession even after execution of the warrant, *Matter of Brusco v. Braun*, 84 N.Y.2d 674, 682 (1994). If a landlord wrongfully evicts a tenant, the landlord may be liable for treble damages. RPAPL § 853.

## B.   Sasmor's Litigation in Housing Court

This action arises out of a three-year dispute between the landlord of 287 Franklin Avenue in Brooklyn and the residents of that building, including Sasmor. As relevant here, in March 2011 the landlord brought eviction proceedings pursuant to RPAPL article 7 against many of the residents of 287 Franklin, including Luis Campos, Amanda Diaz, Kurt Fletcher, Willie Osterweil, Alex Rosenbaum, and Vilija Skubutyte.[2]

### 1.   The Diaz, Fletcher, and Rosenbaum Eviction Proceedings

The Diaz and Fletcher eviction proceedings were consolidated. Before the hearing, Sasmor moved to participate on the ground that the named tenants had moved out and that Sasmor was in actual possession of the premises because he stored his belongings there. (A. 224-225 (Fletcher); 234-235 (Diaz).) Sasmor then appeared at the

---

[2] The landlord also brought an eviction proceeding against Sasmor. Sasmor answered, asserting twenty-four affirmative defenses (A. 371), and the case was tried over five days in 2011 and 2012 (A. 372). In a twelve-page written opinion, the court rejected each of Sasmor's affirmative defenses and granted judgment of possession to the landlord. (A. 371-382.) Sasmor then appealed to Appellate Term (A. 389); that appeal is still pending. None of Sasmor's claims here are predicated upon his eviction from his own apartment.

hearing before Housing Court. The court, however, having read the prehearing papers filed by Sasmor (A. 319), concluded that Sasmor was not a party to the case (A. 317-319). The court granted judgment of possession to the landlord in each proceeding (A. 51 (Fletcher); 54 (Diaz)), and warrants of eviction naming Fletcher and Diaz were issued (A. 50 (Fletcher); 53 (Diaz)).

Sasmor moved in Housing Court to stay the execution of both warrants, arguing that he had independent possessory interests in the premises, and alternatively requested that the judgments of possession be vacated. (A. 226-228 (Fletcher); 236-238 (Diaz).) Housing Court rejected these requests, concluding that Sasmor was not a tenant of either room and did not become a tenant simply because he stored personal property there. (A. 229-230 (Fletcher); 239-240 (Diaz).) Sasmor appealed these rulings to Appellate Term, which dismissed the appeal on the ground that Sasmor was not a person aggrieved by the judgments awarding possession of the rooms to the landlord— concluding, in other words, that Sasmor lacked any possessory interest in those rooms that was affected by the judgment of possession for the landlord. (A. 231 (Fletcher); 241 (Diaz).)

In the Rosenbaum proceeding, Sasmor filed an answer and a forty-page memorandum of law asserting, among other things, that he was the actual tenant and should be named in the petition (A. 129-168, 243-244). As with the Diaz and Fletcher eviction proceedings, Sasmor also appeared in court to defend his interests. Housing Court awarded the landlord judgment of possession against Rosenbaum. (A. 245-246.) Sasmor took an appeal to Appellate Term, which again dismissed the appeal because Sasmor was not a person aggrieved by the judgment of possession. (A. 247.)

Following the issuance of the eviction warrants in the Diaz, Fletcher, and Rosenbaum cases, and the dismissal of Sasmor's appeals, the marshal (appellee Powell) executed the warrants and padlocked the rooms. (A. 21, 23-24.)

### 2.    The Campos, Osterweil, and Skubutyte Eviction Proceedings

Sasmor did not attempt to participate in the Campos, Osterweil, and Skubutyte eviction proceedings. Each proceeding resulted in the award of judgments of possession to the landlord in May and June 2011, and the subsequent issuance of eviction warrants. (A. 327-329.)

Pursuant to those warrants, notices of eviction with respect to the Osterweil and Campos rooms were served in September 2011. (A. 27-28.)

## C.   Sasmor's § 1983 Action in Federal Court

Rather than further pursuing his state court remedies in the Housing Court proceedings described above, Sasmor filed this action in the U.S. District Court for the Eastern District of New York under 42 U.S.C. § 1983.[3]

Sasmor's amended complaint alleged injury based on the asserted deprivation of his possessory interests in the Diaz, Fletcher, and Rosenbaum rooms (A. 21-23). The complaint did not allege any injury based on the Campos, Osterweil, and Skubutyte rooms. The complaint asserted that RPAPL article 7 violates the Due Process Clause and the Fourth Amendment because it requires eviction warrants that may be enforced against individuals with possessory interests other than the

---

[3] As relevant here, Sasmor sued appellees Carol Alt, Chief Clerk of the New York City Civil Court, and Fern Fisher, Deputy Chief Administrator of the New York City Courts. Alt signs the eviction warrants issued by Housing Court. Fisher, though "responsible for the administration and operation of the New York City Courts," has no direct involvement in Housing Court or eviction proceedings. (A. 29.)

named parties to the eviction proceeding (A. 34). The complaint sought an injunction against (1) the "issuance or execution of any New York eviction warrant to evict 'all persons' and/or to 'place the petitioner in full possession,'" and (2) issuance or execution of any New York eviction warrant "against any person other than the person(s) named in a judgment of possession" (A. 42).

Magistrate Judge Orenstein recommended that defendants' motions to dismiss be granted due to Sasmor's lack of standing. (SPA. 1-22.) On de novo review, the district court (Matsumoto, J.) affirmed the Report & Recommendation and adopted it as the opinion of the court (SPA. 23-32). The district court agreed that Sasmor lacked standing because the state courts had already found that he had no property interests in the six apartments described above; Sasmor was thus "bound by the state court judgments foreclosing his claimed right to those rooms." (SPA. 30.) The district court further agreed with the magistrate judge's "keen observation that plaintiff's amended complaint is, at bottom, a rehashing of his state court landlord-tenant dispute which should not be entertained in federal court" (SPA. 31).

10

## SUMMARY OF ARGUMENT

Sasmor's constitutional claims against the state judicial defendants are premised solely on alleged injuries to his statutory property rights in certain apartments. But, as the district court correctly concluded, Sasmor lacks standing to bring those claims because the state courts have found that Sasmor has no such rights. Sasmor has thus not identified any legally protected property interest that could serve as the basis of a cognizable injury under Article III.

Even if Sasmor had standing (and he does not), the decision below may be affirmed on the alternative ground that Sasmor has failed to state a claim upon which relief may be granted. His due process cause of action rests on the premise that New York's statutory eviction procedures do not provide adequate notice to interested parties. But Sasmor indisputably received pre-eviction notice and opportunity to be heard here. Sasmor also has failed to plead a violation of the Fourth Amendment's Warrant Clause, because he lacks a legitimate basis for occupying the premises that he claims have been unconstitutionally searched and seized. In any event, New York's eviction warrants are sufficiently specific to pass constitutional muster.

11

# ARGUMENT

## POINT I

## SASMOR LACKS STANDING TO PROSECUTE THIS LANDLORD-TENANT ACTION IN FEDERAL COURT

A federal plaintiff has standing under Article III only if he establishes "an invasion of a legally protected interest."[4] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, the only "legally protected" interests that Sasmor has identified arise out of state law: Sasmor asserts *statutory* "tenancy rights as a rooming house occupant" in the Diaz, Fletcher, and Rosenbaum rooms (Br. at 11; *see also* Br. at 15 n.5 (asserting that "three statutory rights are protected by the Due Process Clause and the Fourth Amendment"); A. 21-22 ¶¶ 54-60). But Housing Court has already determined that Sasmor lacks any such state-law possessory interests.

---

[4] Sasmor must also show that the injury complained of is "fairly traceable" to challenged actions of the defendants. *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013). Sasmor does not allege that appellee Fisher took any action with respect to the challenged eviction warrants. The terms and scope of those warrants, and the point at which they issue, are set by statute rather than by administrative action. Sasmor therefore cannot show injury fairly traceable to Fisher in any case.

12

In separate eviction proceedings, Housing Court heard but rejected Sasmor's argument (made on the papers and in person) that he was a necessary party as the actual tenant in possession, and issued final judgments granting sole possession to the landlord. See *supra* at 6-8. Appellate Term then dismissed Sasmor's ensuing appeal in each case because it concluded that he was not "aggrieved" by those judgments—a determination that required the court to find that Sasmor lacked "a direct interest in the controversy which is affected by the result," *Jennings v. Comm'r N.Y.S. Dep't Soc. Servs.*, 71 A.D.3d 98, 103 n.3 (2d Dep't 2010) (quotation marks omitted). These state-court rulings rejecting Sasmor's assertion of possessory rights over the Diaz, Fletcher, and Rosenbaum rooms conclusively rebut his claim of injury to state-law property interests. *See Arjay Assocs., Inc. v. Bush*, 891 F.2d 894, 898 (Fed. Cir. 1989) ("[A]ppellants lack standing because the injury they assert is to a nonexistent right.").

Sasmor now says (Br. at 30-34) that a federal court may independently reexamine the existence of his putative possessory interests. But that position runs afoul of the *Rooker-Feldman* doctrine, which states that federal courts have no jurisdiction over "cases brought

13

by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Hoblock v. Alb. County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (quotation marks omitted).

Here, Sasmor actively participated in the relevant state-court proceedings, each of which culminated in (a) a judgment adverse to his claimed possessory interests and (b) the issuance of the eviction warrants that allegedly injured Sasmor. Sasmor brought this federal action only after the state-court judgments were entered, and the eviction warrants executed. Sasmor's asserted basis for standing— specifically, an injury to the "property rights" that he claims are guaranteed by "three separate New York statutes" (Br. at 15)—would require this Court to reconsider and reject the state courts' judgment that Sasmor had no such possessory interests in the rooms in question.

14

The district court correctly found no jurisdiction to entertain such a collateral challenge to state-court rulings.[5]

Sasmor also requests that this Court grant him leave to amend his complaint a second time to address his lack of standing. Br. at 63. Sasmor seems to suggest that a further amended complaint would incorporate allegations from his declaration of March 21, 2012, which asserts additional possessory interests in the Campos, Osterweil, and Skubutyte rooms. (*See, e.g.*, Br. at 17 (citing declaration).) But these additional allegations also would not establish Sasmor's standing. As the district court correctly recognized (SPA. 14-15, 29-30), Sasmor's alleged property interest in these additional rooms is wholly derivative of the actual tenants'. But Housing Court issued final judgments of possession to the landlord for Osterweil's and Skubutyte's rooms *before* Sasmor undertook any of the actions that he now asserts establish his occupancy. (*Compare* A. 262 ¶¶ 58-59, *with* A. 327-328 (judgments).)

---

[5] *Rooker-Feldman* similarly bars Sasmor's assertion (Br. at 28-29) that the Housing Court lacked a rational basis to issue eviction warrants for the Diaz, Fletcher, and Rosenbaum rooms that named those individuals but not Sasmor.

Sasmor cannot assert a derivative property interest from former tenants who have no property interest at all.

With respect to the Campos room, Sasmor assertedly began occupying the room before Housing Court issued a final judgment of possession in favor of the landlord. But the record is unambiguous that he occupied the apartment for at most ten days before that judgment: Sasmor's own declaration alleges that he began occupying the room at the earliest in June 2011, and the judgment was issued on June 10. (A. 261-262 ¶ 57, A. 329). The city and state laws that Sasmor relies upon to establish his statutory property interests (Br. at 15-21) require, *inter alia*, a minimum of thirty days lawful occupancy to establish possessory interests. RPAPL § 711; N.Y. City Admin. Code § 26-521. Because Sasmor's own allegations conclusively prove that he failed to satisfy that requirement, he has failed to establish the only cognizable injury that he has alleged: namely, deprivation of "statutory property rights for thirty-day occupants" under New York law (Br. at 15).[6]

_____

[6] Sasmor also asserts a putative state-law possessory interest as a tenant at will or at sufferance. Br. at 21. But a tenancy at sufferance requires that the putative tenant "previously have had a possessory

(*continued on the next page*)

## POINT II

## SASMOR HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if Sasmor could establish standing in this action (and he cannot), the dismissal of the action should be affirmed for failure to state a claim. Sasmor asserts that New York's statutory eviction procedures violate due process, and that the scope of eviction warrants violates the Fourth Amendment's Warrant Clause. Both claims are meritless.

To establish a procedural due process claim, Sasmor must identify both a protected property interest and the deprivation of that interest without due process. *See Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998). Sasmor has done neither here. For the reasons given above, he has not established a state-law property interest in the specific rooms identified in his complaint. *See Martz v. Inc. Vill. of Valley Stream*, 22

---

interest" in the relevant premises, *City of N.Y. v. Utsey*, 185 Misc. 2d 715, 718 (App. Term 2000), and Sasmor did not. An implied tenancy at will results from a landlord's acquiescence to the tenant's occupancy, *see id.*—but here the landlord, rather than acquiesce, has obtained judgments of eviction against both Sasmor and the tenants of record for each of the six rooms at issue.

F.3d 26, 29 (2d Cir. 1994) (noting that state law may define property interests in the due process context).

Even if there were such an interest here, Sasmor has not identified any deficiency in the process that New York law provides. Sasmor does not dispute that the RPAPL, as construed by the New York courts, requires that all individuals with a possessory interest be afforded notice and a pre-eviction hearing, and that they may only be evicted if named in the eviction warrant. See *supra* at 4-5. And Sasmor admits that he has in fact *received* actual notice of all the eviction proceedings and warrants that he complains of here, and filed papers and appeared in court to contest the Diaz, Fletcher, and Rosenbaum proceedings. Sasmor's actual pre-eviction notice and opportunity to respond satisfied due process. *Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 254 (2d Cir. 1995).

Sasmor's Warrant Clause argument is equally meritless. A Fourth Amendment "search" requires the invasion of an area in which one has an "expectation of privacy that society is prepared to accept as objectively reasonable," *United States v. Hayes*, 551 F.3d 138, 143 (2d Cir. 2008), and a "seizure" requires "meaningful interference with

18

an individual's possessory interests in that property," *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992) (quotation marks omitted).  But Sasmor never acquired a legitimate possessory interest in the six rooms at issue. And his wrongful presence in those rooms precluded any reasonable expectation of privacy. *See United States v. Sanchez*, 635 F.2d 47, 64 (2d Cir. 1980).

In any case, Sasmor's claim (Br. at 50-52) that eviction warrants issued pursuant to RPAPL § 749 are unconstitutionally "general" warrants is meritless. Section § 749(1) dictates that the eviction warrant describe the property to which the warrant applies. No more is required.

Sasmor argues (Br. at 51-52) that New York eviction warrants are unacceptably general because they permit the eviction of individuals not named. But removing a person from one particular location and preventing them from returning does not in itself constitute a Fourth Amendment "seizure" of that person implicating the Warrant Clause, as long as he is "free to leave" that location and "go anywhere else that he desire[s]." *Sheppard v. Beerman*, 18 F.3d 147, 153 (2d Cir. 1994) (quotation marks omitted); *see also, e.g.*, *Anderson v. N.Y. City Housing Auth.*, No. 91-2584, 1995 WL 571375, at *6 (S.D.N.Y. Sept. 26, 1995)

(applying *Sheppard* to the removal of "an unlawful occupant" by the landlord). And Sasmor has not alleged that he was prevented from leaving the rooms from which he was evicted and going elsewhere.

Sasmor also claims (Br. at 52-55) that the evictions at issue were unreasonable searches and seizures more generally. But the only reason Sasmor gives that pertains to his particular claims against appellees Fisher and Alt is that the warrants "require removal of 'all persons'" (Br. at 52), which merely repeats his fruitless Warrant Clause argument.[7]

---

[7] Sasmor claims (Br. at 27-29) that the eviction proceedings and warrants in this case violated other constitutional requirements. These arguments are also without merit. The "liberty interests" that he asserts (Br. at 27-28) merely recapitulate his procedural due process and Warrant Clause claims. Sasmor's claim that the eviction warrants for the Campos, Osterweil, and Skubutyte rooms violated equal protection (Br. at 28-29) fails because Housing Court had a rational basis to issue warrants that named those individuals but not Sasmor. And Sasmor cannot assert a substantive due process claim (Br. at 29) with respect to conduct that is covered by, but does not violate, a more specific constitutional provision. *County of Sacramento v. Lewis*, 523 U.S. 833, 842-43 (1998).

## CONCLUSION

For the foregoing reasons, the district court's judgment dismissing the action with prejudice should be affirmed.

Dated:  New York, NY
        October 15, 2013

                              Respectfully submitted,

                              ERIC T. SCHNEIDERMAN
                                *Attorney General of the*
                                *State of New York*
                              Attorney for State Appellees


                              By:   /s/ Mark H. Shawhan
                                    MARK H. SHAWHAN
                                    Assistant Solicitor General

                                    120 Broadway, 25th Floor
                                    New York, NY 10271
                                    (212) 416-6325

BARBARA D. UNDERWOOD
  *Solicitor General*
STEVEN C. WU
  *Deputy Solicitor General*
MARK H. SHAWHAN
  *Assistant Solicitor General*
    *of Counsel*


Reproduced on Recycled Paper

21